**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement System, and as Trustee of the New York State Common Retirement Fund, and Proposed Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| SUZANNE L. FLANNERY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SNOWFLAKE INC., FRANK SLOOTMAN, and MICHAEL P. SCARPELLI, <br><br> Defendants. | No. 5:24-cv-01234-PCP <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THOMAS P. DINAPOLI, COMPTROLLER OF THE STATE OF NEW YORK, AS ADMINISTRATIVE HEAD OF THE NEW YORK STATE AND LOCAL RETIREMENT SYSTEM, AND AS TRUSTEE OF THE NEW YORK STATE COMMON RETIREMENT FUND FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS** <br><br> DATE: June 6, 2024 <br> TIME: 10:00 am <br> COURTROOM: 8—4th Floor <br> JUDGE: Hon. P. Casey Pitts |

**TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................................ 1

II. Statement of Issues to be Decided ............................................................................ 4

III. Argument ................................................................................................................... 4

    A. NYSCRF—and Not the NYC Eleven—Has the Largest Financial Interest, and the NYC Eleven Cannot Trigger the Most Adequate Plaintiff Presumption .......................................................................................................... 5

        1. NYSCRF Has By Far the Largest Financial Interest Under Every Factor Courts Consider ............................................................................ 5

        2. The NYC Eleven Should Not Be Allowed to Aggregate Their Losses .......................................................................................................... 7

        3. The NYC Eleven Has Far Too Many Members to Be Appointed Lead .............................................................................................................. 8

    B. NYSCRF Satisfies Rule 23's Requirements and Is Entitled to the Most Adequate Plaintiff Presumption ........................................................................ 13

    C. All Other Motions Should Be Denied ................................................................ 15

IV. Conclusion ............................................................................................................... 15

i

MEM. OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF THE MOT. OF NYSCRF FOR
APP'T AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL,
AND IN OPP'N TO THE COMPETING MOTIONS
CASE NO. 5:24-CV-01234-PCP

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple v. LJ Int'l Inc.*,
   2008 WL 11343371 (C.D. Cal. Feb. 8, 2008) ............................................................. 12, 13

*Ark. Teacher Ret. Sys. v. Insulet Corp.*,
   177 F. Supp. 3d 618 (D. Mass. 2016) ............................................................................... 8

*Ben v. Frontier Fin. Corp.*,
   2010 WL 11684329 (W.D. Wash. Dec. 9, 2016) ............................................................... 8

*Bristow v. Sunpower Corp.*,
   2016 WL 11741569 (N.D. Cal. Dec. 9, 2016) ................................................................... 8

*Burns v. UP Fintech Holding Ltd.*,
   2024 WL 387261 (C.D. Cal. Jan. 30, 2024) ................................................................. 7, 8

*Cohen v. Luckin Coffee Inc.*,
   2020 WL 3127808 (S.D.N.Y. June 12, 2020) ................................................................... 8

*Colley v. Orexigen Therapeutics, Inc.*,
   2015 WL 13937741 (S.D. Cal. June 22, 2015) ............................................................... 15

*Crews, Jr. v. Rivian Auto., Inc.*,
   2022 WL 17883615 (C.D. Cal. July 1, 2022)................................................................... 10

*Ferreira v. Funko, Inc.*,
   2020 WL 3246328 (C.D. Cal. June 11, 2020) ............................................................... 6, 9

*Fialkov v. Celladon Corp.*,
   2015 WL 11658717 (S.D. Cal. Dec. 9, 2015) ................................................................... 8

*Foster v. Maxwell Techs., Inc.*,
   2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) ................................................................... 5

*Hedick, Jr. v. Kraft Heinz Co.*,
   2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) ..................................................................... 10

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002).................................................................................. 9, 13

ii

*In re Baan Co. Sec. Litig.*,
   186 F.R.D. 214 (D.D.C. 1999) ................................................................................. 2, 9

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ............................................................................. 4, 5, 13

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ....................................................................................... 9

*In re Cohen*,
   586 F.3d 703 (9th Cir. 2009) .................................................................................... 15

*In re Extreme Networks Inc. Sec. Litig.*,
   2016 WL 3519283 (N.D. Cal. June 28, 2016) ......................................................... 14

*In re Network Assoc., Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................. 2, 9

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................... 5

*In re Surebeam Corp. Sec. Litig.*,
   2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .............................................................. 7

*Koffsmon v. Green Dot Corp.*,
   2021 WL 3473975 (C.D. Cal. Aug. 6, 2021) ..................................................... *passim*

*Koffsmon v. Green Dot Corp.*,
   2022 WL 170636 (C.D. Cal. Jan. 19, 2022) ............................................................ 12

*Lax v. First Merchants Acceptance Corp.*,
   1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................................................. 5

*McCracken v. Edwards Lifesciences Corp.*,
   2014 WL 12694135 (C.D. Cal. Jan. 8, 2014) ........................................................... 7

