# EXHIBIT B

# EXHIBIT B

STATUTORY AND OTHER EVIDENCE DETAILING THE
ORGANIZATIONAL STRUCTURE OF THE NYC ELEVEN

## Table of Contents

| Description | Page # |
|---|---|
| Each of the 11 funds is a separate and independent legal entity<br>• NYCERS: *see* N.Y.C. Admin. Code § 13-102, -103 (excerpt), -120, -134, -136<br>• Police: *see* N.Y.C. Admin. Code § 13-216 (excerpt), -220, -233, -235<br>• POVSF: *see* N.Y.C. Admin. Code § 13-269, -270 (excerpt), -272, -273, -275<br>• PSOVSF: *see* N.Y.C. Admin. Code § 13-279, -280 (excerpt), -282, -283, -285<br>• Fire: *see* N.Y.C. Admin. Code § 13-316 (excerpt), -320, -336, -338<br>• FDLIF: *see* N.Y.C. Admin. Code § 13-380 (excerpt)<br>• FVSF: *see* N.Y.C. Admin. Code § 13-383, -384 (excerpt), -386, -387, -389<br>• FOVSF: *see* N.Y.C. Admin. Code § 13-393, -394 (excerpt), -396, -397, -399<br>• TRS and TRS Var A: *see* N.Y.C. Admin. Code § 13-502, -507, -509, -511, -512, , -518 -534, -536, -567, 570<br>• BERS: *see* N.Y. Educ. Law § 2590-b, § 8306–C, § 2575 | 3-7 (of 113)<br>8-12 (of 113)<br>13-17 (of 113)<br>18-22 (of 113)<br>23-27 (of 113)<br>28 (of 113)<br>29-33 (of 113)<br>34-38 (of 113)<br>39-55 (of 113)<br><br>57-72 (of 113) |
| There are five Executive Directors (one for each of the five retirement "systems," including TRS, NYCERS, Police, Fire, and BOE)<br>• *see* N.Y.C. Admin. Code § 13-103 (excerpt), -216 (excerpt), -316 (excerpt), -509, N.Y. Educ. Law § 2575 | 4, 9, 24, 46, 73 (of 113) |
| There are at least eight distinct Boards of Trustees (TRS Var A and TRS; Fire and FDLIF; and FFVSF and FOVSF each appear to have a common Board, respectively)<br>• *see* N.Y.C. Admin. Code § 13-102, -216 (excerpt), -269, -279, -316 (excerpt), -383, -393, -502, N.Y. Educ. Law § 2590-b70 | 4, 8, 13, 18, 23, 29, 34, 39, 57 (of 113) |
| There are at least 84 Trustees (some overlap in members between the Boards) with at least 93 votes (some Trustees get less than or more than one vote) obligated to different constituencies<br>• *see* N.Y.C. Admin. Code § 13-103 (excerpt), -216 (excerpt), -270 (excerpt), -280 (excerpt), -316 (excerpt), -384 (excerpt), -394 (excerpt), -507, N.Y. Educ. Law § 2590-b | 4, 8, 14, 19, 23, 30, 35, 40, 55-56 (of 113) |
| Each of the 11 funds provided separate authority to enter into this litigation<br>• Supplemental Decl. of Carol V. Gilden, *Hedick v. Kraft Heinz Co.*, No. 1:19-cv-01339 (N.D. Ill. Nov. 1, 2019), ECF No. 163-1 (attaching as Exhibit A the Supplemental Decl. of Alan H. Kleinman, ECF No. 163-2) | 100-110 (of 113) |
| Each of the 11 funds must provide separate authority to settle or resolve this litigation<br>• The New York City Funds' Motion for Judicial Notice, *Hedick v. Kraft Heinz Co.*, No. 1:19-cv-01339 (N.D. Ill. Nov. 1, 2019), ECF No. 130 (attaching as Exhibit A the Master Agreement between the City of New York Law Department, acting on behalf of the New York City Pension Funds and Retirement Systems, and Kessler Topaz Meltzer & Check, LLP, Retaining the Firm in Pool of Firms Available to Serve as Securities Litigation Counsel/Evaluation Counsel)<br>• Stipulation of Settlement, *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, No. 3:11-cv-00433 (M.D. Tenn. Jan. 21, 2020), ECF No. 424 (setting forth stipulation of settlement entered into by NYCERS, TRS, Fire, Police, and TRS Var A) | 74-102 (of 113)<br>111-13 (of 113) |
| The New York City Law Department is responsible for day-to-day litigation<br>• The New York City Funds' Motion for Judicial Notice, Hedick v. Kraft Heinz Co., No. 1:19-cv-01339 (N.D. Ill. Nov. 1, 2019), ECF No. 130 (attaching as Exhibit A the Master Agreement between the City of New York Law Department, acting on behalf of the New York City Pension Funds and Retirement Systems, and Kessler Topaz Meltzer & Check, LLP, Retaining the Firm in Pool of Firms Available to Serve as Securities Litigation Counsel/Evaluation Counsel) | 84 (of 113) |
| In addition to serving as a Trustee on various Boards, the Comptroller serves as a custodian and investment advisor<br>• *see* N.Y.C. Admin. Code § 13-136, -235, -275, -285, -338, -380, -389, -399, -536, -702 | 7, 12, 17, 22, 27, 28, 33, 38, 50, 56 (of 113) |

New York City, N.Y., Code § 13-102

NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES

NEW YORK CITY ADMINISTRATIVE CODE

TITLE 13. RETIREMENT AND PENSIONS

CHAPTER 1. NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-102. Date of establishment.

The New York City Employees' Retirement System as established on the first day of October, nineteen hundred twenty, shall be continued.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B3-2.0 added chap 929/1937 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-103
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 1. NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-103. Board of trustees of retirement system.

a. (1) The retirement system shall be administered by a board of trustees which shall, subject to the provisions of law, from time to time establish rules and regulations for the administration and transaction of the business of such system and to carry out the provisions of law in relation thereto. The provisions of sections one thousand forty-two, one thousand forty-three, one thousand forty-four and one thousand forty-five of the charter shall not be construed to apply to the adoption of such rules and regulations.

(2) An executive director of the retirement system shall be appointed by the board. The executive director shall perform such duties as may be conferred upon him or her by the board or by law and shall have the powers of the head of a department in respect to the retirement system and the officers and employees thereof.

b. Such board of trustees shall consist of:

1. A representative of the mayor who shall be appointed by the mayor and who shall be entitled to cast one vote. The mayor, by a written authorization filed with the board, may designate one or more members of his or her office to act in the place of such representative, in the event of his or her absence. Such representative or designee acting in his or her place shall be chairperson of the board.

2. The public advocate, who shall be entitled to cast one vote. The public advocate may, by written authorization filed with the board, designate one or more officers or employees appointed by him or her to act in his or her place as a member of such board, in the event of the absence of such public advocate.

3. The comptroller of the city, who shall be entitled to cast one vote.

4. The president of each borough. Each such president shall be entitled to cast a one-fifth vote. Each such president may, by written authorization filed with the board, designate his or her deputy borough president, or executive assistant to the borough president, or counsel to the borough president to act in his or her place as a member of such board.

5. (a) Three employee representatives, who shall each be entitled to cast one vote. The chief executive officer of each of the three employee organizations designated as herein provided shall be one of such representatives.

(b) On or before July first of the year in which this subparagraph shall take effect, the director of labor relations of the city (or other officer performing the same or similar functions under another title) shall, by instrument in writing filed in his or her office and with the board, designate the three employee organizations which represent, for the purposes of collective bargaining on pension matters, the largest number of employees who are members of the retirement system. Such designation shall be reviewed annually by such director or other officer, and if such review discloses a change in the standing of the employee organizations concerned, such designation shall thereupon be revised by him or her to specify the three such organizations having the leading representational status as hereinabove prescribed.

(c) Any such employee representative may, by written authorization filed with the board, designate one or more persons to act in the place of such member on such board in the event of the absence of such member, provided, however, that the by-laws or constitution of the organization of which he or she is chief executive officer authorize such designation.

(d) Each act of such board shall be by a resolution adopted by at least three and three-fifths votes. The concurrence of one employee representative and one non-employee representative member or members entitled to one vote shall be necessary for an act of such board. A quorum of such board shall consist of members entitled to cast at least three and three-fifths votes.

c. (1) In addition to the powers conferred upon it by any other provision of law, the board of trustees shall, on or before April first of each year, establish a budget, subject to the provisions of paragraphs two, three, four and five of this subdivision and subdivisions d, e, f and g of this section, sufficient to fulfill the powers, duties and responsibilities set forth in this chapter and

New York City, N.Y., Code § 13-120
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 1. NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-120. New York city employees' retirement system; a corporation.

The retirement system shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B3-10.0 added chap 929/1937 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 6 of 113

New York City, N.Y., Code § 13-134
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 1. NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-134. Trustees of funds; investments.

The members of the board shall be the trustees of the several funds provided for by this chapter, and shall have full power to invest the same, subject to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and, subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of the funds provided for by this chapter shall have been invested as well as of the proceeds of such investments and of any moneys belonging to such funds.

### HISTORICAL NOTE

Section added chap 907/1985 § 1

### DERIVATION

Formerly § B3-22.0 added chap 929/1937 § 1

Amended chap 866/1969 § 9

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 7 of 113

New York City, N.Y., Code § 13-136

NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES

NEW YORK CITY ADMINISTRATIVE CODE

TITLE 13. RETIREMENT AND PENSIONS

CHAPTER 1. NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-136. Custodian of funds.

The comptroller shall be custodian of the several funds provided for by this chapter. Such funds, and all moneys which shall form a part thereof, or which shall hereafter accrue to them, shall be in his custody for the purposes of this chapter subject to the direction, control and approval of such board as to disposition, investment, management and report.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B3-24.0 added chap 929/1937 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 8 of 113

New York City, N.Y., Code § 13-216
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 2. [POLICE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-216. Board of trustees.

a. The police pension fund shall be administered by a board of trustees which shall, subject to the provisions of law from time to time, establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof. The provisions of sections one thousand forty-two, one thousand forty-three, one thousand forty-four and one thousand forty-five of the New York city charter shall not be construed to apply to the adoption of such rules and regulations. Such board shall consist of:

1. The police commissioner who shall be chairperson of the board and who shall be entitled to cast one and one-half votes.

2. The comptroller of the city who shall be entitled to cast one and one-half votes.

3. A representative of the mayor who shall be appointed by the mayor and who shall be entitled to cast one and one-half votes.

4. The director of finance of the city who shall be entitled to cast one and one-half votes.

5. The president of the patrolmen's benevolent association of the city of New York who shall be entitled to cast one vote.

6. The first vice-president of the patrolmen's benevolent association of the city of New York who shall be entitled to cast one vote.

7. The second vice-president of the patrolmen's benevolent association of the city of New York who shall be entitled to cast one vote.

8. The chairperson of the board of trustees of the patrolmen's benevolent association of the city of New York who shall be entitled to cast one vote.

9. The president of the captains' endowment association of the police department of the city of New York who shall be entitled to cast one-half vote.

10. The president of the lieutenants' benevolent association, police department, city of New York who shall be entitled to cast one-half vote.

11. The president of the sergeants' benevolent association of the city of New York who shall be entitled to cast one-half vote.

12. The president of the detectives' endowment association of the city of New York who shall be entitled to cast one-half vote.

13. (i) Where, during any six month period during a fiscal year, as defined in subdivision three of section 13-268 of the code, the equity portion of the assets of the pension fund is less than forty-five percent, subparagraph (ii) of this paragraph shall be effective during the succeeding fiscal year.

(ii) Two investment representatives, one of whom shall be appointed by the mayor and one of whom shall be appointed by the comptroller upon the occurrence of the condition specified in subparagraph (i) of this paragraph. Each such representative shall be entitled to cast one vote only in relation to determinations of the board:

(A) as to whether the assets of the pension fund shall be invested in equities or fixed income securities and the proportion of the assets of the pension fund to be invested in equities and fixed income securities; and

(B) as to the identity, nature, character and amounts of the equities (within the proportion as determined under item (A) of this subparagraph) to be acquired, held, sold, disposed of or otherwise dealt with by the pension fund; and

(C) as to any steps necessary to effectuate any of the functions set forth in items (A) and (B) of this subparagraph; and

(D) as to delegation by the board, pursuant to law, of the functions described in items (A), (B) and (C) of this subparagraph.

b. Subject to the provisions of subdivision b-1 and subdivision f of this section, every act of the board of trustees shall be by resolution which shall be adopted only by a vote of at least seven-twelfths of the whole number of votes authorized to be cast by all of the members of such board.

b-1. Every act of the board of trustees in relation to the investment matters referred to in paragraph thirteen of subdivision a of this section shall be by resolution which shall be adopted only by a vote of at least eighty-fourteenths of the whole number of votes authorized to be cast by all of the members of the board empowered to vote on such investment matters.

c. The police commissioner shall appoint an executive director of the police pension fund, provided, however, that if such designee of the police commissioner is not a member of the uniformed force of the police department, the board of trustees shall approve such appointment. The executive director of the police pension fund shall perform such duties as may be conferred upon him or her by the chairperson of the board, by resolution passed by the board, or by law.

d. Any member of the board, referred to in paragraphs five through twelve, respectively, of subdivision a of this section, shall be members of the uniformed force and may authorize in writing at any time any other officer of the respective associations to represent him or her on such board in the event of his or her absence or disability, provided, however, that the by-laws or constitution of such respective associations provide for the designation of a representative in such event.

e. 1. In addition to the powers conferred upon it by any other provision of law, the board of trustees shall, on or before April first of each year, establish a budget, sufficient to fulfill the powers, duties and responsibilities set forth in this chapter and any other provision of law which sets forth the benefits of members of the pension fund and may draw upon the assets of the pension fund to fund such budget, subject to the provisions of paragraphs two, three, four, five and six of this subdivision and subdivisions f, g, h and i of this section. The provisions of this section shall not be applicable to the payment of investment expenses pursuant to section 13-705 of this title and nothing contained herein shall be construed as abolishing, limiting, or modifying any power of the board of trustees to provide for the payment of investment expenses pursuant to section 13-705 of this title.

2. If a budget has not been adopted by the commencement of the new fiscal year, the budget for the preceding fiscal year shall be deemed to have been extended for the new fiscal year until such time as a new budget is adopted.

3. Any budget in effect pursuant to paragraph one or two of this subdivision may be modified during such succeeding fiscal year.

4. Notwithstanding any other provision of law, the board of trustees shall have the power either directly or by delegation to the executive director, to obtain by employment or by contract the goods, property and services necessary to fulfill its powers, duties and responsibilities within the appropriation authorized by the board of trustees pursuant to paragraph one of this subdivision.

5. (i) The pension fund shall be considered an entity separate from the city of New York police department. The board of trustees of the pension fund shall work closely with the city of New York police department.

(ii) The provisions of chapter seventeen of the New York city charter shall continue to apply to the police pension fund and such fund shall constitute an agency for the purposes of such chapter. The board of trustees shall not obtain any legal services by the retention of employees or by contract unless the corporation counsel shall consent thereto.

6. All contracts for goods or services entered into by the police pension fund shall be procured as prescribed in chapter thirteen of the New York city charter; provided, however, that where the provisions of such chapter thirteen require action by the mayor in regard to a particular procurement (except for mayoral action pursuant to subdivision c of section three hundred thirty-four of the New York city charter) such action shall not be taken by the mayor or such appointee of the mayor but shall be taken by the board of trustees or the executive director pursuant to a resolution adopted by the board of trustees delegating such authority to the executive director.

f. Notwithstanding any other provisions of this section, any resolution of the board of trustees which establishes a budget or modifies a budget pursuant to the provisions of paragraph one or three of subdivision e of this section shall require the concurrence of the comptroller and the representative of the mayor. This provision shall only apply to this subdivision and nothing contained herein shall be construed to apply to any other vote of the board. No assets of the police pension fund shall be drawn upon pursuant to the provisions of paragraph one of subdivision e of this section unless authorized by a budget or budget modification established by such resolution of the board of trustees.

g. Employment by the police pension fund shall constitute city-service for the purposes of this subchapter for those employees that are members of the fund pursuant to section 13-215 of this subchapter; for all other employees, employment by the pension fund shall constitute city service for the purposes of chapter one of title thirteen of this code; provided, however, that nothing contained herein shall be construed as granting membership rights in the pension fund or any retirement system to a contractor

New York City, N.Y., Code § 13-220
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 2. [POLICE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-220. Pension fund; a corporation.

The pension fund shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-17.0 added LL 2/1940 § 2

Reenacted chap 437/1940 § 1

CASE NOTES

¶ 1. A member of the pension fund brought an action to reinstate pension benefits an annul an administrative order of recoupment of benefits previously paid. The court held that petitioner did not obtain jurisdiction over the Police Pension Board by serving the petition on the City or its subdivisions, such as the Police Department and Department of Personnel. Here, the failure to serve the proper entity, the Police Pension Fund, Article II, was not curable by substitution or amendment. Thus, the petition had to be dismissed. Freda v. Board of Education of the City of New York, 638 N.Y.S.2d 83 (App.Div. 1st Dept. 1996).

2. In one case, a police officer asserted a discrimination claim against the Medical Board of the Police Pension Fund, based on the Board's denial of his application for disability retirement. The court dismissed the claim, pointing out that the Police Pension Fund is a separate corporate entity independent and distinct from the Police Department (Adm. Code Sec. 13-220), and is not plaintiff's employer. Moreover, the City is not liable for the Police Pension Funds alleged adverse employment action. Marino v. City of New York, 167 A.D.3d 554, 88 N.Y.S.3d 869 (1st Dept. 2018).

Copyright © 2024 by New York Legal Publishing

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 11 of 113

New York City, N.Y., Code § 13-233
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 2. [POLICE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-233. Trustees of funds; investments.

  a. The members of the board shall be the trustees of the several funds provided for by this subchapter, and shall have full power to invest the same, subject to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and, subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of the funds provided for by this subchapter shall have been invested as well as of the proceeds of such investments and of any moneys belonging to such funds.

  b. Notwithstanding the provisions of subdivision two of section one hundred seventy-seven of the retirement and social security law, or any other provision of law to the contrary, the amounts which may be invested by the pension fund in securities pursuant to the provisions of paragraphs (a), (b), (c), (d), (e) and (f) of subdivision twenty-six of section two hundred thirty-five of the banking law, shall be subject to the following maximum limits, in lieu of any such limits imposed by any other provision of law:

  (1) Not more than fifty per cent of the assets of the pension fund shall be invested in such securities; and

  (2) Not more than five per cent of such assets shall be invested in the securities of any one corporation and its subsidiaries; and

  (3) Not more than two per cent of the total issued and outstanding equity securities of any one corporation shall be owned by the pension fund.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-28.0 added LL 2/1940 § 2

Amended chap 876/1970 § 4

Copyright © 2024 by New York Legal Publishing

**End of Document**                                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-235
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 2. [POLICE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-235. Custodian of funds.

 The comptroller shall be custodian of the several funds provided for by this subchapter. Such funds, and all moneys which shall form a part thereof, or which shall hereafter accrue to them, shall be in his or her custody for the purposes of this subchapter subject to the direction, control and approval of such board as to disposition, investment, management and report.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-30.0 added LL 2/1940 § 2

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 13 of 113

New York City, N.Y., Code § 13-269
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 3. [POLICE OFFICER'S VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-269. Police officer's variable supplements fund.

a. There is hereby established a fund, to be known as the police officer's variable supplements fund. Such fund shall consist of such monies as may be paid thereto from pension fund, subchapter two, pursuant to the provisions of sections 13-232 and 13-232.1 of this chapter and all other monies received by such fund from any other source pursuant to law.

b. It is hereby declared by the legislature that the police officer's variable supplements fund shall not be, and shall not be construed to constitute, a pension or retirement system or fund, and that it shall function as a means whereby payments, not constituting a pension or retirement allowance, shall be made in accordance with the provisions of this subchapter, to eligible pension fund beneficiaries as a supplement to benefits received by them under subchapter one or two of chapter two of this title. The legislature hereby reserves to the state of New York and itself the right and power to amend, modify or repeal any or all of the provisions of this subchapter.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section amended chap 247/1988 § 3

DERIVATION

Formerly§B18-61.0 added chap 876/1970 § 1

Section added chap 907/1985 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-270
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 3. [POLICE OFFICER'S VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-270. Board of trustees.

a. The variable supplements fund shall be administered by a board of trustees which shall, subject to applicable provisions of law and to the prior approval of the board of estimate, from time to time establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof.

b. Such board shall consist of:

1. The representative of the mayor who is a member of the board of trustees of pension fund, subchapter two, who shall be entitled to cast one vote. The mayor may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in the place of such representative at meetings of the board, in the event of such representative's absence therefrom.

2. The comptroller of the city, who shall be entitled to cast one vote. Any deputy comptroller authorized pursuant to subdivision b of section ninety-four of the New York city charter, to act in the place of the comptroller as a member of the board of trustees of pension fund, subchapter two, may be authorized by the comptroller, in accordance with the provisions of such subdivision b, to act in the place of the comptroller as a member of the board.

2-a. The commissioner of finance, who shall be entitled to cast one vote. Such commissioner may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in his or her place at meetings of the board, in the event of such commissioner's absence therefrom.

3. Two members of the association designated by it, who shall each be entitled to cast one vote. The members so designated shall be officers of the association who are members of the board of trustees of pension fund, subchapter two. Each such designee may at any time, by written authorization filed with the board, authorize any other officer of the association to act in his or her place as a member of the board in the event of such designee's absence from any meeting thereof; provided that the by-laws or constitution of the association provide for the designation of a representative for such purpose.

c. Every act of the board shall be by resolution which shall be adopted only by a vote of at least three-fifths of the whole number of votes authorized to be cast by all of the members of such board.

d. The actuary appointed pursuant to section 13-121 of the code shall be the technical advisor of the board.

e. (1) As of June thirtieth of the nineteen hundred eighty-eight-nineteen hundred eighty-nine fiscal year and as of June thirtieth of each succeeding fiscal year, the actuary referred to in subdivision d of this section shall make a valuation of the assets and liabilities of the variable supplements fund in accordance with the requirements of the succeeding paragraphs of this subdivision e.

(2) The actuary shall base such annual valuation of liabilities only (A) upon the person who, as of each such June thirtieth, are pension fund beneficiaries and (B) upon the persons who, being police officers in service as of such June thirtieth, may be actuarially expected to retire thereafter as police officers for service with twenty or more years of service creditable toward the minimum period.

(3) The liabilities determined in such valuation shall be equal to the actuarial present value of accumulated plan benefits. The actuarial assumptions used by the actuary in making such annual valuation of liabilities, including assumptions as to interest rate, mortality of pension fund beneficiaries and number of police officers in service as of June thirtieth who will retire for service with twenty or more years of service creditable toward the minimum period, shall be adopted by the board on the recommendation of the actuary.

New York City, N.Y., Code § 13-272
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 3. [POLICE OFFICER'S VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-272. Variable supplements fund; a corporation.

  The variable supplements fund shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-64.0 added chap 876/1970 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-273
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 3. [POLICE OFFICER'S VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-273. Trustees of funds; investments.

  a. The members of the board shall be the trustees of the monies received by or belonging to the variable supplements fund pursuant to this subchapter and, subject to the provisions of subdivision b of this section, shall have full power to invest same, subject to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of such monies shall have been invested as well as of the proceeds of such investments and of any monies belonging to such fund.
  b. The members of the board shall have the same investment powers and power to delegate such powers as are vested by the code and the retirement and social security law in the members of the board of trustees of the pension fund, subchapter two.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section amended chap 247/1988 § 10

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-65.0 added chap 876/1970 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**　　　　　　　　　　　　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-275
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 3. [POLICE OFFICER'S VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-275. Custodian of funds.

