# EXHIBIT A

WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: 415-788-4220

*Local Counsel*

NEIL L. SELINGER
DAVID C. HARRISON
RICHARD W. COHEN
THOMAS M. SKELTON
STACEY E. BLAUSTEIN
LOWEY DANNENBERG BEMPORAD & SELINGER, P.C.
One North Lexington Avenue
White Plains, New York 10601-1714
Telephone: 914-997-0500

*Attorneys for the New York City Pension Funds*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. GARBER, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>   vs.<br><br>JUNIPER NETWORKS, INC., MARCEL GANI, WILLIAM R. HEARST III, SCOTT KRIENS, STRATTON SCLAVOS, PRADEEP SINDHU, and WILLIAM R. STENSRUD,<br><br>       Defendants. | 3:06-cv-04327-MJJ<br>(San Francisco Division)<br><br>Date: October 24, 2006<br>Time: 9:30 a.m.<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL** |

[caption continued on next page]

---

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1

MARSHALL PETERS, Individually And On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

JUNIPER NETWORKS, INC., MARCEL GANI, ROBERT R. B. DYKES, and SCOTT KRIENS,

Defendants.

5:06-cv-05303-JW
(San Jose Division)

**CLASS ACTION**

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1

## NOTICE OF MOTION

**TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, October 24, 2006, at 9:30 a.m. or as soon thereafter as the matter may be heard, the New York City Pension Funds (the "NYC Funds") will move before the Honorable Martin J. Jenkins, United States District Judge for the Northern District of California, United States Courthouse, Courtroom 11, 450 Golden Gate Avenue, San Francisco, California 94102, pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 and Local Rule 23-1(b), for an order (a) appointing the NYC Funds as Lead Plaintiff and (b) approving the NYC Funds' selection of Lowey Dannenberg Bemporad & Selinger, P.C. ("LDBS") as Lead Counsel.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of Neil L. Selinger, the Declaration of Carolyn Wolpert, the certificates of clients and counsel, and the pleadings heretofore filed herein.

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      THE NYC FUNDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS

        A.      The Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      The Pending Class Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    ARGUMENT

        A.      Consolidation of the Class Actions Is Appropriate . . . . . . . . . . . . . . . . . . . . 7

        B.      The NYC Funds Should Be Appointed Lead Plaintiff

                1.      The Procedure Required Under the PSLRA
                        for Appointment of Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      The NYC Funds Have Timely Moved
                        for Appointment as Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                3.      The NYC Funds Have the Largest Financial
                        Interest in the Relief Sought by the Class . . . . . . . . . . . . . . . . . . . . . 11

                4.      The NYC Funds Otherwise Satisfy
                        the Requirements of Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.      The NYC Funds' Selection of
                Lead Counsel Should Be Approved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1

**TABLE OF AUTHORITIES**

**CASES**

*Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146
(N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Ellen Rubke, as Trustee of the 1986 Rubke Living Trust,*
*v. Capitol Bancorp, Ltd.*, No. C 05-4800,
2006 U.S. Dist. LEXIS 25170 (N.D. Cal. March 31, 2006) . . . . . . . . . . . . . . . . . . . 12, 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10, 12, 14, 16

*In re Cendant Corp. Sec. Litig.*, 264 F.3d 206 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102
(N.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Oracle Securities Litigation*, 852 F. Supp. 1437
(N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022
(S.D. Cal. Jan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schriver v. Impac Mortgage Holdings, Inc.*, SACV 06-31,
2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2006) . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Siegall v. TIBCO Software, Inc.*, No. C 05-2146,
2006 U.S. Dist. LEXIS 26780 (N.D. Cal. Feb. 24, 2006) . . . . . . . . . . . . . . . . . . . . . 11

*Takeda v. Turbodyne Technologies*, 67 F. Supp. 2d 1129
(C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061
(C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES**

15 U.S.C. § 78u-4(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 78u-4(a)(3)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. §§ 78j(b) and 78t(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**RULES**

