# EXHIBIT F

F2AACIRCps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PERRY CIRAULU, individually
and on behalf of all others
similarly situated, *et al.*,

           Plaintiffs,

       v.                    14-cv-8659 (AKH)

AMERICAN REALTY CAPITAL
PROPERTIES, INC., *et al.*,

           Defendants.

------------------------------x

                        New York, N.Y.
                        February 10, 2015
                        4:10 p.m.

Before:

            HON. ALVIN K. HELLERSTEIN

                        District Judge

                   APPEARANCES

ROBBINS GELLER RUDMAN & DOWD LLP
     Attorneys for Plaintiff TIAA-CREF
BY:  DARREN J. ROBBINS, ESQ.
     JASON A. FORGE, ESQ.
     SAMUEL H. RUDMAN, ESQ.
     ALAN I. ELLMAN, ESQ.

LOWENSTEIN SANDLER
     Attorneys for the Jet Capital plaintiffs
BY:  LAWRENCE M. ROLNICK, ESQ.

BERNSTEIN LIEBHARD
     Attorneys for Plaintiff Ohio State
     Teachers Retirement System
BY:  STANLEY D. BERNSTEIN, ESQ.
     JEFFREY M. HABER, ESQ.

APPEARANCES (Cont'd)

MICHAEL J. HALL, ESQ.
        Director of Outside Counsel
        Office of the Ohio Attorney General

COHEN MILSTEIN SELLERS & TOLL P.L.L.C.
        Attorneys for Plaintiff New York City Funds
BY:  DANIEL B. REHNS, ESQ.

THE ROSEN LAW FIRM, P.A.
        Attorneys for Plaintiffs Lee Revocable Living Trust,
        Cathyann Chino, and Stephen Tubin
BY:  KEVIN K. CHAN, ESQ.

LOWEY DANNENBERG COHEN & HART, P.C.
        Attorneys for Plaintiff Corsair
BY:  BARBARA J. HART, ESQ.
        THOMAS M. SKELTON, ESQ.
        BRIANNA WILSON, ESQ.

MOTLEY RICE LLC
        Attorneys for Plaintiffs Union Asset Management,
        KBC Asset Management, and the Sheet Metal Workers
        National Pension Fund
BY:  WILLIAM H. NARWOLD, ESQ.

WEISSLAW LLP
        Attorneys for Plaintiff Simon Abadi
BY:  JOSEPH H. WEISS, ESQ.

MORGAN & MORGAN, PC
        Attorneys for Plaintiff Tampa General Employees
        Retirement Fund
BY:  ELIZABETH S. METCALF, ESQ.

NEWMAN FERRARA LLP
        Attorneys for Plaintiff Thomas Serafin
BY:  COURTNEY F. CHENETTE, ESQ.

LAW OFFICES OF CURTIS V. TRINKO, LLP
        Attorneys for Plaintiffs Edward Froehner
        and Thomas Serafin
BY:  CURTIS V. TRINKO, ESQ.

SCHUBERT JONCKHEER & KOLBE LLP
        Attorneys for Plaintiff Edward Froehner
BY:  WILLEM F. JONCKHEER, ESQ.

                          APPEARANCES (Cont'd)

GARDY & NOTIS, LLP
        Attorneys for Plaintiff Robert Schenker
BY:  JAMES S. NOTIS, ESQ.

THE BROWN LAW FIRM
        Attorneys for Plaintiff Michael Graham
        Turner Trust
BY:  TIMOTHY w. BROWN, ESQ.

STEPTOE & JOHNSON LLP
        Attorneys for Defendant Brian Block
BY:  MICHAEL C. MILLER, ESQ.

ABRAHAM FRUCHTER & TWERSKY LLP
        Attorneys for Plaintiff Charles D. Hoffman
BY:  JEFFREY S. ABRAHAM, ESQ.




MILBANK TWEED HADLEY & MCCLOY LLP
        Attorneys for Defendant American Realty Capital
        Properties, Inc.
BY:  ANTONIA M. APPS, ESQ.
     JED M. SCHWARTZ, ESQ.

WEIL, GOTSHAL & MANGES LLP
        Attorneys for the ARCP Independent Director Defendants
BY:  STEPHEN A. RADIN, ESQ.
     EVERT J. CHRISTENSEN, ESQ.

SHEARMAN & STERLING LLP
        Attorneys for the Underwriter Defendants
BY:  ADAM S. HAKKI, ESQ.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
        Attorneys for Defendant Nicholas Schorsch
BY:  DANIEL KRAMER, ESQ.
     AUDRA J. SOLOWAY, ESQ.

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
        Attorneys for Defendants AR Capital LLC
        and Nicholas Radesca
BY:  ANDREW E. GOLDSMITH, ESQ.

PETRILLO, KLEIN & BOXER LLP
        Attorneys for Defendant Lisa Beeson
BY:  ALEXANDRA R. CLARK, ESQ.

APPEARANCES (Cont'd)

SIDLEY AUSTIN LLP
      Attorneys for Defendant Grant Thornton
BY:   BRUCE R. BRAUN, ESQ.
      GARY F. BENDINGER, ESQ.

DECHERT LLP
      Attorneys for Defendant RCS Capital Corp.
BY:   ANDREW J. LEVANDER, ESQ.