*Perlmutter v. Intuitive Surgical*,
   2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .................................................. 5, 13, 14

*Schriver v. Impac Mortg. Holdings, Inc.*,
   2006 WL 6886020 (C.D. Cal. May 2, 2006) ........................................................... 13

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................... 4, 15
N.Y. Educ. Law § 2575 ............................................................................................ 3, 11

iii

N.Y. Educ. Law § 2590-b........................................................................................................... 3, 11

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................... 14, 15

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .......................................... 14

NYSCRF respectfully submits this brief in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Lead Counsel, and in opposition to the competing motions.[1]

## I.    INTRODUCTION

Pursuant to the PSLRA, NYSCRF is the presumptive lead plaintiff because it possesses by far the largest financial interest of any individual movant and readily meets the typicality and adequacy requirements of Rule 23.  Indeed, NYSCRF suffered a loss of *over $31.6 million*—more than *triple* that of the next closest individual movant—and its financial interest under every factor that courts consider is far and away the largest of any individual movant.  Moreover, NYSCRF is the prototypical lead plaintiff contemplated by the PSLRA, as it is one of the largest public pension funds in the nation, oversees approximately $260 billion in assets, and has recovered *more than $11 billion* for injured investors while leading prior securities class actions.  NYSCRF's lead plaintiff candidacy is beyond reproach.

Only one lead plaintiff motion asserts a greater financial interest than that of NYSCRF.  However, that motion was filed on behalf of a group of *11* separate, independent, and legally distinct pension, annuity, insurance, and supplemental funds located in New York City (the "NYC Eleven"), which seek to improperly aggregate their financial interests to claim a loss of $39.5 million.  ECF Nos. 15, 16.[2]  The NYC Eleven should not be appointed Lead Plaintiff, especially when the largest *individual* loss was sustained by a single entity: NYSCRF.

*First*, the NYC Eleven are an impermissibly large group.  For decades now, courts in this District and across the country have uniformly rejected lead plaintiff groups with more than five members, holding that such large and unwieldy amalgamations contravene the express purpose of the PSLRA to

---

[1] All defined terms take their meanings from NYSCRF's opening brief, ECF No. 34.  All citations are omitted, and all emphasis is added unless otherwise noted.

[2] The NYC Eleven include: Teachers' Retirement System of the City of New York Variable Annuity Program ("TRS Var A"); Teachers' Retirement System of the City of New York ("TRS"); New York City Employees' Retirement System ("NYCERS"); New York City Police Pension Fund ("Police"); New York City Fire Department Pension Fund ("Fire"); Board of Education Retirement System of the City of New York ("BOE"); Police Officers' Variable Supplements Fund ("POVSF"); Police Superior Officers' Variable Supplements Fund ("PSOVSF"); New York City Firefighters' Variable Supplements Fund ("FFVSF"); New York City Fire Officers' Variable Supplements Fund ("FOVSF"); and New York Fire Department Life Insurance Fund ("FDLIF") (ECF No. 15).

1

vest lead plaintiff responsibilities in either one or at most a small, cohesive group of investors. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 225 (D.D.C. 1999) (appending SEC *amicus curiae* brief opining: "***except in unusual circumstances***, to ensure adequate monitoring, coordination, and accountability, a 'group' should have no more than five members, and ***the fewer the better***"); *see also In re Network Assoc., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1041, 1052 (N.D. Cal. 1999) (same). NYSCRF is aware of no Ninth Circuit court in recent memory that has appointed a group of 11 independent funds as lead plaintiff—especially where a competing single pension fund has the largest individual financial interest.

 ***Second***, while courts in this circuit have allowed small groups of investors to aggregate losses, they have refused to do so when there is a competing single, large institutional investor that possesses the greatest financial interest of any individual movant. *See Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021) (appointing single pension fund with largest individual financial interest over group of three pension funds in part because the Court was not "aware of[] ***any instance*** in which a court in this circuit has aggregated the financial interests of a group of smaller investors" against the opposition of an institutional investor with the single largest financial interest). That is the case here, and it is not a close call. NYSCRF's loss ***dwarfs*** the loss of any individual member of the NYC Eleven. NYSCRF's LIFO loss ***alone*** is more than ***triple*** the LIFO losses claimed by the three largest NYC Eleven funds, and more than ***3,623 times*** the LIFO loss claimed by the NYC Eleven fund with the smallest loss:



2

***Third***, the NYC Eleven have not provided any evidence that shows how they will effectively and efficiently manage the litigation—something that is of particularly critical importance given how many members are included in their group.  For example, they have not attempted to show, by declaration or otherwise, how they will resolve disputes amongst their various members, or how their 11 group members will conduct themselves in the litigation moving forward.  While the NYC Eleven may claim that the New York City Law Department will jointly represent them, the fact remains that the group is composed of 11 separate and distinct legal entities.  As established by Title 13 of the New York City Administrative Code and Articles 52 and 52-a of the New York Education Law (*see* N.Y.C. Admin. Code § 13 (2024); N.Y. Educ. Law §§ 2575, 2590-b (McKinney 2024)), five executive directors (one for each of the five retirement "systems") and at least eight boards of trustees (some overlap between funds) owe fiduciary duties to each of the 11 funds.  In fact, there are presently at least 84 trustees (some overlap in membership between boards) with at least 93 votes (some get less than or more than one vote) serving on the eight discrete boards.  *See infra* Section III.A.3, Organizational Structure of the NYC Eleven.