  The comptroller shall be custodian of the monies and assets of the variable supplements fund. All such monies and assets included in such fund or which shall hereafter accrue to such fund shall be in his or her custody for the purposes of this subchapter subject to the direction, control and approval of such board as to disposition, investment, management and report. All payments from such fund shall be made by the comptroller upon a voucher signed by the secretary of the board.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-67.0 added chap 876/1970 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-279
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 4. [POLICE SUPERIOR OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-279. Police superior officers' variable supplements fund.

  a. There is hereby established a fund, to be known as the police superior officers' variable supplements fund. Such fund shall consist of such monies as may be paid thereto from pension fund, subchapter two, pursuant to the provisions of sections 13-232, 13-232.2 and 13-232.3 of this chapter and all other monies received by such fund from any other source pursuant to law.

  b. It is hereby declared by the legislature that the police superior officers' variable supplements fund shall not be, and shall not be construed to constitute, a pension or retirement system or fund, and that it shall function as a means whereby payments, not constituting a pension or retirement allowance, shall be made in accordance with the provisions of this subchapter, to eligible pension fund beneficiaries as a supplement to benefits received by them under subchapter one or two of this chapter. The legislature hereby reserves to the state of New York and itself the right and power to amend, modify or repeal any or all of the provisions of this subchapter.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section amended chap 479/1993 § 3 retro. to Jan. 1, 1993

Subd. a amended chap 247/1988 § 23

DERIVATION

Formerly§B18-81.0 added chap 876/1970 § 1

Section added chap 907/1985 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-280
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 4. [POLICE SUPERIOR OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-280. Board of trustees.

a. The variable supplements fund shall be administered by a board of trustees which shall, subject to applicable provisions of law and to the prior approval of the board of estimate, from time to time establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof.

b. Such board shall consist of:

1. The representative of the mayor who is a member of the board of trustees of pension fund, subchapter two, who shall be entitled to cast two votes. The mayor may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in the place of such representative at meetings of the board, in the event of such representative's absence therefrom.

2. The comptroller of the city, who shall be entitled to cast two votes. Any deputy comptroller authorized, pursuant to subdivision b of section ninety-four of the New York city charter, to act in the place of the comptroller as a member of the board of trustees of pension fund, subchapter two, may be authorized by the comptroller, in accordance with the provisions of such subdivision, to act in the place of the comptroller as a member of the board.

2-a. The commissioner of finance, who shall be entitled to cast two votes. Such commissioner may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in his or her place at meetings of the board, in the event of such commissioner's absence therefrom.

3. Four representatives of the police superior officers, who shall each be entitled to cast one vote, and who shall be the four members of the board of trustees of pension fund, subchapter two, serving as such pursuant to paragraphs nine, ten, eleven and twelve of subdivision a of section 13-216 of this chapter.

c. Every act of the board shall be by resolution adopted only by a vote of at least six-tenths of the whole number of votes authorized to be cast by all of the members of such board.

d. The actuary appointed pursuant to section 13-121 of the code shall be the technical advisor of the board.

e. (1) As of June thirtieth of the nineteen hundred ninety-two--nineteen hundred ninety-three fiscal year and as of June thirtieth of each succeeding fiscal year, the actuary referred to in subdivision d of this section shall make a valuation of the assets and liabilities of the variable supplements fund in accordance with the requirements of the succeeding paragraphs of this subdivision e.

(2) The actuary shall base such annual valuation of liabilities only (A) upon the persons who, as of each such June thirtieth, are pension fund beneficiaries and (B) upon the persons who, being police officers or police superior officers in service as of such June thirtieth, may be actuarially expected to retire thereafter as police superior officers for service with twenty or more years of service creditable toward the minimum period.

(3) The liabilities determined in such valuation shall be equal to the actuarial present value of accumulated plan benefits. The actuarial assumptions used by the actuary in making such annual valuation of liabilities, including assumptions as to interest rate, mortality of pension fund beneficiaries and number of police officers and police superior officers in service as of June thirtieth who will retire for service as police superior officers with twenty or more years of service creditable toward the minimum period, shall be adopted by the board on the recommendation of the actuary.

(4) For the purposes of such annual valuation of the assets of the variable supplements fund, such assets shall be valued at their fair market value as of each such June thirtieth.

New York City, N.Y., Code § 13-282
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 4. [POLICE SUPERIOR OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-282. Variable supplements fund; a corporation.

  The variable supplements fund shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-84.0 added chap 876/1970 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

New York City, N.Y., Code § 13-283
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 4. [POLICE SUPERIOR OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-283. Trustees of funds; investments.

  a. The members of the board shall be the trustees of the monies received by or belonging to the variable supplements fund pursuant to this subchapter and, subject to the provisions of subdivision b of this section, shall have full power to invest same, subject to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of such monies shall have been invested as well as of the proceeds of such investments and of any monies belonging to such fund.
  b. The members of the board shall have the same investment powers and power to delegate such powers as are vested by the code and the retirement and social security law in the members of the board of trustees of the pension fund, subchapter two.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section amended chap 505/1990 § 1 eff. July 18, 1990

DERIVATION

Formerly§B18-85.0 added chap 876/1970 § 1

Section added chap 907/1985 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-285
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 2. POLICE PENSION FUNDS.
SUBCHAPTER 4. [POLICE SUPERIOR OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-285. Custodian of funds.

  The comptroller shall be custodian of the monies and assets of the variable supplements fund. All such monies and assets included in such fund or which shall hereafter accrue to such fund shall be in his or her custody for the purposes of this subchapter subject to the direction, control and approval of such board as to disposition, investment, management and report. All payments from such fund shall be made by the comptroller upon a voucher signed by the secretary of the board.

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B18-87.0 added chap 876/1970 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

New York City, N.Y., Code § 13-316
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 2. [FIRE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-316. Board of trustees.

a. A board of trustees shall be the head of the New York fire department pension fund subchapter two, and, subject to the provisions of law, from time to time shall establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof. The provisions of sections one thousand forty-two, one thousand forty-three, one thousand forty-four and one thousand forty-five of the New York city charter shall not be construed to apply to the adoption of such rules and regulations. Such board shall consist of:

1. The fire commissioner who shall be chairperson of the board and who shall be entitled to cast three votes.

2. The comptroller of the city who shall be entitled to cast three votes.

3. A representative of the mayor who shall be appointed by the mayor and who shall be entitled to cast three votes.

4. The commissioner of finance of the city who shall be entitled to cast three votes.

5. The president of the uniformed firefighters' association of greater New York who shall be entitled to cast two votes.

6. The vice-president of the uniformed firefighters' association of greater New York who shall be entitled to cast two votes.

7. The treasurer of the uniformed firefighters' association of greater New York who shall be entitled to cast two votes.

8. The chairperson of the board of trustees of the uniformed firefighters' association of greater New York who shall be entitled to cast two votes.

9. Three elected members of the executive board of the uniformed fire officers' association of the fire department, city of New York, of whom one shall be an officer of the said department with rank above that of captain and shall be entitled to cast one vote; another shall be a captain of the said department and shall be entitled to cast one vote; another shall be a lieutenant of the said department and shall be entitled to cast one and one-half votes.

10. A representative holding the title of pilot or marine engineer appointed by the president of the uniformed firefighters association of greater New York, who shall be entitled to cast one-half vote.

11. (i) Where, during any six-month period during a fiscal year, as defined in subdivision three of section 13-382 of the code, the equity portion of the assets of the pension fund is less than forty-five percent, subparagraph (ii) of this paragraph shall be effective during the succeeding fiscal year.

(ii) Two investment representatives, one of whom shall be appointed by the mayor and one of whom shall be appointed by the comptroller upon the occurrence of the condition specified in subparagraph (i) of this paragraph. Each such representative shall be entitled to cast two votes only in relation to determinations of the board:

(A) as to whether the assets of the pension fund shall be invested in equities or fixed income securities and the proportion of the assets of the pension fund to be invested in equities and fixed income securities; and

(B) as to the identity, nature, character and amounts of the equities (within the proportion as determined under item (A) of this subparagraph) to be acquired, held, sold, disposed of or otherwise dealt with by the pension fund; and

(C) as to any steps necessary to effectuate any of the functions set forth in items (A) and (B) of this subparagraph; and

(D) as to delegation by the board, pursuant to law, of the functions described in items (A), (B) and (C) of this subparagraph.

b. Subject to the provisions of subdivision b-1 and subdivision f of this section, every act of the board of trustees shall be by resolution which shall be adopted only by a vote of at least seven-twelfths of the whole number of votes authorized to be cast by all of the members of such board.

b-1. Every act of the board of trustees in relation to the investment matters referred to in paragraph thirteen of subdivision a of this section shall be by resolution which shall be adopted only by a vote of at least eight-fourteenths of the whole number of votes authorized to be cast by all of the members of the board empowered to vote on such investment matters.

c. The fire commissioner shall appoint an executive director of the pension fund, provided, however, that if such designee of the fire commissioner is not a member of the uniformed force of the fire department, the board of trustees shall approve such appointment. The executive director of the pension fund shall perform such duties as may be conferred upon such executive director by the chairperson of the board, by resolution passed by the board, or by law.

d. Any member of the board referred to in paragraphs five, six, seven, eight and ten, respectively, of subdivision a of this section, shall be members of the uniformed force and may authorize in writing at any time any other officer of the respective associations to represent him or her on such board in the event of his or her absence or disability, provided, however, that the by-laws or constitution of such respective associations provide for designation of a representative in such event.

e. 1. In addition to the powers conferred upon it by any other provision of law, the board of trustees shall, on or before April first of each year, establish a budget, sufficient to fulfill the powers, duties and responsibilities set forth in this chapter and any other provision of law which sets forth the benefits of members of the pension fund and may draw upon the assets of the pension fund to fund such budget, subject to the provisions of paragraphs two, three, four, five and six of this subdivision and subdivisions f, g, h and i of this section. The provisions of this section shall not be applicable to the payment of investment expenses pursuant to section 13-705 of this title and nothing contained in this subdivision shall be construed as abolishing, limiting, or modifying any power of the board of trustees to provide for the payment of investment expenses pursuant to section 13-705 of this title.

2. If a budget has not been adopted by the commencement of the new fiscal year, the budget for the preceding fiscal year shall be deemed to have been extended for the new fiscal year until such time as a new budget is adopted.

3. Any budget in effect pursuant to paragraph one or two of this subdivision may be modified during such succeeding fiscal year.

4. Notwithstanding any other provision of law, the board of trustees shall have the power either directly or by delegation to the executive director, to obtain by employment or by contract the goods, property and services necessary to fulfill its powers, duties and responsibilities within the appropriation authorized by the board of trustees pursuant to paragraph one of this subdivision.

5. (i) The pension fund shall be considered an entity separate from the city of New York fire department. The board of trustees of the pension fund shall work closely with the city of New York fire department.

(ii) The provisions of chapter seventeen of the New York city charter shall continue to apply to the fire department pension fund and such und shall constitute an agency for the purposes of such chapter. The board of trustees shall not obtain any legal services by the retention of employees or by contract unless the corporation counsel shall consent thereto.

6. All contracts for goods or services entered into by the pension fund shall be procured as prescribed in chapter thirteen of the New York city charter; provided, however, that where the provisions of such chapter thirteen require action by the mayor in regard to a particular procurement (except for mayoral action pursuant to subdivision c of section three hundred thirty-four of the New York city charter) such action shall not be taken by the mayor or such appointee of the mayor but shall be taken by the board of trustees or the executive director pursuant to a resolution adopted by the board of trustees delegating such authority to the executive director.

f. Notwithstanding any other provisions of this section, any resolution of the board of trustees which establishes a budget or modifies a budget pursuant to the provisions of paragraph one or three of subdivision e of this section shall require the concurrence of the comptroller and the representative of the mayor. This provision shall only apply to this subdivision and nothing contained in this subdivision shall be construed to apply to any other vote of the board. No assets of the pension fund shall be drawn upon pursuant to the provisions of paragraph one of subdivision e of this section unless authorized by a budget or budget modification established by such resolution of the board of trustees.

g. Employment by the pension fund shall constitute city-service for the purposes of this subchapter for those employees that are members of the fund pursuant to section 13-314 of this subchapter; for all other employees, employment by the pension fund shall constitute city service for the purposes of chapter one of title thirteen of this code; provided, however, that nothing contained in this subdivision shall be construed as granting membership rights in the pension fund or any retirement system to a contractor of such fund or such contractor's employees. Employees of the pension fund shall be deemed to be employees of the city of New York for the purposes of chapter thirty-five of the charter and title twelve of this code.

h. Whenever the assets of the pension fund are drawn upon pursuant to the provisions of paragraph one of subdivision e of this section all monies so withdrawn shall be made a charge to be paid by the employer otherwise required to make contributions to

New York City, N.Y., Code § 13-320
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 2. [FIRE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-320. Pension fund; a corporation.

  The pension fund shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-7.6 added LL 53/1941 § 16

Re-enacted chap 626/1942 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-336
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 2. [FIRE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-336. Trustees of funds; investments.

a. The members of the board shall be the trustees of the several funds provided for by this subchapter, and shall have full power to invest the same, subject, except as otherwise provided in subdivision b of this section, to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of the funds provided for by this subchapter shall have been invested as well as of the proceeds of such investments and of any moneys belonging to such funds.

b. Notwithstanding the provisions of subdivision two of section one hundred seventy-seven of the retirement and social security law, or any other provision of law to the contrary, the amounts which may be invested by the pension fund in securities pursuant to the provisions of paragraphs (a), (b), (c), (d), (e) and (f) of subdivision twenty-six of section two hundred thirty-five of the banking law, shall be subject to the following maximum limits, in lieu of any such limits imposed by any other provision of law:

(1) Not more than fifty per cent of the assets of the pension fund shall be invested in such securities; and

(2) Not more than five per cent of such assets shall be invested in the securities of any one corporation and its subsidiaries; and

(3) Not more than two per cent of the total issued and outstanding equity securities of any one corporation shall be owned by the pension fund.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-7.69 added LL 53/1941 § 16

Amended chap 929/1958 § 3

Amended chap 877/1970 § 4

Copyright © 2024 by New York Legal Publishing

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-338
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 2. [FIRE DEPARTMENT, SUBCHAPTER TWO PENSION FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-338. Custodian of funds.

The comptroller shall be custodian of the several funds provided for by this subchapter. Such funds, and all moneys which shall form a part thereof, or which shall hereafter accrue to them, shall be in his custody for the purposes of this subchapter subject to the direction, control and approval of such board as to disposition, investment, management and report.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-7.71 added LL 53/1941 § 16

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 28 of 113

New York City, N.Y., Code § 13-380
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 3. NEW YORK FIRE DEPARTMENT LIFE INSURANCE FUND.

The New York City Code is current with files received through March 31, 2024.

§ 13-380. Life insurance fund.

a. The life insurance fund shall consist of all moneys in such fund on the first day of January, nineteen hundred forty.

b. The board of trustees of the New York fire department pension funds shall be the head of the New York fire department life insurance fund and shall have power and authority, from time to time, to establish and amend rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof in accordance with the provisions of this code and all laws applicable thereto. The chairperson and first vice-chairperson of such board, respectively, shall be the treasurer and assistant treasurer of the fund. They shall make a semi-annual report verified by the members of such board of the condition of such fund, containing a statement of the accumulated cash and securities in such fund and of all receipts and disbursements for or on account of such fund, together with the names of all beneficiaries and the amount paid to each, and file such report in the office of the comptroller.

c. (1) There shall be deducted from the monthly pay of each firefighter, officer and probationary firefighter of such department, and from the monthly pension of retired members of such department, a monthly sum not exceeding nine dollars, but not less than one dollar, which shall be received and deposited by such board to the credit of the New York fire department life insurance fund, in banks or trust companies to be selected by the board. Such board shall, subject to the provisions of paragraph two of this subdivision, have full power to invest such fund, subject to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and subject to like terms, conditions, limitations and restrictions, such board shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of such funds shall have been invested. The comptroller shall be the custodian of all investments purchased pursuant to the authority vested herein.

(2) The members of the board shall have the same investment powers and power to delegate such powers as are vested by this code and the retirement and social security law in the members of the board of trustees of the fire department pension fund, subchapter two.

d. (1) In case of the death of any active member or of any pensioned or retired member of such department, and so contributing, there shall be paid to the beneficiary or beneficiaries named in a written designation filed with the board of trustees, or if there be no such written designation, then to the surviving spouse, or if there be no surviving spouse, then to the legal representatives of such deceased active member or pensioned and retired member out of the monies so assessed, a sum as hereinafter in this paragraph one provided:

(i) subject to the provisions of subdivision g of this section, the sum of five thousand dollars, if such member was an active member at the time of his or her death; or

(ii) subject to the provisions of subdivision g of this section, the sum of two thousand dollars, if such member was a pensioned or retired member of such department at the time of his or her death.

(2) The assessment, in the discretion of the board, may be increased to not exceeding the sum of nine dollars in each month's pay, or each month's pension or pensioned and retired members of such department.

(3) None but active and retired members of the uniformed force and probationary firefighters shall be eligible to membership in this fund.

New York City, N.Y., Code § 13-383
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 5. [FIREFIGHTERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-383. Firefighters' variable supplements fund.

  a. There is hereby established a fund, to be known as the firefighters' variable supplements fund. Such fund shall consist of such monies as may be paid thereto from pension fund subchapter two, pursuant to the provisions of sections 13-335 and 13-335.1 of this chapter and all other monies received by such fund from any other source pursuant to law.

  b. It is hereby declared by the legislature that the firefighters' variable supplements fund shall not be, and shall not be construed to constitute, a pension or retirement system or fund, and that it shall function as a means whereby payments, not constituting a pension or retirement allowance, shall be made in accordance with the provisions of this subchapter, to eligible pension fund beneficiaries as a supplement to benefits received by them under subchapter one or subchapter two of this chapter. The legislature hereby reserves to the state of New York and itself the right and power to amend, modify or repeal any or all of the provisions of this subchapter.

HISTORICAL NOTE

Section amended chap 583/1989 § 3

DERIVATION

Formerly § B19-41.0 added chap 877/1970 § 1

Section added chap 907/1985 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-384
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 5. [FIREFIGHTERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-384. Board of trustees.

  a. The variable supplements fund shall be administered by a board of trustees which shall, subject to applicable provisions of law and to the prior approval of the board of estimate, from time to time establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof.

  b. Such board shall consist of:

  1. The representative of the mayor who is a member of the board of trustees of pension fund subchapter two, who shall be entitled to cast one vote. The mayor may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in the place of such representative at meetings of the board, in the event of such representative's absence therefrom.

  2. The comptroller of the city, who shall be entitled to cast one vote. Any deputy comptroller authorized, pursuant to subdivision b of section ninety-four of the New York city charter, to act in the place of the comptroller as a member of the board of trustees of pension fund, subchapter two, may be authorized by the comptroller, in accordance with the provisions of such subdivision b, to act in the place of the comptroller as a member of the board.

  2-a. The commissioner of finance, who shall be entitled to cast one vote. Such commissioner may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in his or her place at meetings of the board, in the event of such commissioner's absence therefrom.

  3. Two members of the association designated by it, who shall each be entitled to cast one vote. The members so designated shall be officers of the association who are members of the board of trustees of pension fund subchapter two. Each such designee may at any time, by written authorization filed with the board, authorize any other officer of the association to act in his or her place as a member of the board in the event of such designee's absence from any meeting thereof; provided that the by-laws or constitution of the association provide for the designation of a representative for such purpose.

  c. Every act of the board shall be by resolution which shall be adopted only by a vote of at least three-fifths of the whole number of votes authorized to be cast by all of the members of such board.

  d. The actuary appointed pursuant to section 13-121 of the code shall be the technical advisor of the board.

  e. (1) As of June thirtieth of the nineteen hundred eighty-eight-nineteen hundred eighty-nine base fiscal year and as of June thirtieth of each succeeding base fiscal year, the actuary referred to in subdivision d of this section shall make a valuation of the assets and liabilities of the variable supplements fund in accordance with the requirements of the succeeding paragraphs of this subdivision e.

  (2) The actuary shall base such annual valuation of liabilities only (A) upon the persons who, as of each such June thirtieth, are pension fund beneficiaries or persons eligible to receive supplemental benefits pursuant to subdivision e of section 13-385 of this subchapter and (B) upon the persons who, being firefighters or fire marshals (uniformed) in service as of such June thirtieth, may be actuarially expected to retire thereafter as firefighters or fire marshals (uniformed) for service with twenty or more years of service creditable toward the minimum period and (C) with respect to any such valuation for any base fiscal year beginning on or after July first, nineteen hundred ninety-two, also upon the persons who, being wipers (uniformed) in service as of June thirtieth of such base fiscal year beginning on or after such July first, may be actuarially expected to retire thereafter as wipers (uniformed) or firefighters or fire marshals (uniformed) for service with twenty or more years of service creditable toward the minumum period.

New York City, N.Y., Code § 13-386
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 5. [FIREFIGHTERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-386. Variable supplements fund; a corporation.

The variable supplements fund shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-44.0 added chap 877/1970 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 32 of 113

New York City, N.Y., Code § 13-387
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 5. [FIREFIGHTERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-387. Trustees of funds; investments.

  a. The members of the board shall be the trustees of the monies received by or belonging to the variable supplements fund pursuant to this subchapter and, subject to the provisions of subdivision b of this section, shall have full power to invest same, subject to the terms, conditions, limitations and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of such monies shall have been invested as well as of the proceeds of such investments and of any monies belonging to such fund.
  b. The members of the board shall have the same investment powers and power to delegate such powers as are vested by the code and the retirement and social security law in the members of the board of trustees of the pension fund subchapter two.

HISTORICAL NOTE

Section amended chap 583/1989 § 10 (section 10 refers to this section

as § 13-397)

DERIVATION

Formerly § B19-45.0 added chap 877/1970 § 1

Section added chap 907/1985 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 33 of 113

New York City, N.Y., Code § 13-389

NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES

NEW YORK CITY ADMINISTRATIVE CODE

TITLE 13. RETIREMENT AND PENSIONS

CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.

SUBCHAPTER 5. [FIREFIGHTERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-389. Custodian of funds.

The comptroller shall be custodian of the monies and assets of the variable supplements fund. All such monies and assets included in such fund or which shall hereafter accrue to such fund shall be in his or her custody for the purposes of this subchapter subject to the direction, control and approval of such board as to disposition, investment, management and report. All payments from such fund shall be made by the comptroller upon a voucher signed by the secretary of the board.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-47.0 added chap 877/1970 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-393
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 6. [FIRE OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-393. Fire officers' variable supplements fund.

  a. There is hereby established a fund, to be known as the fire officers' variable supplements fund. Such fund shall consist of such monies as may be paid thereto from pension fund subchapter two, pursuant to the provisions of sections 13-335, 13-335.2 and 13-335.3 of this chapter and all other monies received by such fund from any other source pursuant to law.

  b. It is hereby declared by the legislature that the fire officers' variable supplements fund shall not be, and shall not be construed to constitute, a pension or retirement system or fund, and that it shall function as a means whereby payments, not constituting a pension or retirement allowance, shall be made in accordance with the provisions of this subchapter, to eligible pension fund beneficiaries as a supplement to benefits received by them under subchapter one or two of this chapter. The legislature hereby reserves to the state of New York and itself the right and power to amend, modify or repeal any or all of the provisions of this subchapter.

HISTORICAL NOTE

Section amended chap 480/1993 § 3 retro. to Jan. 1, 1993

DERIVATION

Formerly§B19-61.0 added chap 877/1970 § 1

Section added chap 907/1985 § 1

Subd. a amended chap 583/1989 § 21

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-394
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 6. [FIRE OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-394. Board of trustees.

  a. The variable supplements fund shall be administered by a board of trustees which shall, subject to applicable provisions of law and to the prior approval of the board of estimate, from time to time establish rules and regulations for the administration and transaction of the business of such fund and for the control and disposition thereof.
  b. Such board shall consist of:
  1. The representative of the mayor who is a member of the board of trustees of pension fund subchapter two, who shall be entitled to cast one vote. The mayor may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in the place of such representative at meetings of the board, in the event of such representative's absence therefrom.
  2. The comptroller of the city, who shall be entitled to cast one vote. Any deputy comptroller authorized, pursuant to subdivision b of section ninety-four of the New York city charter, to act in the place of the comptroller as a member of the board of trustees of pension fund, subchapter two, may be authorized by the comptroller, in accordance with the provisions of such subdivision b, to act in the place of the comptroller as a member of the board.
  2-a. The commissioner of finance, who shall be entitled to cast one vote. Such commissioner may, by instrument in writing filed in his or her office and with the board, designate one or more members of his or her office to act in his or her place at meetings of the board, in the event of such commissioner's absence therefrom.
  3. Two members of the association designated by it, who shall each be entitled to cast one vote. The members so designated shall be officers of the association who are members of the board of trustees of pension fund subchapter two. Each such designee may at any time, by written authorization filed with the board, authorize any other officer of the association to act in his or her place as a member of the board in the event of such designee's absence from any meeting thereof; provided that the by-laws or constitution of the association provide for the designation of a representative for such purpose.
  c. Every act of the board shall be by resolution adopted only by a vote of at least three-fifths of the whole numbers of votes authorized to be cast by all of the members of such board.
  d. The actuary appointed pursuant to section 13-121 of the code shall be the technical adviser of the board.
  e. (1) As of June thirtieth of the nineteen hundred ninety-two-nineteen hundred ninety-three fiscal year and as of June thirtieth of each succeeding fiscal year, the actuary referred to in subdivision d of this section shall make a valuation of the assets and liabilities of the variable supplements fund in accordance with the requirements of the succeeding paragraphs of this subdivision e.
  (2) The actuary shall base such annual valuation of liabilities only (i) upon the persons who, as of each such June thirtieth, are pension fund beneficiaries and (ii) upon the persons who, being in service as of such June thirtieth as members of pension fund subchapter two, may be actuarially expected to retire thereafter as fire officers for service with twenty or more years of service creditable toward the minimum period.
  (3) The liabilities determined in such valuation shall be equal to the actuarial present value of accumulated plan benefits. The actuarial assumptions used by the actuary in making such annual valuation of liabilities, including assumptions as to interest rate, mortality of pension fund beneficiaries and number of members of such pension fund in service as of June thirtieth who will retire as fire officers for service with twenty or more years of service creditable toward the minimum period, shall be adopted by the board on the recommendation of the actuary.