Rule 23, F.R.C.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

Rule 42(a), F.R.C.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**OTHER AUTHORITIES**

H.R. Rep. No. 104-369 (1995) (Conf. Rep.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Manual for Complex Litigation Third*, § 20.123 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

**PRELIMINARY STATEMENT**

The New York City Pension Funds (defined below and referred to as the "NYC Funds" or "Movants") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order (1) appointing the NYC Funds as Lead Plaintiff of the class of purchasers of the securities of Juniper Networks, Inc. ("Juniper" or the "Company"); and (2) approving the NYC Funds' selection of Lowey Dannenberg Bemporad & Selinger, P.C. ("LDBS") as Lead Counsel for the Class.

## I.    THE NYC FUNDS

Movants consist of five pension systems of the City of New York: the New York City Employees' Retirement System ("NYCERS"), the New York City Teachers' Retirement Fund ("Teachers"), the New York City Fire Department Pension Fund ("Fire"), the New York City Police Department Pension Fund ("Police"), the New York City Board of Education Retirement System ("BERS"), and four variable supplemental funds: the New York City Police Superior Officers' Variable Supplements Fund, the New York City Police Officers' Variable Supplements Fund, the New York City Fire Officers Variable Supplements Fund, and the New York City Firefighters Variable Supplements Fund. *See* Declaration of Carolyn Wolpert ("Wolpert Decl."), ¶¶ 3-9.  The NYC Funds had more than $113 billion in assets as of July 31, 2006, and as of June

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    1

30, 2005 had approximately 263,000 retirees and 350,000 active members.[1] *Id.* ¶ 3.

As of June 30, 2005, NYCERS held $35.5 billion in assets, Police held $17.2 billion in assets, and Fire held $5.7 billion in assets. As of June 30, 2006, Teachers held $47.2 billion in assets, BERS held $2.1 billion in assets, and the four supplemental funds collectively held assets of over $3 billion. Wolpert Decl. ¶¶ 4-8.

NYCERS is the largest retirement system in New York City, with over 200,000 active members and approximately 120,000 retirees and beneficiaries. Police serves more than 36,000 active members and 37,000 retired members. Fire serves almost 12,000 active members and just under 18,000 retired members. Teachers serves approximately 101,000 active members and 72,000 retirees. BERS serves approximately 22,000 active members and 12,000 retired members. *Id.*

The NYC Funds purchased 3.6 million shares of Juniper common stock during the proposed Class Period, as defined below, and suffered losses of $13,254,465 calculated on a "FIFO" basis, and losses of $7,410,052 determined on a "LIFO" basis.[2] Moreover, as a result of

---

[1] The New York City Comptroller is investment advisor to, and custodian of, the NYC Funds. Pursuant to Title 13 of the New York City Administrative Code, the Boards of Trustees of the NYC Funds have delegated to the Comptroller of the City of New York investment responsibility for management of the NYC Funds' assets. Wolpert Decl. ¶ 10.

[2] The "FIFO" methodology is referred to as "first-in-first-out." FIFO matches the first shares purchased against the first shares sold. Therefore, where the investor purchased shares before the start of the class period, those purchases are matched with the investor's first sales during the class period, so that the resulting gain or loss is excluded from the loss calculation. Then, remaining class period sales are matched against class period purchases. Lastly, for any shares retained at the end of the class period, they are assigned a value equal to the average stock price of the company during the 90 days following the end of the class period, which value is subtracted from the price paid for those shares. In contrast, under the "LIFO" or "last-in, first-out" methodology, the most recent sales are matched against the most recent purchases during the class period.

---

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    2

their significant investments in Juniper, the NYC Funds held approximately 1.6 million shares of the Company's common stock following the close of the Class Period, valued at approximately $22,000,000. *See* NYC Funds' Loss Analyses, annexed as Exhibit 1 to the Declaration of Neil L. Selinger ("Selinger Decl.").