          (In open court)

          THE COURT:  I'm trying to order some sensible and efficient procedure.  I'm not sure that I have the entire universe of cases against American Realty Capital Properties, Inc.  And I'm not sure I have all the categories.  Let me see if I can try to understand where we are.

          We have a number of class actions.  We have about three derivative actions.  I just received a letter which referred to a Jet Capital case.  Jet Capital, is Milbank Tweed here?

          MS. APPS:  Yes, your Honor.  Antonia Apps on behalf of Milbank Tweed for American Realty Capital Properties.

          THE COURT:  Do you know who sued you?

          MS. APPS:  Yes.  Yes, your Honor, we know.  Jet Capital has sued us in individual complaints.  They're a standalone plaintiff.  They're not part of the class action.

          THE COURT:  Ms. Apps, you've got to slow down, especially late in the afternoon.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

MS. APPS:  No problem, your Honor.

THE COURT:  Are these class actions?  Jet Capital.

MS. APPS:  No.  Jet Capital is not part of the class action.  It's an individual plaintiff that has separately brought an action against American Realty Capital Properties, or ARCP --

THE COURT:  Are they here?

MS. APPS:  -- and a number of other defendants.

MR. ROLNICK:  Yes, your Honor.

THE COURT:  Tell me your name.

MR. ROLNICK:  Lawrence Rolnick from Lowenstein Sandler on behalf of the Jet Capital plaintiffs.

THE COURT:  Have you signed in?

MR. ROLNICK:  Yes, I have.  I think I was the first. It should be at the top of those cases.

THE COURT:  Step up, please.  I have it, OK.  Lawrence Rolnick of Lowenstein Sandler.

MR. ROLNICK:  Yes, your Honor.

THE COURT:  All right.  So you represent individual plaintiffs?

MR. ROLNICK:  Yes.  We represent a group of institutional investors, all managed by Jet Capital Management. They filed one individual complaint, not a class action.

THE COURT:  So you'll be running your own lawsuit.

MR. ROLNICK:  Exactly, your Honor.

THE COURT:  Are the plaintiffs Ohio State Teachers Retirement here?

MR. BERNSTEIN:  Yes, your Honor.  Stanley Bernstein, Bernstein Liebhard, Ohio.

THE COURT:  All right.  Then there is the New York City Funds?

MR. REHNS:  Yes, your Honor.  Daniel Rehns, Cohen Milstein, for the New York City Funds.

THE COURT:  What are the New York City Funds?

MR. REHNS:  They are a group of the retirement funds managed by the comptroller of the City of New York.

THE COURT:  And then there's, who represents the Rosen law firm?  The Rosen law firm?

MR. CHAN:  Yes, your Honor.  Kevin Chan from The Rosen Law Firm.

THE COURT:  And you're representing what funds?

(Pause)

THE COURT:  Step up and speak in a loud voice.  A loud voice, please.

MR. CHAN:  Kevin Chan from The Rosen law firm.  And I'm here representing the Lee Revocable Trust, Chino, and Tubin, T-u-b-i-n.  And we are here to support --

THE COURT:  All right.  And then there's Corsair?

MS. HART:  Yes, your Honor.  Barbara Hart from Lowey Dannenberg Cohen & Hart.

THE COURT:  And then there's William Narwold, Motley Rice, representing Union, somebody or other?

MR. NARWOLD:  Yes, your Honor.  Union Asset Management, KBC Asset Management, and the Sheet Metal Workers National Pension Fund.

THE COURT:  Mr. Weiss representing Simon Abadi?

MR. WEISS:  Yes, your Honor.

THE COURT:  And Darren Robbins representing TIAA-CREF?

MR. ROBBINS:  That's correct, your Honor.

THE COURT:  And then we have the derivative lawsuits: Timothy Brown, Edward Froehner, Curtis Trinko.

MR. TRINKO:  Yes, your Honor.

THE COURT:  William Jonckheer.

MR. JONCKHEER:  Yes, your Honor.

THE COURT:  Thomas Serafin.

MS. CHENETTE:  Yes, your Honor.

THE COURT:  Are there any plaintiffs whom I have not identified?

MR. ABRAHAM:  Your Honor, Jeffrey Abraham for Plaintiff Charles D. Hoffman.

THE COURT:  Did you sign in, Mr. Abraham?

MR. ABRAHAM:  There was no room on the sheet when I got here, your Honor.

THE COURT:  We'll get another sheet for you.

MR. NOTIS:  Your Honor, James Notis from Gardy & Notis

representing the plaintiff Robert Schenker.

THE COURT:  Did you sign in?

MR. NOTIS:  Yes, your Honor.

THE COURT:  Now, as I'm looking at it, the largest investor in the class action is TIAA-CREF.  So by application of law, TIAA-CREF gets lead status.

MR. ROBBINS:  That is correct, your Honor.

THE COURT:  And you are, again?

MR. ROBBINS:  Pardon me?

THE COURT:  Your name?

MR. ROBBINS:  Darren Robbins, your Honor.

THE COURT:  Come up and sign in on this paper.  Tell me your name again.  I'm sorry, sir.

MR. ROBBINS:  Darren Robbins, your Honor.

THE COURT:  Darren Robbins.  I'm looking for you on this.

MR. ROBBINS:  I think I'm on the top left-hand side with my partners, Sam Rudman and Jason Forge.