On behalf of the 11 funds, these Boards must authorize the New York City Law Department to assert legal claims and—significantly—to approve any settlement or resolution of this action.  This is no small issue: will the fund that lost $8,745 have as much say in this litigation as the two that lost $10.2 million?  Can the fund that lost $64,250 veto a settlement if the others approve?  What happens if different factions of the 11 funds have differing views on litigation or settlement decisions?  And the problems inherent in the composition of the NYC Eleven are not limited to decision-making.  Indeed, their appointment will also result in massive inefficiencies throughout the litigation, as Defendants could pursue discovery from 11 separate funds (*e.g.*, including multiple depositions and document requests), all of which will burden the Class with significant and wasteful costs and unnecessary risks.

Accordingly, NYSCRF respectfully requests that the Court appoint NYSCRF as Lead Plaintiff, approve its selection of Lead Counsel, and deny the competing motions.[3]

---

[3] The only remaining competing movants are the NYC Eleven.  Movant Ron Zizman filed a notice of withdrawal (*see* ECF Nos. 29, 70).  Movants Ronald Augustyn, Kimberly A. Cross Spears, and Chuck

## II.  STATEMENT OF ISSUES TO BE DECIDED

1. Whether NYSCRF should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) because it possesses the single largest financial interest of any movant and there is no "proof" to rebut its *prima facie* showing of typicality and adequacy;

2. Whether NYSCRF's selection of Saxena White as Lead Counsel for the Class should be approved pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and

3. Whether all competing motions, including that of the NYC Eleven, should be denied.

## III.  ARGUMENT

Under the PSLRA, the Court shall appoint the movant that is "most capable of adequately representing the interests of class members[,]" *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a presumption that the most adequate plaintiff is the movant that has the "largest financial interest in the relief sought by the class" *and* "satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("the district court must . . . determine which [movant] has the most to gain from the lawsuit" and then "determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of . . . 'typicality' and 'adequacy'").

This presumption can only be rebutted "upon *proof*" that the presumptive most adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Cavanaugh*, 306 F.3d at 729 n.2 ("That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof'"). Here, NYSCRF has the largest financial interest in the outcome of the litigation and has demonstrated its typicality and adequacy, and there is no proof

---

Pruna filed notices of non-opposition (*see* ECF Nos. 26, 56; 23, 68; and 48, 69, respectively). Movant Storebrand Asset Management AS, Afa Försäkring tjänstepensionsaktiebolag, and HANSAINVEST Hanseatische Investment GmbH (the "Institutional Investor Group") filed a response conceding that other movants claim a larger financial interest (ECF Nos. 40, 67).

whatsoever that NYSCRF is inadequate or subject to unique defenses. Accordingly, NYSCRF's motion should be granted in its entirety, and the NYC Eleven's motion should be denied.

**A.      NYSCRF—and Not the NYC Eleven—Has the Largest Financial Interest, and the NYC Eleven Cannot Trigger the Most Adequate Plaintiff Presumption**

In *Cavanaugh*, the Ninth Circuit made clear that "the only basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." 306 F.3d at 732. NYSCRF has the largest financial interest in the relief sought by the Class by a wide margin. There is no authority nor any "compelling reason why a group of [] smaller investors would better serve the interests of the class than a single, large, institutional investor." *Green Dot*, 2021 WL 3473975, at *3 (finding that movant group did not "identify, nor is the court aware of, ***any instance*** in which a court in this circuit has aggregated the financial interests of a group of smaller investors under similar circumstances[,]" *i.e.*, where "several smaller institutional investors seek to aggregate their interests to exceed those of, ***and against the opposition of***, a single, large institutional investor with financial interests greater than any other single investor, institutional or otherwise").

**1.      NYSCRF Has By Far the Largest Financial Interest Under Every Factor Courts Consider**

Ninth Circuit courts consider the *Lax-Olsten* factors when identifying the movant with the greatest financial interest, including the: (1) total shares purchased; (2) net shares purchased; (3) net funds expended; and (4) approximate losses suffered. *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *7 & n.10 (N.D. Cal. Feb. 15, 2011) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998)). This District, consistent with courts throughout this Circuit, has held that a movant's loss is the most important factor in determining whether it has the largest financial interest. *See Intuitive Surgical*, 2011 WL 566814, at *10 ("[A]pproximate losses suffered by the movants . . . is the most determinative" factor).