New York City, N.Y., Code § 13-396
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 6. [FIRE OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-396. Variable supplements fund; a corporation.

  The variable supplements fund shall have the powers and privileges of a corporation and by its name all of its business shall be transacted, all of its funds invested, all warrants for money drawn and payments made, and all of its cash and securities and other property held.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-64.0 added chap 877/1970 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-397
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 6. [FIRE OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-397. Trustees of funds; investments.

  a. The members of the board shall be the trustees of the monies received by or belonging to the variable supplements fund pursuant to this subchapter and, subject to the provisions of subdivision b of this section, shall have full power to invest same, subject to the terms, conditions, limitations and restrictions imposed by law, upon savings banks in the making and disposing of investments by savings banks; and subject to like terms, conditions, limitations and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of such monies shall have been invested as well as of the proceeds of such investments and of any monies belonging to such fund.
  b. The members of the board shall have the same investment powers and power to delegate such powers as are vested by the code and the retirement and social security law in the members of the board of trustees of the pension fund, subchapter two.

HISTORICAL NOTE

Section amended chap 740/1990 § 1 eff. July 22, 1990

DERIVATION

Formerly § B19-65.0 added chap 877/1970 § 1

Section added chap 907/1985 § 1

Copyright © 2024 by New York Legal Publishing

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 38 of 113

New York City, N.Y., Code § 13-399
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 3. FIRE DEPARTMENT PENSION FUND AND RELATED FUNDS.
SUBCHAPTER 6. [FIRE OFFICERS' VARIABLE SUPPLEMENTS FUND].

The New York City Code is current with files received through March 31, 2024.

§ 13-399. Custodian of funds.

The comptroller shall be custodian of the monies and assets of the variable supplements fund. All such monies and assets included in such fund or which shall hereafter accrue to such fund shall be in his or her custody for the purposes of this subchapter subject to the direction, control and approval of such board as to disposition, investment, management and report. All payments from such fund shall be made by the comptroller upon a voucher signed by the secretary of the board.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B19-67.0 added chap 877/1970 § 1

Copyright © 2024 by New York Legal Publishing

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-502
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.


The New York City Code is current with files received through March 31, 2024.

§ 13-502. Date of establishment.

 The retirement system as established on the first day of August, nineteen hundred seventeen shall be continued.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B20-2.0 added chap 929/1937 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-507
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-507. Teachers' retirement board; membership; elections.

The retirement board is continued and shall consist of the following:

1. The president of the board of education or an authorized representative designated by him or her, in writing, and filed with the teachers' retirement board.

2. The comptroller.

3. Two members appointed by the mayor, one of whom shall be a member of the board of education; they shall serve until their successors are appointed. Should the board of education member of the retirement board cease to be a member of the board of education, he or she shall thereupon cease to be a member of the retirement board. The mayor may, by a written instrument filed with the retirement board, designate one or more alternates to act in the place of either of such appointed members in the event of the absence of such member; provided that only a member of the board of education may be designated to act in the place of such board of education member of the retirement board.

4. Three members of the retirement association elected from the contributors. The term of each teacher-member shall be three years. The teacher-members now in office shall hold office until the expiration of the terms for which they were respectively elected. Their successors shall be elected by direct vote of the contributors, by secret ballot, as follows:

(a) Nomination. Candidates for office of teacher-member of the retirement board shall be nominated by petition. The nominating petition must be signed by at least one thousand contributors, each sheet of which petition shall contain:

(1) The name and official board-of-education or city university of New York position of the candidate.

(2) The name and official board-of-education or city university of New York position of the contributor who shall be the alternate candidate in the event of a vacancy caused by the death, disability, disqualification or withdrawal of the candidate occurring prior to the day of the election.

(3) The names of three contributors and the number or name of the school or college and borough in which each is employed to act as tellers for the candidate at the final canvass of returns at the hall of the board of education on the Tuesday following the second Thursday of May.

(4) A statement that the signature or signatures of a contributor which appear on more than one petition or more than once on a specific petition shall be void and shall not be counted on any petition.

(5) A certification at the bottom by a contributor together with the number or name and borough of his or her school or college that all the signatures to the number of. .. .. . appearing on that particular sheet of the petition are bona fide signatures of contributors known to him or her.

Each petition shall bear the signatures of not less than one thousand approving contributors endorsing the candidate, the number or name and borough of the school, the college or the department in which each contributor so endorsing is employed and the date on which each signed.

Contributors shall sign only one petition and the signature or signatures of a contributor which appear on more than one petition or more than once on a specific petition shall be void and shall not be registered or counted on any petition.

(b) Filing of petitions. All petitions shall be filed with the superintendent of schools or his or her authorized representative not later than five o'clock in the afternoon of the last day on which schools are in session preceding April twenty in each year. The date and time of such filing shall be noted on the face of the petition by the superintendent of schools or his or her authorized representative. Petitions shall be open to public inspection. Each petition shall be accompanied by a written acceptance of the nomination by the candidate named in the petition and by a written statement of the contributor named as alternate candidate,

that in the event of the death, disability, disqualification or withdrawal of the candidate prior to the election, he or she will accept the nomination in such a contingency.

In the event of but one candidate being nominated for the office of teacher-member, it shall not be necessary to prepare ballots, official blanks or tally sheets, nor for the members of the retirement association to meet on the second Wednesday of May for the casting of written ballots. The election of the single candidate shall be consummated on the second Wednesday of May by the superintendent of schools casting one ballot in favor of the candidate.

(c) Objections to petitions. If the question of the qualification of any signer of a petition is raised by any contributor by writing to the superintendent of schools, or his or her authorized representative, the executive director of the retirement system or his or her authorized representative, shall certify as to whether or not the signer is a contributor to the teachers' retirement system and entitled to vote in the election of teacher-members of the retirement board.

A written objection to any petition may be filed with the superintendent of schools, or his or her authorized representative, by any contributor not later than the last day on which schools are in session preceding April twenty-seventh in each year. The superintendent of schools or his or her authorized representative shall summarily hear and determine such objections under such rules and regulations as he or she may establish and shall notify in writing both the candidate and the objector of his or her determination of the objection not later than the first Wednesday in May.

(d) Publication of nominations. Not later than the first Wednesday of May in each year, the superintendent of schools or his or her authorized representative shall notify each school, annex, and college in which members of the retirement association are employed of the names of all nominees. On receipt of such notice, the principal of the school or annex or in his or her absence the acting principal, and the president or acting president of a college shall give to each contributor in the school, annex or college a copy of such notice.

(e) Form of ballots, etc. The superintendent of schools or his or her authorized representative shall cause to be prepared the necessary ballots for the election. These ballots shall contain only the names of the candidates and necessary directions for voting. The superintendent of schools shall determine by lot in the presence of each candidate or his or her duly authorized representative the order of the names of candidates on the ballot.

The superintendent of schools or his or her authorized representative shall cause to be distributed to each school or voting place not later than the Tuesday preceding the day of the election:

(1) A sufficient number of official ballots.

(2) The official blank form for contributors' signatures.

(3) Blank tally sheets in triplicate.

(f) Discussion meetings. Upon petition of ten per centum of the contributors in any public school building, annex or college for a meeting for the discussion of the merits of the various candidates for teacher-member of the retirement board, the principal or person in charge of such public school building, annex or college, shall call such a meeting not more than five school days nor less than two school days, prior to the date of election in each year. After the principal or person in charge of such school building, annex or college or his or her authorized representative has called such meeting to order, the contributors present shall proceed to elect by plurality vote a chairperson and a secretary. The chairperson of such meeting shall be responsible for the conduct of the meeting.

(g) Elections. Procedures for members of the retirement system who are in the employ of the New York city board of education. On the second Wednesday of May, or if the second Wednesday of May falls on a religious or other holiday or if for any reason the schools are closed on that day then on the first school day preceding the second Wednesday of May, in each year, the contributors in each school or annex shall meet in their respective school buildings at three o'clock in the afternoon, or if the administration conditions in any school or annex are such that the meeting ought to be held at some other hours, then at such hour in such school building as shall be designated by the superintendent of schools, after consultation with the principal or person in charge of such school. Such principal or person in charge or his or her authorized representative shall call the meeting to order, and the contributors present at the meeting shall proceed to elect from their number by written ballot, a chairperson and a secretary. The candidate receiving the greatest number of votes in each instance shall be declared elected. The chairperson elected shall then appoint from among the contributors at least one teller for each candidate nominated for the position of teacher-member of the retirement board. Such teller shall be an acknowledged supporter of the particular candidate. In no case shall there be less than three tellers. The contributors shall then proceed as follows, to vote by written and secret ballot for teacher-member of the retirement board. Each contributor shall receive a ballot and sign the contributors' list in the presence

of the chairperson and the tellers. The contributor shall then proceed to mark his or her ballot in secret. As his or her name is called each contributor shall then deposit his or her ballot in the official ballot box provided by the principal or person in charge. Contributors designated as special teachers, supervisors and directors shall vote and sign the contributors' signature blank in the school or voting place nearest to the respective main offices. The superintendent of schools or his or her authorized representative shall provide voting places for all other contributors not assigned to schools and he or she shall designate the person or persons who shall be responsible for the proper conduct of the election in each place so provided. If a contributor spoils a ballot he or she shall return it to the chairperson of the meeting. Both the contributor and the chairperson of the meeting shall certify on the face of the ballot that the ballot is void. The voided ballot shall then be deposited in the ballot box and thereupon another ballot shall be issued to the contributor. During the period of this meeting there shall be no electioneering or discussions regarding candidates. The chairperson of the meeting shall be responsible for the proper conduct of the election. Only contributors to the retirement system may be designated as representatives of the superintendent of schools or principals or heads of schools or department or persons in charge.

 Procedure for members of the retirement system who are in the employ of the board of higher education of the city of New York. On the second Wednesday of May, or if the second Wednesday of May falls on a religious or other holiday or if for any reason the schools are closed on that day then on the first school day preceding second Wednesday of May, in each year, the contributors in each college building shall meet in their respective school buildings at nine o'clock in the morning, or if the administration conditions in any college are such that the meeting ought to be held at some other hour, then at such hour in such college building as shall be designated by the superintendent of schools, after consultation with the principal or person in charge of such college. Such principal or person in charge or his or her authorized representative shall call the meeting to order, and the contributors present at the meeting shall proceed to elect from their number by written ballot, a chairperson and a secretary of the balloting. The candidate receiving the greatest number of votes in each instance shall be declared elected. The chairperson elected shall then appoint from among the contributors at least one teller for each candidate nominated for the position of teacher-member of the retirement board. Such teller shall be an acknowledged supporter of the particular candidate. In no case shall there be less than three tellers. The chairperson shall then announce the opening of the balloting, which shall continue until five o'clock in the afternoon of that day and from nine o'clock in the morning until five o'clock in the afternoon of the next succeeding school day. The contributors shall proceed as follows, to vote by written and secret ballot for teacher-member of the retirement board. Each contributor, regardless of whether he or she was present at the election of the chairperson and the secretary, shall receive a ballot and sign the contributors' list in the presence of at least two tellers at any time during the balloting. The contributor shall then and there proceed to mark his or her ballot in secret and shall then deposit his or her ballot in the official ballot box provided by the principal or person in charge. The superintendent of schools or his or her authorized representative shall provide voting places for all other contributors not assigned to colleges and he or she shall designate the person or persons who shall be responsible for the proper conduct of the election in each place so provided.

 If a contributor spoils a ballot he or she shall return it to the chairperson of the balloting. Both the contributor and the chairperson of the balloting shall certify on the face of the ballot that the ballot is void. The voided ballot shall be deposited in the ballot box and thereupon another ballot shall be issued to the contributor.

 During the period of this balloting there shall be no electioneering or discussions regarding candidates in the voting place.

 The chairperson of the balloting shall be responsible for the proper conduct of the election.

 Only contributors to the retirement system may be designated as representatives of the superintendent of schools or heads of colleges or department or persons in charge.

 (h) Returns. Procedure for members of the retirement system who are in the employ of the New York city board of education. After all the contributors present in the voting place have had an opportunity to vote, the tellers shall publicly open the ballot box, count the ballots, tally and announce the vote for teacher-member of the retirement board. After the votes have been tallied the chairperson and secretary and tellers shall prepare and sign the election returns for teacher-member in triplicate. One copy of the election return shall be posted on the official bulletin board of the building in which the voting took place. One copy of the election return shall be forwarded immediately by mail to the superintendent of schools and one copy to the executive director of the retirement system. Then the chairperson shall place in the ballot box all the ballots cast, the spoiled ballots, the unused ballots and the contributors' signature list, seal the ballot box and deliver it forthwith to the principal or person in charge of the school building or annex. A receipt shall be given to the person making this delivery. The principal or person in charge of

such school building or annex shall retain such sealed box for six months following the date of voting, or until a special election is called to fill a vacancy among the teacher-members as hereinafter provided, whichever occurs first.

Procedure for members of the retirement system who are in the employ of the board of higher education of the city of New York. At five o'clock in the afternoon of each day of the balloting, or as soon thereafter as possible, allowing all contributors who are present at such time to cast their ballots, the tellers shall publicly open the ballot box, count the ballots, tally and announce the vote for teacher-member of the retirement board. After the votes have been tallied the chairperson and secretary and tellers shall prepare and sign the election returns for teacher-member for that day in triplicate. There shall be no posting of returns after the first day, but one copy of the election return shall be posted on the offical [FN11] bulletin board of the building in which the voting took place after the second day's balloting has been completed. One copy of the election return for each day shall be forwarded immediately by mail, at the end of each day of balloting, to the superintendent of schools and one copy shall be forwarded by mail, at the same time, to the executive director of the retirement system. At the end of the first day's balloting the chairperson shall place in an envelope all the ballots cast during that day, and the spoiled ballots, which envelope shall be sealed and identified as the first day's balloting. The sealed envelope shall be kept in the ballot box, together with the first day's tally sheet and the contributors' signature list. At the end of the second day's balloting, the ballots cast that day, the spoiled ballots, the unused ballots and the contributors' signature list shall be placed in the ballot box, the chairperson shall seal the ballot box and deliver it forthwith to the person in charge of the college. A receipt shall be given to the person making this delivery. The person in charge of such college shall retain such sealed ballot box for six months following the date of voting, or until a special election is called to fill a vacancy among the teacher-members as hereinafter provided, whichever occurs first.

[FN11]. So in original. (Word misspelled.)

(i) Counting the vote for teacher-member. At four o'clock in the afternoon of the Tuesday following the third Thursday of May in each year at the hall of the board of education the final canvass of the returns shall be made. Each candidate for election to the office of teacher-member or his or her duly authorized representative shall be entitled to be present at the final canvass to inspect the election returns and to witness the canvass and summary made of the number of votes cast. The superintendent of schools or his or her duly authorized representative shall preside at the canvass. The executive director of the retirement system or his or her duly authorized representative shall be present with all the election returns received at his or her office from the various schools, colleges and other voting places. No contributor duly authorized by this act shall suffer loss of pay by reason of attendance at this meeting. The tellers designated on the nominating petition, together with the superintendent of schools or his or her authorized representative shall record and tally the vote cast in the respective schools, school annexes and colleges for each candidate for the office of teacher-member of the teachers' retirement board. The chairperson of the meeting shall call for a report of the vote cast in each of the respective schools, school annexes and colleges. If the accuracy of any election return is questioned or if the election return of a voting place is missing, the vote recorded on the copy of the election return filed with the executive director of the retirement system shall be used. The total vote for each candidate as recorded on the election returns from all voting places shall be announced. The candidate receiving the greatest number of votes shall be declared elected and the pension election committee shall so certify and the superintendent of schools or his or her authorized representative shall transmit immediately such certification to the retirement board. The newly elected teacher-member shall take office forthwith.

Election returns, tally sheets, and all other records including ballots and contributors' signature lists shall be kept in the custody of the superintendent of schools for a period of not less than six months after the third Thursday in May or until a vacancy occurs in the office of teacher-member in the retirement board, whichever occurs first.

(j) Vacancies. Procedure for members of the retirement system who are in the employ of the New York city board of education. In the event of a vacancy in the office of teacher-member of the retirement board two months or more before the expiration of his or her term, a special election shall be held to elect a teacher-member to complete the unexpired term. Such special election shall be conducted in the same manner as hereinbefore provided for a regular election, except that petitions shall be filed not later than twenty regular school days after the date on which the vacancy occurred, and the election shall be held on the third Wednesday after the closing date for the filing of petitions. Should this day fall on a holiday, the election shall be held on the first Thursday subsequent thereto on which school is in regular session.

Procedure for members of the retirement system who are in the employ of the city university of New York. In the event of a vacancy in the office of teacher-member of the retirement board two months or more before the expiration of his or her term, a special election shall be held to elect a teacher-member to complete the unexpired term. Such special election shall be conducted

in the same manner as hereinbefore provided for a regular election, except that petitions shall be filed not later than twenty regular school days after the date on which the vacancy occurred, and the election shall be held on the third Wednesday after the closing date for the filing of petitions and on the school day immediately succeeding it. Should the third Wednesday after said closing date fall on a holiday, the election shall be held on the first Wednesday subsequent thereto on which school is in regular session and on the next succeeding school day.

In the event that such vacancy among the teacher-members of the retirement board occur in June, July, August or during the time in September when schools are not in session, such vacancy shall be deemed to have occurred on the first day schools are in session and the same procedure and time allowance for the election shall be followed as herein provided for the election of a teacher-member when a vacancy occurs during the school year.

(k) Appeals. The superintendent of schools or his or her authorized representative shall have jurisdiction to hear and summarily determine any question arising in connection with the nomination or election of a teacher-member of the retirement board as set forth in this act except questions concerning the qualifications of any signer of a petition as to whether or not he or she is a contributor, in which instance the executive director of the retirement system or his or her authorized representative shall determine the facts.

## HISTORICAL NOTE

Section added chap 907/1985 § 1

Subd. 3 amended chap 607/1991 § 32 retro. to July 1, 1990.

## DERIVATION

Formerly § B20-6.0 added chap 929/1937 § 1

Amended chap 915/1939 § 1

Amended chap 711/1940 § 1

(Legislative intent chap 711/1940 § 2)

Sub 4 par f amended chap 706/1946 § 1

Sub 4 par g amended chap 706/1946 § 2

Sub 4 par j amended chap 629/1950 § 1

Sub 4 par b amended chap 413/1951 § 1

Sub 4 par h amended chap 96/1954 § 1

Sub 1 amended chap 415/1961 § 1

Sub 4 par b amended chap 538/1964 § 1

Sub 4 pars c, d amended chap 538/1964 § 2

Sub 4 par g amended chap 538/1964 § 3

Sub 4 par h amended chap 538/1964 § 4

Sub 4 par j amended chap 538/1964 § 5

Sub 4 par g amended chap 1017/1965 § 1

Sub 4 par h amended chap 1017/1965 § 2

Sub 4 par i amended chap 1017/1965 § 3

Sub 4 par j amended chap 1017/1965 § 4

Sub 4 par c amended chap 888/1973 § 9

Sub 4 par h amended chap 888/1973 § 10

Sub 4 par i amended chap 888/1973 § 11

Sub 4 par k amended chap 888/1973 § 12

Copyright © 2024 by New York Legal Publishing

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-509
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.


The New York City Code is current with files received through March 31, 2024.

§ 13-509. Retirement board; organization; employees.

The retirement board shall elect from its membership a chairman, and shall appoint an executive director of the retirement system and an actuary. Such board may also appoint such medical examiners, assistant medical examiners, medical, clerical and other employees as it may deem necessary.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B20-8.0 added chap 929/1937 § 1

Amended chap 888/1973 § 13

(Special provision, executive directors powers chap 888/1973 § 14)

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:24-cv-01234-PCP     Document 74-2     Filed 05/13/24     Page 47 of 113

New York City, N.Y., Code § 13-511

NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES

NEW YORK CITY ADMINISTRATIVE CODE

TITLE 13. RETIREMENT AND PENSIONS

CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-511. Retirement board; a corporation.

 For the purposes of this chapter, the retirement board shall possess the powers and privileges of a corporation, and as such may sue and be sued.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B20-10.0 added chap 929/1937 § 1

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 48 of 113

New York City, N.Y., Code § 13-512
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-512. Retirement board; decisions.

The concurrence of the comptroller or of one member appointed by the mayor, of a member elected by the retirement association, and of at least two other members shall be necessary for a decision of such board.

## HISTORICAL NOTE

Section added chap 907/1985 § 1

## DERIVATION

Formerly § B20-11.0 added chap 929/1937 § 1

## CASE NOTES FROM FORMER SECTION

¶ 1. Where the Admin. Code provided that the concurrence of the Comptroller or of one member appointed by the Mayor, of a member elected by the retirement association and of at least two other members was necessary for a decision of the Board, and the by-laws of Board provided that chairman, elected by the Board from its membership, shall serve until his successor is elected, and the term of the City Comptroller-Chairman had expired, Comptroller's successor in office was not entitled to become chairman unless so elected.--Briscoe v. Teachers' Retirement Board of City of New York, 283 App. Div. 1026, 131 N.Y.S. 2d 112 [1954], modifying 205 Misc. 909, 131 N.Y.S. 2d 587 [1954], aff'd 308 N.Y. 704, 124 N.E. 2d 329 [1954].

Copyright © 2024 by New York Legal Publishing

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-534

NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES

NEW YORK CITY ADMINISTRATIVE CODE

TITLE 13. RETIREMENT AND PENSIONS

CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-534. Trustees of funds; investments.

  The members of the retirement board shall be the trustees of the several funds provided for by this chapter, and shall have exclusive control and management of such funds, and shall have full power to invest the same, subject to the terms, conditions, limitations, and restrictions imposed by law upon savings banks in the making and disposing of investments by savings banks; and, subject to like terms, conditions, limitations, and restrictions, such trustees shall have full power to hold, purchase, sell, assign, transfer, or dispose of any of the securities and investments in which any of the funds provided for by this chapter shall have been invested as well as of the proceeds of such investments, and of any moneys belonging to such funds.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B20-31.0 added chap 929/1937 § 1

CASE NOTES FROM FORMER SECTION

  ¶ 1. Defendant was incompetent, by virtue of the provisions of C.P.A. § 347, to testify as to certain conversations between her and deceased concerning the designation of defendant as the beneficiary of funds to credit of deceased in the Teachers' Retirement System of New York City.--Robillard v. Booth, 271 App. Div. 876, 66 N.Y.S. 2d 261 [1946], rev'g 115 (43) N.Y.L.J. (2-21-46) 722, Col. 5 T.

Copyright © 2024 by New York Legal Publishing

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-536
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.


The New York City Code is current with files received through March 31, 2024.

§ 13-536. Custodian of funds.