The NYC Funds believe that they have the largest financial interest at stake in these actions, and otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. The NYC Funds, therefore, are presumptively entitled to serve as the Lead Plaintiff that will prosecute the litigation. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). As demonstrated herein, the NYC Funds are eminently qualified for that role. Indeed, the NYC Funds are precisely the type of institutional investor Congress had in mind to step forward and prosecute class actions on behalf of public investors who have been defrauded. Accordingly, the NYC Funds should be appointed Lead Plaintiff under the PSLRA.

## II. STATEMENT OF FACTS

### A. The Claims

Juniper, a networking equipment company headquartered in Sunnyvale, California, is one of more than 100 companies implicated in the ever-widening government probe of stock option-granting practices. A key purpose of stock options is to give recipients an incentive to improve their employer's performance, including its stock price. Backdating the option grants so that they carry a lower strike price runs counter to this goal, by giving the recipient a paper gain right from the start. Moreover, that instant paper gain is the equivalent of extra pay which, under generally accepted accounting principles ("GAAP"), must be expensed by the corporation. The

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1     3

failure to do so will inflate a company's profits, and may require that financial results be restated.

On August 10, 2006, following a series of adverse disclosures targeting Juniper as a likely offender, Juniper admitted that it had improperly accounted for the Company's stock option grants, and is required to restate its financial results for the years 2003 through 2005 and the first quarter of 2006. Moreover, the Company's proxy statements and other public disclosures relating to its stock-option practices were also admittedly materially misstated for more than three years. It also appears that the Company's senior executives routinely profited during this period by receiving stock options issued and valued through back-dated documents.

In May 2006, the Center for Financial Research and Analysis ("CFRA"), an accounting research firm, initially identified Juniper as one of 17 companies that had a "high risk profile" for possible back-dating of stock options granted to senior executives. CFRA concluded that about one half of the stock option grants to Juniper executives examined were "at risk."

For example, Juniper's proxy statement dated April 13, 2000 indicated that during 1999 options to purchase a total of 2,235,000 shares of Juniper stock at $60.71 per share were granted to five Juniper executives on October 4, 1999. The CFRA study revealed that date was the lowest closing price of Juniper stock during the month. Notably, the price of the Company's shares rose considerably during the days following the purported stock option grants of October 4, 1999. By the close of trading on October 25, 1999, Juniper's stock price had risen more than 41% to $85.75 per share (adjusted for a subsequent split). Thus, five Juniper executives made gains (on paper) aggregating nearly $56 million from these option grants. A similar pattern occurred with respect to options granted to senior management in late 2000, and again in early

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF
1964 / BRF / 00079514.WPD v1                    4

2002.

A J. P. Morgan analyst concurrently issued a report concluding that there had been a "suspicious pattern of grants" – six of 15 grants of options by Juniper were made when the stock was at its low price for a given month.

The disclosure of the CFRA and J. P. Morgan reports was followed by Juniper's announcement on May 22, 2006 that the United States Attorney for the Eastern District of New York had subpoenaed the Company's records regarding stock option grants, and that the Company's Audit Committee had commenced an internal investigation concerning the Company's stock option practices.

Following these adverse disclosures, the market price of Juniper stock declined by 14% from a close of $16.87 per share on May 17, 2006 to $14.55 per share on May 24, 2006.

After the market closed on July 19, 2006, Juniper announced that its Audit Committee had preliminarily concluded that the Company had back-dated certain stock option grants. Juniper further disclosed that it would take non-cash charges for stock-based compensation expense, but was not yet able to determine (a) the amount of such charges, (b) the tax and accounting impact of these charges, or (c) the periods that would require restatement.

Following these additional adverse disclosures, the price of Juniper stock dropped again on heavy volume, from a July 19 closing price of $14.14 per share to close at $13.63 per share on July 21, 2006.