THE COURT:  All right.  Is there any objection to TIAA-CREF being the lead plaintiff and Robbins Geller being the lead counsel?

MR. ROBBINS:  Your Honor, I believe that the vast majority of movants took the admonition of the Court at the last hearing and we coordinated and filed the complaint that the Court direct us to, eight or nine movants.  The only two

remaining movants who weren't supportive of that, filing that complaint and moving forward as the Court directed, were New York City and the State of Ohio.  New York City subsequently filed a letter with this Court indicating that it was going to serve as a named plaintiff in the working group that the Court suggested at the last hearing.  The only outstanding movant that appears to not be coordinating is the State of Ohio, here with Mr. Bernstein.

THE COURT:  And what's your position, Mr. Bernstein?

MR. BERNSTEIN:  Good afternoon, your Honor.  Stanley Bernstein.  With me today is Michael Hall of the outside counsel of the Ohio Attorney General's Office, and my partner Jeffrey Haber.  My colleague Glen DeValerio, of Berman DeValerio, got snowed in in Boston.

At the last conference, your Honor indicated, pages 28 and 29 of the transcript, that you preferred some type of working group that would include representatives of the stock class, the bond class, the Cole merger class, stockholders that exchanged their Cole shares for American Realty, as well as a representative of a large pension fund.  State Teachers of Ohio would like to serve in that role, believes there should be an executive committee, a small group, not a group of eight firms that have been cobbled together.  State Teachers is a huge public pension fund, as your Honor indicated, and should be running this case.  There are 76 billion members.

THE COURT:  What would you like to do?

MR. BERNSTEIN:  What we would suggest, your Honor, is a small committee, an executive committee, with two lead counsel, because your Honor suggested there should be two lead counsel, one for the bond, one for the stock.  And Robbins Geller and Motley Rice fit that role.

Your Honor suggested there should be a representative from the Cole merger class on that committee with some authority to represent the interests of the Cole merger class.  That would be State of Ohio.  So we would suggest a three-firm executive committee to lead this case.  By and by, Ohio losses on the Cole merger dwarf those of any other individual plaintiff except for TIAA-CREF.

THE COURT:  Here is what I think.  I think that, until such time as we have a trial or a settlement, there is no need for separate classes with preferred stock or bonds, or the Cole shareholders, that all interests are the same, in making a case against the defendant.

Now, I don't know what is going to happen with the working group, how many there are and how it's going to be divided up.  And I'll need to have some more direction that way from you, Mr. Robbins.  But I don't want to appoint co-lead counsel.  Nor do I want to appoint too many people who have charge of the case.  But maybe you should be part of the working group.  What do you say to that?

MR. ROBBINS:  Your Honor, that was our position at the last hearing.  Mr. Narwold was very supportive of a single lead counsel, TIAA-CREF.

THE COURT:  You'll be the single lead counsel.

MR. ROBBINS:  Yes, your Honor.

THE COURT:  What kind of working group would you have?  Tell me about it.

MR. ROBBINS:  Well, for example, in connection with the complaint that the Court ordered filed within two weeks of the last hearing, we coordinated activities with a number of different firms who participated, including Mrs. Hart's firm, and were successful in filing a comprehensive complaint in two short weeks, just like the Court ordered.  So we're trying to be efficient -- we know of the Court's focus on that -- and effective, and we think we've done that.

Your Honor started the hearing with "sensible and efficient."  And I think that makes sense.  And a single lead counsel would achieve that.

THE COURT:  Is there any room for Mister --

MR. BERNSTEIN:  Bernstein.  State of Ohio, your Honor.

MR. ROBBINS:  Your Honor, we would include them in the working group.  But, again, you directed at the last hearing New York, Corsair, Mr. Weiss, all of their clients, to join the working group in an efficient way.  And we achieved that.  We would include, as we told Mr. Bernstein's partners throughout

this process, that they could work as well, in the working group.

THE COURT:  I think that's the way we'll go.  And if it turns out that the working group is too large, then we'll have to deal with it.

I don't need all the appearances of everybody.  Every time we have an appearance, we don't need everyone to show.  And I'm going to look to you, Mr. Robbins, for direction on that.

MR. ROBBINS:  Yes, your Honor.

THE COURT:  I think you need to inform all the members of that working group about what's going on.  But I don't need massive hearings here.  I find that duplicative and expensive, and we're not going to have it.

MR. ROBBINS:  Your Honor gave us that same directive at the beginning of *Jones v. Pfizer*, going back five years.  And your Honor directed us to include the Motley Rice firm in the prosecution of that case.  We did it very effectively, in our opinion.

THE COURT:  That can be done here as well.

MR. ROBBINS:  Thank you, your Honor.

THE COURT:  The derivative cases, though, are different from the class cases.  They are brought in the name of the company itself.  And I think I need to have a separate appointment there.

We have, how many cases?  Two?  The Froehner and Serafin case?

MR. JONCKHEER:  Your Honor, Willem Jonckheer for plaintiff Froehner.  There are four derivative actions that are filed.

THE COURT:  Four derivative actions that are filed.

MR. JONCKHEER:  Yes.

THE COURT:  I don't know all four yet.  I have the Froehner and Serafin case, who want to appoint Schubert Jonckheer & Kolbe, and Newman Ferrara, and Curtis Trinko.