As reflected in the chart below, NYSCRF claims a substantially greater financial interest than the NYC Eleven under every *Lax-Olsten* factor. Under the prevailing LIFO methodology, *Foster v. Maxwell Technologies, Inc.*, 2013 WL 5780424, at *4 n.1 (S.D. Cal. Oct. 24, 2013), NYSCRF's $31.6 million loss

5

is **more than three times** the $9.1 million, $10.2 million, and $10.2 million losses claimed by the three largest NYC Eleven funds, respectively—and more than **3,623 times** the $8,745 loss claimed by FDLIF, the smallest NYC Eleven fund:

| MOVANT | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | CLAIMED LIFO LOSS |
|---|---|---|---|---|
| **NYSCRF** | **394,072** | **374,527** | **$101,110,598** | **$31,686,048** |
| TRS Var A | 86,012 | 84,699 | $25,928,570 | $10,231,851 |
| TRS | 138,703 | 116,766 | $31,946,894 | $10,214,676 |
| NYCERS | 110,528 | 99,565 | $27,845,357 | $9,102,413 |
| Police | 66,042 | 60,749 | $16,913,413 | $5,655,193 |
| Fire | 26,539 | 23,401 | $6,572,196 | $2,235,440 |
| BOE | 14,060 | 13,431 | $3,662,829 | $1,157,236 |
| PSOVSF | 6,452 | 5,723 | $1,522,090 | $461,483 |
| POVSF | 3,874 | 3,550 | $956,570 | $298,672 |
| FFVSF | 1,010 | 904 | $241,363 | $73,830 |
| FOVSF | 711 | 684 | $191,011 | $64,250 |
| FDLIF | 95 | 95 | $26,351 | $8,745 |

*Compare* ECF No. 35-2 at 2 *with* ECF No. 16-2 at 2-4.

In addition to having a significantly larger loss, NYSCRF purchased more shares (on a total and net basis) and expended greater net funds on those purchases than any member of the NYC Eleven. *See id.* For example, NYSCRF (1) purchased more than **double** the total shares as the NYC Eleven fund with the most total shares purchased (TRS); (2) purchased more than **triple** the net shares as the NYC Eleven fund with the most net shares purchased (TRS); and (3) expended more than **triple** the net funds as the NYC Eleven fund with the most net funds expended (TRS). *See id.* Along with the loss calculation, courts carefully assess a movant's "net shares purchased" and "net funds expended" because such factors shed light on whether the movant will be able to establish that it was damaged by the alleged fraud. *See, e.g., Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) (rejecting movant who

6

sold more shares than it purchased because such a net seller's "losses may have been significantly lower than [claimed]"). NYSCRF's superior financial interest is underscored by every *Lax-Olsten* factor.

### 2. The NYC Eleven Should Not Be Allowed to Aggregate Their Losses

The Court should decline to aggregate the NYC Eleven's individual financial interests because no one member claims a larger financial interest than NYSCRF. Although the Ninth Circuit "has left open the question of whether a group can satisfy the largest financial interest requirement by aggregating losses[,]" courts permitting aggregation "have based their approval upon the fact that one individual member of the proposed group, even standing alone, had a greater financial interest than any other proposed lead plaintiff." *Burns v. UP Fintech Holding Ltd.*, 2024 WL 387261, at *3 (C.D. Cal. Jan. 30, 2024); *see also McCracken v. Edwards Lifesciences Corp.*, 2014 WL 12694135, at *3 (C.D. Cal. Jan. 8, 2014) ("This Court need not decide the issue" of whether aggregation is permissible because one group member's loss alone "exceeds that of" two competing movants); *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *5 (S.D. Cal. Jan. 5, 2004) (permitting aggregation because one group member with the largest individual loss "alone qualifies as the presumptive lead plaintiff"). Ninth Circuit courts routinely appoint the movant with the single largest financial interest over groups—like the NYC Eleven—seeking to aggregate their members' smaller financial interests to surpass the interest of the single largest movant.

In *Green Dot*, for example, a single pension fund alleged losses of $662,539, while a group of three pension funds—with alleged losses of $592,917, $301,353, and $130,114, respectively—sought to satisfy the largest financial interest requirement by aggregating their individual losses. 2021 WL 3473975, at *2. While noting that the PSLRA "does not expressly prohibit groups from being collectively appointed" and the Ninth Circuit "has not addressed the question" of aggregation, the Court declined to aggregate the group's losses because "[n]one of the [] individual member's losses exceed that of the Pension Fund." *Id.* at *3. In appointing the single pension fund with largest individual financial interest over the group of three pension funds, the Court emphasized that the group had failed to identify, nor was the "court aware of, *any instance* in which a court in this circuit has aggregated the financial interests of a group of smaller investors" to "exceed those of, and *against the opposition of*, a single, large institutional investor with financial interests greater than those of any other single investor." *Id.*