  The comptroller shall be the custodian of the several funds provided for by this chapter. The comptroller may designate one of the deputy comptrollers to act in his place and stead at all meetings of the retirement board, and such designation shall be in writing and shall be duly filed in and remain of record in the office of the comptroller and in the office of the executive director of the retirement system. Such deputy comptroller shall possess any and every power and perform any and every duty at the meetings of such board belonging to the office of comptroller.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § B20-33.0 added chap 929/1937 § 1

Amended chap 888/1973 § 13

Copyright © 2024 by New York Legal Publishing

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-567
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.


The New York City Code is current with files received through March 31, 2024.

§ 13-567. Variable annuity funds.

  a. There shall be established, in addition to the funds already provided for, five funds to be known collectively as the variable annuity funds and individually as: (i) the variable annuity savings fund, (ii) the variable annuity reserve fund, (iii) the variable pension accumulation fund, (iv) the variable pension reserve fund, and, (v) as a segregated portion of the contingency reserve fund, the variable contingency reserve fund, respectively.

  b. The variable annuity funds A and B shall continue, subject to the provisions of subdivision c of this section.

  c. Subject to the provisions of subdivsion d of section 13-570 of this chapter, the retirement board may, from time to time, establish, modify or abolish such additional variable annuity fund or funds, including, but not limited to such funds as described in subdivision b of this section, each of which shall include (i) a variable annuity savings fund, (ii) a variable annuity reserve fund, (iii) a variable pension accumulation fund, and (iv) a variable pension reserve fund. Each such variable annuity fund shall be invested in the manner described in the resolution creating or modifying the variable annuity fund and the retirement board shall establish a new start date and initial unit value for each such fund.

  d. In establishing and investing or abolishing the variable annuity funds the retirement board shall take no action that would render the retirement system not a qualified plan under Section 401 (a) of the Internal Revenue Code of 1986 or the tax-deferred annuity program in violation of Section 403 (b) of the Internal Revenue Code of 1986.

  e. With respect to any member or retired member, a reference to any of the variable annuity funds without further specification shall be taken as a reference to the fund or funds in which such member has an account. A general reference to any one of the variable annuity funds without further specification shall be taken as a reference to the one, or more, or all such funds, according to the context. A provision invoking an election or other transaction which requires a distinction among the variable annuity funds shall apply when such election or other transaction is effective on or after the new start date. Should the retirement board, by resolution, establish one or more additional variable annuity funds pursuant to subdivision c of this section, each such fund or funds shall be governed by and be subject to the provisions specified in this chapter as applicable to funds A and B, as appropriate.

HISTORICAL NOTE

Section added chap 907/1985 § 1

Subds. b-d repealed and added chap 517/1993 § 1 eff. Jan. 1, 1994.

Subd. e amended chap 724/2004 § 2, eff. Nov. 24, 2004

DERIVATION

Formerly§B20-54.0 added chap 544/1966 § 2

(Legislative findings chap 544/1966 § 1)

Amended chap 735/1982 § 2

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 52 of 113

(Legislative findings chap 735/1982 § 1)

Subd. e added chap 517/1993 § 1 eff. Jan. 1, 1994

Copyright © 2024 by New York Legal Publishing

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

New York City, N.Y., Code § 13-570
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 4. TEACHERS' RETIREMENT SYSTEM.

The New York City Code is current with files received through March 31, 2024.

§ 13-570. Administration; investment of funds; units and unit values; expenses.

  a. The retirement board may enter into a contract or contracts with one or more agencies to invest and otherwise administer the variable annuity funds. The retirement board shall retain the responsibility for determination of benefits and final authority for making investments. A contract with any one agency shall be for a period not to exceed five years but may be renewed with the same agency. Any such contract shall be filed with the New York state superintendent of insurance within thirty days prior to its effective date and the operations of the contracting agency, insofar as they affect the operation of the variable annuity program, shall be subject to examination by the superintendent of insurance.

  b. The retirement board as an alternative to entering into a contract or contracts as provided in subdivision a hereof, may, only to the extent permitted by the insurance law, enter into a variable payment annuity contract or contracts with insurance companies providing for the benefits payable under the variable annuity program.

  c. The variable annuity funds shall, for investment purposes, be treated as a single fund but may be invested by more than one agency.

  d. 1. Notwithstanding the provisions of any state or city law to the contrary, the assets of each of the variable annuity funds may be invested up to one hundred percent in such domestic or foreign equities and other securities as are permissible for domestic life insurance companies or savings banks, subject only to the following limitations:

  (i) No investment shall be made in the stock, shares or securities convertible into stock or shares of any one corporation and its subsidiaries which, at the time such investment is made will cause the aggregate market value of the stock, shares and securities convertible into stock or shares of such corporation and its subsidiaries owned by the variable annuity funds to exceed five percent of the aggregate market value of the assets of such funds.

  (ii) Not more than two percent of the issued and outstanding stock, shares or securities convertible into stock or shares of any class of any one corporation shall be owned by such funds.

  The foregoing provisions shall not limit the investment of the assets of variable annuity funds in municipal, county, state, federal or corporate obligations, not convertible into stock or shares, otherwise permitted by law.

  2. In addition to any investments permitted by paragraph one of this subdivision, and notwithstanding any provision of any state or city law to the contrary, the assets of each of the variable annuity funds may be invested in investments not qualifying under such paragraph one, provided:

  (i) the investments made by a fund pursuant to this paragraph shall not at any time exceed fifteen percent (or such higher percentage as may be authorized by any other state or city law) of the assets of such fund; and

  (ii) such investments shall be for the exclusive benefit of the participants and beneficiaries, and the trustee or trustees of the fund shall make such investments with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

  3. In the event of any conflict or inconsistency between the provisions of this subdivision and any provisions of state or city law setting forth the percentage of assets of a fund which may be invested in any one type of investment or any particular investment, including without limitation the provisions of article four-A of the retirement and social security law, the provisions of this subdivision shall govern.

  e. Investment income and appreciation and depreciation of the assets shall be allocated to the individual variable annuity funds on a proportionate basis as of the end of each month.

f. Sections 13-535, 13-536 and 13-537 of this chapter shall not apply to the variable annuity funds.

 g. Deposits and transfers to the variable annuity savings fund and the variable pension accumulation fund pursuant to section 13-568 of this chapter shall be converted at once into units of equal value. At the end of each month, the number of units in the accounts of each individual in each such fund shall be increased by 0.3274 per cent, the percentage by which a sum of money is increased in one month if invested at an effective rate of interest of four per cent per year. Residual fractions of a unit shall be determined to the nearest hundreth of a unit.

 h. The value of a unit for January, nineteen hundred sixty-eight shall be ten dollars. For any month thereafter it shall be determined in accordance with paragraphs one, two and three following:

 1. For any month preceding the month in which the method set forth in paragraph two below is applicable, the value of a unit shall be equal to the combined assets of the variable annuity savings fund and the variable pension accumulation fund at the beginning of such month, divided by the total number of units then in the individual accounts in such funds.

 2. The retirement board shall establish the first month for which the method set forth in this paragraph applies. For such first month, and for any month thereafter, the value of a unit shall be equal to the value of a unit for the preceding month, multiplied by a factor which is equal to the ratio of (i) the amount resulting from ten thousand dollars invested for one month at a rate equal to (I) the average rate of investment results (including market value changes) in the variable annuity funds during the preceding month, less (II) the rate at which expenses are charged against such funds during such preceding month pursuant to subdivision j of this section, and less (III) the rate at which expenses and transfers for such preceding months are charged or deducted from the variable annuity funds, other than the variable contingency reserve fund, pursuant to subdivision k of this section, to (ii) ten thousand thirty-two dollars and seventy-four cents, the amount of ten thousand dollars invested for one month at an effective rate of interest of four per cent per year. Such average rate of investment results, net of such expense charges and such transfers, shall be determined in accordance with rules and procedures established by the retirement board.

 3. Unit values shall be determined to the nearest tenth of a cent.

 i. The retirement board shall: 1. Publish, or provide for the publication of, an annual report of the operations of the variable annuity funds.

 2. Furnish, or provide for the furnishing of, to each contributor who has units credited to him in the variable annuity savings fund and the variable pension accumulation fund an annual statement showing, as of the beginning of the current year, the value of a unit in such funds and the number of units credited to him in each fund.

 j. Expenses incurred in the operation and administration of the variable annuity funds shall be charged against such funds.

 k. The retirement board shall prepare an annual estimate of the additional expenses, if any, it has incurred that are attributable to the variable annuity program. An amount equal to such additional expenses shall be charged to and accounted for on a proportionate basis and transferred from the variable annuity funds other than the variable contingency reserve fund to the expense fund. Such transfer shall be made in twelve equal monthly installments immediately following the month in which such estimate is made, except that the transfer with respect to additional expenses incurred before January first, nineteen hundred sixty-eight, and the transfer with respect to the additional expenses incurred before the new start date in connection with the establishment of the B funds shall be made in from twelve to sixty equal monthly installments, at the discretion of the retirement board.

 l. Assets shall be valued at their market value or, in the absence of a readily available market value, then at a fair market value as determined in accordance with accepted practices.

 m. The value of a unit in the B funds for the month beginning with the new start date shall be ten dollars, and for any month thereafter it shall be determined in accordance with paragraphs one, two and three of subdivision h of this section.

HISTORICAL NOTE

Section added chap 907/1985 § 1

Subd. a amended chap 517/1993 § 4 eff. Jan. 1, 1994.

Subd. d amended chap 567/2005 § 2, eff. Aug. 23, 2005. [See Note 1]

Subd. k amended chap 724/2004 § 1, eff. Nov. 24, 2004 and deemed to

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 55 of 113

have been in full force and effect on and after Mar. 21, 2002.

Subd. m relettered (formerly subd. (n)) chap 724/2004 § 3, eff. Nov. 24,

2004 and deemed to have been in full force and effect on and after

Mar. 21, 2002.

## DERIVATION

Formerly§B20-57.0 added chap 544/1966 § 2

Sub d amended chap 169/1968 § 1

Sub h amended chap 925/1968 § 1

Sub h par 2 amended chap 735/1982 § 4

Sub k amended chap 735/1982 § 5

Subs m, n added chap 735/1982 § 6

Subd. d amended chap 517/1993 § 4 eff. Jan. 1, 1994.

have been in full force and effect on and after Mar. 21, 2002.


NOTE

1. Provisions of chap 567/2005:

Section 1. Intent and purposes. Chapter 544 of the laws of 1966 established a variable annuity program within the New York city teachers' retirement system. Its purpose was to make available a means by which a teacher may protect the purchasing power of his or her retirement income by investing a part of his or her retirement funds in equities to serve as a hedge against inflation and the reduction in value of the dollar. It accomplished this purpose by permitting, subject to election by the contributor, one-half or all of his or her salary deductions, and thereby a portion of his or her retirement allowance, to vary according to the fluctuations in the value of the investments which the retirement board was directed to make with the funds that became available through such election.

In accordance with the objectives of the variable annuity program, it was intended that up to one hundred percent of the variable annuity fund could be invested in common stocks or other equity-type securities and such other securities permissible for domestic life insurance companies or savings banks, subject to certain percentage limitations as set forth under subdivision d of section 13-570 of the administrative code of the city of New York. Consistent with this intent, the variable annuity fund A has consistently been invested almost entirely in equities and equity-type securities since its establishment and currently remains so invested. The purpose of this act is to clarify the authority of the New York city teachers' retirement board to direct the investments of the variable annuity funds in accordance with their purposes and the investment policies of the teachers' retirement board as implemented since the establishment of the variable annuity program.

Copyright © 2024 by New York Legal Publishing

New York City, N.Y., Code § 13-702
NEW YORK CITY CHARTER, CODE, AMENDMENTS & RULES
NEW YORK CITY ADMINISTRATIVE CODE
TITLE 13. RETIREMENT AND PENSIONS
CHAPTER 6. INVESTMENT BY PENSION FUNDS OR RETIREMENT SYSTEMS.

The New York City Code is current with files received through March 31, 2024.

§ 13-702. Delegation of investing powers to comptroller.

 a. Notwithstanding any provisions of the code or any other law to the contrary, the trustee, trustees, or other officer, board or body having the power to invest the funds of a pension fund or retirement system maintained, administered, or supported by the city or an agency, or by city funds may delegate such power either in its entirety or with any limitations including limitations with respect to the type and amount of investments, to the comptroller. Such delegation shall be in writing, and shall be filed in the office of such trustee, trustees, officer, board or body making such delegation, and in the office of the comptroller. Every such delegation shall be effective for a period specified therein, not to exceed one year, and shall automatically terminate and expire at the end of such specific period. Renewals or new delegations may be granted for additional periods in the same manner as herein provided for original delegations, but each such renewal or new delegation shall be effective for a specified period, not to exceed one year. Upon the filing of such delegation or renewal thereof as herein prescribed the comptroller shall, subject to the terms of such delegation, have the power:

 1. To make any investment which the trustee, trustees, officer, board or body delegating such power is or are authorized by law to make;

 2. To hold, sell, assign, transfer or dispose of any of the properties, securities or investments in which any of the funds of said fund or system shall have been invested, including the proceeds of such investments and any moneys belonging to such funds, subject to the terms, conditions, limitations and restrictions imposed by law upon such trustee, trustees, officer, board or body delegating such power; and

 3. In his or her name as agent of such trustee, trustees, officer, board or body making such delegation and of such fund or system, to foreclose mortgages upon default or to take title to real property in such proceedings in lieu thereof or to lease and sell such property so acquired.

 b. The comptroller shall exercise any power delegated pursuant to this section until the expiration date specified in such delegation or any renewal thereof unless the trustee, trustees, officer, board, or body making such delegation shall sooner elect to reassume such power by filing a written revocation of the delegation in the office of such trustee, trustees, officer, board or body and in the office of the comptroller.

 c. Notwithstanding any other provision of this section, the termination, expiration or revocation of any delegation of power or renewal thereof, as herein provided, shall not affect any binding commitment previously made by the comptroller pursuant to such delegation and the comptroller shall have the power to fully discharge any such binding commitment according to its terms.

HISTORICAL NOTE

Section added chap 907/1985 § 1

DERIVATION

Formerly § E49-2.0 added chap 585/1963 § 1

Copyright © 2024 by New York Legal Publishing

KeyCite Red Flag - Severe Negative Treatment

Enacted Legislation   Amended by   2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S),

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

> McKinney's Consolidated Laws of New York Annotated
>   Education Law (Refs & Annos)
>     Chapter 16. Of the Consolidated Laws (Refs & Annos)
>       Title II. School District Organization (Refs & Annos)
>         Article 52-a. New York City Community School District System

McKinney's Education Law § 2590-b

§ 2590-b. Continuation of city board and establishment of community districts; establishment of the city-wide councils on special education, English language learners, high schools, and district seventy-five

Effective: June 30, 2022 to January 1, 2040

Currentness

<[Eff. until June 30, 2024, pursuant to L.2002, c. 91, § 34 and  L.2009, c. 345, § 17, subd. 12. See, also, Education Law § 2590-b eff. June 30, 2024.]>

1. (a) The board of education of the city school district of the city of New York is hereby continued.

(1)(A) Such board of education shall consist of thirteen appointed members: one member to be appointed by each borough president of the city of New York; and eight members to be appointed by the mayor of the city of New York.

(B) Commencing on July first, two thousand twenty, the board of education shall consist of fifteen members: one member to be appointed by each borough president of the city of New York, one member to be elected by community district education council presidents, and nine members to be appointed by the mayor of the city of New York. On or before December thirty-first, two thousand nineteen, the chancellor shall promulgate regulations establishing a process for community district education council presidents to elect a member of the board, and processes for removal of such member and for the filling of such position in the event of a vacancy. The first member elected by community district education council presidents pursuant to such regulations shall take office on July first, two thousand twenty and shall serve a term that ends on June thirtieth, two thousand twenty-two. Thereafter, the member elected by community district education council presidents shall serve for a two year term commencing on July first.

(C) Commencing on January fifteenth, two thousand twenty-three, the board of education shall consist of twenty-three voting members: one member to be appointed by each borough president of the city of New York; five members, one from each borough of the city of New York, to be elected by community district education council presidents; and thirteen members to be appointed by the mayor of the city of New York. The term of the first member elected by community district education council presidents pursuant to clause (B) of this subparagraph shall be extended and end on January fourteenth, two thousand twenty-three. On or before December first, two thousand twenty-two, the chancellor shall promulgate regulations establishing a process for community district education council presidents to elect members of the board, and processes for removal of such members

and for the filling of such positions in the event of a vacancy. All appointed members and members elected by the community education council presidents pursuant to such regulations shall take office on January fifteenth, two thousand twenty-three and shall serve a term that ends on June thirtieth, two thousand twenty-three. Thereafter, appointed members and the members elected by community district education council presidents shall serve for a one year term commencing on July first.

(2) The chancellor and comptroller of the city of New York shall serve as ex-officio non-voting members of the city board.

(3) The city board shall elect its own chairperson from among its voting members.

(4) All appointed members shall serve for a one year term, provided that any member may be removed for good cause, provided that voting against the appointing authority's direction shall not be cause for removal, by the appointing authority, who shall provide written notice to the member and public explaining the reasons therefor at least ten days in advance of the removal and provide the member a full and fair opportunity to refute such reasons before removal.

(5) Except for the chancellor, no board members shall be employed in any capacity by the city of New York, or a subdivision thereof, or the city board.

(6) No appointed or elected member of the city board shall also be a member, officer, or employee of any public corporation, authority, or commission where the mayor of the city of New York has a majority of the appointments.

(7) Each borough president's appointee shall be a resident of the borough for which the borough president appointing him or her was elected and shall be the parent of a child attending a public school within the city school district of the city of New York.

(8) Each mayoral appointee shall be a resident of the city and four shall be parents of a child attending a public school within the city district, provided that at least one appointee shall be the parent of a child with an individualized education program, at least one appointee shall be the parent of a child who is in a bilingual or English as a second language program conducted pursuant to section thirty-two hundred four of this chapter, and at least one appointee shall be the parent of a child who is attending a district seventy-five school or program.

(9) All parent members shall be eligible to continue to serve on the city board for two years following the conclusion of their child's attendance at a public school within the city district.

(10) Any vacancy other than by an expiration of term shall be filled by appointment by the appropriate appointing authority within ninety days of such vacancy and shall serve for the remainder of the unexpired term.

(11) Notwithstanding any provision of local law, the members of the board shall not have staff, offices, or vehicles assigned to them or receive compensation for their services, but shall be reimbursed for the actual and necessary expenses incurred by them in the performance of their duties.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 59 of 113

(12) Every appointed and elected member of the city board shall, within the first three months of his or her term, complete a minimum of six hours of training on the financial oversight, accountability and fiduciary responsibilities of a city board member, as well as a training course on the powers, functions and duties of the city board.

(b) The city board shall hold at least one regular public meeting per month. At least one regular public meeting shall be held in each borough of the city of New York per year; any additional meetings may be called at the request of the chairperson. The city board shall consider appropriate public accommodations when selecting a venue so as to maximize participation by parents and the community.

(c)(i) Notice of the time, place and agenda for all city board regular public meetings shall be publicly provided, including via the city board's official internet web site, and specifically circulated to all community superintendents, community district education councils, community boards, and school based management teams, at least ten business days in advance of such meeting.

(ii) A city board regular public meeting agenda shall be comprised of a list and brief description of the subject matter being considered, identification of all items subject to a city board vote, and the name, office, address, email address and telephone number of a city district representative, knowledgeable on the agenda, from whom any information may be obtained and to whom written comments may be submitted concerning items on such agenda.

(iii) A city board meeting that includes an item subject to a city board vote related to approval of a school closure or significant change in school utilization including the phase-out, grade reconfiguration, re-siting, or co-location of a school pursuant to paragraph h of subdivision one of section twenty-five hundred ninety-g of this article shall be held in the borough of the city of New York where the school that is subject to such proposed school closing or significant change in school utilization is located.

(d) The chairperson of the city board shall ensure that at every regular public meeting there is a sufficient period of time to allow for public comment on any topic on the agenda prior to any city board vote.

(e) Minutes of all city board regular public meetings shall be made publicly available, including via the city board's official internet website, in a timely manner but no later than the subsequent regular city board meeting.

2. (a) There shall be a community council for each community district created pursuant to this article.

(b) The city board shall define, adjust, alter, maintain and adopt the boundaries of the community districts pursuant to this chapter no later than February first, nineteen hundred ninety-five. There shall be no less than thirty nor more than thirty-seven community districts.

(c) The city board may readjust or alter the districts in such plan only once in every ten years, commencing with the year two thousand four. The city board in conjunction with the chancellor and the community council representatives, shall prepare and make public a plan to ensure the smooth transition of pupils and school personnel, creation of new boards, and allocation of school facilities and resources among the districts established pursuant to paragraph (b) of this subdivision. Prior to the adoption of the transition plan, the city board shall hold one or more public hearings in each borough. The city board shall make the transition plan available not less than three weeks before the first such public hearing. Upon receipt of comments, the city

Case 5:24-cv-01234-PCP   Document 74-2   Filed 05/13/24   Page 60 of 113

board, in conjunction with the chancellor and the community council representatives, shall prepare a revised transition plan, if necessary and make such plan available to the public for comment.

3. (a) The redistricting advisory study group established prior to the effective date of this paragraph for the purpose of study and making recommendations on community school district boundaries, is hereby continued and shall perform the duties required herein.

(b) The study group shall prepare a report containing recommendations for dividing the city into no more than thirty-seven community districts.

(c) In preparation of its recommendations for dividing the city into community districts, the study group shall ensure that the recommendations provide for the most effective delivery of educational services and shall be guided by the following criteria:

(1) each community district shall: (i) be a suitable size for efficient policy-making and economic management; (ii) contain a reasonable number of pupils; (iii) be compact and contiguous, contained within county lines, and to the maximum extent possible, keep intact communities and neighborhoods; and (iv) bear a rational relationship to geographic areas for which the city of New York plans and provides services;

(2) to the extent possible, keep existing lines intact;

(3) the common and special education needs of the communities and school children involved;

(4) effective utilization of existing and planned school facilities;

(5) minimum disruption of existing and planned elementary school-junior high/middle school-high school feeder patterns;

(6) transportation facilities;

(7) additional administrative costs involved in the creation of such new districts; and

(8) ensure fair and effective representation of racial and language groups pursuant to the Voting Rights Act of 1965, as amended; [1]

(9) notwithstanding the provisions of this subparagraph and subparagraphs one through eight of this paragraph: (i) the residents of the county of New York in school district ten as it existed prior to the implementation of this paragraph shall continue to remain in school district ten as such district is comprised; (ii) the boundaries of community district thirty-one shall continue to remain as they are currently comprised; and (iii) no county shall have fewer community school districts than in existence on the effective date of this paragraph.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 61 of 113

(d) The study group shall hold one or more public hearings in each borough before final adoption of its recommendations. The study group shall make its recommendations available to the public for inspection and comment not less than one month before the first such public hearing. Following its consideration of the comments received on the recommendations, the study group shall prepare a report containing its final recommendations. The study group shall submit its report to the city board and make such report available to the public for inspection no later than November first, nineteen hundred ninety-four.

(e) The city board of education shall hold public hearings in each borough on the recommendations submitted by the study group and may adopt, revise or reject in whole or in part such recommendations, or, may request the study group to submit adjusted recommendations. The final recommendations shall be adopted by the city board of education no later than February first, nineteen hundred ninety-five to take effect July first, nineteen hundred ninety-six, provided that such revised boundaries adopted by the city board pursuant to this chapter shall be used for purposes of community school board elections to be held on the first Tuesday in May, nineteen hundred ninety-six.

(f) Provided, however, that the city board may make minor adjustments, (i) to correct errors that may occur in the district lines adopted by the city board, or (ii) upon showing a change in circumstances. Any such limited revisions to community school district lines may occur between the effective date of this paragraph and the city board readjustment scheduled in the year two thousand four.

(g) No public hearings required pursuant to this subdivision shall be held during the months of July and August. All public hearings shall be held at a time and place designated to maximize community and parent participation. Notice of all such public hearings shall be provided in a timely manner to all print and electronic media and shall be widely distributed to all interested parties, so as to maximize participation by parents and the community. In addition such notice shall be posted in each school building and district office.