Finally, on August 10, 2006, Juniper reported that it would restate over three years of financial results to record additional non-cash charges for stock-based compensation. The Company also disclosed that it expected to be de-listed from NASDAQ because of an inability to

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    5

timely file financial statements for the quarter ending June 2006. In response to these latest revelations, Juniper's market price dropped $1.21 (9 percent) from a closing price of $13.41 per share on August 9, 2006 to $12.20 per share on August 11, 2006.

### B. The Pending Class Actions

Presently pending in this District are two securities class action lawsuits: (1) *Garber v. Juniper Networks, Inc., et al.*, Case No. 3:06-cv-04327-MJJ, filed on July 14, 2006 in the San Francisco Division, and (2) *Peters v. Juniper Networks, Inc., et al.*, Case No. 5:06-cv-05303-JW, filed on August 29, 2006 in the San Jose Division.[3]

The class action complaints charge Juniper and certain senior officers and directors with, *inter alia*, improper disclosure and accounting for expenses relating to the grant of stock options, thereby inflating Juniper's reported operating results and earnings over a period of several years. Both complaints name as defendants certain Juniper senior executives who were awarded lucrative options to purchase Juniper shares, including Scott Kriens (Juniper's CEO), and Marcel Guni (Juniper's Chief of Staff and former CFO).[4] The complaints assert violations of Sections 10(b) (the antifraud provision) and 20(a) (the controlling person provision) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission.

---

[3] In addition, pending in this District are at least seven related shareholder derivative actions, listed in defendant's Motion for Administrative Relief to Consider Whether Cases Should Be Related, dated September 12, 2006.

[4] Also named as defendants in *Garber* are Prindeep Sindhu, Juniper's co-founder, Chief Technical Officer and Vice Chairman; two members of the Audit Committee, William R. Hearst III, a director since 1996, and Stratton Sclavos, a director since 2000; and William S. Stenrud, a director since 1996 who served on the Compensation Committee.

---

The putative class alleged in the *Peters* action is comprised of all those who purchased or otherwise acquired Juniper securities from April 10, 2003, the date Juniper announced first-quarter financial results for fiscal 2003, through August 10, 2006 (the "Class Period"), the date the Company announced it was restating its financial results.

As shown in their Certifications (attached as Ex. 1 to the Selinger Decl.), during the Class Period, not only did the NYC Funds purchase millions of shares of Juniper common stock on the open market, but they also acquired over 85,000 shares pursuant to the April 2004 merger of Juniper with Netscreen Technologies, Inc. Total losses sustained by the NYC Funds are also estimated at more than $13.2 million on a FIFO basis and $7.4 million using the LIFO method.

For all the reasons set forth below, the NYC Funds have satisfied the PSLRA's requirements, and should be appointed to serve as Lead Plaintiff and their selected counsel approved as Lead Counsel.

## III.    ARGUMENT

### A.    Consolidation of the Class Actions Is Appropriate

Where, as here, more than one action on behalf of a class asserting substantially the same claims has been filed, the PSLRA requires the Court to address consolidation before it appoints a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064-65 (C.D. Cal. 1999). Consolidation pursuant to Rule 42(a), Fed. R. Civ. P., is appropriate when actions involve common questions of law and fact.[5] *Manual for Complex*

---

[5]    Rule 42(a) allows this Court to order consolidation of separate actions:

When actions involving a common question of law or fact are

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                7

*Litigation Third*, § 20.123, at 13-14 (1995).

Here, the two class actions pending before this Court assert similar factual and legal issues – both allege federal securities violations resulting from the dissemination of false financial statements. Both complaints allege that Defendants made improper disclosures relating to the accounting for the grant of stock options to senior executives of Juniper in violation of the federal securities laws. Juniper and certain senior executives are defendants in both of these cases, and the claims against them are similar. While the two complaints assert different class periods, "[n]either Rule 42 nor the PSLRA demands that the actions be identical before they may be consolidated."[6] *Takeda v. Turbodyne Technologies*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999). Because these actions are based on the same facts, involve the same subject matter, and will require the same discovery, consolidation is therefore appropriate.[7]

### B. The NYC Funds Should Be Appointed Lead Plaintiff

#### 1. The Procedure Required Under the PSLRA for Appointment of Lead Plaintiff

The PSLRA, which became law on December 22, 1995, applies to this case. The Ninth

---

pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

[6] The *Garber* complaint was filed prior to the August 10, 2006 announcement that Juniper was restating over three years of financial results. The *Peters* complaint was filed three weeks after that announcement, and extended both the beginning and close of the class period to conform with the August 10 disclosures.