MR. JONCKHEER:  That's correct, your Honor.

THE COURT:  That's not going to happen.  And then there's Hopkins and Appolito, who want to appoint Kahn Swick & Foti.

MR. JONCKHEER:  Your Honor, that motion has been withdrawn, and the Appolito case has been voluntarily dismissed, or I should a say a motion to dismiss it has been filed, the Appolito case and the Staudacher case.

THE COURT:  Who moved to dismiss it?

MR. JONCKHEER:  The Kahn firm, that filed it.

THE COURT:  They just want to withdraw their case?

MR. JONCKHEER:  They withdrew their motion for appointment of lead counsel, and they dismissed the last two filed derivatives, voluntarily.

THE COURT:  How many derivative actions are there now?

MR. JONCKHEER:  That leaves four: the Turner case, the Froehner case, the Serafin case, and the Hopkins case.

THE COURT:  Do the Turner and Hopkins cases, or anyone else, are they here?

MR. BROWN:  Yes, your Honor.  Timothy Brown.

THE COURT:  Come up, please.

MR. BROWN:  Timothy Brown of The Brown Law Firm for plaintiff Turner.  And we're supporting the motion of Froehner and Serafin to be appointed co-lead counsel, with the Trinko law firm as their liaison counsel.

THE COURT:  So how many lawyers are there going to be?

MR. JONCKHEER:  There are four cases.  There would be two co-lead counsel.

THE COURT:  What's the point two co-lead counsel?

MR. JONCKHEER:  In this particular case, it's a large, complex case with various sets of defendants, and we believe that we have an efficient structure in place to handle the case.

THE COURT:  I'm not going to appoint more than one lawyer.  I'll leave one lawyer to represent the derivative plaintiffs.  I don't see where the need is to -- what would be the plan for the case?  Are you going to, probably depose the same people as the class people are going to depose?

MR. JONCKHEER:  That's correct.  There would be factual overlap, coordination.

THE COURT:  I see the need only for one lawyer.  And the one should be a New York lawyer.  Now, that means that the lawyers that have been identified, Newman Ferrara has an office at 1250 Broadway, and Curtis Trinko has an office at 16 West 46th Street, so it should be one of them.

MR. JONCKHEER:  We do have a representative from Newman Ferrara with us today, and perhaps she can address the court.

THE COURT:  Come up.

MS. CHENETTE:  Courtney Chenette from Newman Ferrara. And Newman Ferrara was supporting the motion for co-lead counsel on behalf of Thomas Serafin.

THE COURT:  I think you're all going to have to get together with one lawyer.  If you don't want to identify the lawyer, I will appoint it.  It should be a New York lawyer.

MS. CHENETTE:  And Newman Ferrara would be happy to take that role, sir.

THE COURT:  How does Mr. Trinko feel about it?

MR. TRINKO:  Your Honor, I'm serving as liaison counsel, counsel taking care of the administrative affairs of the case.  I think it's fine.  We've all agreed that Newman Ferrara and the Schubert firm were going to be co-leads.  But if you want only one lead and Newman Ferrara said they would serve, that's fine, your Honor.

THE COURT:  Ms. Chenette, you'll be lead counsel,

then.

MS. CHENETTE:  Thank you, your Honor.

THE COURT:  I've got to say, you can use other people, but they will work under your responsibility.

MS. CHENETTE:  Thank you, your Honor.

THE COURT:  So we'll have lead counsel, Robbins Geller --

MR. ROBBINS:  Thank you, your Honor.

THE COURT:  -- Mr. Robbins, and for the derivative plaintiffs, Courtney Chenette.  And you will take care of working so that there is efficiency between the two of you and minimal friction.

Now, that leaves the Jet Capital parties. Mr. Rolnick.

MR. ROLNICK:  Yes, your Honor.

THE COURT:  So I think what we'll have is a working committee where you for your client, Mr. Robbins for his client, and Ms. Chenette -- Chenette or Charette?

MS. CHENETTE:  Chenette, your Honor.

THE COURT:  -- Chenette, for the derivative plaintiffs, will map out a course of action together and try to work this case in an efficient a way as possible.

MR. ROLNICK:  Thank you, your Honor.

THE COURT:  On court appearances, the three of you will probably come in.  And I'd like to see as few as possible

of the others.

Now, we have a consolidated amended class action that's filed, a document of about 130 pages.  Has Jet Capital filed a complaint?

MR. ROLNICK:  We have, your Honor.

THE COURT:  And do we need a consolidated complaint on the part of the derivative plaintiffs, Ms. Chenette?

MS. CHENETTE:  Yes, your Honor.  And we intend to file it within 30 days.

THE COURT:  Do I have to wait that long?

MS. CHENETTE:  We would request 30 days, as we've just been appointed lead counsel.

MS. APPS:  Your Honor, may I also bring something else to your attention, with respect to amended complaints?

THE COURT:  Yes.

MS. APPS:  So when the audit committee announced, in October of 2014, that investors could no longer rely on certain prior financial statements, it also announced that it was conducting an ongoing investigation.  And in subsequent statements by the company, it's announced that there will be a restatement of prior financials, which could have adjustments. And so I think it makes an enormous amount of sense in this case, your Honor, to actually set a date in the future for an amendment by all -- well, by, particularly by the class action plaintiffs, and if Jet Capital wants to amend, that's fine too.