7

As in *Green Dot*, courts refuse to aggregate second-place group members' individual financial interests to overcome the larger financial interest of the first-place movant, reasoning that such groups cannot show "that courts do, or properly may, allow aggregations of plaintiffs to serve as lead in instances where there is an otherwise completely qualified and suitable plaintiff whose losses undisputedly exceed those of any of the individuals in the group." *Bristow v. Sunpower Corp.*, 2016 WL 11741569, at *2 (N.D. Cal. Dec. 9, 2016) (appointing single movant with largest individual financial interest over group of five); *UP Fintech*, 2024 WL 387261, at *3 (appointing single movant with largest individual financial interest over group of two); *Ben v. Frontier Fin. Corp.*, 2010 WL 11684329, at *3 (W.D. Wash. Dec. 9, 2016) (same); *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *4-5 (S.D. Cal. Dec. 9, 2015) (appointing single movant with largest individual financial interest over groups of five and two).

As detailed above, NYSCRF has the greatest financial interest under every *Lax-Olsten* factor. Indeed, NYSCRF's loss is more than triple the NYC Eleven's top three members, and NYSCRF expended more than triple the net funds, purchased more than triple the net shares, and purchased more than double the total shares as the NYC Eleven fund with the most net funds expended and net and total shares purchased. *Compare* ECF No. 35-2 at 2 *with* ECF No. 16-2 at 2-4. Here, as in *Green Dot*, "[a]bsent any authority" or "compelling reason" why a group of 11 distinct funds "would better serve the interests of the class than" one pension fund, 2021 WL 3473975, at *3, the Court should refuse to aggregate the NYC Eleven's individual interests and find that NYSCRF has the largest financial interest.[4]

### 3.    The NYC Eleven Has Far Too Many Members to Be Appointed Lead

Even if the Court were to aggregate the losses of the NYC Eleven—and it should not—there is simply no precedent for appointing a group of 11 separate legal entities as lead plaintiff. Indeed, "courts

---

[4] Further, the NYC Eleven cannot confer any added benefit to the Class they seek to represent compared to NYSCRF—nor would their appointment expand the number of Class members represented—because the NYC Eleven funds' trading, *see* ECF No. 16-1, is largely analogous between all 11 members. *See, e.g.*, *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *6 (S.D.N.Y. June 12, 2020) (justifying group combination because different members had standing for different claims); *Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625 (D. Mass. 2016) (finding that three-member group is "already a varied group in terms of the size and timing of their investments" and adding a fourth member "would have only marginal benefits, while potentially complicating the coordination of this litigation").

MEM. OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF THE MOT. OF NYSCRF FOR
APP'T AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL,
AND IN OPP'N TO THE COMPETING MOTIONS
CASE NO. 5:24-CV-01234-PCP

often scrutinize investor groups to consider whether a movant group is too large to represent the class in an adequate manner." *Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020). For more than two decades, courts across the country have adopted and endorsed the SEC's opinion—announced in a series of *amicus curiae* briefs appended to several prominent lead plaintiff decisions—that "except in unusual circumstances, to ensure adequate monitoring, coordination, and accountability, a 'group' should have ***no more than five members, and the fewer the better***." *Baan*, 186 F.R.D. at 225 ("The Commission believes that ordinarily this should be no more than three to five persons, a number that will facilitate joint decisionmaking [sic] and also help to ***assure that each group member has a sufficiently large stake in the litigation***."); *see also Network Assoc.*, 76 F. Supp. 2d at 1041, 1052 (same). Here, each group member ***does not*** have a sufficiently large stake in the litigation. Rather, the NYC Eleven cobbled together the financial interests of eleven discrete and independent funds, with the bottom three members claiming losses ranging from ***$8,745 to $73,830***, and the bottom eight members claiming combined losses that are ***40% smaller*** than NYSCRF's loss standing alone. *See* ECF No. 16-2 at 2-4.

The "no more than five" rule is so well-settled that the Third Circuit formally announced it into law: "We do . . . agree with the [SEC] that courts should generally presume that groups with more than five members are too large to work effectively." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). The rationale driving the presumption against groups with more than five members is plain:

> Courts must . . . inquire whether a movant group is too large to represent the class in an adequate manner. At some point, a group becomes too large for its members to operate effectively as a single unit. When that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement.

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002) ("While there are no bright-line rules governing this inquiry, courts should generally presume that groups with more than five members are too large to work effectively"). Indeed, the NYC Eleven's request to appoint 11 independent funds as lead plaintiff is virtually unprecedented, and NYSCRF has uncovered no case in this Circuit within the last 10 years where a court appointed a group of anything close to 11 funds as lead plaintiff where none had the largest individual loss.