4. a. There shall be a city-wide council on special education created pursuant to this section. The city-wide council on special education shall consist of eleven voting members and one non-voting member, as follows:

(1) nine voting members who shall be parents of students with individualized education programs, to be selected by parents of students with individualized education programs pursuant to a representative process developed by the chancellor. Such members shall serve a two year term;

(2) two voting members appointed by the public advocate of the city of New York, who shall be individuals with extensive experience and knowledge in the areas of educating, training or employing individuals with handicapping conditions and will make a significant contribution to improving special education in the city district. Such members shall serve a two year term; and

(3) one non-voting member who is a high school senior with an individualized education program, appointed by the administrator designated by the chancellor to supervise special education programs. Such member shall serve a one year term.

b. The city-wide council on special education shall have the power to:

(1) advise and comment on any educational or instructional policy involving the provision of services for students with disabilities;

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 62 of 113

(2) advise and comment on the process of establishing committees and/or subcommittees on special education in community school districts pursuant to section forty-four hundred two of this chapter;

(3) issue an annual report on the effectiveness of the city district in providing services to students with disabilities and making recommendations, as appropriate, on how to improve the efficiency and delivery of such services; and

(4) hold at least one meeting per month open to the public and during which the public may discuss issues facing students with disabilities.

c. Vacancies shall be filled for an unexpired term by the city-wide council on special education, pursuant to a process developed by the chancellor that shall include consultation with parents of students with individualized educational programs; provided however, that where a vacancy occurs in a position appointed by the public advocate, the public advocate shall appoint a member to serve the remainder of the unexpired term.

5. (a) There shall be a city-wide council on English language learners created pursuant to this section. The city-wide council on English language learners shall consist of eleven voting members and one non-voting member, as follows:

(i) nine voting members who shall be parents of students who are in a bilingual or English as a second language program conducted pursuant to section thirty-two hundred four of this chapter, some of whom may be parents of students who have been in such a program within the preceding two years, to be selected by parents of students who receive such services pursuant to a representative process developed by the chancellor. Such members shall serve a two year term;

(ii) two voting members appointed by the public advocate of the city of New York, who shall be individuals with extensive experience and knowledge in the education of English language learners and will make a significant contribution to improving bilingual and English as a second language programs in the city district. Such members shall serve a two year term; and

(iii) one non-voting member who is a high school senior who is or has been in a bilingual or English as a second language program, appointed by the administrator designated by the chancellor to supervise such programs. Such member shall serve a one year term.

(b) The city-wide council on English language learners shall have the power to:

(i) advise and comment on any educational or instructional policy involving bilingual or English as a second language programs;

(ii) issue an annual report on the effectiveness of the city district in providing services to English language learners and making recommendations, as appropriate, on how to improve the efficiency and delivery of such services; and

(iii) hold at least one meeting per month open to the public and during which the public may discuss issues facing English language learners.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 63 of 113

(c) Vacancies shall be filled for an unexpired term by the city-wide council on English language learners, pursuant to a process developed by the chancellor that shall include consultation with parents of students who receive services for English language learners; provided however, that where a vacancy occurs in a position appointed by the public advocate, the public advocate shall appoint a member to serve the remainder of the unexpired term.

6. (a) There shall be a city-wide council on high schools created pursuant to this section. The city-wide council on high schools shall consist of thirteen voting members and one non-voting member, as follows:

(i) ten voting members who shall be parents of students attending public high schools. For councils whose terms begin prior to two thousand twenty, two members representing each borough shall be selected by presidents and officers of the parents' associations or parent-teachers' associations in the relevant borough, pursuant to a process established by the chancellor. For councils whose terms begin in two thousand twenty-one and thereafter, two members representing each borough shall be parents of public high school students in the relevant borough, pursuant to a process established by the chancellor. Such members shall serve a two year term, and shall be eligible to continue serving their term following the conclusion of their child's attendance at a public high school;

(ii) one voting member who shall be a parent of a high school student with an individualized education program. Such member shall be appointed by the city-wide council on special education, and shall serve a two year term;

(iii) one voting member who shall be a parent of a student in a bilingual or English as a second language program conducted in a public high school. Such member shall be appointed by the city-wide council on English language learners, and shall serve a two year term;

(iv) one voting member appointed by the public advocate of the city of New York, who shall be a resident of the city and shall have extensive business, trade, or education experience and knowledge who will make a significant contribution to improving education in the city district. Such member shall serve for a term of two years; and

(v) one non-voting member who is a public high school senior, appointed by the chancellor pursuant to a process developed by the chancellor. Such member shall serve a one year term.

Officers of parents' associations or parent-teachers' associations who are candidates in the selection process established by the chancellor pursuant to this subdivision shall not be eligible to cast votes in such selection process. The association shall elect a member to vote in the place of each such officer for purposes of the selection process.

(b) The city-wide council on high schools shall have the power to:

(i) advise and comment on any educational or instructional policy involving high schools;

(ii) issue an annual report on the effectiveness of the city district in providing services to high school students and making recommendations, as appropriate, on how to improve the efficiency and delivery of such services; and

(iii) hold at least one meeting per month open to the public and during which the public may discuss issues facing high schools.

(c) Vacancies shall be filled for an unexpired term by the city-wide council on high schools, pursuant to a process developed by the chancellor that shall include consultation with parents of students attending public high school; provided, however, that where a vacancy occurs in a position appointed by the public advocate, the public advocate shall appoint a member to serve the remainder of the unexpired term.

7. (a) There shall be a city-wide council on district seventy-five created pursuant to this section. The city-wide council for district seventy-five shall consist of eleven voting members and one non-voting member, as follows:

(i) nine voting members who shall be parents of students receiving city-wide special education services in a district seventy-five school or program to be selected by parents of students who receive such services pursuant to a representative process developed by the chancellor. Such members shall serve a two year term;

(ii) two voting members appointed by the public advocate of the city of New York, who shall be individuals with extensive experience and knowledge in the areas of educating, training or employing individuals with disabilities and who will make a significant contribution to improving special education in the city district. Such members shall serve a two year term; and

(iii) one non-voting member who is a high school senior appointed by the administrator designated by the chancellor to supervise district seventy-five schools and programs. Such member shall serve a one year term.

(b) The city-wide council on district seventy-five shall have the power to:

(i) advise and comment on any educational or instructional policy involving the provision of district seventy-five services;

(ii) issue an annual report on the effectiveness of the city district in providing services to district seventy-five students and make recommendations, as appropriate, on how to improve the efficiency and delivery of such services; and

(iii) hold at least one meeting per month open to the public and during which the public may discuss issues facing district seventy-five students.

(c) Vacancies shall be filled for an unexpired term by the citywide council for district seventy-five, pursuant to a process developed by the chancellor that shall include consultation with parents of students attending district seventy-five schools or programs; provided, however, that where a vacancy occurs in a position appointed by the public advocate, the public advocate shall appoint a member to serve the remainder of the unexpired term.

8. (a) Members of the city-wide councils established pursuant to this section shall not be paid a salary or stipend, but shall be reimbursed for all actual and necessary expenses directly related to the duties and responsibilities of the city-wide council on which they serve.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 65 of 113

(b) Each such city-wide council may appoint a secretary, pursuant to the policies of the city board, who shall perform the following functions:

(i) prepare meeting notices, agendas and minutes;

(ii) record and maintain accounts of proceedings and meetings; and

(iii) prepare briefing materials and other related informational materials for such meetings.

Each city-wide council shall be responsible for the appointment, supervision, evaluation and discharge of the secretary.

(c) No person may serve at the same time on more than one city-wide council established pursuant to this section, nor may any person serve at the same time on such a city-wide council and any community district education council.

(d) A member of a city-wide council established pursuant to this section shall be ineligible to be employed by any such council, any community district education council, or the city board.

(e) No person shall be eligible for membership on a city-wide council established pursuant to this section if he or she holds any elective public office or any elective or appointed party position except that of delegate or alternate delegate to a national, state, judicial or other party convention, or member of a county committee.

(f) A person may be permanently ineligible for appointment to a city-wide council for any of the following:

(i) an act of malfeasance directly related to his or her service on such city-wide council or community district education council; or

(ii) conviction of a crime, provided that any such conviction shall be considered in accordance with article twenty-three-A of the correction law.

(g) In addition to the conditions enumerated in the public officers law creating a vacancy, a member of a city-wide council established pursuant to this section who refuses or neglects to attend three meetings of such city-wide council of which he or she is duly notified, without rendering in writing a good and valid excuse therefor vacates his or her office by refusal to serve. Each absence and any written excuse rendered shall be included within the official written minutes of such meeting. After the third unexcused absence such city-wide council shall declare a vacancy to the chancellor.

**Credits**
(Added L.1969, c. 330, § 4. Amended L.1970, c. 3, §§ 2, 3; L.1970, c. 7, § 1; L.1970, c. 47, § 1; L.1971, c. 6; L.1972, c. 29, § 2; L.1973, c. 27, § 1; L.1973, c. 915, § 1; L.1974, c. 137, § 1; L.1974, c. 138, § 3; L.1976, c. 553, § 2; L.1976, c. 871, § 1; L.1988, c. 739, § 1; L.1988, c. 742, § 1; L.1994, c. 727, § 1; L.2002, c. 91, § 6, eff. July 1, 2002; L.2002, c. 91, § 7; L.2003, c. 123, § 2, eff. July 9, 2003; L.2009, c. 345, § 1, eff. June 30, 2009; L.2013, c. 103, § 1, eff. July 12, 2013; L.2019, c. 55, pt. II,

subpt. B, § 1, eff. April 12, 2019; L.2019, c. 59, pt. YYY, §§ 43-b, 43-g, eff. April 12, 2019, deemed eff. April 1, 2019; L.2022, c. 364, §§ 1, 2, eff. June 30, 2022; L.2023, c. 71, § 1, eff. June 30, 2022.)

Notes of Decisions (19)

**Footnotes**

1       52 USCA § 10301 et seq.

McKinney's Education Law § 2590-b, NY EDUC § 2590-b
Current through L.2024, chapters 1 to 55, 57, 59, 61 to 117. Some statute sections may be more current, see credits for details.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 67 of 113

NY LEGIS 56 (2024), 2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S)

2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S)

McKINNEY'S 2024 SESSION LAW NEWS OF NEW YORK

247th LEGISLATURE

Additions are indicated by **Text**; deletions by
~~Text~~ .
Vetoes are indicated by ~~Text~~ ;
stricken material by ~~**Text**~~ .

CHAPTER 56
S. 8306–C

Approved April 20, 2024, effective as provided in section 3

AN ACT to amend the education law, in relation to contracts for excellence; to amend the education law, in relation to foundation aid; to amend the education law, in relation to allowable transportation expenses; to direct a foundation aid formula study by the Nelson A. Rockefeller institute; to amend the education law, in relation to transportation aid and the Clean Water, Clean Air, and Green Jobs Environmental Bond Act of 2022; to amend the education law, in relation to transportation aid for zero-emission school buses and establishing the New York state zero-emission bus resource center; to amend the education law, in relation to academic enhancement aid; to amend the education law, in relation to high tax aid; to amend the education law, in relation to universal pre-kindergarten and the Statewide universal full-day pre-kindergarten program; directing a study on consolidation of pre-kindergarten funding; to amend the education law, in relation to implementation of the smart schools bond act of 2014; to amend the education law, in relation to special apportionments and grants-in-aid to school districts; to amend the education law, in relation to extending certain provisions of the teachers of tomorrow teacher recruitment and retention program; to amend the education law, in relation to maximum class sizes for special classes for certain students with disabilities; to amend chapter 82 of the laws of 1995, amending the education law and other laws relating to state aid to school districts and the appropriation of funds for the support of government, in relation to the effectiveness thereof; to amend chapter 756 of the laws of 1992 relating to funding a program for work force education conducted by the consortium for worker education in New York city, in relation to reimbursement for the 2023–2024 school year withholding a portion of employment preparation education aid and in relation to the effectiveness thereof; to amend the education law, in relation to funding for employment preparation education programs; to amend the education law, in relation to the financing of charter schools; to amend part A of chapter 56 of the laws of 2023 directing the education department to conduct a comprehensive study of alternative tuition rate-setting methodologies for approved providers operating school-age and preschool programs receiving state funding, in relation to extending the date for the submission of such recommendations; to amend chapter 537 of the laws of 1976 relating to paid, free and reduced price breakfast for eligible pupils in certain school districts, in relation to a state subsidy; to amend chapter 169 of the laws of 1994, relating to certain provisions related to the 1994–95 state operations, aid to localities, capital projects and debt service budgets, in relation to the effectiveness thereof; to amend subpart F of part C of chapter 97 of the laws of 2011, amending the education law relating to census reporting, in relation to the effectiveness thereof; providing for special apportionment for salary expenses; providing for special apportionment for public pension accruals; to amend chapter 121 of the laws of 1996 authorizing the Roosevelt union free school district to finance deficits by the issuance of serial bonds, in relation to an apportionment for salary expenses; providing for set-asides from the state funds which certain districts are receiving from the total foundation aid; providing for support of public libraries; to repeal certain provisions of the education law relating to phase-in foundation increase; to repeal certain provisions of the education law relating to foundation aid; and providing for the repeal of certain provisions upon the expiration thereof (Part A); to amend the education law, in relation to establishing evidence-based reading instructional best practices for students attending prekindergarten through grade three (Part B); to amend the education law, in relation to directing the commissioner of education to require the completion of a

free application for federal student aid or a waiver of such requirement and requires school districts to issue annual reports on students completing the free application for federal student aid and the waiver (Part C); to amend the education law, in relation to eligibility for unrestricted aid to independent colleges and universities (Part D); intentionally omitted (Part E); to amend chapter 260 of the laws of 2011 amending the education law and the New York state urban development corporation act relating to establishing components of the NY-SUNY 2020 challenge grant program, in relation to the effectiveness thereof (Part F); to amend part N of chapter 56 of the laws of 2020, amending the social services law relating to restructuring financing for residential school placements, in relation to the effectiveness thereof (Part G); to amend the social services law, in relation to increasing the standards of monthly need for aged, blind and disabled persons living in the community (Part H); intentionally omitted (Part I); to amend the labor law, in relation to nursing employees' right to express breast milk (Part J); intentionally omitted (Part K); intentionally omitted (Part L); to amend chapter 25 of the laws of 2020, relating to providing requirements for sick leave and the provision of certain employee benefits when such employee is subject to a mandatory or precautionary order of quarantine or isolation due to COVID–19, in relation to providing for the expiration and repeal of such provisions (Part M); to utilize reserves in the mortgage insurance fund for various housing purposes (Part N); to amend the criminal procedure law and the penal law, in relation to the crime of deed theft; to amend the executive law, in relation to authorizing the attorney general to prosecute crimes involving deed theft; to amend the real property actions and proceedings law, in relation to the partition of heirs property; and to amend the real property law, in relation to allowing transfer on death deeds (Part O); intentionally omitted (Part P); to amend the multiple dwelling law, in relation to authorizing a city of one million or more to remove the cap on the floor area ratio of certain dwellings (Part Q); to amend the labor law and the real property tax law, in relation to the exemption from real property taxation of certain multiple dwellings in a city having a population of one million or more (Part R); to amend the multiple dwelling law, in relation to establishing a program to address the legalization of specified basement and cellar dwelling units and the conversion of other specified basement and cellar dwelling units in a city with a population of one million or more (Part S); to amend the real property tax law, in relation to eligible multiple dwellings under the affordable New York housing program (Part T); to amend the real property tax law and the labor law, in relation to enacting the affordable neighborhoods for New Yorkers tax incentive (Part U); to amend the executive law, in relation to requiring the state fire prevention and building code council to study and adopt uniform fire prevention and building code standards to promote fire safety and accessibility in certain single-exit, single stairway multi-unit residential buildings; and providing for the repeal of such provisions upon the expiration thereof (Part V); to amend the education law, in relation to permitting tuition assistance program awards to be made to part-time students enrolled in certain degree granting institutions chartered or authorized by the New York state board of regents (Part W); to amend the education law, in relation to increasing the income eligibility threshold for the tuition assistance program (Part X); to amend the social services law, in relation to establishing differential payment rates for child care services provided by licensed, registered or enrolled child care providers (Part Y); to amend chapter 277 of the laws of 2021 amending the labor law relating to the calculation of weekly employment insurance benefits for workers who are partially unemployed, in relation to the effectiveness thereof (Part Z); to amend the vehicle and traffic law, in relation to owner liability for failure of an operator to stop for a school bus displaying a red visual signal and stop-arm; and to amend chapter 145 of the laws of 2019, amending the vehicle and traffic law relating to school bus photo violation monitoring systems and owner liability for failure of operator to stop for a school bus displaying a red visual signal, in relation to the effectiveness thereof (Part AA); to amend the insurance law, in relation to prohibiting discrimination because of the affordability of residential buildings (Part BB); to amend the education law, in relation to requiring the use of project labor agreements for large scale construction projects under the state university construction fund (Part CC); relating to the city of Dunkirk fiscal recovery act; and providing for the repeal of such provisions upon expiration thereof (Part DD); to amend the real property tax law, in relation to establishing an optional local tax exemption for affordable multi-family housing and an optional local tax exemption for newly converted or constructed fully income restricted rental multiple dwellings (Part EE); to amend the emergency tenant protection act of nineteen seventy-four, the administrative code of the city of New York, and the emergency housing rent control law, in relation to increasing the amount recoverable by an owner for individual apartment improvements (Part FF); to amend the executive law, in relation to including an accessory dwelling unit in the term housing accommodations in the human rights law; and to amend the real property tax law, in relation to providing a tax exemption on the increase in value of property resulting from the addition of an accessory dwelling unit (Part GG); to amend the real property law and the real property actions and proceedings law, in relation to enacting the 'good cause eviction law'; and providing for the

NY LEGIS 56 (2024), 2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S)

NY LEGIS 56 (2024), 2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S)

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 69 of 113

repeal of such provisions upon the expiration thereof (Part HH); to amend the real property actions and proceedings law, in relation to further establishing when a landlord-tenant relationship exists (Part II); to amend the real property tax law, in relation to directing the department of housing preservation and development to develop a program to conduct annual audits of compliance with the affordable New York housing program (Part JJ); to amend the private housing finance law, in relation to establishing the New York housing for the future homeownership program and the New York housing for the future rental housing program (Part KK); to amend the election law, the civil practice law and rules and the education law, in relation to regulating public data maintained by county and city boards of elections (Part LL); to amend the alcoholic beverage control law, in relation to permitting the use of contiguous and non-contiguous municipal public space by certain licensees; and to repeal chapter 238 of the laws of 2021, relating to permitting the use of municipal space for outdoor dining (Part MM); to amend the transportation law, in relation to clarifying certain provisions of the stretch limousine passenger safety act (Part NN); to amend the vehicle and traffic law, in relation to establishing speed limits in cities with populations in excess of one million people (Part OO); to amend the public health law, in relation to enacting the reproductive freedom and equity grant program (Part PP); to amend the retirement and social security law and the administrative code of the city of New York, in relation to the calculation of the final average salary for purposes of the calculation of a pension benefit (Part QQ); to amend the tax law, in relation to reducing the rate of tax applicable to certain authorized combative sports under article 19 thereof (Part RR); authorizing the lease of certain lands located at the State University of New York at Stony Brook (Part SS); to amend the public authorities law, in relation to bonds issued by the New York city transitional finance authority (Part TT); to amend the public authorities law, in relation to fare enforcement by the metropolitan transportation authority (Part UU); in relation to directing the office of children and family services to conduct a study to evaluate the feasibility of providing after school programming to every school-aged child in New York (Part VV); to amend the vehicle and traffic law, in relation to obstructed or obscured license plates and the penalty imposed upon the operator of a vehicle with an intentionally altered or obscured license plate while on a toll highway, bridge or tunnel or in a tolled central business district; to amend the vehicle and traffic law, in relation to authorizing law enforcement to confiscate license plate coverings; to amend the vehicle and traffic law, in relation to authorizing vehicle registration suspension for failure to comply with the removal of materials or substances altering or obscuring a license plate; and to amend the public authorities law, in relation to authorizing public authorities with bridges, tunnels or highways under their jurisdiction to enter judgments for unpaid liabilities for a violation of toll collection regulations and enforce such judgments without court proceedings (Subpart A); and to amend the public authorities law, in relation to the payment of tolls under the tolls by mail program (Subpart B) (Part WW); to provide for the administration of certain funds and accounts related to the 2023–2024 budget, authorizing certain payments and transfers; to amend the state finance law, in relation to the administration of certain funds and accounts, in relation to the effectiveness thereof, and in relation to interest owed on outstanding balances of debt; to amend part D of chapter 389 of the laws of 1997 relating to the financing of the correctional facilities improvement fund and the youth facility improvement fund, in relation to the issuance of certain bonds or notes; to amend the private housing finance law, in relation to housing program bonds and notes; to amend the public authorities law, in relation to the issuance of bonds and notes by the dedicated highway and bridge trust fund; to amend the public authorities law, in relation to the issuance of bonds and notes for city university facilities; to amend the public authorities law, in relation to the issuance of bonds for library construction projects; to amend the public authorities law, in relation to the issuance of bonds for state university educational facilities; to amend the public authorities law, in relation to the issuance of bonds and notes for locally sponsored community colleges; to amend chapter 392 of the laws of 1973, constituting the New York state medical care facilities finance agency act, in relation to the issuance of mental health services facilities improvement bonds and notes; to amend part K of chapter 81 of the laws of 2002, relating to providing for the administration of certain funds and accounts related to the 2002–2003 budget, in relation to the issuance of bonds and notes to finance capital costs related to homeland security; to amend chapter 174 of the laws of 1968 constituting the urban development corporation act, in relation to the issuance of bonds and notes for purposes of funding office of information technology services project costs; to amend chapter 329 of the laws of 1991, amending the state finance law and other laws relating to the establishment of the dedicated highway and bridge trust fund, in relation to the issuance of funds to the thruway authority; to amend chapter 174 of the laws of 1968 constituting the urban development corporation act, in relation to the issuance of bonds and notes to fund costs for statewide equipment; to amend the public authorities law, in relation to the issuance of bonds for purposes of financing environmental infrastructure projects; to amend part D of chapter 389 of the laws of 1997, relating to the financing of the correctional facilities improvement fund

Case 5:24-cv-01234-PCP   Document 74-2   Filed 05/13/24   Page 70 of 113

NY LEGIS 56 (2024), 2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S)

and the youth facility improvement fund, in relation to the issuance of bonds and notes for the youth facilities improvement fund; to amend the public authorities law, in relation to the issuance of bonds and notes for the purpose of financing peace bridge projects and capital costs of state and local highways; to amend chapter 174 of the laws of 1968 constituting the urban development corporation act, in relation to the issuance of bonds for economic development initiatives; to amend part Y of chapter 61 of the laws of 2005, relating to providing for the administration of certain funds and accounts related to the 2005–2006 budget, in relation to the issuance of bonds and notes for the purpose of financing capital projects for the division of military and naval affairs; to amend chapter 174 of the laws of 1968 constituting the urban development corporation act, in relation to the issuance of bonds for special education and other educational facilities; to amend the public authorities law, in relation to the issuance of bonds and notes for the purpose of financing the construction of the New York state agriculture and markets food laboratory; to amend section 1 of part D of chapter 63 of the laws of 2005, relating to the composition and responsibilities of the New York state higher education capital matching grant board, in relation to higher education capital matching grants; to amend chapter 392 of the laws of 1973, constituting the New York state medical care facilities finance agency act, in relation to including comprehensive psychiatric emergency programs and housing for mentally ill persons in the definition of mental health services facility; to amend the state finance law, in relation to the private sale of certain revenue bonds, and in relation to including assets that provide a long-term interest in land in the definition of fixed assets; to amend the public authorities law, in relation to bond issuance charges; to amend the state finance law, in relation to the redemption price of certain revenue bonds; to amend chapter 174 of the laws of 1968 constituting the urban development corporation act, in relation to the issuance of personal income tax revenue anticipation notes; to amend the public authorities law, in relation to the issuance of bonds or notes for the purpose of assisting the metropolitan transportation authority in the financing of transportation facilities; and providing for the repeal of certain provisions upon expiration thereof (Part XX); to amend chapter 141 of the laws of 1994, amending the legislative law and the state finance law relating to the operation and administration of the legislature, in relation to extending such provisions (Part YY); to amend the education law, in relation to school governance in the city of New York; and to amend chapter 91 of the laws of 2002 amending the education law and other laws relating to reorganization of the New York city school construction authority, board of education and community boards, and chapter 345 of the laws of 2009 amending the education law and other laws relating to the New York city board of education, chancellor, community councils and community superintendents, in relation to the effectiveness thereof (Part ZZ); to amend the economic development law, in relation to establishing the newspaper and broadcast media jobs program; and to amend the tax law, in relation to establishing the newspaper and broadcast media jobs tax credit (Part AAA); and to amend the tax law, in relation to a payment of a supplemental empire state child credit (Part BBB)

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

Section 1. This act enacts into law major components of legislation necessary to implement the state education, labor, housing and family assistance budget for the 2024–2025 state fiscal year. Each component is wholly contained within a Part identified as Parts A through BBB. The effective date for each particular provision contained within such Part is set forth in the last section of such Part. Any provision in any section contained within a Part, including the effective date of the Part, which makes a reference to a section "of this act", when used in connection with that particular component, shall be deemed to mean and refer to the corresponding section of the Part in which it is found. Section three of this act sets forth the general effective date of this act.