[7] On September 12, 2006, counsel for defendants filed a motion to have the *Garber* action be deemed related to *Peters* and several derivative actions involving Juniper which are also pending before Judge Ware. The NYC Funds take no position regarding which division of this Court, and to which Judge, the cases should be assigned.

---

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                                      8

Circuit in *Cavanaugh* has interpreted the provisions of the PSLRA as setting forth a three-step process by which the District Court is to select a lead plaintiff. First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff within 60 days of publication of the notice. 306 F.3d at 729 (citing 15 U.S.C. § 78u-4(a)(3)(A)). Here, the initial notice was published on July 17, 2006. Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, regardless of whether they have previously filed a complaint in the action. The application of the NYC Funds has been timely filed within this 60-day period.

Second, the district court must consider the losses allegedly suffered by the various movants and select as the presumptive Lead Plaintiff the one "who has the largest financial interest . . . [and] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Cavanaugh*, 306 F.3d at 730 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).[8]

---

[8] The PSLRA sets forth the following standard:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . [within 60 days of publication of the notice];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    9

The *Cavanaugh* court cautioned that a "straightforward application of the statutory scheme . . . provides no basis for comparing plaintiffs within each other on any basis other than their financial stake in the case." 306 F.3d at 732. In making this inquiry, the Court should rely on the movant's complaint, certification and other submissions; there is no adversary process to test the substance of their claims. *Id.* at 730 (citing *In re Cendant Corp. Sec. Litig.*, 264 F.3d 206, 264 (3d Cir. 2001)). Moreover, in determining losses, the Courts in the Ninth Circuit have been given broad discretion. 306 F.3d at 730, n.4. "Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Id*. at 732. As shown below, under these standards, the NYC Funds should be appointed as Lead Plaintiff.

### 2. The NYC Funds Have Timely Moved for Appointment as Lead Plaintiff

The 60-day period under the PSLRA in which motions for the appointment of lead plaintiff must be filed expires on September 15, 2006. Here, the NYC Funds have timely moved within the statutory 60-day period. As required by the PSLRA and local rules, the NYC Funds have also provided Certifications setting forth their transactions in Juniper securities during the Class Period. *See* Certifications and Loss Analyses, Ex. 1 to the Selinger Decl. The Certifications indicate that the NYC Funds have reviewed a complaint filed in the actions, understand the responsibilities of serving as lead plaintiff, and are willing to serve in the best interests of the class. *Id.* In addition, the NYC Funds have retained competent and experienced

15 U.S.C. § 78u-4(a)(3)(B)(iii).

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1          10

counsel. *See* Firm Resume, Selinger Decl., Ex. 3; Wolpert Decl. ¶ 22. Movants' choice of counsel, LDBS, has a history, as amply demonstrated in its firm resume, of achieving superior results for class members in similar securities fraud class actions.

### 3. The NYC Funds Have the Largest Financial Interest in the Relief Sought by the Class

The NYC Funds are presumptively the most adequate plaintiff for the reasons set forth below and because, to counsel's knowledge, they have the largest financial interest in the relief sought by the Class of any class member that has moved to be designated Lead Plaintiff. While the Ninth Circuit has not established a mandatory formula to use in determining which plaintiff has the "largest financial interest," many district courts have adopted the approach articulated by the Third Circuit in *Cendant*, which set forth three factors bearing on that determination: (1) the number of shares purchased, (2) the total net funds expended by the plaintiffs during the class period, and (3) the approximate losses suffered by the plaintiffs. *See Schriver v. Impac Mortgage Holdings, Inc.*, SACV 06-31, 2006 U.S. Dist. LEXIS 40607, at *10 (C.D. Cal. May 2006) (citing *Cendant*, 264 F.3d at 262); *In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 2004); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) ("largest financial interest" equates with amount of potential recovery, number of shares purchased, and estimated losses); *Siegall v. TIBCO Software, Inc.*, No. C 05-2146, 2006 U.S. Dist. LEXIS 26780 (N.D. Cal. Feb. 24, 2006) (same).