Because in very high likelihood, they're going to want to amend, in the event of a restatement.

And so we have proposed in our case management plan that the briefing schedule start for the class action cases and, we would submit, Jet Capital should be coordinated, that they should start as of March 31. And the primary reason, your Honor, is that we just don't think we should have to do this twice. And given the posture of the audit committee's investigation, as revealed in the public statements of the company, it makes most sense to give the plaintiffs here, the class action plaintiffs in particular and Jet Capital, a period of time to amend their complaint and then do the briefing schedule for the motion to dismiss.

THE COURT: Are you going to be moving against the derivative plaintiff? It doesn't allege permission to sue?

MS. APPS: So the derivative cases are actually slightly different, for the very reason your Honor has highlighted. So the derivative claim, we would submit, should be handled slightly differently because the independent directors, which are represented by Weil Gotshal, are actually going to make a motion, as your Honor said, pursuant to Rule 23.1. It's a discrete issue. We think that the plaintiffs in the derivative action haven't made the appropriate demand. The futility exception under Maryland is extremely narrow, and that could be an easy way to dispose of the derivative cases,

separately and apart from the class action and the individual case Jet Capital. And so it may make sense, your Honor, to put the briefing schedule on just that single issue, whether they have properly made a demand, separate and apart from the 12(b)(6) motion in the class action Jet Capital.

THE COURT: You have to wait for the amended complaint.

MS. APPS: If they want to file an amended complaint, ARCP -- and I don't mean to speak on behalf of Weil Gotshal for the independent directors, but I understand they have no objection for them to file an amended complaint as well.

So with respect to derivative actions, if they want to file an amended complaint and then tee off a briefing schedule from that point, there's no objection by the defendants.

I will say, your Honor, it's very important to keep them separate for the following weeks. We would submit, for the case management plan for the class action plaintiffs and the individual plaintiffs, it's teed up March 31, and the date, the schedule should be 60, 60, 30. The reason for the 60-day request, your Honor, is because there have been 50 defendants named in the action by the class action plaintiffs to date. There are numerous false statements in the complaint already. And the sheer coordination and the desire on the part of the defendants to avoid, where possible, duplicative motions I think requires a 60-day period, which is, I understand, longer

than what your Honor normally requests.

THE COURT:  60 days from what?

MS. APPS:  From March 31, for the class action plaintiffs and for the individual plaintiffs -- I keep referring to individual plaintiffs, but --

THE COURT:  Let tell me hear first from the derivative plaintiffs.  Ms. Chenette wants 30 days to deliver a complaint, which would require the complaint to be filed March 10.  How do you look upon the issue of demand, Ms. Chenette?

MS. CHENETTE:  Your Honor, the derivative plaintiffs would hope for a concurrent briefing schedule, to address all of the issues in one, singular motion, after lead plaintiffs are able to amend the complaint on March 10.

THE COURT:  You have a different issue.  And I don't need to put it together.  You are bound by different rules as well.  So I think there should be, if there's going to be a motion against the derivative plaintiffs, it can go on a different schedule.  You can file by March 10.  And I don't want any enlargement, or motions for enlargement, on your case.

Ms. Apps, you know it's up, I can expect your motion by March 27?

MS. APPS:  On the derivative actions?

THE COURT:  Yes.

MS. APPS:  Yes.

MR. RADIN:  It would be helpful to have a little bit

more time, your Honor -- Steve Radin from Weil Gotshal -- only so that the defendants could coordinate.

THE COURT: What's to coordinate? Take the lead.

MR. RADIN: The outside directors will be taking the lead.

THE COURT: I don't want numbers of motions.

MR. RADIN: Right. The goal would be to file --

THE COURT: You represent the outside directors.

MR. RADIN: Yes.

THE COURT: How about the inside directors? Do you represent them?

MR. RADIN: Not me.

THE COURT: How many insiders are there? Ms. Apps?

MS. APPS: One moment, your Honor. One moment, your Honor. I'm sorry.

THE COURT: Well, let me see if I can do this. Ms. Apps, you represent the company?

MS. APPS: Yes, correct. And we will in all actions represent the company.

THE COURT: Then we have Shearman & Sterling representing the underwriter defendants?

MR. HAKKI: Yes, your Honor. Adam Hakki.

THE COURT: And we have Paul Weiss representing?

MR. KRAMER: Schorsch, Nicholas Schorsch. Yes, your Honor. Dan Kramer from Paul Weiss.

THE COURT:  And we have Kellogg Huber & Hensen, by Andrew Goldsmith, representing?

MR. GOLDSMITH:  Yes, your Honor, representing AR Capital and Nicholas Radesca.

THE COURT:  How does that fit in?

MR. GOLDSMITH:  AR Capital is a service provider to ARCP, Ms. Apps's client.  Mr. Radesca is their CFO. Mr. Radesca is the CFO of AR Capital.  They were both named as defendants for the first time in the new TIAA January 20th complaint.

THE COURT:  Are you going to be running the case separately?

MR. GOLDSMITH:  We're going to be representing AR Capital and Mr. Radesca.  We would intend to coordinate with the other defendants, although we would like perhaps the opportunity to file our own motion to dismiss.  But we can take that issue up in the future.