Glaringly, in recent cases where members of the NYC Eleven have moved for lead plaintiff appointment, they did so with far fewer members—and in each such case, unlike here, each fund signed a separate sworn certification underscoring their independence from one another.  *See*, *e.g.*, Motion, *Washtenaw Cnty. Emps.' Ret. Sys. v. Dollar Gen. Corp.*, No. 3:23-cv-01250 (M.D. Tenn. Jan. 26, 2024) (*three* certifications for BOE, Fire, and Police), ECF Nos. 35-37; Motion, *KBC Asset Mgmt. NV v. Discover Fin. Servs.*, No. 1:23-cv-06788 (N.D. Ill. Oct. 31, 2023) (*four* certifications for NYCERS, Police, Fire, and TRS), ECF Nos. 10-12; Motion, *In re AT&T Sec. Litig.*, No. 2:23-cv-04064 (D.N.J. Sept. 26, 2023) (*five* certifications for TRS, NYCERS, Police, Fire, and BOE), ECF No. 14; Motion, *N.Y.C. Fire Dep't Pension Fund v. Coupang, Inc.*, No. 1:22-cv-07309-VSB (S.D.N.Y. Oct. 25, 2022) (*seven* certifications for TRS, NYCERS, Police, Fire, BOE, TRS Var A, and the NYC Deferred Compensation Plan), ECF Nos. 25-28.[5]

Indeed, NYSCRF is aware of only two other cases where all 11 members of the NYC Eleven moved collectively for lead plaintiff appointment.  *See* Motion, *Crews, Jr. v. Rivian Auto., Inc.*, No. 2:22-cv-01524 (C.D. Cal. May 6, 2022), ECF No. 58; Motion, *Hedick, Jr. v. Kraft Heinz Co.*, No. 1:19-cv-01339 (N.D. Ill. Apr. 25, 2019), ECF Nos. 46-47; *see also* Kaplan Decl. Ex. A (collecting separate certifications).  Neither Court reached the issue of the propriety of a group of such scale.  In *Rivian*, the NYC Eleven filed a response conceding they did not have the largest financial interest, *see* Response, No. 2:22-cv-01524 (C.D. Cal. May 11, 2022), ECF No. 72, and the Court appointed another movant as lead plaintiff.  2022 WL 17883615 (C.D. Cal. July 1, 2022).  In *Kraft*, the Court appointed another movant with a larger financial interest as lead plaintiff over the NYC Eleven's challenges.  2019 WL 4958238 (N.D. Ill. Oct. 8, 2019).

The NYC Eleven will presumably recognize the well-settled presumption against groups larger than five and, in response, likely argue that they are somehow not a group but a single entity—purportedly because they have a preexisting relationship and shared representation by the New York City Law

---

[5] *See also* Declaration of David R. Kaplan in Further Support of the Motion of NYSCRF for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, and in Opposition to the Competing Motion ("Kaplan Decl."), Ex. A (collecting separate certifications).

Department. But that is beside the point. Indeed, whether they have a preexisting relationship or shared counsel is irrelevant to whether the NYC Eleven are a group. Pursuant to Title 13 of the N.Y.C. Administrative Code and Articles 52 and 52-a of the New York Education Law, the irrefutable facts are:

- Each of the 11 funds is a separate and independent legal entity;

- There are five Executive Directors (one for each of the five retirement "systems," including TRS, NYCERS, Police, Fire, and BOE);

- There are at least eight distinct Boards of Trustees (TRS Var A and TRS; Fire and FDLIF; and FFVSF and FOVSF each appear to have a common Board, respectively);

- There are at least 84 Trustees (some overlap in members between the Boards) with at least 93 votes (some Trustees get less than or more than one vote) obligated to different constituencies;

- Each of the 11 funds provided *separate authority* to enter into this litigation; and

- Each of the 11 funds must provide *separate authority* to settle or resolve this litigation.

*See* N.Y.C. Admin. Code § 13, Retirement and Pensions (2024); N.Y. Educ. Law § 2575, Retirement of Employees of Board of Education (McKinney 2024); N.Y. Educ. Law § 2590-b, Continuation of City Board and Establishment of Community Districts (McKinney 2024)); *see also* Kaplan Decl., Ex. B (statutory and other evidence detailing organizational structure of the NYC Eleven).

For example, a prior iteration of the NYC Eleven's securities litigation/evaluation counsel master agreement provides that the New York City Law Department reserves the right "to settle a litigation, *subject to the approval of the Boards of Trustees of the Funds represented in the matter*" and that the New York City Law Department "make[s] all determinations concerning . . . offers of settlement, *subject to the approval of the Boards of Trustees of the Funds*." *See* Kaplan Decl. Ex. B (Exhibit A to New York City Funds' Motion for Judicial Notice, *Hedick, Jr. v. Kraft Heinz Co.*, No. 1:19-cv-01339 (N.D. Ill. Apr. 25, 2019), ECF No. 130 at 11, 15). Indeed, members of the NYC Eleven have repeatedly asserted that they are independent and distinct from one another—*see* Kaplan Decl. Ex. B (declaration previously filed on behalf of the NYC Eleven in *Kraft*) & Ex. C (declarations previously filed on behalf of members of the NYC Eleven in *ARCP* and *General Electric*). Further, the New York City Comptroller's website specifies: "Each pension fund is *financially independent* and provides its members the pension benefits

11

and other benefits to which they are legally entitled."[6]  The complexities inherent in the NYC Eleven's decision-making are readily apparent from their organizational structure:

**Organizational Structure of the NYC Eleven**

See N.Y.C. Admin. Code § 13, Retirement and Pensions; see also Kaplan Decl. Ex. B.