### PART A

Section 1. Paragraph e of subdivision 1 of section 211–d of the education law, as amended by section 1 of part A of chapter 56 of the laws of 2023, is amended to read as follows:

<< NY EDUC § 211–d >>

e. Notwithstanding paragraphs a and b of this subdivision, a school district that submitted a contract for excellence for the two thousand eight—two thousand nine school year shall submit a contract for excellence for the two thousand nine—two thousand ten school year in conformity with the requirements of subparagraph (vi) of paragraph a of subdivision two of this section unless all schools in the district are identified as in good standing and provided further that, a school district that submitted a contract for excellence for the two thousand nine—two thousand ten school year, unless all schools in the district are identified as in

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 71 of 113

NY LEGIS 56 (2024), 2024 Sess. Law News of N.Y. Ch. 56 (S. 8306-C) (McKINNEY'S)

January 1, 1995, and provided further that, the provisions of article 5–A of the legislative law as added by section eight of this act shall expire June 30, ~~2024~~ **2025** when upon such date the provisions of such article shall be deemed repealed; and provided further that section twelve of this act shall be deemed to have been in full force and effect on and after April 10, 1994.

§ 2. This act shall not supersede the findings and determinations made by the compensation committee as authorized pursuant to part HHH of chapter 59 of the laws of 2018 unless a court of competent jurisdiction determines that such findings and determinations are invalid or otherwise not applicable or in force.

§ 3. This act shall take effect immediately, provided, however, if this act shall take effect on or after June 30, 2024, this act shall be deemed to have been in full force and effect on and after June 30, 2024.

## PART ZZ

Section 1. Subparagraph 1 of paragraph (a) of subdivision 1 of section 2590–b of the education law is amended by adding a new clause (D) to read as follows:

<< NY EDUC § 2590–b >>

**(D) Commencing on July first, two thousand twenty-four, the board of education shall consist of twenty-four voting members: one member to be appointed by each borough president of the city of New York; five members, one from each borough of the city of New York, to be elected by community district education council presidents; one independent member who shall serve as chair of the board and who shall be selected as established in subparagraph three of this paragraph; and thirteen members to be appointed by the mayor of the city of New York. The initial term of the chair selected pursuant to subparagraph three of this paragraph shall commence on September fifteenth, two thousand twenty-four and shall end on September fourteenth, two thousand twenty-five; thereafter the chair shall serve for a one-year term commencing on September fifteenth. The chancellor shall continue regulations promulgated under clause (C) of this subparagraph establishing a process for community district education council presidents to elect members of the board, and processes for removal of such members and for the filling of such positions in the event of a vacancy. Appointed members and members elected by community district education council presidents pursuant to clause (C) of this subparagraph and commencing a term on July first, two thousand twenty-four shall serve a term that ends on June thirtieth, two thousand twenty-five. Thereafter, appointed members and the members elected by community district education council presidents shall serve for a one-year term commencing on July first.**

§ 2. Subparagraph 3 of paragraph (a) of subdivision 1 of section 2590–b of the education law, as amended by chapter 364 of the laws of 2022, is amended to read as follows:

<< NY EDUC § 2590–b >>

(3) The ~~city board~~ **independent member who** shall ~~elect its own chairperson from among its voting members~~ **serve as chair of the board shall be selected by the mayor of the city of New York from among three qualified candidates, one nominated by the speaker of the assembly, one nominated by the majority leader of the senate, and one nominated by the chancellor of the board of regents. If the mayor of the city of New York shall not accept any of the three candidates, up to two additional groups of three will be submitted to the mayor of the city of New York for consideration. The mayor of the city of New York must select a candidate from among the nominees no later than September fifteenth of each year. An individual selected to serve as chair may be reappointed by the mayor of the city of New York to serve an additional one-year term, provided such reappointment will be made on or before June thirtieth of each year, and provided further that no individual may serve as chair for more than two terms consecutively. If the individual serving as chair is not reappointed by the mayor of the city of New York, is term limited pursuant to this subparagraph, or the role of chair becomes vacant for any reason, the selection of a new member to serve as chair will be completed through the process as established in this subparagraph.**

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 72 of 113

🚩 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

McKinney's Consolidated Laws of New York Annotated
  Education Law (Refs & Annos)
    Chapter 16. Of the Consolidated Laws (Refs & Annos)
      Title II. School District Organization (Refs & Annos)
        Article 52. City School Districts of Cities with One Hundred Twenty-Five Thousand Inhabitants or More (Refs & Annos)

McKinney's Education Law § 2575

§ 2575. Retirement of employees of board of education

Effective: December 31, 2020
Currentness

1. (a) The board of education of a city school district of a city having a population of one hundred thousand or more shall have power to establish a retirement system for all civil employees permanently employed by said board other than superintendents and teachers who may now be retired under the provisions of other retirement laws. In any such city in which there is a bureau of compulsory education, school census, and child welfare established under the provisions of this chapter, all persons, except for attendance teachers and specially certificated attendance officers who are first employed by a board of education of a city having a population of one million or more, beginning on the first day of September, nineteen hundred sixty-eight, and further except for the director of attendance, assistant director of attendance, chief attendance officer, division supervising attendance officer, and district supervising attendance officer, supervisors of school social workers, who were first employed by a board of education of a city having a population of one million or more, beginning on the first day of September nineteen hundred sixty-nine, of which such a bureau of compulsory education, school census, and child welfare consists shall be members of the retirement system created in accordance with the provisions of this section, provided that any such person who on May fourth, nineteen hundred twenty-six, was a member of another retirement system in such city may continue such membership so long as he or she holds an office or position in such bureau. Transfer of membership of any such persons from another retirement system to a retirement system as herein provided shall be made in accordance with the provisions of section fifty-nine of the civil service law. [1] The board of education of such city shall adopt appropriate rules and regulations for the government, management and control of the retirement of said employees; except that in regard to the actions of the governing board of a retirement system governed by such rules and regulations, the concurrence of one employee representative and one non-employee representative shall be necessary for an act of such board, and there shall be no fewer than two employee representatives of such board. Before they become effective such rules and regulations must be approved by the board of estimate, or the board of estimate and apportionment in a city having such body, and in a city not having such body by the common council or such other officers or bodies as have the management and control of financial affairs similar to that exercised by such board of estimate or board of estimate and apportionment. The board of estimate or the board of estimate and apportionment in a city having such body, and in other cities the officers or bodies performing the functions similar to those of a board of estimate or a board of estimate and apportionment shall appropriate annually the sum necessary to pay the expenses of the administration of this section, except that in the city of New York such appropriations shall be made pursuant to chapter six of the New York city charter, and also to pay such pensions to the employees herein described as they shall be entitled to receive annually under the rules and regulations prescribed by the board of education and approved by the said board of estimate or board of estimate and apportionment or other authorities.

Case 5:24-cv-01234-PCP    Document 74-2    Filed 05/13/24    Page 73 of 113

(f) The funds withdrawn from the retirement system shall not be utilized for any purpose other than the budget established by the retirement board. All expenditures of the retirement system shall be subject to audit by the comptroller of the city of New York, who may make recommendations, including but not limited to, procedures designed to improve accounting and expenditure control. All expenditures of the retirement system shall be reported to the mayor's office of management and budget and the budgetary office of all participating employers.

(g) The executive director of the retirement system, who shall be appointed by the retirement board, shall perform such duties as may be conferred upon him or her by the chairperson of the retirement board, by resolution adopted by the retirement board, or by law.

24. [As added by L.2004, c. 623, eff. as long as benefits provided herein are authorized by Internal Revenue Code. See, also, subd. 24 below.] (a) The following terms, as used in this subdivision, shall have the following meanings, unless a different meaning is plainly required by the context:

(1) "Board of education". The board of education of a city.

(2) "City". A city having a population of one million or more.

(3) "Retirement system". The board of education retirement system established pursuant to the provisions of this section in a city.

(4) "Rules and regulations". The rules and regulations for the government, management and control of the retirement system adopted pursuant to this section.

(5) "Retirement board". The retirement board of the retirement system provided for in section five-a of the rules and regulations.

(6) "Retirement benefits". Benefits payable to a beneficiary by the retirement system which are subject to the limitations imposed by section 415(b) of the Internal Revenue Code.

(7) "Beneficiary". A person who is receiving retirement benefits from the retirement system.

(8) "Excess benefit plan". The excess benefit plan established by this subdivision for the sole purpose of paying benefits as permitted under section 415(m) of the Internal Revenue Code.

(9) "Eligible participant". A beneficiary who is entitled to replacement benefits from the excess benefit plan for a plan year in accordance with paragraphs (d) and (e) of this subdivision.

(10) "Replacement benefits". The benefits payable by the excess benefit plan to an eligible participant as determined pursuant to paragraph (e) of this subdivision.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE A. HEDICK, JR., *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, *et al.*, <br><br> Defendants. | Case No. 19-1339 (RMD) <br><br> CLASS ACTION |
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, *et al.*, <br><br> Defendants. | Case No. 19-1845 (RMD) <br><br> CLASS ACTION |
| TIMBER HILL LLC, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> THE KRAFT HEINZ COMPANY, *et al.* <br><br> Defendants. | Case No. 19-2807 (RMD) <br><br> CLASS ACTION |

**THE NEW YORK CITY FUNDS' MOTION FOR JUDICIAL NOTICE**

The New York City Funds ("NYC"), through their attorneys, respectfully request that the

2527684 v1

-2-

Court take judicial notice of the existence of the February 8, 2019 "Master Agreement between the City of New York Law Department, acting on behalf of the New York City Pension Funds and Retirement Systems and Kessler Topaz Meltzer & Check, LLP, Retaining the Firm in Pool of Firms Available to Serve as Securities Litigation Counsel/Evaluation Counsel" (the "Master Agreement"), attached hereto as Exhibit A. The Master Agreement is signed by Darren Check of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Anita Fajans of the New York City Law Department ("NYC"). *Id.* at 20, 21.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Judicial notice is premised on the concept that certain facts exist that a court may accept as true without requiring additional proof from the opposing party or parties." *Rowe v. Bankers Life & Cas. Co.*, 2011 WL 13244827, at *5 (N.D. Ill. Sept. 30, 2011) (Dow, J.).

In their Reply Brief, Dkt. 128, the Foreign Funds acknowledge that Bernstein Litowitz Berger & Grossman LLP entered into a Master Agreement with NYC, but state that Kessler Topaz did not have such an agreement. *See id*. at 4, 12, and n.15. The Court may take notice of the Master Agreement that Kessler Topaz signed and returned to NYC, and that NYC countersigned. *See* Ex. A, at 20. The Court may also take notice of the fact that, in the paragraph directly above the signature line, the Master Agreement states, "If the terms of this Master Agreement are satisfactory, please indicate Contractor's acceptance by having Contractor's authorized representative sign in the space provided below, and have the Master Agreement returned to this office to my attention." *Id.* at 19.

Accordingly, the Court should take judicial notice of the fact that Darren Check, on behalf

-2-

2527684 v1

of Kessler Topaz, entered into and accepted the terms of the Master Agreement with NYC, and that Ms. Fajans of NYC countersigned the Master Agreement. *See Shulman v. CRS Fin. Servs., Inc.*, 2003 WL 22400211, at *1 (N.D. Ill. Oct. 21, 2003) (taking judicial notice of contracts when contracts were referenced in pleading); *Scott v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 743, 759–60, 154 Cal. Rptr. 3d 394, 408 (2013), *as modified on denial of reh'g* (Apr. 16, 2013) (taking judicial notice of contract when facts contained in it were not reasonably subject to dispute "in light of the face of the . . . Agreement"); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1174 (C.D. Cal. 2009) ("Judicial notice [of contracts] is proper because the contracts are integral to the complaint and no party disputes the contracts' identity and accuracy."). That the Foreign Funds repeatedly reference the existence (or lack thereof) of the Master Agreement in their brief, and that certain claims at issue are "dependent upon the existence and/or contents of [the Master Agreement]," justifies taking notice of the Master Agreement. *Cf. Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 2013 WL 80369, at *4 (N.D. Ill. Jan. 7, 2013) (Dow, J.) (no judicial notice when contract was not "critical to nor referred to in the amended complaint"). The existence of the executed Master Agreement cannot reasonably be questioned: it is notarized twice. *See* Ex. A, at 21. Accordingly, the Court should grant this request.

Date: June 19, 2019

Respectfully submitted,

**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**

*/ s / Carol V. Gilden*
Carol V. Gilden (Bar No. 06185530)
190 South LaSalle Street / Suite 1705
Chicago, IL 60603
Tel.: (312) 357-0370
Fax: (312) 357-0369
cgilden@cohemilstein.com

-3-

2527684 v1

-4-

Julie Goldsmith Reiser
Adam H. Farra
1100 New York Avenue, N.W. / Fifth Floor
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
jreiser@cohenmilstein.com
afarra@cohenmilstein.com

Laura H. Posner
88 Pine Street / 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
lposner@cohenmilstein.com

*Counsel for Proposed Lead Plaintiff NYC and
Proposed Lead Counsel for the Class*

-5-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed on June 19, 2019

with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all

parties and attorneys registered to receive notifications via the CM/ECF system.


<i>/ s / Carol V. Gilden</i>
Carol V. Gilden

2527684 v1

# EXHIBIT A



THE CITY OF NEW YORK

**ZACHARY W. CARTER**
*Corporation Counsel*

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**ANITA FAJANS**
*Deputy Agency Chief Contracting Officer*
**Phone: 212-356-1121**
**Fax: 212-356-1148**
**Room: 5-207**
**E-Mail: afajans@law.nyc.gov**

*February 8, 2019*

Darren Check, Partner
Kessler Topaz Meltzer & Check, LLP
20 King of Prussia Road
Radnor, PA 19087

> Re:    Master Agreement between the City of New
> York Law Department, acting on behalf of the New
> York City Pension Funds and Retirement Systems
> and Kessler Topaz Meltzer & Check, LLP, Retaining
> the Firm in Pool of Firms Available to Serve as
> Securities Litigation Counsel/Evaluation Counsel,
> PIN 02518X1000D4, E-PIN 02518P0002004

Dear Mr. Check:

This letter (the "**Master Agreement**" or "**Agreement**") will confirm the agreement reached between the New York City Law Department (referred to from time to time herein as the "**Department**" or the "**Law Department**"), acting on behalf of the New York City pension funds and retirement systems and retirement savings plans (collectively and individually, the "**Funds**")[1] and Kessler Topaz Meltzer & Check, LLP ("**Contractor**," "**vendor**" or "**firm**"), for Contractor to be included in the pool ("**Pool**") of law firms selected pursuant to the Securities Litigation Counsel

---

[1] The "Funds" may include, without limitation, the New York City Employees' Retirement System, New York City Fire Department Pension Fund, New York City Police Pension Fund, Teachers' Retirement System for the City of New York, New York City Board of Education Retirement System, Police Officers' VSF, Police Superior Officers' VSF, Housing Police Officers' VSF, Housing Police Superior Officers' VSF, Transit Police Officers' VSF, Transit Police Superior Officers' VSF, Firefighters' VSF, Fire Superior Officers' VSF, and Correction Officers' VSF, the Teachers' Retirement System of the City of New York Variable A and the City of New York Deferred Compensation Plan.

Request for Proposals issued March 15, 2018, for the period commencing as of October 18, 2018 and continuing through October 17, 2023, with up to three one-year renewals, each at the sole discretion of the Department. Assignments made within the term will continue to the end of litigation, or the conclusion of the matter, or as otherwise set forth in a particular task order, and the terms of the Agreement shall continue to apply to any such assignments. As a member of the Pool, Contractor shall, if and as requested by the Department, serve as evaluation counsel to the Department, and/or as litigation counsel to the Department or litigation co-counsel with the Department in specific securities litigation matters undertaken on behalf of the Funds. For its services under this Master Agreement, the Department agrees to compensate Contractor as shall be set forth in individual task orders, if any, consistent with the terms and conditions of this Master Agreement.

**Evaluation Counsel:**

The Department will make any requests that Contractor serve as evaluation counsel by email or other writing. Contractor shall serve as evaluation counsel in each and every instance that it receives such a request, unless the Department approves a request by Contractor not to serve as evaluation counsel on a particular matter. Any such request by Contractor must be in writing, and must set forth the reasons why Contractor is asking to be excused from serving as evaluation counsel in such matter.

The Department will select firms in the Pool to serve as evaluation counsel on a rotational basis, with some assignments being made within a smaller pool made up of firms having expertise particularly suited to the matter in question. The Department may alter a rotation schedule in order to, at the Department's discretion, better distribute evaluation counsel assignments among the firms in the Pool.

If selected by the Department to serve as evaluation counsel, Contractor will assist the Department in evaluating potential securities claims and recommend courses of action with respect to particular litigation matters. Contractor agrees that, as evaluation counsel, Contractor will perform such tasks as the Department may direct, which tasks may include, without limitation:

(1) investigating potential securities fraud cases;

(2) reviewing, analyzing and evaluating potential securities litigation claims;

(3) advising the Department on ways to protect the assets of the Funds;

(4) reviewing the Funds' debt and equity portfolio transaction data and calculating and providing damage loss estimates to the Funds; and

(5) filing lead plaintiff motions or complaints on behalf of the Funds to protect the Funds' interests until such time as litigation counsel is selected.

Contractor understands that, ordinarily, it will not be compensated for its services as evaluation counsel; however, in the event that Contractor performs substantial work on behalf of

Case 1:24-cv-01334-DCP   Document #: 130   Filed: 06/19/10   Page 82 of 113 PageID #: 3062

Kessler Topaz Meltzer & Check, LLP
Securities Litigation/Evaluation Counsel Master Agreement
02518X1000D4, E-PIN 02518P0002004

the Funds at the direction of the Department in Contractor's capacity as evaluation counsel in a particular matter, such as preparing a lead plaintiff motion or drafting a complaint, the Department may support an application by Contractor to the court requesting fee reimbursement out of the class action recovery, if there is such a recovery in the underlying securities litigation. Depending upon the circumstances, any such fee may directly reduce the fee of the litigation counsel; if not, then the fee of evaluation counsel, if any, will be netted out of the recovery before computation of litigation counsel's percentage fee.

**Access to Funds' Data:**

The following provisions shall be applicable to any data regarding the investment portfolios of the Funds, including all account information relating thereto, and securities and other assets held by the Funds, that the firm accesses from the Funds, their current or former custodian bank(s), the Comptroller of the City of New York or the New York City Law Department (the "**Data**"). In addition, without in any way limiting the firm's duties under this section, the firm undertakes to safeguard the Data as set forth in Appendix B, annexed hereto and made a part hereof.

**Access to Data**

1. The Funds (collectively or individually) may instruct their custodian bank(s), as well as any former custodian bank(s), if necessary, to provide the firm with direct access to Data in the Funds' investment portfolios for the six years preceding the commencement date of this Agreement and to Data going forward until the expiration or earlier termination of this Agreement. This Data will be provided for the sole purpose of enabling the firm to provide the services described in this Master Agreement. The Data will be treated as "confidential" under the provisions of the "Confidentiality of Data" heading below as well as under the provisions of the "Confidentiality" section of this Master Agreement.

2. To ensure that the firm receives all of the Data authorized by this Agreement, it may periodically request the custodian bank(s) to verify that the firm has access to all active accounts for the Funds, including by providing the firm with a list of all active accounts covered by this Agreement. In the event an account or accounts are found to be omitted, the firm may request that the custodian bank(s) provide the firm access to the omitted account(s), as well as any historical data related to the account(s) in question.

3. The firm agrees that its access to the Data is solely for the purpose of providing services to the Funds as described in this Master Agreement.

4. The firm agrees that access to the Data will be afforded only to those persons within the firm with a need to access the Data. The firm may employ a third-party vendor to access, format and/or analyze the Data only with the prior written approval of the Department.

**Data Security**

The firm agrees to maintain appropriate physical, technical, administrative, and organizational safeguards to protect the security and confidentiality of the Data. The firm's

3

Kessler Topaz Meltzer & Check, LLP
Securities Litigation/Evaluation Counsel Master Agreement
02518X1000D4, E-PIN 02518P0002004

measures for keeping data secure are described in Appendix B to this Agreement. The firm must advise the Funds of any changes to its security measures used in relation to the Data.

### Remuneration

The Funds shall arrange for the custodian bank(s) to provide the firm with access to the Data free of charge. Any charge imposed by the custodian bank(s) for additional services it provides at the request of a firm shall be paid by the firm. The firm agrees that it will not charge the Department or the Funds any fees, costs or expenses in connection with any such additional service.

### Confidentiality of Data

The firm agrees that it will hold all Data accessed pursuant to this section as strictly confidential and that it will not, under any circumstances, directly or indirectly, disclose such Data to anyone other than the Funds and the Funds' designated counsel or representatives, or as might be necessary in court filings or discovery in matters in which the firm may represent the Funds, except with the prior written approval of the Department.

The firm agrees that it is responsible to ensure that it, as well as its partners, employees and contractors, handle the Data in compliance with this section.

The firm agrees that upon the expiration or earlier termination of this Agreement it will destroy all Data that is has obtained (and provide written certification of such destruction), except any Data that continues to be relevant to any ongoing litigation that the firm has been assigned to handle for the City pursuant to this Master Agreement.

## Litigation Counsel:

When a specific securities litigation matter arises, the Department will solicit, by e-mail or other writing, proposals to serve as litigation counsel from all the members of the Pool (including, if the Department believes it to be in the City's best interest, the law firm(s) selected to serve as evaluation counsel), or will solicit proposals from particular law firm(s) with technical expertise particularly suited to the matter, or will solicit a proposal from a particular law firm based on the law firm's geographic location, experience, or knowledge. In the event Contractor does not respond to a solicitation, Contractor shall advise the Law Department in writing of the basis for its decision to not submit a proposal. Litigation counsel will be selected from among those in the Pool solicited, based on the general experience and background of a firm for a particular matter/case (with special emphasis on the firm's expertise in the jurisdiction in which a case is being brought and/or the firm's expertise in the particular type of suit being brought), its approaches to managing complex securities litigation, and the fee structure proposed by the firm.

The Department will negotiate with one or more firms that submit proposals in response to the Department's solicitation described in the preceding paragraph. The negotiations will ordinarily include the specifics of the particular representation and the details of the contingency fee structure. The Department may request a best and final offer ("**BAFO**") from one or more of

the firms under consideration. If the Department decides to move forward with the matter, the Department will issue a task order retaining Contractor. The task order (which will be signed by Contractor and the Department) will contain the specifics of the particular engagement (including the agreed upon fee) consistent with the terms and conditions set forth in this Master Agreement. The term of a particular representation by litigation counsel pursuant to a task order will ordinarily be to the end of litigation or the conclusion of the matter or as otherwise set forth in the task order, and the term of such representation may be longer than, and/or may extend beyond, the term of this Master Agreement. The terms and conditions of this Master Agreement will continue to apply to any task order that extends beyond the end of the term of this Master Agreement as if this Master Agreement had not expired, until, in the judgment of the Department, the services have been completed under the task order or the task order has been terminated by the Department.

The Department reserves the right at any time to modify, in a manner permitted by law, the structure set forth in this Master Agreement for the selection of evaluation counsel and/or litigation counsel.

Notwithstanding anything herein to the contrary, the Department and the Funds reserve the right to not use the firms in the Pool with respect to any specific litigations and litigation matters. In addition, the Department makes no representation that any work will result from inclusion in the Pool or that any task orders will be issued to Contractor pursuant to this Master Agreement.