As reflected in their Certifications and Loss Analyses, during the proposed Class Period, the NYC Funds collectively purchased 3,600,000 shares of Juniper common stock and expended $35,000,000 in net funds. Moreover, the NYC Funds collectively sustained aggregate losses of approximately $13.3 million on a FIFO basis and $7.4 million on a LIFO basis. They thus have

a significant financial interest in the outcome of this litigation.

As of this filing, there does not appear to have been any motion for appointment as lead plaintiff by a party who claims to have sustained greater financial losses in connection with the purchase and sale of Juniper common stock during the Class Period. Upon information and belief, because the NYC Funds' financial interest in this matter is the largest of any competing lead plaintiff movant, it should be designated the presumptive Lead Plaintiff. *See Cavanaugh*, 306 F.3d at 729-30; *Ellen Rubke, as Trustee of the 1986 Rubke Living Trust, v. Capitol Bancorp, Ltd.*, No. C 05-4800, 2006 U.S. Dist. LEXIS 25170 (N.D. Cal. March 31, 2006); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1152 (N.D. Cal. 1999).

Moreover, by emphasizing financial stake, the PSLRA was intended to encourage institutional investors like the NYC Funds to take up the mantle as lead plaintiff. *Aronson v. McKesson HBOC*, 79 F. Supp. 2d at 1153 ("the framers of the [PSLRA] envisioned that established institutional investors would take control of securities litigation"). *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.). (The Act was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake") (reprinted at 1995 U.S.C.C.A.N. 730, 733).

The legislative history of the PSLRA also demonstrates that it was intended to prompt institutional investors, such as the NYC Funds, to serve as a lead plaintiff. As the Statement of Managers for the PSLRA noted:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    12

> courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff.

> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds – small investors – ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with the large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.).

In order to promote the statutory goal of eliminating the problems inherent in attempting to supervise a litigation through collective action, "it makes sense that one client will provide more control than a disjointed group concocted by plaintiffs' counsel – even if the group consists of institutional investors." *Aronson*, 79 F. Supp. 2d at 1153-54. Under these circumstances, the NYC Funds – which have each delegated to the New York City Comptroller investment responsibility for the Funds' assets (Wolpert Decl., ¶ 10) – satisfy the PSLRA's prerequisites for appointment as lead plaintiff in these class actions and should be appointed as Lead Plaintiff pursuant to PSLRA § 21D(a)(3)(B)(iii).[9]

### 4. The NYC Funds Otherwise Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

---

[9] Notably, the court in *Aronson* recognized that although the NYC Funds "are separate entities . . . they are essentially one person for purposes of the Reform Act, because they are all under the jurisdiction of [the] New York City Comptroller's Office, and are represented in their dealings with private counsel through one 'in-house counsel', the Corporation Counsel of the City of New York." 79 F. Supp. 2d at 1157, n.11.

---

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    13

Civil Procedure." § 78u-4(a)(3)(B)(iii). Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Of these prerequisites to class certification, only typicality and adequacy are relevant in appointing the Lead Plaintiff. *Cavanaugh*, 306 F.3d at 729-30; *Rubke v. Capitol Bancorp,* 2006 U.S. Dist. LEXIS 25170, at *8. Consequently, in deciding a lead plaintiff motion, courts shall limit their inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *Cavanaugh*, 306 F.3d at 732; *Turbodyne Technologies*, 67 F. Supp. 2d at 1136.