THE COURT:  And Petrillo, Klein & Boxer?

MS. CLARK:  Yes.  Alexandra Clark, Petrillo, Klein & Boxer.  We represent Ms. Lisa Beeson.

THE COURT:  Who?

MS. CLARK:  Ms. Lisa Beeson.

THE COURT:  Is it my ears or are people not speaking well?

MS. CLARK:  I'm sorry, your Honor.  Lisa Beeson.  She

is a former COO of ARCP.

THE COURT:  And then there are others also.  How is this going to be organized, Ms. Apps?

MS. APPS:  Starting -- the class actions and Jet Capital, put them in one category.  They have the largest number of defendants.  And the hope is, your Honor, when we do the motion to dismiss proceeding, there can be some coordination.  I certainly cannot represent --

THE COURT:  There's got to be more than a hope.  It's not going to be your motion, is it?  Or will it be?

MS. APPS:  ARCP will certainly be filing a motion to dismiss, your Honor.  It's a large, unwieldy complaint.

THE COURT:  A plain deal would be in effect the plaintiff in a derivative case and a defendant, and the main defendant, in the class action complaint.

MS. APPS:  Your Honor, I don't think we can, ARCP, can coordinate a single brief.  I will say that the goal of all defense counsel -- and I have consulted with many of them, although not necessarily all 50 -- is to do this in as streamlined a way as possible.  There are some defendants who have very unique issues and interests.  There is, as you already noted, your Honor, the underwriters are separately represented.  Grant Thornton is a separate defendant.  There are individual defendants.  There may be a way of streamlining.

THE COURT:  Excuse me.  Is Grant Thornton a defendant

here?

MS. APPS: Yes, your Honor.

MR. ROBBINS: Yes, your Honor.

THE COURT: They were an important client of mine when I was at Stroock. And I think they are still a client with Stroock. And I receive an annual pension from Stroock. So what does that do for me?

MR. ROBBINS: We have no issues with that, your Honor.

MR. BRAUN: Your Honor, Bruce Braun from Sidley Austin on behalf of Grant Thornton. We have no objection.

THE COURT: Anybody else?

MS. APPS: ARCP has no objection.

THE COURT: Too bad.

MS. CHENETTE: Your Honor, if I may just take one moment to clarify, the restatement is coming out on March 1st.

MS. APPS: There has been no public statement by the company as to the date the restatement is going out, your Honor.

THE COURT: It can't give you a date.

MS. CHENETTE: But, your Honor, in terms of timing the amendments in the other case, around March 1st, the derivative plaintiffs believe that it makes the most sense because when that restatement does come out, the demand futility allegations in the derivatives plaintiffs' complaint will be affected by that as well.

THE COURT:  In other words, no one can do anything until there is a restatement.

MS. CHENETTE:  Yes, your Honor.

MR. ROBBINS:  Your Honor, we have a different view. This announcement was made on October 29.

THE COURT:  Make it louder, please.

MR. ROBBINS:  The announcement that the defendants had falsified previously reported earnings was made on October 29th of last year.  It's already been four months.  What we see in the proposed schedule is a delay which will build in a decision on a motion to dismiss that may not be rendered until the end of the year.  Clearly, these defendants have produced documents to the government, your Honor, and at a minimum, they should provide us those, because otherwise what we see is a deferral of this case for at least six or nine months beyond the four that's already occurred.

THE COURT:  You can't get discovery until I decide the motion to dismiss.

MR. ROBBINS:  Not technically correct, your Honor. During the pendency of a motion to dismiss, there is a stay, unless it's lifted.  There is no motion to dismiss pending now. And certainly the service of preservation --

THE COURT:  All that would do is hasten things and confuse things.  I do agree with you, I don't see why a restatement will affect the allegations of falsehood.  They may

add something that you didn't know before, and it may be of evidentiary quality, and it may enable you to get a glimpse of some scienter allegation that you might not otherwise make. But I think the motions can go forward and the complaints can go forward. We don't have to wait.

MR. ROBBINS: And frankly, your Honor, we're a little surprised, given the strict liability claims in issue here. We figured at least some of the defendants would answer. And we actually amended the complaint in the manner the Court directed us so that a motion could be brought 30 days from now against that complaint and get this show on the road.

THE COURT: Ms. Apps.

MS. APPS: There is a major problem with the proposal by the plaintiffs' counsel, your Honor. They are going to want to amend after the restatement. The company has publicly stated that the investigation is ongoing. The company has publicly stated that there are, to date, they have identified no errors in the 2013 prior statements. The current complaint --

THE COURT: It may affect the merits. Probably won't. But it's not going to affect the motion to dismiss.

MS. APPS: It will to this extent, your Honor. There will be numerous -- there already are numerous claims for falsity of certain statements. The nature of the statements, the quantity of the statements, those are the kinds of things

that will change if there's an amended complaint following a restatement and following a further update from the audit committee on its ongoing investigation.

THE COURT:  What's the outside date for reclassification, for a restatement?

MS. APPS:  Your Honor, I think the March 31 date that we proposed for --

THE COURT:  I don't want to wait that long.

MS. APPS:  The company is probably --

THE COURT:  No, we're not going to go there.  So by March 10, Ms. Chenette, you're going to amend.  By March 27 -- I'll give you more time, Ms. Apps.  I think the motion against the derivative plaintiffs can't be by you.  It's got to be by, whom?