In sum, regardless of their relationship to one another, a family of 11 members is still composed of 11 different members.  See Koffsmon v. Green Dot Corp., 2022 WL 170636, at *2 (C.D. Cal. Jan. 19, 2022) (noting that "[d]istrict courts often consider . . . factors such as *the size of the group*" as a distinct factor from a "pre-litigation relationship").  And again, no Court in this District—or any other in the Ninth Circuit—has ever appointed a group of *11* independent funds to usurp a single competing pension fund with the largest individual interest.

Two cases are instructive.  In Apple v. LJ International Inc., the Court refused to aggregate the financial interests of a group of ten with related members—including an individual "participating . . . not just as an individual but as a representative of seven other individuals who are [his] friends and family members."  2008 WL 11343371, at *4 (C.D. Cal. Feb. 8, 2008) (appointing single pension fund).  In addition to the presumption against groups "with more than five members[,]" the Court disqualified the group because their aggregation "seems to be motivated by the sole purpose of aggregating their claims to attain presumptive lead plaintiff status[,]" which "contravenes the fundamental policy, reflected in the PSLRA, that securities litigation be party and not lawyer-driven."  Id.  Similarly, in Schriver v. Impac

---

[6] New York City Comptroller, About the New York City Pension Funds, https://comptroller.nyc.gov/services/financial-matters/pension/overview/ (last visited May 13, 2024).

12

*Mortgage Holdings, Inc.*, a group of ten investors with related members—including a married couple and an individual that moved both "individually and on behalf of" a group of manuscript library museums—claimed the largest financial interest of three competing movants. 2006 WL 6886020, at *3, 5 (C.D. Cal. May 2, 2006). However, the Court in *Schriver* disqualified the group of ten for being "too large and unrelated [to] adequately [] represent the class in this case." *Id.* at *8-9 (appointing group of two and citing *Gemstar* and other cases that hold that groups must "show[] that they are able to coordinate their efforts in the litigation" in order to establish their adequacy).

Indeed, the presence of so many different legal entities and decision-makers raises a host of questions that would impact the Class throughout the litigation. Given the presence of so many distinct legal entities, what is the mechanism for resolving disputes? Does the decision of the TRS Var A fund with over $10 million in claimed losses carry the same weight in this matter as that of FDLIF with $8,745 in losses? What processes are in place in the event that one or more of the entities does not agree to go along with majority's proposed resolution of the case? In light of their sheer size, the NYC Eleven's failure to proffer any information on these points is disqualifying.

B.     **NYSCRF Satisfies Rule 23's Requirements and Is Entitled to the Most Adequate Plaintiff Presumption**

Under *Cavanaugh*, once the court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that [it] does not satisfy the typicality or adequacy requirements." 306 F.3d at 732. To satisfy the requirements of Rule 23 at the lead plaintiff stage, movants need only make a preliminary showing that they satisfy typicality and adequacy under Rule 23. *See Intuitive Surgical*, 2011 WL 566814, at *12 (finding pension fund with "the largest financial interest" had "made a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23" and was thus "the presumptive lead plaintiff"). In assessing whether the presumption is rebutted, the PSLRA does not call for the "examin[ation of] the relative merits of plaintiffs seeking lead status on a round-robin basis." *Cavanaugh*, 306 F.3d at 732.

As demonstrated in its opening memorandum, NYSCRF clearly satisfies the typicality and adequacy requirements. *See* ECF No. 34 at 11-15. NYSCRF satisfies the typicality requirement because

13

its claims against Defendants arise from the same events that give rise to the claims of other class members and are based on the same legal theories. NYSCRF also satisfies Rule 23's adequacy requirement because it is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this District and throughout the Circuit routinely appoint sophisticated institutional investors that have demonstrated their ability to fairly and adequately represent the interests of absent class members. *See*, *e.g.*, *Green Dot*, 2021 WL 3473975, at *5 (appointing single pension fund); *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *9 (N.D. Cal. June 28, 2016) (same); *Intuitive Surgical*, 2011 WL 566814, at *14 (same).