If selected by the Department to serve as litigation counsel and the Department issues a task order to Contractor, Contractor will provide litigation services and support to the Department in connection with the particular securities litigation(s) commenced by the Funds described in the task order. As litigation counsel, Contractor, in conjunction with the Department, will be responsible for all aspects of the litigation, including, without limitation: (a) fact investigation, including the calculation of Fund losses and development of damage estimates; (b) research and drafting complaints and/or other court documents; (c) conducting and responding to discovery; (d) conducting motion practice, including, but not limited to, making motions to have the Funds appointed as lead plaintiff and to certify a class, and defending against motions to dismiss; (e) attending court appearances; (f) conducting settlement negotiations, (g) trial; and (h) briefing and arguing appeals. The Department will be responsible for supervising and directing litigation counsel in all aspects of the case.

The Department, in accordance with the Code of Professional Responsibility, hereby reserves the following rights:

    a.    to review the reasonableness of the representation provided to determine the appropriateness of a request for attorneys fees or compensation for expenses;

    b.    to settle a litigation, subject to the approval of the Boards of Trustees of the Funds represented in the matter; and

    c.    in the event a judgment or other binding determination is entered against Funds or the City, to authorize Contractor to appeal the decision or to advise Contractor, in certain circumstances, not to appeal the decision.

Contractor represents that all attorneys in the employ of Contractor assigned to perform services pursuant to this Master Agreement and any task orders issued hereunder shall be members in good standing of the Bar of the jurisdiction in which all relevant proceedings are conducted and, if necessary, admitted to practice, in the regular course or pro hac vice, before the relevant State or Federal judicial or administrative body, to the extent required by any applicable ethics or court rules. The Department must approve the retention of local counsel. Darren Check and David Kessler or such other persons in the firm as may be designated in an applicable task order shall be considered to be key personnel for the purposes of this Master Agreement. Changes or substitutions in key personnel must be approved by the Department. All work performed by associates or paralegals of Contractor shall be appropriately supervised under the direction of a partner or member of Contractor.

**Compensation for Services as Litigation Counsel**

Contractor agrees that, if Contractor is selected as litigation counsel by the Department with respect to any securities class action litigation, derivative action or individual securities action, Contractor will prosecute the action(s) involved (the "**Litigation**") on a contingency fee basis. The Department and the Funds will not be responsible for the payment of any attorneys' fees, costs, disbursements or other expenses related to the prosecution of the Litigation or the Funds' involvement in any other litigation or proceedings, including, but not limited to, bankruptcy proceedings, that may enhance the ultimate recovery in the Litigation. It will be Contractor's responsibility to pursue any such proceedings for the benefit of the Funds (and the class, if applicable, i.e., where the Funds are lead plaintiff in the Litigation). In the event the Funds are not appointed as lead plaintiff or in the event no recovery is obtained from any of the defendants in the Litigation, the Department and the Funds will not be responsible for the payment of any of Contractor's legal fees, costs, or out-of-pocket expenses. The contingency fee rates set forth in the applicable task order will include all appeals, unless the Law Department expressly agrees otherwise in a particular task order.

The contingency fee for a particular matter will vary depending upon the circumstances and could be a straight percentage of the recovery, a declining percentage depending upon the size of the recovery, an increasing percentage depending upon the stage of the Litigation at which a recovery is achieved, a flat fee plus a percentage applied to the balance of the recovery after the deduction of the flat fee, some combination of the foregoing, or some other contingency fee arrangement. Within the agreed-upon contingency fee structure, the determination of the actual fee may take into account the size of the aggregate recovery obtained, and/or the nature of the relief obtained (e.g., corporate governance reforms), as well as the amount and quality of legal work performed by Contractor, although in no event will the fee exceed the applicable percentage of the recovery reflected in the contingency fee schedule or chart that is part of the applicable task order.

The contingency fee is subject to court approval in federal securities class actions and shareholder derivative actions. In all cases, unless litigation counsel and the Funds otherwise agree in a particular task order, the contingency fee will be calculated on the net recovery after deduction of: (i) costs and expenses of any kind that reduce the amount of the recovery, including

6

administrative fees and the costs associated with claims administration (including, without limitation, the fees anticipated to be paid to a claims administrator); (ii) reimbursable out-of-pocket expenses advanced by litigation counsel, of the kinds listed below under the heading, "*Limitations on Reimbursement of Litigation Counsel's Expenses out of the Recovery*"; and (iii) any legal fees that do not directly reduce the contingency fee of litigation counsel.

In the event that the Court determines that attorneys for any individual plaintiff(s) are entitled to a fee, the amount of such fee(s) (unless the Department otherwise agrees in writing) will reduce the amount payable to attorneys for the lead plaintiffs, so that the aggregate attorneys fees will not exceed the percentage agreed to by litigation counsel and the Funds in the applicable task order. Litigation counsel must not make an application for fees that is contrary to the foregoing guideline. In the event that, despite such guideline, in a particular litigation, the legal fees for attorneys for individual plaintiffs together with the fees to be paid to litigation counsel would be an amount that, as a percentage of the net recovery, would exceed the percentage that litigation counsel agreed to in the applicable task order, then the amount of the excess will be netted out of the recovery before the percentage fee of litigation counsel is computed.

The Department reserves the right in any task order retaining Contractor for a specific case to further provide that, under certain circumstances, the fee will not exceed a specified multiplier of Contractor's lodestar. In some instances, the Department may request that Contractor agree to a specific cap on the potential fee that Contractor may recover, irrespective of the lodestar. In any event, the actual fee paid to Contractor shall be subject to court approval and may vary from the amount to which the parties have agreed, but in no event shall the Funds or the class be liable for a fee higher than the amount to which the parties have agreed. Further, when the Funds act as lead plaintiff in federal securities class actions, they have an obligation to review the reasonableness of class counsel's fees, and the Funds may make submissions to the court concerning what they believe to be a reasonable class counsel fee.

Contractor agrees that it will not make any application to a court for attorneys' fees or expenses without the Department's prior written approval.

Contractor will advance all costs and out-of-pocket expenses in the Litigation where the Litigation is a federal securities class action litigation, and, to the extent permitted by law, where the Litigation is not a federal securities class action litigation. Contractor will be reimbursed for such costs and expenses from any proceeds of any judgments or settlements obtained by or through the Funds in the Litigation. In the event no recovery is obtained from any of the defendants in federal securities class action litigations, and in other actions to the extent permitted by law, the Funds and the Department will not be responsible for any of Contractor's legal fees, costs and out-of-pocket expenses.

**Limitations on Reimbursement of Litigation Counsel's Expenses out of the Recovery**

In all cases, the Law Department and the Funds will limit reimbursement of litigation counsel for expenses to the following, all at actual cost or as further limited below, unless written authorization to exceed the specified limits or to bill for other items of expense is obtained in advance, or except as may be required by law:

(i)   Travel, lodging and meals, which shall be paid at rates no greater than the lesser of the actual cost or the maximum amount set forth in the Meals and Incidental Expense Breakdown of the Federal Travel Regulation in effect on the date the expense was incurred. (The federal per diem schedules established for federal travelers will be applied whenever litigation counsel seeks reimbursement for the kinds of expenses covered by such schedules.) Air travel shall be reimbursed at coach rates.

(ii)  Telephone, postal and local messenger charges at actual cost to the Contractor.

(iii) Actual telecopy and facsimile charges, excluding charges for facsimile handling.

(iv)  Actual charges of overnight or express delivery services.

(v)   Photocopying, not to exceed ten cents per page, except that photocopying services, which are required and which must be performed by a third party, shall be reimbursed in the actual amount paid by Contractor, provided the charges are reasonable.

(vi)  Court filing fees, fees for service of summons and subpoenas, fees of court reporters for all or any part of the transcripts necessarily obtained for use in the Litigation, fees and disbursements for printing, fees for witnesses, fees for exemplification and copies of papers necessarily obtained for use in the Litigation, compensation of court-appointed experts, and other itemized, documented costs related to the Litigation.

(vii) Actual fees paid to experts, other law firms, accountants, and consultants whose fees and retention were approved by the Department. For the avoidance of doubt, any legal fees for services that litigation counsel would ordinarily provide itself will not be reimbursable out of the recovery even if litigation counsel pays another law firm for such services. Also, if litigation counsel uses any contract attorneys or paralegals, the cost of such contract attorneys and/or paralegals will not be reimbursable out of the recovery unless as approved by the court.

All fees, costs and expenses for which reimbursement is sought must be actual, reasonable and necessary, properly itemized, and at cost with no markup. No other expenses or disbursements

8

shall be reimbursable from the recovery unless specifically authorized in writing, in advance, by the Department.

**Plan for Monitoring Litigation:**

Contractor agrees to provide the Department with copies of all significant pleadings in any Litigation with respect to which Contractor is litigation counsel, such as the consolidated complaint, motion for class certification, opposition to motions to dismiss and for summary judgment, significant discovery motions, etc., for the Department's review and approval at least 72 hours before the pleadings are filed with the court or as practicable. Contractor agrees to promptly advise the Department in writing of any significant developments in the Litigation, including any settlement discussions. Unless a court appearance, settlement discussion or other important meeting is scheduled less than 48 hours in advance, Contractor will notify the Department of such events at least 48 hours in advance to enable counsel and other representatives of the Funds to attend or participate. During the first week of each month, Contractor shall provide brief e-mail status reports on all Litigation in which Contractor is serving as litigation counsel for the Funds, and, as appropriate, also shall schedule periodic meetings and conference calls with the Department to discuss developments and strategy in prosecuting the Litigation.

**Consultation Regarding Settlement Negotiations:**

All offers of settlement shall be submitted to the Department, which shall, in its sole discretion, make all determinations concerning such offers of settlement, subject to the approval of the Boards of Trustees of the Funds. Contractor agrees to consult with the Department and the Funds and obtain their prior written approval for any proposed resolution of the Litigation with respect to which Contractor is retained as litigation counsel before entering into a final settlement with any of the defendants in the Litigation.

**Public Statements Regarding the Litigation and/or Settlements:**

Contractor agrees that at no time will it disclose to the media any facts involving or relating to the Litigation and/or the settlement thereof without the prior approval of the Department. Contractor understands that this bars all forms of communication, including but not limited to, responding to telephone inquiries and/or issuing public statements or press releases. Contractor will fully cooperate with the Department's and the Funds' press offices regarding requests for information and assist in the preparation of documents relating to the Litigation requested by the Department, the Funds, or the press offices of either.

**Professional Liability Insurance:**

Contractor shall continuously maintain professional liability insurance in the sum of not less than $3,000,000 dollars per claim and $3,000,000 dollars in the aggregate to cover all claims for damages attributable to a negligent act or omission of the law firm in the performance of this Agreement. The professional liability insurance carrier must have an A.M. Best rating of at least A- / VII, a Standard & Poor's rating of at least A, a Moody's Investors Service rating of at least A3, a Fitch Ratings rating of at least A- or a similar rating by any other nationally recognized

statistical rating organization acceptable to the Department unless prior written approval is obtained from the Department.

If the professional liability policy is provided on a claims-made basis, any retroactive date must be prior to the commencement of services and the policy must be maintained until three years after the completion of services. If the claims-made professional liability coverage lapses, is terminated, or is cancelled within the three years following completion of services, Contractor shall obtain tail coverage, or an extended reporting period endorsement, effective upon the lapse, termination, or cancellation of such insurance, unless a new policy is secured with a retroactive date for prior acts coverage prior to the commencement of services under this Agreement.

Prior to registration of the Agreement and upon renewal of the policy of professional liability insurance, Contractor shall file with the Department either (i) a certificate of insurance, along with a duly executed "Certification by Insurance Broker or Agent" (attached) or (ii) a complete copy of the professional liability insurance policy, certified by an authorized representative of the insurance carrier.

Should the professional liability policy lapse or be cancelled or terminated by Contractor or its insurer, Contractor shall provide written notice of the lapse, cancellation or termination to the Department by registered or certified mail, return receipt requested, thirty days prior to the effective date of the lapse, cancellation or termination, and within ten days after receipt of said notice by the Department, Contractor shall deliver to the Department proof of an insurance policy that provides for continuity of insurance coverage and complies with the terms of this Agreement.

The proof of insurance and any notices required under this heading shall be sent to the following address: New York City Law Department, 100 Church Street, New York, N.Y. 10007, Attention: Agency Chief Contracting Officer.

**Indemnification:**

To the fullest extent permitted by law, Contractor shall defend, indemnify and hold harmless the City, including its officials and employees, against any and all claims (even if the allegations of the claim are without merit), judgments for damages on account of any injuries or death to any person or damage to any property, and costs and expenses to which the City or its officials and employees, may be subject to or which they may suffer or incur allegedly arising out of any of the operations of Contractor and/or its subcontractors under this Agreement, including any task orders issued hereunder, to the extent resulting from any negligent act of commission or omission, any intentional tortious act, and/or the failure to comply with law or any of the requirements of this Agreement. Insofar as the facts or law relating to any of the foregoing would preclude the City or its officials or employees from being completely indemnified by Contractor, the City and its officials and employees shall be partially indemnified by Contractor to the fullest extent permitted by law.

## Conflicts of Interest:

During the term of this Agreement, Contractor will be permitted to represent clients other than the City in matters involving the City, or being heard before City agencies, where such matters are not related to the subject matter of an assignment of work under this Agreement (whether pursuant to a Task Order or otherwise) and where the City determines that the conflict of interest related to work being performed under this Agreement and the work to be performed for the other client or prospective client is not incompatible with the Contractor's representation of the City under this Agreement. In light of this restriction, Contractor shall disclose to the City, as soon as is reasonably practicable, the identity of any client or prospective client the Contractor represents or proposes to represent in any matter involving the City, or being heard by any City agency, with a short description of the matter and the possible adverse consequences to the City of such representation. Thereafter, Contractor shall take one of the following actions:

(1) obtain the City's consent, in writing, to waive the conflict. Where appropriate, in the discretion of the City, the City may require, as a condition of such consent, that Contractor implement and maintain, for the duration of the matter, effective screening procedures (an internal "firewall") to prevent the flow of information between the attorneys performing services under this Agreement and the attorneys representing the other client or prospective client, and any such firewall shall be subject to the City's approval; or

(2) discontinue (or forego) its representation of the other client.

## Termination of Agreement:

It is understood that the Department may terminate Contractor's services upon the presentation of a written notice advising of termination, and that such notice shall be effective at the close of business on the day presented, subject to judicial approval of Contractor's withdrawal from representation of the class if applicable and if required. The Department's termination of this Master Agreement shall also terminate any task order issued hereunder unless the Department states otherwise in its written notice of termination; any such termination shall be subject to judicial approval of Contractor's withdrawal from representation of the class if applicable and if required. In the event of termination of this Master Agreement for any reason, excluding fraud, Contractor may seek compensation for its services satisfactorily performed as litigation counsel up to the date of termination, from any recovery in the Litigation during the period that this Master Agreement and the applicable task order was in effect. Any compensation Contractor seeks must be in accordance with the agreed upon fee structure set forth in the task order consistent with the terms and conditions of this Master Agreement.

Should Contractor believe that it can no longer continue to provide legal services under the terms of this Master Agreement, Contractor shall immediately so advise the Department, which may determine to terminate the Master Agreement and seek substitution of counsel.

Upon termination of this Master Agreement, Contractor, at no cost to the Funds or the City, shall provide reasonable cooperation to facilitate the transition and transfer of the matter to any successor or contractors or to the Department, including execution of all forms necessary, to

effect such transfer of legal representation in accordance with the Department's instructions. Contractor shall promptly deliver to the Department, or its designee, all files, records and other documentation and information concerning matters under this Master Agreement.

## Documentation of Time and Expenses:

Contractor will provide the Department with reports documenting Contractor's time, out-of-pocket costs and expenses on a quarterly basis at a minimum, and on a monthly basis if there is activity in a matter. Such reports shall also provide a narrative summary of work performed during the period covered by the monthly report and work reasonably anticipated to be performed in the near future.

## Confidentiality:

A. In addition to any confidentiality obligations of Contractor set forth in this Agreement (including any attachments hereto), Contractor agrees to hold confidential, both during and after the completion or termination of this Agreement, all of the reports, information, and data, furnished to, or prepared, assembled or used by, the Contractor under this Agreement. The Contractor agrees that such reports, information, and data shall not be disclosed to any person or entity without the prior written approval of the Department, unless such disclosure is required by law or order of a court or administrative body. Notwithstanding the foregoing, the Department may authorize Contractor to use or disclose any such reports, information, or data in connection with the Matter(s) provided that such authorization is consistent with applicable law.

B. The Contractor agrees to maintain the confidentiality of such reports, information, and data by using a reasonable degree of care, and using at least the same degree of care that the Contractor uses to preserve the confidentiality of its own confidential information.

C. The Contractor shall restrict access to such reports, information, and data to persons who have a legitimate work related purpose to access such reports, information, or data. The Contractor agrees that it will instruct its employees and agents to maintain the confidentiality of any such reports, information, and data.

## Title and Ownership:

Upon execution of this Master Agreement, any reports, documents, data, photographs and/or other materials produced pursuant to this Master Agreement, and any and all drafts and/or other preliminary materials in any format related to such items, shall become the exclusive property of the City.

Any reports, documents, data, photographs and/or other materials produced pursuant to this Master Agreement, including any task order issued hereunder ("**Copyrightable Materials**") shall be considered "work-made-for-hire" within the meaning and purview of Section 101 of the United States Copyright Act, 17 U.S.C. §101, and the City shall be the copyright owner thereof and of all aspects, elements and components thereof in which copyright protection might subsist. To the extent that the Copyrightable Materials do not qualify as "work-made-for-hire," the

Contractor hereby irrevocably transfers, assigns and conveys exclusive copyright ownership in and to the Copyrightable Materials to the City, free and clear of any liens, claims, or other encumbrances. The Contractor shall retain no copyright or intellectual property interest in the Copyrightable Materials, and they shall be used by the Contractor for no other purpose without the prior written permission of the City.

The Contractor acknowledges that the City may, in its sole discretion, register copyright in the Copyrightable Materials with the U.S. Copyright Office or any other government agency authorized to grant copyright registrations. The Contractor shall cooperate in this effort, and agrees to provide any further documentation necessary to accomplish this.

**Warranties and Indemnification:**

**A.** **Warranties of Title:** Contractor represents and warrants that the Copyrightable Materials: (a) are wholly original material not published elsewhere (except for material that is in the public domain); (b) do not violate any copyright law; (c) do not constitute defamation or invasion of the right of privacy or publicity, and (d) are not an infringement of any kind, of the rights of any third party. To the extent that the Copyrightable Materials incorporate any non-original material, the Contractor has obtained all necessary permissions and clearances, in writing, for the use of such non-original material under this Master Agreement, copies of which shall be provided to the City upon execution of this Master Agreement.

**B.** **Intellectual Property Indemnification:** The Contractor shall defend, indemnify and hold the City harmless from and against any and all claims, suits, damages, judgments, liabilities, costs and expense, including reasonable attorneys' fees, to which it may be subject because of or related to any claim that the Copyrightable Material infringes or violates the copyright, trademark, or any other property or personal right of any third party. This indemnification shall survive the termination or expiration of this Master Agreement and any task orders hereunder. This indemnification provision shall not be limited in any way by the Contractor's obligations to obtain insurance as provided under this Master Agreement.

**Notices:**

All notices to the Contractor that are required to be made in writing must be sent by mail, hand-delivery, or over-night carrier to the Contractor at the address indicated on the first page of this Master Agreement, or to such other address(es) or addressee(s) as the Contractor may notify the Department of from time to time, or as may be set forth in a particular task order. Notices and correspondence that do not require an original signature may be made by e-mail if permitted in an applicable task order.

All notices to the Department that are required to be given in writing must be sent by mail, hand-delivery, or over-night carrier to the Department at the following address or at such other addresses or addressees as the Department may notify the Contractor of from time to time, or as may be set forth in a particular task order:

Ms. Inga Van Eysden, Senior Counsel
Affirmative Litigation Division
New York City Law Department
100 Church Street, Room 20-087
New York, New York 10007

Notices to the Funds shall be given as set forth in a particular task order or as directed in a subsequent communication by the Department.

Notices and correspondence that do not require an original signature may be made by e-mail if permitted in an applicable task order.

**Resolution of Disputes:**

1.      Except as provided in 1(a) below, all disputes between the City and the vendor that arise under, or by virtue of, this Agreement shall be finally resolved in accordance with the provisions of this section and Section 4-09 of the PPB Rules.  This procedure shall be the exclusive means of resolving any such disputes.

> (a) This section shall not apply to disputes concerning matters dealt with in other sections of the PPB Rules or to disputes involving patents, copyrights, trademarks, or trade secrets (as interpreted by the courts of New York State) relating to proprietary rights in computer software, or to termination other than for cause.

> (b) For construction and construction-related services this section shall apply only to disputes about the scope of work delineated by the Agreement, the interpretation of Agreement documents, the amount to be paid for extra work or disputed work performed in connection with the Agreement, the conformity of the vendor's work to the Agreement, and the acceptability and quality of the vendor's work; such disputes arise when the City Engineer, City Resident Engineer, City Engineering Audit Officer, or other designee of the Commissioner makes a determination with which the vendor disagrees.  For construction, this section shall not apply to termination of the Agreement for cause or other than for cause.

2.      All determinations required by this section shall be clearly stated, with a reasoned explanation for the determination based on the information and evidence presented to the party making the determination.  Failure to make such determination within the time required by this section shall be deemed a non-determination without prejudice that will allow application to the next level.

3.      During such time as any dispute is being presented, heard, and considered pursuant to this section, the Agreement terms shall remain in full force and effect and, unless otherwise directed by the ACCO or Engineer, the vendor shall continue to perform work in accordance with the Agreement and as directed by the Agency Chief Contracting Officer ("**ACCO**") or City

Engineer, City Resident Engineer, City Engineering Audit Officer, or other designee of the Commissioner. Failure of the vendor to continue the work as directed shall constitute a waiver by the vendor of any and all claims being presented pursuant to this section and a material breach of contract.

4.  Presentation of Dispute to Agency Head.

(a)  Notice of Dispute and Agency Response. The vendor shall present its dispute in writing ("**Notice of Dispute**") to the Agency Head within the time specified herein, or, if no time is specified, within thirty (30) days of receiving written notice of the determination or action that is the subject of the dispute. This notice requirement shall not be read to replace any other notice requirements contained in the Agreement. The Notice of Dispute shall include all the facts, evidence, documents, or other basis upon which the vendor relies in support of its position, as well as a detailed computation demonstrating how any amount of money claimed by the vendor in the dispute was arrived at. Within thirty (30) days after receipt of the complete Notice of Dispute, the ACCO or, in the case of construction or construction-related services, the City Engineer, City Resident Engineer, City Engineering Audit Officer, or other designee of the Commissioner, shall submit to the Agency Head all materials he or she deems pertinent to the dispute. Following initial submissions to the Agency Head, either party may demand of the other the production of any document or other material the demanding party believes may be relevant to the dispute. The requested party shall produce all relevant materials that are not otherwise protected by a legal privilege recognized by the courts of New York State. Any question of relevancy shall be determined by the Agency Head whose decision shall be final. Willful failure of the vendor to produce any requested material whose relevancy the vendor has not disputed, or whose relevancy has been affirmatively determined, shall constitute a waiver by the vendor of its claim.

(b)  Agency Head Inquiry. The Agency Head shall examine the material and may, in his or her discretion, convene an informal conference with the vendor and the ACCO and, in the case of construction or construction-related services, the City Engineer, City Resident Engineer, City Engineering Audit Officer, or other designee of the Commissioner, to resolve the issue by mutual consent prior to reaching a determination. The Agency Head may seek such technical or other expertise as he or she shall deem appropriate, including the use of neutral mediators, and require any such additional material from either or both parties as he or she deems fit. The Agency Head's ability to render, and the effect of, a decision hereunder shall not be impaired by any negotiations in connection with the dispute presented, whether or not the Agency Head participated therein. The Agency Head may or, at the request of any party to the dispute, shall compel the participation of any other vendor with a contract related to the

15

work of this Agreement and that vendor shall be bound by the decision of the Agency Head. Any vendor thus brought into the dispute resolution proceeding shall have the same rights and obligations under this section as the vendor initiating the dispute.

(c)     Agency Head Determination. Within thirty (30) days after the receipt of all materials and information, or such longer time as may be agreed to by the parties, the Agency Head shall make his or her determination and shall deliver or send a copy of such determination to the vendor and ACCO and, in the case of construction or construction-related services, the City Engineer, City Resident Engineer, City Engineering Audit Officer, or other designee of the Commissioner, together with a statement concerning how the decision may be appealed.