Under Rule 23 (a)(3), the claims or defenses of the representative parties must be typical of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all class members. *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. Typicality does not require that there be no factual differences between the class representatives and the class members, because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.

The NYC Funds satisfy the typicality requirements of Rule 23 because, just like all other class members they: (1) purchased or acquired Juniper stock at prices artificially inflated by the false and misleading statements issued by defendants; (2) have claims that arise out of the same

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    14

course of events; and (3) suffered damages when Juniper's true condition became known to the marketplace, causing its share price to decline. *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)*; Schriver v. Impac Mortgage Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *17. Thus the NYC Funds meet the typicality requirements, since questions of liability are common to all proposed class members.

Under Rule 23, the representative party must also "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The PSLRA directs the court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representative's choice of counsel who is qualified, experienced, and able to vigorously conduct the proposed litigation. *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002).

Here, the NYC Funds are an adequate class representative because their interest in aggressively and vigorously pursuing the claims against defendants is aligned with the interests of the members of the class, who similarly suffered losses because of defendants' improper accounting and disclosures relating to their stock options practices. Further, there is no antagonism between the NYC Funds' interests and those of the other members of the class. Indeed, the NYC Funds' interests are precisely aligned with members of the class because they both purchased Juniper stock and were damaged by the defendants' conduct. The NYC Funds have also demonstrated their intention to take an active role in the litigation by working closely with their counsel to achieve the best possible result for the class. *See* Wolpert Decl. ¶¶ 22-24.

Finally, as shown below, the NYC Funds' proposed lead counsel is highly qualified,

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                                15

experienced and able to conduct this complex litigation in a professional manner. Thus, the NYC Funds are the most adequate lead plaintiff in this case.

### C. The NYC Funds' Selection of Lead Counsel Should Be Approved

The PSLRA provides for the Lead Plaintiff, subject to Court approval, to select and retain counsel to represent the Class. § 21D(a)(3)(B)(v). *See Cavanaugh*, 306 F.2d at 734 ("the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff"). In this regard, following an extensive merit selection process, the NYC Funds have selected LDBS to act as Lead Counsel for the Class. *See* Wolpert Decl. ¶ 22. This process included the negotiation of a schedule for the payment of attorneys' fees that are far less than fees typically awarded in securities fraud class action litigation. *Id.* ¶ 23. LDBS is among the preeminent plaintiffs' class action law firms, having taken leading roles in numerous important actions on behalf of defrauded investors. *See* Firm Resume, Ex. 3 to Selinger Decl.; Wolpert Decl. ¶ 22. LDBS has been recognized recently as appropriate lead counsel in cases brought since the passage of the PSLRA, including post-PSLRA appointments. Selinger Decl. ¶ 3. LDBS also has served as lead counsel in securities class actions in this Court. *E.g., In re Oracle Securities Litigation*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994).

### **CONCLUSION**

For all the reasons stated above, the NYC Funds respectfully request that they be appointed as Lead Plaintiff for the Class and that Lowey Dannenberg Bemporad & Selinger, P.C., be appointed as Lead Counsel for the Class.

---

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF
1964 / BRF / 00079514.WPD v1                16

Date:   September 15, 2006

SCHUBERT & REED LLP


_____/s/_____
WILLEM F. JONCKHEER S.B.N. 178748
Three Embarcadero Center, Suite 1650
San Francisco, California  94111
Telephone:    415-788-4220

*Local Counsel*

NEIL L. SELINGER
DAVID C. HARRISON
RICHARD W. COHEN
THOMAS M. SKELTON
STACEY E. BLAUSTEIN
LOWEY DANNENBERG BEMPORAD
  & SELINGER, P.C.
One North Lexington Avenue
White Plains, New York  10601-1714
Telephone:    914-997-0500

*Attorneys for the New York City Pension Funds*

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY THE NEW YORK CITY PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF

1964 / BRF / 00079514.WPD v1                    17