MS. APPS:  It's going to be submitted by Weil Gotshal on behalf of the directors, your Honor.

THE COURT:  When do you want?

MR. RADIN:  Can we have until Friday, April 3?

THE COURT:  Yes.

MR. RADIN:  Thank you.

THE COURT:  I'm going to appoint you lead on that. I'm sorry, tell me your name.

MR. RADIN:  I'm sorry.  It's Steven Radin, R-a-d-i-n.

THE COURT:  I'm sorry, Mr. Radin.  So, Mr. Radin, you'll be lead on that motion.

MR. RADIN: Yes.

THE COURT: And I do not expect to see other briefs on it. You have to encompass everyone else's thoughts.

MR. RADIN: Yes.

THE COURT: So plan for that. So April 3. And then --

MR. RADIN: One question.

THE COURT: Yes.

MR. RADIN: We had proposed in the case management order that --

THE COURT: I didn't see that.

MR. RADIN: On the derivative case?

THE COURT: I just didn't see it.

MR. RADIN: We had proposed that we would just deal with the 23.1 standing issue first and not get involved in the myriad of 12(b)(6) arguments that all the other defendants would be making, because the 23.1 motion will hopefully be dispositive.

THE COURT: That's a demand. They're going to make a demand.

MR. RADIN: If it's not dispositive, it will streamline the other briefing tremendously.

THE COURT: I think you're right. I think that the other allegations will find some parallel road with the class action case. So I agree with you. So confine that to 23.1.

And the time for opposition, how about April 24, Ms. Chenette?

MS. CHENETTE:  We would request 60 days, your Honor.

THE COURT:  I'm not giving it to you.  April 24 on that issue.  And reply by May 8.

OK.  So we have a complaint from Mr. Robbins, the class action complaint.  And it's ready to be motioned.

MR. ROBBINS:  Yes, your Honor, either answered or motions brought.

THE COURT:  Are you going to be taking the lead on that, Ms. Apps?

MS. APPS:  Yes, your Honor.

Your Honor, may I just have one more request with respect to the date?  I understand you're going to say we have dates teed off from today.  But if that's the case, then the plaintiffs should not be permitted to make any further amendments based on whatever comes out in the next 60 days.

THE COURT:  I'm not ruling that.

MR. ROBBINS:  Thank you, your Honor.

THE COURT:  It may be overtaken by other things, but I'm not -- so how about March 27?

MS. APPS:  Your Honor, could we ask for a longer period, your Honor, in an attempt to streamline with other defendants?

THE COURT:  April 10.

MS. APPS:  Yes.  Thank you.

THE COURT:  So you will be taking the lead, Ms. Apps, on that motion.

MS. APPS:  Yes.  Well, and we will coordinate with the other defendants and streamline as many motions as possible.

THE COURT:  So I want the other defendants to know that if I see a separate brief, there had better be a very good reason for that separate brief.  You have to work with Ms. Apps.  Her brief will encompass whatever else is needed.

MS. APPS:  Obviously, your Honor, we can address this at another time, but we will need extra pages if that's the case.

THE COURT:  I don't have a page limit.

MS. APPS:  Thanks, your Honor.

THE COURT:  But when I'm bored I stop reading, so...

MR. LEVANDER:  Good afternoon, your Honor.  Andrew Levander from Dechert for RCS Capital.  RCS Capital is a separate public company.  It's not clear to me at all why we're here.  But would it make it easier for your Honor, in addressing the brief issue that you just said, to file a very separate, narrow brief on a separate issue that only applies to RCS, for example, rather than putting in --

THE COURT:  Well, I guess that's true for everybody else.  But I will not look at duplication.  So your brief will not be done for filing until you have seen Ms. Apps's brief.

MR. LEVANDER:  Absolutely.  We will coordinate.  But

it seemed to me to be a narrower, easier way to look at the separate issue, that's only for us.

THE COURT:  And it's true of others too.

MR. LEVANDER:  OK.  Thank you, your Honor.

MR. HAKKI:  Your Honor, the underwriter defendants are in the same boat.

THE COURT:  I said, it's true for others as well.  But don't duplicate it to other people.

So let's assume you'll get everything on April 10. Mr. Robbins, what's the date proposition?

MR. ROBBINS:  Your Honor, if we could have 45 days, that would be great.

THE COURT:  How about May 8?

MR. ROBBINS:  Well, they have had our complaint since January 20th, your Honor.  So they would have had about 60 or 70 days.

THE COURT:  So what.

MR. ROBBINS:  Well, if we could have 45 or 50, presumably there would be --

THE COURT:  May 15th.

MR. ROBBINS:  Thank you, your Honor.

THE COURT:  Reply --

MS. APPS:  June 5th?  Actually, no, I misspoke, your Honor.  May we have June 12th?

THE COURT:  June 3rd.

MR. LEVANDER:  The only issue there, your Honor, is the coordination issue that we just talked about a moment ago.

THE COURT:  You have time.  It's a reply.

MR. ROLNICK:  And, your Honor, Jet Capital will respond on the same schedule.

THE COURT:  You have a different standard, don't you?

MR. ROLNICK:  Excuse me?

THE COURT:  You don't have all the same standards as under the PSLRA.