NYSCRF manages hundreds of billions of dollars in assets, is committed to actively prosecuting this litigation, and has chosen counsel with extensive experience prosecuting securities class actions. *See* ECF No. 34 at 13-17. NYSCRF is committed to satisfying the Lead Plaintiff's fiduciary obligations and to ensuring that this Action will be vigorously litigated in the best interests of the Class. *Id.* at 14-15. Further, there is no conflict of interest between NYSCRF's interests and those of the other Class members. To the contrary, the interests of NYSCRF and other Class members are directly aligned because all suffered damages from their purchases of Snowflake common stock at prices artificially inflated by Defendants' misconduct. As discussed more fully above, NYSCRF clearly has a sufficient interest in this case to ensure the vigorous prosecution of this litigation. *See supra* Section III.A.1.

NYSCRF is precisely the type of sophisticated institutional investor that Congress sought to place in charge of securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation"); *see also Extreme Networks*, 2016 WL 3519283, at *6 (noting that, in passing the PSLRA, "Congress sought to increase the participation of institutional investors in prosecuting securities cases"). This is especially true given NYSCRF's storied history of serving as lead or co-lead plaintiff in securities class actions and securing more than $11 billion on behalf of investors. *See* ECF No. 34 at 14-15; *Extreme Networks*, 2016 WL 3519283, at *4 (noting pension fund's "excellent record of in the past bringing and resolving other securities class actions" demonstrated adequacy). Moreover, NYSCRF has selected

14

diverse counsel that has achieved significant success in this District and throughout the country while representing victims of securities fraud. *See* ECF No. 34 at 15-17; *In re Cohen*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").

Accordingly, the Court should find that NYSCRF is entitled to the most adequate plaintiff presumption and should be appointed Lead Plaintiff under the PSLRA. To rebut the presumption in favor of NYSCRF's appointment as Lead Plaintiff, the PSLRA requires that the NYC Eleven submit "proof" that NYSCRF "will not fairly and adequately protect the interest of the class," or is "subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). None exists. Because NYSCRF's presumptive status as Lead Plaintiff is irrebuttable, the Court should deny the motion of the NYC Eleven. *See Colley v. Orexigen Therapeutics, Inc.*, 2015 WL 13937741, at *2 (S.D. Cal. June 22, 2015) (explaining that after determining the most adequate lead plaintiff presumption has not been rebutted, "the Court . . . need not proceed to consider the motion of the movant with the next largest financial stake").

### C.   All Other Motions Should Be Denied

All other movants claim a far smaller financial interest than that of NYSCRF and cannot offer proof to rebut the presumption that NYSCRF is the most adequate plaintiff. Accordingly, all other motions should be denied.

## IV.   <u>CONCLUSION</u>

The PSLRA has established that the investor with the largest financial interest that also satisfies the requirements of Rule 23 is entitled to the most adequate plaintiff presumption. The NYC Eleven do not possess the largest financial interest, cannot overcome the presumption against groups with more than five members, and therefore cannot trigger the presumption. By contrast, NYSCRF possesses the largest financial interest and readily satisfies Rule 23's typicality and adequacy requirements, and there is no proof whatsoever to rebut the presumption in favor of NYSCRF. Accordingly, the Court should grant NYSCRF's motion in its entirety and deny the competing motions.

Dated:  May 13, 2024                Respectfully submitted,


                                    /s/ David R. Kaplan

                                    **SAXENA WHITE P.A.**
                                    David R Kaplan (SBN 230144)
                                    505 Lomas Santa Fe Drive, Suite 180
                                    Solana Beach, CA 92075
                                    Tel.: (858) 997-0860
                                    Fax: (858) 369-0096
                                    dkaplan@saxenawhite.com

                                    Maya Saxena (admitted *pro hac vice*)
                                    Lester R. Hooker (SBN 241590)
                                    7777 Glades Road, Suite 300
                                    Boca Raton, FL 33434
                                    Tel.: (561) 394-3399
                                    Fax: (561) 394-3382
                                    msaxena@saxenawhite.com
                                    lhooker@saxenawhite.com

                                    Rachel A. Avan (*pro hac vice* pending)
                                    Marco A. Dueñas (admitted *pro hac vice*)
                                    10 Bank Street, Suite 882
                                    White Plains, NY 10606
                                    Tel.: (914) 437-8551
                                    Fax: (888) 631-3611
                                    ravan@saxenawhite.com
                                    mduenas@saxenawhite.com

                                    *Counsel for Proposed Lead Plaintiff Thomas P.
                                    DiNapoli, Comptroller of the State of New York, as
                                    Administrative Head of the New York State and Local
                                    Retirement System, and as Trustee of the New York State
                                    Common Retirement Fund, and Proposed Lead Counsel
                                    for the Class*

Mem. of Points & Authorities in Further Support of the Mot. of NYSCRF for
App't as Lead Plaintiff and Approval of Selection of Lead Counsel,
and in Opp'n to the Competing Motions
Case No. 5:24-cv-01234-PCP

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on May 13, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

/s/ David R. Kaplan
David R. Kaplan

MEM. OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF THE MOT. OF NYSCRF FOR
APP'T AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL,
AND IN OPP'N TO THE COMPETING MOTIONS
CASE NO. 5:24-CV-01234-PCP