(d)     Finality of Agency Head Decision. The Agency Head's decision shall be final and binding on all parties, unless presented to the Contract Dispute Resolution Board ("**CDRB**") pursuant to this section. The City may not take a petition to the CDRB. However, should the vendor take such a petition, the City may seek, and the CDRB may render, a determination less favorable to the vendor and more favorable to the City than the decision of the Agency Head.

5.     Presentation of Dispute to the Comptroller. Before any dispute may be brought by the vendor to the CDRB, the vendor must first present its claim to the Comptroller for his or her review, investigation, and possible adjustment.

(a)     Time, Form, and Content of Notice. Within thirty (30) days of receipt of a decision by the Agency Head, the vendor shall submit to the Comptroller and to the Agency Head a Notice of Claim regarding its dispute with the agency. The Notice of Claim shall consist of (i) a brief statement of the substance of the dispute, the amount of money, if any, claimed and the reason(s) the vendor contends the dispute was wrongly decided by the Agency Head; (ii) a copy of the decision of the Agency Head, and (iii) a copy of all materials submitted by the vendor to the agency, including the Notice of Dispute. The vendor may not present to the Comptroller any material not presented to the Agency Head, except at the request of the Comptroller.

(b)     Agency Response. Within thirty (30) days of receipt of the Notice of Claim, the agency shall make available to the Comptroller a copy of all material submitted by the agency to the Agency Head in connection with the dispute. The agency may not present to the Comptroller any material not presented to the Agency Head, except at the request of the Comptroller.

(c)     Comptroller Investigation. The Comptroller may investigate the claim in dispute and, in the course of such investigation, may exercise all powers

16

provided in sections 7-201 and 7-203 of the New York City Administrative Code. In addition, the Comptroller may demand of either party, and such party shall provide, whatever additional material the Comptroller deems pertinent to the claim, including original business records of the vendor. Willful failure of the vendor to produce within fifteen (15) days any material requested by the Comptroller shall constitute a waiver by the vendor of its claim. The Comptroller may also schedule an informal conference to be attended by the vendor, agency representatives, and any other personnel desired by the Comptroller.

(d)   Opportunity of Comptroller to Compromise or Adjust Claim.   The Comptroller shall have forty-five (45) days from his or her receipt of all materials referred to in 5(c) to investigate the disputed claim. The period for investigation and compromise may be further extended by agreement between the vendor and the Comptroller, to a maximum of ninety (90) days from the Comptroller's receipt of all the materials. The vendor may not present its petition to the CDRB until the period for investigation and compromise delineated in this paragraph has expired. In compromising or adjusting any claim hereunder, the Comptroller may not revise or disregard the terms of the Agreement between the parties.

6.   Contract Dispute Resolution Board.   There shall be a Contract Dispute Resolution Board composed of:

(a)   the chief administrative law judge of the Office of Administrative Trials and Hearings ("**OATH**") or his/her designated OATH administrative law judge, who shall act as chairperson, and may adopt operational procedures and issue such orders consistent with this section as may be necessary in the execution of the CDRB's functions, including, but not limited to, granting extensions of time to present or respond to submissions;

(b)   the City Chief Procurement Officer ("**CCPO**") or his/her designee; any designee shall have the requisite background to consider and resolve the merits of the dispute and shall not have participated personally and substantially in the particular matter that is the subject of the dispute or report to anyone who so participated , and

(c)   a person with appropriate expertise who is not an employee of the City. This person shall be selected by the presiding administrative law judge from a prequalified panel of individuals, established and administered by OATH, with appropriate background to act as decision-makers in a dispute. Such individuals may not have a contract or dispute with the City or be an officer or employee of any company or organization that does, or regularly represent persons, companies, or organizations having disputes with the City.

7.      Petition to CDRB.  In the event the claim has not been settled or adjusted by the Comptroller within the period provided in this section, the vendor, within thirty (30) days thereafter, may petition the CDRB to review the Agency Head determination.

(a)     Form and Content of Petition by Vendor.  The vendor shall present its dispute to the CDRB in the form of a Petition, which shall include (i) a brief statement of the substance of the dispute, the amount of money, if any, claimed, and the reason(s) the vendor contends that the dispute was wrongly decided by the Agency Head; (ii) a copy of the decision of the Agency Head; (iii) copies of all materials submitted by the vendor to the agency; (iv) a copy of the decision of the Comptroller, if any, and (v) copies of all correspondence with, and material submitted by the vendor to, the Comptroller's Office.  The vendor shall concurrently submit four complete sets of the Petition: one to the Corporation Counsel (Attn: Commercial and Real Estate Litigation Division), and three to the CDRB at OATH's offices, with proof of service on the Corporation Counsel. In addition, the vendor shall submit a copy of the statement of the substance of the dispute, cited in (i) above, to both the Agency Head and the Comptroller.

(b)     Agency Response. Within thirty (30) days of receipt of the Petition by the Corporation Counsel, the agency shall respond to the statement of the vendor and make available to the CDRB all material it submitted to the Agency Head and Comptroller. Three complete copies of the agency response shall be submitted to the CDRB at OATH's offices and one to the vendor.  Extensions of time for submittal of the agency response shall be given as necessary upon a showing of good cause or, upon the consent of the parties, for an initial period of up to thirty (30) days.

(c)     Further Proceedings.  The Board shall permit the vendor to present its case by submission of memoranda, briefs, and oral argument. The Board shall also permit the agency to present its case in response to the vendor by submission of memoranda, briefs, and oral argument.  If requested by the Corporation Counsel, the Comptroller shall provide reasonable assistance in the preparation of the agency's case.  Neither the vendor nor the agency may support its case with any documentation or other material that was not considered by the Comptroller, unless requested by the CDRB. The CDRB, in its discretion, may seek such technical or other expert advice as it shall deem appropriate and may seek, on its own or upon application of a party, any such additional material from any party as it deems fit. The CDRB, in its discretion, may combine more than one dispute between the parties for concurrent resolution.

(d)     CDRB Determination.  Within forty-five (45) days of the conclusion of all submissions and oral arguments, the CDRB shall render a decision resolving the dispute. In an unusually complex case, the CDRB may render its decision in a longer period of time, not to exceed ninety (90) days, and

shall so advise the parties at the commencement of this period. The CDRB's decision must be consistent with the terms of the Agreement. Decisions of the CDRB shall only resolve matters before the CDRB and shall not have precedential effect with respect to matters not before the CDRB.

(e) Notification of CDRB Decision. The CDRB shall send a copy of its decision to the vendor, the ACCO, the Corporation Counsel, the Comptroller, the CCPO, the Office of Construction, the PPB, and, in the case of construction or construction-related services, the City Engineer, City Resident Engineer, City Engineering Audit Officer, or other designee of the Commissioner. A decision in favor of the vendor shall be subject to the prompt payment provisions of the PPB Rules. The Required Payment Date shall be thirty (30) days after the date the parties are formally notified of the CDRB's decision.

(f) Finality of CDRB Decision. The CDRB's decision shall be final and binding on all parties. Any party may seek review of the CDRB's decision solely in the form of a challenge, filed within four months of the date of the CDRB's decision, in a court of competent jurisdiction of the State of New York, County of New York pursuant to Article 78 of the Civil Practice Law and Rules. Such review by the court shall be limited to the question of whether or not the CDRB's decision was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion. No evidence or information shall be introduced or relied upon in such proceeding that was not presented to the CDRB in accordance with Section 4-09 of the PPB Rules.

8. Any termination, cancellation, or alleged breach of the contract prior to or during the pendency of any proceedings pursuant to this section shall not affect or impair the ability of the Agency Head or CDRB to make a binding and final decision pursuant to this section.

If the terms of this Master Agreement are satisfactory, please indicate Contractor's acceptance by having Contractor's authorized representative sign in the space provided below, and have the Master Agreement returned to this office to my attention. By signing this Master Agreement, Contractor also agrees that the provisions of Rider 1 (General Provisions), Appendix B (the firm's commitments regarding data security), the Guidelines for Outside Counsel, the HireNYC Rider, and Rider 2 (Local Laws 30 and 33 of 2012 Whistleblower Protection Expansion Act Contract Rider and Poster), all of which are annexed hereto and made a part hereof, constitute material conditions of this Master Agreement, and that the New York City Law Department Securities Litigation Counsel RFP released March 15, 2018 (the "**RFP**"), and Contractor's proposal in response to the RFP, are incorporated herein by this reference. In the event of any conflict between the body of this Master Agreement and any task order issued hereunder, or any schedule, appendix or other attachment, or any document incorporated by reference, the body of this Master Agreement shall govern. In the event of any conflict between Contractor's proposal in

19

response to the RFP and any of the documents mentioned in the prior sentence (other than Contractor's proposal), then Contractor's proposal shall be last in the order of precedence. Please note that Rider 1 to this Agreement includes an Affirmation which must be filled out and signed by Contractor and returned to the Department along with the rest of the Agreement. Please also note that there is a form of Certification by Insurance Broker or Agent appended to this Agreement, which must be filled out and signed by Contractor's insurance broker or agent and returned to the Department along with the evidence of professional liability insurance, workers compensation and disability coverage required by this Agreement. In addition, this Agreement contains an Acknowledgment form, which must be notarized and returned as well. A fully executed copy of this Agreement will be sent to you.

Very truly yours,

ANITA FAJANS
Deputy Agency Chief Contracting Officer
New York City Law Department

**AGREED TO AND ACCEPTED:**

Kessler Topaz Meltzer & Check, LLP

By: _____
[Sign Name]

Print Name: Darren Check

Print Title: Partner

Date: 2|7|2019

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE A. HEDICK, JR., *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, *et al.*,<br><br>Defendants. | Case No. 19-1339 (RMD)<br><br>CLASS ACTION |
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, *et al.*,<br><br>Defendants. | Case No. 19-1845 (RMD)<br><br>CLASS ACTION |
| TIMBER HILL LLC, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, *et al.*<br><br>Defendants. | Case No. 19-2807 (RMD)<br><br>CLASS ACTION |

**SUPPLEMENTAL DECLARATION OF CAROL V. GILDEN**

- 1 -

I, Carol V. Gilden, declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1.      I am a Partner at the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and I am a member in good standing of the bar of the State of Illinois and I am admitted to practice in the United States District Court for the Northern District of Illinois.  I serve as counsel for the New York City Funds ("NYC").

2.      Attached as **Exhibit A** is a true and correct copy of the Supplemental Declaration of Alan H. Kleinman.

3.      Attached as **Exhibit B** is a true and correct copy of the April 26, 2019 article, "8 Firms Vie for Lead In $16B Kraft Heinz Stock-Drop Suit," published in *Law360*.

4.      Attached as **Exhibit C** is a true and correct copy of the transcript of the May 1, 2019 hearing held before the Honorable Robert M. Dow, Jr. in *Hedick v. The Kraft Heinz Company, et al.*, Case No. 19-1339 (N.D. Ill.).

5.      Attached as **Exhibit D** is a true and correct copy of the Notice of Errata to Supplement Filing filed in *Ciraulu v. American Realty Capital Properties, Inc., et al.*, Case No. 14-8659, Dkt. 54 (S.D.N.Y. Dec. 30, 2014).

6.      Attached as **Exhibit E** is a true and correct copy of a May 20, 2019 screenshot of information displayed on the Bloomberg Professional Services terminal regarding The Kraft Foods Group.

7.      Attached as **Exhibit F** is a true and correct copy of the July 2, 2015 4:09 pm EDT press release issued by The Kraft Heinz Company, "The Kraft Heinz Company Announces Successful Completion of the Merger between Kraft Foods Group and H.J. Heinz Holding Corporation."

- 3 -

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Date:   May 22, 2019

_/ s / Carol V. Gilden_
Carol V. Gilden

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE A. HEDICK, JR., *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, *et al.,*<br><br>Defendants. | Case No. 19-cv-1339 (RMD)<br><br>CLASS ACTION |
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, *et al.,*<br><br>Defendants. | Case No. 19-cv-1845 (SJC)<br><br>CLASS ACTION |
| TIMBER HILL LLC, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY, *et al.*<br><br>Defendants. | Case No. 19-2807 (RMD)<br><br>CLASS ACTION |

## SUPPLEMENTAL DECLARATION OF ALAN H. KLEINMAN

Alan H. Kleinman hereby declares, pursuant to 28 U.S.C. § 1746:

- 1 -

2518834 v1

1. I am Senior Counsel at the New York City Law Department ("Law Department"). I submit this declaration in further support of the application made by certain New York City Funds described below (the "NYC Funds") for consolidation, appointment as lead plaintiff, and approval of their selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as lead counsel. I previously submitted a Declaration on April 25, 2019 in support of the NYC Funds' motion for lead plaintiff.

2. As explained in my prior Declaration, the Law Department is the legal arm of the City of New York. Pursuant to the powers and duties granted to it under Section 394 of the New York City Charter, the Law Department represents all City agencies, the Comptroller and the NYC Funds.

3. Each NYC fund plaintiff is a legal entity that has been established by statute to hold funds that will be paid out pursuant to statutory formulas to qualifying pensioners. Each fund plaintiff invests pension assets to maximize the funds available for its members and participants.

4. The governance of each fund plaintiff is also set out by statute. Each fund plaintiff has a Board, with prescribed Board members. The Boards, as the governing entities for each fund plaintiff, are empowered to make decisions about those funds, including the decision to assert legal claims to recover losses to those funds.

5. Pursuant to New York City Charter § 394(a), the Corporation Counsel is the "attorney and counsel for the city and every agency thereof and shall have charge and conduct all the law business of the city and its agencies." As set forth in the New York City Charter § 391, the Corporation Counsel is the head of the Law Department, which creates authority for attorneys in the Law Department to act as counsel for each plaintiff fund.

- 2 -

2518834 v1

6. The New York City Charter assigns the Law Department "the right to institute actions in law or equity and any proceedings by law in any court . . . to maintain, defend and establish the rights, interests, revenues, property, privileges, franchises or demands of the city or of any part or portion thereof[.]" *Id.* § 394(c). In other words, the Law Department has the responsibility to develop a unified litigation strategy on their behalf. In all instances of securities litigation, the participating funds pursue the unified litigation strategy carried out by the attorneys in the Affirmative Litigation Division in the Law Department, who oversee all the City's securities litigation.

7. The Affirmative Litigation Division attorneys take a very active role in securities litigation, ensuring that the interests of the City and the class it seeks to represent as a fiduciary are advanced. I have reviewed closely – and edited – everything that our outside counsel, Cohen Milstein, has presented to the Court on behalf of the NYC Funds in the *Kraft Heinz* litigation.

8. In sum, while each fund plaintiff has a Board that must authorize the Law Department to assert legal claims and approve any settlement brought under the securities laws, the legal representation of each NYC fund asserting claims in *Kraft Heinz* is overseen and conducted by the Law Department.

9. Accordingly, in this litigation, the Law Department recommended that each injured NYC retirement fund pursue claims with respect to losses in Kraft Heinz securities. Each Board reviewed the recommendation, and voted in favor of authorizing the Law Department to pursue lead plaintiff status.

10. The Law Department, through established protocols, then selected outside counsel which it would oversee. After a competitive bidding process, the Law Department selected Cohen Milstein to represent all injured NYC Funds. We have done all we can to position the

- 3 -

2518834 v1

NYC Funds as the best lead plaintiff: we have one excellent law firm to represent the Class with a very competitive fee structure to ensure that the maximum recovery goes to Kraft Heinz investors.

11.    Another way to consider the unity of interests reflected by the NYC Funds is to look at how they engage in regular business activities. The New York City Comptroller issues Consolidated Annual Financial Reports ("CAFR"). *See, e.g.*, The City of New York, New York, *Comprehensive Annual Financial Report of the Comptoller for the Fiscal Year Ended June 30, 2018*, available at https://comptroller.nyc.gov/wp-content/uploads/documents/CAFR2018.pdf. As detailed therein, the Comptroller is the custodian of the assets of the NYC Funds, and serves as Trustee on four of the five funds and as an investment advisor for all five funds. As custodian, the Comptroller contracts with a custodial bank which holds assets of all the funds except the Teachers' Variable Fund. As permitted by NYC Admin. Code §§ 13-235 and 13-702, the Boards have delegated their funds' investment authority to the Comptroller. Under New York City Charter § 94 and NYC Admin. Code § 13-536, the Comptroller in turn delegates these functions to the head of the Bureau of Asset Management ("BAM"), which exercises all investment management and advisory powers delegated to the Comptroller collectively by the Boards. BAM implements the Boards' decisions, reports on investment performance, and advises the Boards on a range of investment-related topics. Each system's portfolios are managed predominantly by external investment managers, hired by BAM with the Boards' approval, who have specific mandates about how they may invest, including in: publicly traded securities, private equity, real estate, infrastructure, hedge funds, and fixed income investments. These investment assets totaled nearly $196 billion in June 2018, making the NYC Funds the fourth largest public pension fund in the country. The fact that the NYC Funds provide

- 4 -

2518834 v1

consolidated financial reporting reflects their unity and central oversight, just as the separate financial reporting reflects the legal independence of the five pension plans. As stated in the CAFR: "The financial reporting entity consists of the City government and its component units, which are legally separate organizations *for which the City is financially accountable*." *Id.* at 10 (emphasis added).

12.     Although each NYC fund is legally distinct, their cohesiveness is further demonstrated by the fact that New York City sponsors or participates in providing benefits to its employees, the majority of whom are members of one of these pension funds (which are collectively referred to as "NYCRS"). Each fund administers a qualified pension plan ("QPP") and one or more variable supplements funds ("VSFs") or tax-deferred annuity programs ("TDA Programs") that supplement the pension benefits. Likewise, these funds function under existing State statutes and City laws, which are the basis by which benefit terms and employer and member contribution requirements are established. *Id.* at 127, 130.

13.     In paragraph 7 of the Declaration I submitted on April 25, 2019, I noted the seven cases in which the NYC Funds have previously been appointed a lead plaintiff or class representative. Neither in those cases nor in cases where the NYC Funds sought to be appointed lead plaintiff but did not have the greatest financial interest has a court ever treated the NYC Funds as an unrelated group of funds. To the contrary, U.S. courts always understood that where the NYC Funds operate under the same statutory framework, with the same financial guarantor, using the same investment adviser and same legal counsel, they are a proper single movant for purposes of the PSLRA.

- 5 -

2518834 v1

14.     In their opposition brief filed in *Kraft Heinz*, the Foreign Funds question the veracity of the NYC Funds' certifications concerning what they claim are "commingled" funds. *See* Dkt. 90, at 2.

15.     The NYC Funds do maintain commingled accounts, which reflects their cohesive, albeit independent, investment strategies.  These accounts are used for all sorts of investments, including investments in U.S. equities, international equities, debt instruments, and other types of investments.  With respect to Kraft Heinz securities, in addition to directly owned accounts, two commingled accounts were used for common stock by certain of the NYC Funds to achieve economies of scale and reduce transaction costs.  In the commingled accounts, each NYC Fund is charged with gains or losses from a particular security, in exactly the same way as it would as if it had held the security in an independently maintained account.  This treatment of assets each fund holds are reflected in all the accounting activities the Comptroller performs.

16.     The NYC Funds have identified all the transactions in Kraft Heinz securities during the relevant period and assigned the gain or loss to the proper fund; there is no double counting of any investment.  Accordingly, the certifications that I submitted on April 25, 2019 (*see* Dkt. 47-3), reflect the separate transactions for each of the NYC Funds and are accurate as submitted.  The Private Securities Litigation Reform Act ("PSLRA") does not require movants to provide account-level detail concerning their investments in the securities at issue, and it would make no difference here where the certifications accurately presented the transactions and the gains and losses of each NYC fund.

17.     While the certifications I submitted in support of the NYC Funds' motion for lead plaintiff are fully compliant with the PSLRA, even if the NYC Funds' *Kraft Heinz* transactions in the commingled accounts were separated out, the NYC Funds' LIFO losses would not change.

- 6 -

2518834 v1

And, if the NYC Funds' *Kraft Heinz* transactions in the commingled accounts were separated out and excluded, the NYC Funds' LIFO losses would be reduced only by $2,140,327 to $57,117,380.77.

18.    In their opposition brief filed in *Kraft Heinz*, the Foreign Funds also questioned whether certain transactions on June 24, 2016 and June 23, 2017 listed on my certifications were open market purchases and sales. *See* Dkt. 90, at 8-9. These transactions were open market purchases and sales and are appropriately and correctly accounted for in my certifications. I confirmed this after reviewing the Foreign Funds' argument. Moreover, certain characteristics of the June 24, 2016 and June 23, 2017 transactions establish that they are open market transactions: the quantity of Kraft Heinz shares purchased and sold on that day differ (they are not identical amounts); the transactions on those days were executed by an independent, third-party broker (Barclays); the NYC Funds paid commission fees on those transactions; and the transaction amount on those days was less than the daily volume traded by the NYC Funds. Moreover, all of NYC's transactions, including for TRS Var-A, were within the publicly-traded price range, and the dates used for those transactions were settlement dates.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:    May 22, 2019

Alan H. Kleinman

2518834 v1

**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | Consolidated<br>Civil Action No.: 11-cv-0433 |
| *Plaintiff*, | Judge Eli Richardson<br>Magistrate Judge Joe B. Brown |
| v. | |
| COMMUNITY HEALTH SYSTEMS, INC., WAYNE T. SMITH and W. LARRY CASH, | |
| *Defendants*. | |

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement, dated January 21, 2020 (the "Stipulation"), is made and entered into by and among the following: (i) the New York City Employees' Retirement System, the Teachers' Retirement System of the City of New York, the New York City Fire Department Pension Fund, the New York City Police Pension Fund, and the Teachers' Retirement System of the City of New York Variable Annuity Program (collectively, "the Funds" or "Lead Plaintiff"), on behalf of itself and the Class, by and through Lead Counsel in the Litigation; and (ii) Community Health Systems, Inc. ("CHSI" or the "Company"), Wayne T. Smith ("Smith"), and W. Larry Cash ("Cash") (collectively, the "Defendants"), by and through their counsel of record in the Litigation.[1]  The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.    OVERVIEW OF THE LITIGATION

### A.  Commencement and Consolidation of the Litigation

This Litigation is pending in the United States District Court for the Middle District of Tennessee before the Honorable Eli Richardson (the "Court").  Beginning on May 9, 2011, three securities class actions were filed in this Court: *Norfolk County Ret. Sys. v. Community Health Systems, Inc., et al.*, No. 3:11-cv-00433; *De Zheng v. Community Health Systems, Inc., et al.*, No. 3:11-cv-00451; *Minneapolis Firefighters' Relief Assoc. v. Community Health Systems, Inc., et al.*, No. 3:11-cv-00601 (collectively, the "Litigation").  Following publication of notice pursuant to the Private Securities Law Reform Act ("PSLRA"), several investors moved for appointment as the lead plaintiff.  On December 28, 2011, the Honorable John T. Nixon consolidated the class

---

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

On October 15, 2019, Defendants filed a petition to appeal the October 2, 2019 class certification order under Federal Rule of Civil Procedure 23(f) in the Sixth Circuit.  On October 16, 2019, Lead Plaintiff filed its answer to Defendants' petition.  On October 23, 2019, the Sixth Circuit denied Defendants' petitions for leave to appeal the class certification order.

On November 13, 2019, Lead Plaintiff moved for an extension of time to file a draft order regarding class notice.  On November 18, 2019, Defendants opposed this motion.

### 4. Settlement Negotiations

On September 24, 2019, the parties, including principals and outside counsel for both sides, met for a full-day mediation.  The mediation was facilitated by retired Judge Phillips, who had continued to engage in discussions with the parties following the 2015 mediation.  The mediation was unsuccessful, but the parties continued to negotiate utilizing retired Judge Phillips.

On November 29, 2019, following retired Judge Phillips' final recommendation, the parties reached an agreement in principle to settle the class action for $53,000,000.00 (the "Settlement") for the benefit of the Class, subject to approval by the Court.  The Settlement is set forth in a Memorandum of Understanding dated December 11, 2019, which the trustees for the Funds approved on December 18, 2019.

## II.   LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted therein.  However, Lead Plaintiff and Lead Counsel recognize the expense and risk of continued proceedings necessary to prosecute the Litigation against Defendants through trial and post-trial appeals.  Lead Plaintiff and Lead Counsel have also concluded that a judgment in the amount of claimed