MR. ROLNICK:  We have all the same standards.  We have one separate claim that's different from the class, and we have fewer defendants.  But we have the same type claims, largely.  We have 75 claims.  We have Section 11 claims.

THE COURT:  All right.  So what do you want to do?

MR. ROLNICK:  I would propose that we put in our brief on the same schedule.  In other words, they'll move in response to our complaint on the same schedule.

THE COURT:  Well, I don't think you need a separate brief.

MR. ROLNICK:  Excuse me?

THE COURT:  I don't think you need separate briefing except on issues that are peculiar to you.  And then you could have it the same way that I've ruled.

MR. ROLNICK:  We will coordinate with class counsel and avoid duplication.

THE COURT:  OK.  But I mean it.

MR. ROLNICK:  Yes, your Honor.

Mr. Robbins, do we need all the defendants in the suit?

MR. ROBBINS:  Your Honor, it's pretty wide ranging. It goes on for well over a year.  We sued basically seven groups of folks.  For example, almost half of the defendants are part of the underwriting syndicate, which sold either a billion dollars of equity, or several billion dollars of debt. So we tried to hone it down and make it very narrow.  I understand it encompasses several groups of people.  But there are strict liability claims.  For example, the directors signed registration statements and disseminated proxies that contained the false information.  So we were very careful in naming who we named.  But each of the defendants is liable, in our view.

THE COURT:  What else can I do today?

How much more damage could I create?

MS. APPS:  Your Honor --

MR. ROBBINS:  Not for today, your Honor.

THE COURT:  Ms. Apps was about to say something.

MS. APPS:  I was just going to say, your Honor, for the remainder of the discovery dates we could set a schedule at a subsequent time.

THE COURT:  What do you mean by "discovery"?

MS. APPS:  To the extent -- your case management plan

does more than deal with a briefing schedule on the motions to dismiss and so forth. But I take it we can have another conference before your Honor at some point. We'll know --

THE COURT: Sorry. Don't you have to finish with these motions before you complete discovery?

MS. APPS: Oh, yes. Absolutely. No, no, no, no, no. I certainly -- absolutely, there can be no discovery until the motions are finished. The only question is whether we have another appearance before your Honor.

THE COURT: Yes, of course.

MS. APPS: That's what I was suggesting, your Honor.

THE COURT: I have to manage these cases. It's hard enough without conferences.

MS. APPS: Understood.

THE COURT: I need conferences.

MR. ROBBINS: Your Honor, may I make a couple of requests. One, could we have a hearing date set?

THE COURT: I will set one.

MR. ROBBINS: OK. Thank you, your Honor.

THE COURT: Do I need to set it now?

MR. ROBBINS: I just prefer to have a target. I'm very concerned, as your Honor probably gathers, that this will end up being delayed, and I would like to --

THE COURT: My theory of management is to be current. And I find that if I set dates for different things in advance,

all I have to do is keep changing them.  And I don't want to do that.  When I get the motions and they're fixed, I will set a date, if I need a date.

MR. ROBBINS:  OK.  Thank you, your Honor.

I have also a request that we be able to serve preservation subpoenas on third parties.  As your Honor is aware, the PSLRA only mandates retention and preservation of documents on parties.  And so we will issue a subpoena that will say -- there are no motions to dismiss pending, of course -- that would say that upon a decision, your Honor's decision, that those documents need to be preserved and then produced.

THE COURT:  Why don't you submit an order, directed to various people, whom you want records preserved by.  And I'll sign that order.

MR. ROBBINS:  OK.  Thank you, your Honor.  And the last request --

THE COURT:  Pass it by Ms. Apps.

And I need a small committee of defendants, Ms. Apps. I would like you to organize it, please, so that not everybody has to be joining in every kind of activity.

MR. ROBBINS:  I can add thus far, your Honor, it's been very efficient.  The Milbank Tweed lawyers and I work very close together and it's been efficient and effective.

THE COURT:  Good.

MR. ROBBINS:  The last request I have, your Honor, is if, as they are producing documents to the government, if they could -- we offered in our draft order to pay for whatever copying costs, to have those given to us as well.

THE COURT:  Give me that again.

MR. ROBBINS:  Defendants are producing, in connection with the criminal and civil investigations, they're producing documents to the government.  We would ask that those be produced to us as well.

THE COURT:  Ms. Apps, do you want to do that?

MS. APPS:  No, your Honor.  We certainly do not, your Honor.  And under the PSLRA there is no --

THE COURT:  I don't have authority to order them, under the law.

MR. ROBBINS:  Until they file motions to dismiss you do, your Honor.  But --

THE COURT:  I'm not going to do it.

MR. ROBBINS:  OK.  Thank you, your Honor.

THE COURT:  But I will do a preservation order.

MR. ROBBINS:  OK.  We will provide that to your Honor after we give it to Ms. Apps.

THE COURT:  What I do concern myself about, though, Ms. Apps, is that if the motions are decided and the cases remain, I don't want another long period before production starts being made.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

MS. APPS:  Understood.

THE COURT:  So have in mind what you need to do promptly if I decide that you have to remain in the case.

MS. APPS:  Yes.

THE COURT:  Anything else?

Thank you all.

MR. ROBBINS:  Thank you, your Honor.

MR. LEVANDER:  Thank you, your Honor.

o0o