EXHIBIT B

ORDERS APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL

Table of Contents

| Description | Page # |
|---|---|
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Brazinsky v. AT&T Inc.*, No. 2:23-cv-04064 (D.N.J. Apr. 16, 2024), ECF No. 49 | 3 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Choi v. Coupang, Inc.*, No. 22-cv-7309, 2023 WL 2585979 (S.D.N.Y. Mar. 21, 2023) | 8 (of 90) |
| Stipulation Appointing Lead Plaintiff and Approving Selection of Counsel, filed in *Mannacio v. Discover Financial Services*, No. 1:23-cv-06788 (N.D. Ill. Nov. 17, 2023), ECF No. 52 | 15 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Mannacio v. Discover Financial Services*, No. 1:23-cv-06788 (N.D. Ill. Nov. 30, 2023), ECF No. 61 | 24 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Pappas v. Countrywide Financial Corp.*, No. 2:07-cv-05295 (C.D. Cal. Nov. 28, 2007), ECF No. 67 | 25 (of 90) |
| Report and Recommendation of Magistrate F. Clifton Knowles, issued in *Norfolk County Retirement System v. Community Health Systems, Inc.*, No. 3:11-cv-0433, 2011 WL 6202585 (M.D. Tenn. Nov. 28, 2011) | 44 (of 90) |
| Order Adopting Report and Recommendation, issued in *Norfolk County Retirement System v. Community Health Systems, Inc.*, No. 3:11-cv-0433, 2012 WL 12485 (M.D. Tenn. Jan. 3, 2012) | 52 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *In re Cendant Corp.*, 182 F.R.D. 144 (D.N.J. 1998) | 54 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Garber v. Juniper Networks, Inc.*, No. 06-cv-04327-JW, 2006 WL 3365547 (N.D. Cal. Nov. 20, 2006) | 65 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Lipetz v. Wachovia Corp.*, No. 08-cv-6171, 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) | 68 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *In re Apple Computer Inc., Derivative Litigation*, No. 5:06-cv-05208-JF (N.D. Cal. Jan. 30, 2007), ECF No. 19 | 73 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Fenninger v. Take-Two Interactive Software, Inc.*, No. 1:06-cv-00803 (S.D.N.Y. July 12, 2006), ECF No. 33 | 78 (of 90) |
| Order Appointing Lead Plaintiff and Approving Selection of Counsel, issued in *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246 (E.D. Pa. 1999) | 83 (of 90) |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BRAZINSKY, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>AT&T INC., RANDALL L. STEPHENSON, JOHN T. STANKEY, PASCAL DESROCHES, and JOHN STEPHENS,<br><br>      Defendants. | Case No. 2:23-cv-04064-KM-JBC<br><br>ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

**WHEREAS**, the Court has considered the competing motions for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel,

**IT IS HEREBY ORDERED THAT**:

1.      Having reviewed all pending motions and accompanying memoranda of law, the Court hereby appoints the New York City Public Pension Funds (the "NYC Funds")[1] as Lead Plaintiff in the above-captioned action (the "Action"). The NYC Funds satisfy the requirements for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

2.      Lead Plaintiff, pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, has selected and retained Pomerantz LLP as Lead Counsel for the Class in the Action.

3.      Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

        (a)      to coordinate the briefing and argument of motions;

        (b)      to coordinate the conduct of discovery proceedings;

        (c)      to coordinate the examination of witnesses in depositions;

---

[1] The "NYC Funds" are comprised of the Teachers' Retirement System of the City of New York, the New York City Employees' Retirement System, the New York City Police Pension Fund, the New York City Fire Department Pension Fund, and the Board of Education Retirement System of the City of New York.

1

(d)    to coordinate the selection of counsel to act as a spokesperson at pretrial conferences;

(e)    to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

(f)    to coordinate all settlement negotiations with counsel for defendants;

(g)    to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required; and

(h)    to supervise any other matters concerning the prosecution, resolution or settlement of the Action.

4.    No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of Lead Counsel.

5.    Every pleading in this Action, and any related action that is consolidated with this Action, shall hereafter bear the following caption:

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| IN RE AT&T INC. SECURITIES LITIGATION | Case No. 2:23-cv-04064-KM-JBC |
|---|---|
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | [TITLE OF DOCUMENT] |

2

6. When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:". When the document applies to some, but not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the document applies, along with the name of the first-listed plaintiff in said action.

7. Counsel in any related action that is consolidated with this Action shall be bound by this organization of plaintiffs' counsel.

8. Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

9. Lead Counsel shall be the contact between plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel.

10. Defendants shall effect service of papers on plaintiffs by serving a copy of same on Lead Counsel by overnight mail service, electronic or hand delivery. Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight mail service, electronic or hand delivery.

11. During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored

3

information, and materials such as computerized data and electronic mail, containing information which is relevant or which may lead to the discovery of information relevant to the subject matter of the pending litigation

**SO ORDERED.**

Dated: _April 16_, 2024

_____
HONORABLE MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE
DISTRICT OF NEW JERSEY

4

Choi v. Coupang, Inc., Not Reported in Fed. Supp. (2023)

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 8 of 90

2023 WL 2585979
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

David CHOI, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

COUPANG, INC., Bom Suk Kim, Gaurav Anand, Michael Parker, Matthew Christensen,
Lydia Jett, Neil Mehta, Benjamin Sun, Kevin Warsh, Harry You, Goldman Sachs
& Co. LLC, Allen & Company LLC, and J.P. Morgan Securities LLC, Defendants.

22-CV-7309 (VSB)
|
Signed March 21, 2023

**Attorneys and Law Firms**

Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, New York, New York, Counsel for Plaintiff.

Phillip C. Kim, The Rosen Law Firm, New York, New York, Counsel for Movant Rubin Lerer.

Kim Elaine Miller, Kahn Swick & Foti, LLC, New York, New York, Counsel for Movant Alsar Ltd. Partnership.

Jeremy Alan Lieberman, Emma Gilmore, Pomerantz LLP, New York, New York, Counsel for Movant New York City Public Pension Funds.

David Avi Rosenfeld, Robbins Geller Rudman & Dowd LLP, New York, New York, Counsel for Movant Office of the Treasurer of the State of North Carolina on behalf of the North Carolina Retirement Systems, and Movant New Mexico State Investment Council.

Andrew James Ehrlich, Brette Morgan Tannenbaum, Daniel Shiah Sinnreich, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, Counsel for Defendants Coupang, Inc., Bom Suk Kim, Guarav Anand, Michael Parker, Matthew Christensen, Lydia Jett, Neil Mehta, Benjamin Sun, Kevin Warsh, and Harry You.

**OPINION & ORDER**

VERNON S. BRODERICK, United States District Judge:

**\*1** Plaintiff David Choi brings this securities fraud class action lawsuit on behalf of himself and others similarly situated against Coupang, Inc., ("Coupang"), certain of Coupang's officers and directors, and certain of the underwriters of the initial public offering (collectively the "Defendants"). Plaintiff alleges that Defendants violated §§ 11 and 15 of the Securities Act of 1933 ("1933 Act"), and 15 U.S.C. §§ 77k and 77*o*. (Compl. ¶¶ 1, 11).[1]

Initially, four movants[2] sought (1) consolidation of the above-captioned actions, (2) appointment of lead plaintiff, and (3) approval of lead counsel. However, ALSAR Limited Partnership, Rubin Lerer, and the Office of Treasurer of the State of North Carolina and New Mexico all filed motions withdrawing their applications. (Docs. 34, 35, 36.) Because movant the New York City Public Pension Funds ("the NYC Funds") has a large financial interest in the litigation, at this stage of the litigation appears to fulfill the typicality and adequacy requirements of ⚑ Federal Rule of Civil Procedure 23 and has chosen counsel with substantial experience in securities litigation and securities class actions, the NYC Funds' motion for appointment as lead

Choi v. Coupang, Inc., Not Reported in Fed. Supp. (2023)

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 9 of 90

plaintiff and for approval of its selection of lead counsel is GRANTED. The remaining movants' motions to withdraw are GRANTED and their motions for appointment as lead plaintiff and for approval of lead counsel are DENIED as moot. All motions for consolidation are hereby DENIED as moot due to the voluntary dismissal of 1:22-cv-8756 (VSB).

## I. Background and Procedural History [3]

### A. *Complaints*

**\*2**  On August 26, 2022, Plaintiff David Choi ("Plaintiff") filed a class action complaint against Coupang, Inc., as well as its founder and former Chief Executive Officer, Bom Suk Kim; former Chief Financial Officer, Gaurav Anand; former Chief Accounting Officer, Michael Parker; and former Directors on Coupang's Board, Matthew Christensen, Lydia Jett, Neil Mehta, Benjamin Sun, Kevin Warsh, and Harry You (collectively, "Individual Defendants"), and Goldman Sachs & Co. LLC, Allen & Company LLC, and J.P. Morgan Securities LLC (collectively, "Underwriter Defendants"), alleging that Coupang, Individual Defendants, and Underwriter Defendants (collectively, "Defendants") violated the 1933 Act by including in its Registration Statement for the initial public offering ("IPO") untrue statements of material fact, omitting material facts necessary to make statements contained within the Registration Statement not misleading, and failing to make necessary disclosures required under the rules and regulations governing its preparation. (Compl. ¶¶ 1, 8, 15-27.) Plaintiff alleges that the Registration Statement filed with the U.S. Securities and Exchange Commission on March 10, 2021 failed to disclose various adverse facts, including that Coupang engaged in improper anti-competitive practices with its suppliers and other third parties, adjusted search algorithms and manipulated product reviews on its marketplace platform, and sold products to non-member customers at lower prices than those offered to its Rocket WOW members, subjected its workforce to extreme, unsafe, and unhealthy working conditions. (*Id.* ¶ 9.) All of these "illicit practices exposed the Company to a heightened, but undisclosed, risk of reputational and regulatory scrutiny that would harm the Company's critical relationships with consumers, merchants, suppliers, and workforce", and made unsustainable Coupang's lower prices, historical revenues, competitive advantages, and growing market share, which were the result of these illicit practices. (*Id.*) As a result, by July 14, 2022, Coupang Class A common stock closed below $15 per share, which was more than 50% below the $35 per share price investors paid for the stock in the IPO. (*Id.* ¶ 10.)

On August 26, 2023, the same day the Complaint was filed, Plaintiff's counsel caused a notice to be filed on Business Wire in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(A)(i). (*See* Lieberman Decl. Ex. B.) [4]  The notice was addressed to any who "suffered substantial losses and wish to serve as lead plaintiff of the *Coupang* class action lawsuit" and detailed the claims in the Complaint. (*Id.*) It informed the Class that they had until October 25, 2022 to file for appointment as lead plaintiff. (*Id.*)

Several months later, on October 14, 2022, Plaintiffs Naya 1740 Fund Ltd., Naya Coldwater Fund, Naya Master Fund LP, Nayawood LP, and Quantum Partners LP (collectively "Naya") filed a complaint against Defendants. [5] (Naya Compl. ¶¶ 25–53.) However, on October 25, 2022, Naya filed a notice of voluntary dismissal pursuant to Federal Rules of Civil Procedure 41(a)(1)(A), stating that the action was voluntarily dismissed without prejudice where "no Defendant in the [Naya action] has served an answer or motion for summary judgment." (1:22-cv-08756, Doc. 11.)

### B. *Consolidation, Lead Plaintiff, and Lead Counsel Motions*

Since the Complaint was filed, four movants filed motions requesting consolidation of the Coupang Actions, appointment of lead plaintiff, and approval of lead counsel. (Docs. 18, 20, 25, 29.) [6]  However, in response to the above-mentioned motions, three of the four movants have withdrawn their lead counsel motions, including ALSAR Limited Partnership, (Doc. 34 *withdrawing* Doc. 20), Rubin Lerer, (Doc. 35 *withdrawing* Doc. 18), and Office of Treasurer of the State of North Carolina and New Mexico, (Doc. 36 *withdrawing* Doc. 29). On November 9, 2022, the NYC Funds filed a notice of non-opposition declaring that "no party

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 10 of 90

Choi v. Coupang, Inc., Not Reported in Fed. Supp. (2023)

opposes the NYC Funds' motion ... for entry of an Order: (1) consolidating the above-captioned actions; (2) appointing the NYC Funds as Lead Plaintiff on behalf of a class consisting of all persons and entities other than the above-captioned Defendants that purchased or otherwise acquired: (a) Coupang Class A common stock pursuant and/or traceable to the registration statement issued in connection with Coupang's March 2021 initial public offering, and/or (b) Coupang securities between March 11, 2021 and July 12, 2022, inclusive; and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP as Lead Counsel for the Class." (Doc. 37 at 1.)

On March 15, 2023, I issued an order requesting the NYC Funds to clarify how the notice of voluntary dismissal filed in the Naya action impacts its request for consolidation. (Doc. 38.) The NYC Funds confirmed that the voluntary dismissal mooted its request for consolidation and withdrew its request to consolidate while maintaining its request for appointment as Lead Plaintiff and approval of Pomerantz LLP as Lead Counsel. (Doc. 39.) As such, I do not analyze or assess the merits of the consolidation and DENY the request to consolidate as moot.

## II. Discussion

### A. *Appointment of Lead Plaintiff*

#### 1. Applicable Law

**\*3** The procedures set forth in the PSLRA, 15 U.S.C. § 78u-4, govern the appointment of lead plaintiff in securities class actions. The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at \*4 (S.D.N.Y. Mar. 19, 2012) (quoting *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001)).

Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the appropriate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* § 78u-4(a)(3)(B)(iii)(I).

#### a. Notice and Filing Requirements

As an initial matter, the PSLRA requires that the plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service." *Id.* § 78u-4(a)(3)(A)(i). The notice must inform the purported plaintiff class of the pendency of the action, the claims and purported class period, and the ability to move, within sixty days of the notice, to serve as lead plaintiff of the purported class. *Id.*

#### b. Largest Financial Interest

In this District, courts use the four-factor test first adopted in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at \*5 (N.D. Ill. Aug. 11, 1997), when determining the party with the largest financial interest: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during

the class period; and (4) the approximate financial losses suffered. *See, e.g.*, *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014) (applying the *Lax* test); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394–95 (S.D.N.Y. 2008) (same); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (same); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (same). Of the four factors, financial loss is considered the most significant factor. *See Reitan*, 68 F. Supp. 3d at 395; *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) (citation omitted).

Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *5 & n.6 (S.D.N.Y. Mar. 2, 2007). In securities fraud cases, courts must consider only those losses that a plaintiff incurred after a misrepresentation is revealed to the public. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N. Y 2015).

### c. Rule 23

The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> **\*4** One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of a class certification." *eSpeed*, 232 F.R.D. at 102. The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements. *Varghese*, 589 F. Supp. 2d at 397 (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 WL 17336586, at *4 (S.D.N.Y. Nov. 30, 2022)).

Additionally, courts have a preference for appointing institutional investors as lead plaintiffs. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004). This is consistent with Congress's intent in passing the PSLRA. *See id.*; *Weiss*, 2006 WL 197036, at *2 ("By enacting the PSLRA ... Congress sought to increase the likelihood that institutional investors will step forward as the ideal lead plaintiffs in private securities litigation." (internal quotation marks omitted)); *see also* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs....").

### 2. Application

Because three of the four movants withdrew their competing motions for appointment of lead plaintiff and approval of selection of counsel, (Docs. 34, 35, 36), and all four movants filed a notice of non-opposition to the NYC Funds' motion for appointment of lead plaintiff and approval of selection of counsel, (Doc. 37), and because I find the NYC Funds to be the presumptive lead plaintiff who also otherwise satisfies Rule 23, I do not consider the merits of the three withdrawn motions. I find that the NYC Funds is the "most adequate" plaintiff under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(i) and is therefore the appropriate lead plaintiff for this action.

### a. PSLRA Notice Requirement is Satisfied

On August 26, 2022, the same day the Complaint was filed, Plaintiff's counsel published a notice on *Business Wire*, fulfilling the PSLRA requirements set forth in 15 U.S.C. § 77z–1(a)(3)(A)(i). (*See* Lieberman Decl. Ex. B.) The notice detailed the claims in the Complaint, and informed the Class that they had until October 25, 2022, 60 days from the date of the PSLRA Notice's publication, to move for appointment as lead plaintiff.

### b. The NYC Funds has the Largest Financial Interest

The NYC Funds: "(1) purchased 4,687,306 shares of Coupang stock; (2) expended $125,664,776 on their purchases; (3) retained 4,570,986 shares of Coupang stock at the end of the Class Period; and (4) incurred losses of approximately $41,281,450 in connection with their purchases of Coupang stock." (Doc. 27 at 14); (*see* Lieberman Decl., Ex. A.) As stated in the Notice of Non-Opposition, the NYC Funds' loss of over $41 million is far greater than the loss suffered by any other movant. (*See* Doc. 37 at 1-2.) Therefore, the NYC Funds is the presumptive lead plaintiff.

### c. Otherwise Satisfying Rule 23

**\*5** The NYC Funds satisfies the typicality requirement of Rule 23. Members of this class "purchased Coupang stock pursuant and/or traceable to the IPO or during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Coupang's share price downward." (Doc. 27 at 16.) As purchasers of Coupang stock between March 11, 2021 and July 12, 2022, the NYC Funds satisfies the typicality requirement because it has claims "aris[ing] from the same conduct from which the other class members' claims and injuries arise." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 362 (S.D.N.Y. 2019) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)).

Further, the NYC Funds meets Rule 23's adequacy requirement. Proposed counsel for the NYC Funds, Pomerantz LLP, is experienced and qualified, has represented plaintiffs throughout the country in multiple other securities class action litigations, and has the ability to conduct the litigation effectively. (*See* Lieberman Decl. Ex. D.) In addition, the NYC Funds alleges "significant losses" due to Coupang's actions, and thus has "a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Lian v. Tuya Inc.*, No. 22 CIV. 6792 (JPC), 2022 WL 17850134, at \*3 (S.D.N.Y. Dec. 22, 2022) (citation omitted). There is no reason to believe that the NYC Funds have any adverse interests to those of the other class members. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009). Lastly, the NYC Funds is an institutional investor, which is preferred under the PSLRA. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 402.

**B.** *Appointment of Lead counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal quotation marks omitted).

Having reviewed the NYC Funds' Memorandum of Law, (Doc. 27), as well as Jeremy Lieberman's Declaration and the firm resume attached as Exhibit D to that Declaration, (Doc. 28-4), I find that Pomerantz LLP, the NYC Funds' proposed Lead Counsel, will adequately and effectively represent the interests of the class. The attorneys at Pomerantz LLP have substantial experience with securities litigation and securities class actions. (*See* Doc. 27 at 20; Lieberman Decl. Ex. D.) I approve the NYC Funds' selection and appoint Pomerantz LLP as Lead Counsel.

### III. Conclusion

The NYC Funds' motion for consolidation, (Doc. 25), is DENIED as moot given the voluntary dismissal in 1:22-cv-8756 (VSB). The NYC Funds has a substantial financial interest and meets the typicality and adequacy requirements of Rule 23. Therefore, the NYC Funds' motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED. The remaining motions of Rubin Lerer, ALSAR Limited Partnership, and Office of the Treasurer of the State of North Carolina and New Mexico, have been withdrawn and are hereby DENIED as moot.

The NYC Funds is directed to file an amended consolidated complaint or designate an operative complaint no later than sixty (60) days after the date of issuance of this Opinion & Order. Defendants are directed to answer or otherwise respond to the operative complaint no later than sixty (60) days after the NYC Funds files an amended complaint or designates the initial Complaint as the operative complaint herein.

**\*6** SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2585979

**Footnotes**

1      Compl." refers to Plaintiff David Choi's complaint filed August 26, 2022 ("Complaint"). (Doc. 1.) On October 14, 2022, Plaintiff Naya 1740 Fund Ltd. et al. brought a separate shareholder derivative action, case 1:22-CV-08756-VSB, on behalf of Coupang's shareholders, seeking to remedy alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. I accepted 1:22-CV-08756-VSB as related to 1:22-CV-7309-VSB on October 24, 2022. (Doc. 8.) Prior to Defendants filing an answer in 1:22-CV-08756-VSB, on October 25, 2022, plaintiffs in that action filed a stipulation dismissing the action without prejudice pursuant to Federal Rule of Civil Procedure 41. (Doc. 11.) Thus, I will not consider any of the claims in 1:22-CV-08756-VSB, and will only consider the action before me for the purpose of this Opinion & Order.

2      Those movants filed the following: (1) Notice of Motion of Rubin Lerer to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel, (Doc. 18); (2) Notice of Motion of ALSAR Limited Partnership for Appointment as

Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel, (Doc. 20); (3) Notice of Motion of the New York City Public Pension Funds for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Counsel, (Doc. 25); and (4) Notice of Motion of Office of the Treasurer of the State of North Carolina on behalf of the North Carolina Retirement Systems ("North Carolina") and New Mexico State Investment Council ("New Mexico") for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel, (Doc. 29).

3  The facts in Section I are recited for background only and are not intended to and should not be viewed as findings of fact.

4  "Lieberman Decl." refers to the Declaration of Jeremy A. Lieberman in Support of Motion of the New York City Public Pension Funds for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Counsel, filed October 25, 2022. (Doc. 28.)

5  The Naya Complaint included all of the Defendants in the Choi Complaint and additional defendants not named in the Choi Complaint.

6  All references to documents in this Section are to the filings made in 22-CV-7309.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

EUGENE MANNACIO, Individually and on   x
Behalf of All Others Similarly Situated,   :
                                            :
            Plaintiff,                 :
                                            :
      v.                     :
                                            :   Case No. 1:23-cv-06788
DISCOVER FINANCIAL SERVICES,   :
ROGER C. HOCHSCHILD, JOHN T.   :
GREENE, and R. MARK GRAF,   :
                                            :
            Defendants.       :
                                            :
————————————————————— x

## STIPULATION AND [PROPOSED] ORDER APPOINTING LEAD PLAINTIFF
## AND APPROVING SELECTION OF LEAD AND LIAISON COUNSEL

1. WHEREAS, on September 1, 2023, plaintiff Eugene Mannacio filed the above-captioned securities class action against Discover Financial Services, Roger C. Hochschild, John T. Greene, and R. Mark Graf, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5;

2. WHEREAS, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A)(i), on September 1, 2023, counsel for plaintiff Eugene Mannacio published a notice on the Globe Newswire that alerted investors to the pendency of the Action and informed them of the 60-day deadline to seek appointment as lead plaintiff, which was on October 31, 2023;

3. WHEREAS, on October 31, 2023, Mansor Mustafa Jaber timely filed a motion for appointment as lead plaintiff and appointment of lead counsel, claiming losses of $9,381.70 under the last in, first out ("LIFO") methodology, ECF Nos. 5, 7-8;

4. WHEREAS, on October 31, 2023, the New York City Employees' Retirement System, New York City Police Pension Fund, New York City Fire Department Pension Fund, and Teachers' Retirement System of the City of New York (collectively, the "NYC Funds") timely filed a motion for appointment as lead plaintiff and appointment of lead and liaison counsel, claiming losses of $10,626,445.37 based on the LIFO methodology and $9,961,742.70 under a methodology based on the U.S. Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), ECF Nos. 10-12, 14;

5. WHEREAS, on October 31, 2023, KBC Asset Management NV ("KBC") timely filed a motion for appointment as lead plaintiff and appointment of lead counsel, claiming losses

of $15,055,464.26 based on the LIFO methodology and $10,434,724.40 under a methodology based on *Dura*, ECF No. 13, 15-16;

6.  WHEREAS, on October 31, 2023, San Antonio Fire & Police Pension Fund and El Paso Firemen & Policemen's Pension Fund (collectively, the "Texas Fire & Police Pension Funds") timely filed a motion for appointment as lead plaintiff and appointment of lead counsel, claiming losses of $658,390.87 based on the LIFO methodology, ECF Nos. 18-20;

7.  WHEREAS, the PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), but does not specify how "financial interest" is to be calculated;

8.  WHEREAS, on November 3, 2023, Mansor Mustafa Jaber withdrew his motion for appointment as lead plaintiff on the basis he "does not appear to have the largest financial interest," ECF No. 29;

9.  WHEREAS, on November 17, 2023, the Texas Fire & Police Pension Funds filed a response stating that they "recognize they did not suffer the greatest loss," ECF No. 51;

10. WHEREAS, as of the date of this Stipulation, the motions of KBC and the NYC Funds remain pending, in which each claims to have the "largest financial interest" in the relief sought by the Class;

11. WHEREAS, courts have repeatedly recognized that the PSLRA expressly permits the appointment of a group of class members as lead plaintiff, *see, e.g.*, *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *8 (N.D. Ill. Apr. 18, 2012) (St. Eve., J.) (appointing "small group that has the largest financial interest in the relief sought by the class"

and noting "the recent trend of ali[g]ning small groups of sophisticated investors to serve as lead plaintiff even if they do not have pre-existing relationships");

12. WHEREAS, KBC and the NYC Funds have communicated regarding their respective loss calculations, and have expressed good-faith disagreements regarding how their respective losses should be measured under *Dura*, such that they each could claim to have the "largest financial interest" under their respective analyses;

13. WHEREAS, KBC and the NYC Funds each satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc);

14. WHEREAS, KBC and the NYC Funds each concluded that a protracted dispute concerning Lead Plaintiff appointment is not in the best interests of the Class, particularly in light of the fact that their respective financial interests are relatively close, such that jointly prosecuting the Action would be appropriate and assist with the speedy and efficient litigation of the Action;

15. WHEREAS, based on their prior service with other entities as joint lead plaintiffs or class representatives in litigation under the PSLRA, KBC and the NYC Funds believe their joint appointment in this Action would provide the Class with KBC and the NYC Funds' collective knowledge and experience as well as the expertise and collective resources of their selected counsel—all of which would benefit the Class, particularly given the size and potential complexities of this Action;

16. WHEREAS, KBC and the NYC Funds accordingly agreed to resolve their competing motions and to seek, with the Court's approval, to serve jointly as Lead Plaintiff;

17. WHEREAS, courts in this District and throughout the country routinely appoint co-lead plaintiffs when competing movants stipulate to work together after the statutory deadline for seeking appointment as lead plaintiff, and are not simply joining forces to supplant another

competing movant with a potentially larger financial interest, *see, e.g.*, *Ronge v. Camping World Holdings, Inc.*, No. 1:18-cv-07030 (N.D. Ill. Jan. 17, 2019), ECF No. 52 (Stip. & Order Appointing Lead Plaintiff and Lead Counsel) (Pallmeyer, J.) (appointing two unrelated institutional investors as co-lead plaintiffs based on stipulated agreement after movants separately moved for appointment as lead plaintiff);

18. WHEREAS, KBC and the NYC Funds have agreed to select the law firms of Motley Rice LLC ("Motley Rice") and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") to serve jointly as Lead Counsel for the Class;

19. WHEREAS, KBC and the NYC Funds are familiar with the experience, resources, and successes of Motley Rice and Lieff Cabraser and are aware that they are both accomplished law firms with significant experience in securities class action litigation and a history of achieving significant recoveries for investors;

20. WHEREAS, KBC and the NYC Funds are satisfied that, under their supervision, Motley Rice and Lieff Cabraser are capable of jointly prosecuting the Class's claims in a manner that will best serve the interests of the Class, particularly given their prior experience working together productively in other complex litigation, including on the leadership committee of the ongoing multi-district litigation action captioned *In re National Prescription Opiate Litigation*, No. 1:17-md-02804 (N.D. Ohio), that has resulted in billions of dollars in recoveries, and previously in the securities fraud class action captioned *Hatamian v. Advanced Micro Devices, Inc.*, No. 4:14-cv-00226-YGR (N.D. Cal.), which resulted in a $29.5 million recovery;

21. WHEREAS, KBC and the NYC Funds believe it is in the best interests of the Class for them to work together to efficiently litigate the Action jointly as Lead Plaintiff, and for their choice of counsel, Motley Rice and Lieff Cabraser, to serve as Co-Lead Counsel on behalf of the

Class and for Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"), with an office in Chicago and which possesses substantial experience in securities and complex litigation, including in this District, to serve as Liaison Counsel for the Class;

22.     WHEREAS, KBC and the NYC Funds—sophisticated institutional investors collectively responsible for managing hundreds of billions of dollars (or the equivalent) in assets— are committed to supervising the conduct of this litigation by their counsel in an independent manner and to ensuring that counsel coordinate appropriately and avoid duplication of effort in the conduct of the litigation;

23.     IT IS HEREBY STIPULATED AND AGREED, subject to the Court's approval, as follows:

1.     Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(3)(B), KBC and the NYC Funds are appointed as Lead Plaintiff in the Consolidated Action; and

2.     Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(v), Motley Rice and Lieff Cabraser are appointed as Co-Lead Counsel in the Action, and Cohen Milstein is appointed as Liaison Counsel for the Class.

IT IS SO STIPULATED.

DATED:  November 17, 2023             Respectfully submitted,

**MOTLEY RICE LLC**

*s/ Christopher F. Moriarty*
Gregg S. Levin
Lance V. Oliver
Christopher F. Moriarty
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450

glevin@motleyrice.com
loliver@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for KBC Asset Management NV
and Proposed Co-Lead Counsel for the Class*

**KIRBY MCINERNEY LLP**
Anthony E. Maneiro
211 West Wacker Drive, Suite 550
Chicago, IL 60606
Telephone: (312) 767-5180
Facsimile: (312) 757-5181
amaneiro@kmllp.com

*Local Counsel for KBC Asset Management NV*

**COHEN MILSTEIN SELLERS
 & TOLL, PLLC**

*s/ Carol V. Gilden (with permission)*
Carol V. Gilden
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
IL Bar: 6185530
Tel: 312-357-0370
cgilden@cohenmilstein.com

*Proposed Liaison Counsel for the Class*

**LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
Steven E. Fineman (*pro hac vice forthcoming*)
Daniel P. Chiplock (*admitted pro hac vice*)
Michael J. Miarmi (*admitted pro hac vice*)
Sharon M. Lee (*pro hac vice forthcoming*)
Gabriel A. Panek (*pro hac vice forthcoming*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
slee@lchb.com
gpanek@lchb.com

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Richard M. Heimann (*pro hac vice forthcoming*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
rheimann@lchb.com

*Counsel for the NYC Funds and Proposed Co-
Lead Counsel for the Class*

**[PROPOSED] ORDER GRANTING STIPULATION]**

Pursuant to stipulation and for good cause shown, IT IS SO ORDERED.


Dated: _____, 2023          _____
                                            THE HONORABLE CHARLES P. KOCORAS
                                            UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

I certify under penalty of perjury that the foregoing is true and correct. Executed on November 17, 2023.

*s/ Christopher F. Moriarty*
Christopher F. Moriarty

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1
### Eastern Division

Eugene Mannacio

Plaintiff,

v.

Case No.: 1:23–cv–06788
Honorable Charles P. Kocoras

Discover Financial Services, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, November 30, 2023:

      MINUTE entry before the Honorable Charles P. Kocoras: In light of the Stipulation [52] filed on 11/17/23, New York City Employees' Retirement System, New York City Fire Department Pension Fund, New York City Police Pension Fund, Teachers' Retirement System of the City of New York (collectively, the "NYC Funds") and KBC Asset Management NV are appointed lead plaintiffs. Motley Rice and Lieff Cabraser are appointed as co–lead counsel, and Cohen Milstein is appointed as liaison counsel for the class. Motions for appointment as lead plaintiff and approval of selection of lead counsel [10, 13, 18] are denied as moot. Telephonic status hearing set for 12/14/23 at 10:40 a.m. For the telephonic status hearing, parties are to use the following call–in number: (888) 684 8852, conference code 8819984. COUNSEL MUST TYPE IN THEIR NAME WHEN JOINING THE CALL. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking.(rbf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE PAPPAS, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORP., ANGELO MOZILO and ERIC P. SIERACKI,<br><br>Defendants. | Case No.: CV-07-05295-MRP (MANx) ✓<br><br>ORDER CONSOLIDATING CASES AND APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL |
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, ANGELO R. MOZILO, DAVID SAMBOL, ERIC P. SIERACKI, and STANFORD L. KURLAND,<br><br>Defendants. | Case No.: CV-07-05727-MRP |

*(Additional Captions Follow)*

-1-

JACK MCBRIDE, Individually and On Behalf of All Others Similarly Situated,

               Plaintiff,

      v.

COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE CAPITAL V., CITIGROUP GLOBAL MARKETS INC., JP MORGAN SECURITIES INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, MORGAN STANLEY & CO. INCORPORATED, UBS SECURITIES LLC, WACHOVIA CAPITAL MARKETS LLC, ANGELO R. MOZILO, KATHLEEN BROWN, HENRY G. CISNEROS, JEFFREY M. CUNNINGHAM, ROBERT J. DONATO, MICHAEL E. DOUGHERTY, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, HARLEY W. SNYDER, DAVID SAMBOL, ERIC P. SIERACKI, ANDREW GISSENGER, III, and CARLOS M. GARCIA.

               Defendants.

Case No. CV-07-06083-MRP

-2-

SARATOGA ADVANTAGE TRUST On Behalf of Themselves and All Others Similarly Situated,

                    Plaintiff,

        v.

COUNTRYWIDE FINANCIAL CORPORATION, ANGELO R. MOZILO, DAVID SAMBOL, ERIC P. SIERACKI, and STANFORD L. KURLAND,

                    Defendants.

Case No. CV-07-06635-MRP

---

ARGENT CLASSIC CONVERTIBLE ARBITRAGE FUND L.P., Individually and On Behalf of All Others Similarly Situated,

                    Plaintiff,

        v.

COUNTRYWIDE FINANCIAL CORPORATION, ANGELO R. MOZILO, DAVID SAMBOL, and ERIC P. SIERACKI,

                    Defendants.

Case No. CV-07-07097-MRP

-3-

| | |
|---|---|
| BARRY BRAHN, Individually and on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE CAPITAL V., COUNTRYWIDE FINANCIAL CORPORATION, ANGELO R. MOZILO, ERIC P. SIERACKI, and STANFORD L. KURLAND,<br><br>Defendants. | Case No. CV-07-07259-MRP |

**I.**

**INTRODUCTION**

Before the Court are six securities class action cases brought on behalf of investors of Countrywide Financial Corporation ("Countrywide") and asserting claims against Countrywide, its subsidiaries, a variety of current and former officers and directors, and underwriters of public offerings of Countrywide securities. Several Plaintiffs from these cases have moved to consolidate some or all of the claims. Further, multiple parties have filed motions to be appointed as lead plaintiff of either a consolidated case or a case not treated as part of the consolidated case. The Court heard oral argument on the issues of consolidation and appointment of lead plaintiff on November 19, 2007.

**II.**

**BACKGROUND**

**A.      Defendants in all cases**

Countrywide is a Delaware corporation with its principal place of business in Calabasas, California.  With its subsidiaries, Countrywide operates in five business areas: Mortgage Banking, Banking, Capital Markets, Insurance, and Global Operations.  The Mortgage Banking component originates and sells residential loans, and the Global Operations component provides ancillary services for those loans.  The Banking component operates a federally chartered bank that invests in mortgages and home equity loans that originated in Mortgage Banking.  The Capital Markets component underwrites and trades in mortgage-backed securities.

One complaint, *Jack McBride, et al., v. Countrywide Financial Corp.*, *et al.* ("*McBride*"), also includes as defendants Citigroup Global Markets, J.P. Morgan Securities, Merrill Lynch, Morgan Stanley, UBS Securities LLC, Wachovia Capital Markets LLC (collectively the "underwriters") as defendants.  These companies served as underwriters of a November 1, 2006 public stock offering.

Finally, several complaints name individual directors and officers of Countrywide or its subsidiaries as defendants.  Angelo Mozilo, one of the original founders of Countrywide in 1969, served as CEO and Chairman of the Board of Directors of Countrywide during the period in question.  Kathleen Brown, Henry Cisneros, Jeffrey Cunningham, Robert Donato, Michael Dougherty, Martin Malone, Robert Parry, Oscar Robertson, Keith Russell, and Harley Snyder were other members of the Board of Directors in late 2006.

Stanford Kurland is a former COO and President of Countrywide, and David Sambol currently holds those positions, as well as Chairman and CEO of CHL.  Eric Sieracki is Countrywide's Executive Managing Director and CFO.  Andrew Gissinger, III is Executive Managing Director of Residential Lending, and President and COO of CHL.  Carlos Garcia is Executive Managing Director of Banking and Insurance.

**B.      Individual cases**

1. *Jack McBride, et al., v. Countrywide Financial Corp.*, *et al.*, No. CV-07-06083-MRP and *Barry Brahn v. Countrywide Financial Corp., et al.*, No. CV-07-07259-MRP ("*Brahn*")

-5-

Plaintiff McBride alleges that Countrywide, its directors and officers, and its underwriters failed to craft a registration statement and prospectus for a Nov. 1, 2006 securities offering (collectively "Prospectus") that fully informed investors of "all material facts and industry trends" affecting Countrywide. Investors purchased Countrywide Capital V preferred stock ("preferred stock") in reliance on the misstatements and omissions in the Prospectus, and ultimately lost money when the stock decreased in value in mid-2007.

McBride sues on behalf of the class of all purchasers of preferred stock from the November 1, 2006 offering and purchasers traceable thereto. His action arises under § 11 and § 15 of the Securities Act of 1933 ("1933 Act"). 15 U.S.C. §§77k-l. Under these sections, where a registration statement or prospectus contains a misstatement of material fact or omission of material fact, any person acquiring the security may sue (1) every person who signed the registration statement, (2) every director and (3) every underwriter of that security, including the issuer. *Id.* The heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") do *not* apply to 1933 Act claims unless the complaint "sounds in fraud." *See Anderson v. Clow (In re Stac Elecs. Sec. Litig.),* 89 F.3d 1399, 1405 n.3 (9th Cir. 1996); *In re Portal Software*, No C-03-5138 VRW, 2006 U.S. Dist. LEXIS 61589, at *7 (N.D. Cal. Aug. 17, 2006).

The *Brahn* case is similar to McBride in that it asserts § 11 and § 15 of the 1933 Act based on the Prospectus associated with the Nov. 1, 2006 offering of preferred securities. It also asserts a violation of § 12(a)(2) of the 1933 Act, which creates liability for sellers of securities, against Countrywide Capital V.

> 2. *George Pappas v. Countrywide Financial Corp.*, et al., No. CV-07-05295-MRP ("*Pappas*")

Plaintiff Pappas alleges that Countrywide and its directors issued false and misleading statements during the class period of in violation of § 10(b) and § 20(a) of the Securities and Exchange Act of 1934 ("1934 Act") and SEC Rule 10b-5. The complaint references a series of press releases and public statements that contain the alleged misrepresentations and omissions. Pappas highlights the positive and optimistic statements contained in those press releases and characterizes them as misleading in light of the position of the Company. Pappas contends that the defendants should have disclosed some information about the risk of the impairment charge and loan loss provision that resulted in a surprise to investors on July 24, 2007.

Pappas pleads the reliance requirement of the relevant sections by alleging "fraud on the market" and alleges that the alleged misrepresentations and omissions resulted in purchasers of Countrywide public securities paying artificially inflated prices during the class period of Oct. 24, 2006 to Aug. 9, 2007.

3. *Norfolk County Retirement System, et al.*, v. *Countrywide Financial Corp.*, *et al.*, No. CV-07-05727-MRP ("*Norfolk*") and *Saratoga Advantage Trust*, *et al., v. Countrywide Financial Corp.*, *et al*, No. CV-07-06635-MRP ("*Saratoga*")

Plaintiffs in these cases allege that during the class period Countrywide falsely represented that it had strict and selective underwriting and loan origination processes, and ample liquidity that would insulate the company in a market downturn. According to Plaintiffs, Countrywide and its executives repeatedly assured investors and the public that its disciplined and conservative strategy set it apart from other "irrational" mortgages lenders. These assurances came in the form of press releases, conference calls with investors where executives answered questions, SEC filings such as quarterly and annual reports, and presentations to investors. Plaintiffs allege that in fact Countrywide engaged in practices that limited the ability of the Company to weather any deterioration of the housing and mortgage markets.

As with *Pappas*, the Plaintiffs seek relief under the 1934 Act and SEC Rule 10b-5, and rely on the "fraud on the market" doctrine to show that purchasers of common stock in the period of April 24, 2004 to August 9, 2007 relied on the alleged misrepresentations by paying the inflated prices that resulted from them.

4. *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide, et al.*, No. CV-07-07097-MRP ("*Argent*")

Plaintiff Argent Classic Convertible Arbitrage Fund L.P. ("Argent") sues on behalf of itself and the class of qualified institutional buyers who purchased Countrywide Series A and Series B Floating Rate Convertible Senior Debentures due 2037 ("debentures") in a private placement pursuant to SEC Rule 144A during a class period of May 17, 2007 to August 9, 2007. Plaintiff alleges that Defendants made false and misleading statements in press releases, SEC filings, and other public statements that concealed the Company's financial condition. These misrepresentations inflated the price of Countrywide common stock, which in turn inflated the price of debentures because they are convertible to common stock. As in *Pappas, Norfolk,* and

-7-

*Saratoga,* the *Argent* action alleges violations of § 10(b) and § 20(a) the 1934 Act, and SEC Rule 10b-5. The complaint also alleges violations of several sections of the California Corporations Code.

# III.

## CONSOLIDATION

### A. Legal Standard

Under the PSLRA, the court must decide whether to consolidate claims before it appoints a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Federal Rule of Civil Procedure 42(a) ("Rule 42") grants the district court broad discretion to consolidate cases involving common issues of law or fact in the interests of judicial economy and convenience. *Huane v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). The court must weigh the saving of time and effort consolidation would produce against any inconvenience, delay, or expense it would cause. *Id.*

Although district courts generally take a favorable view towards consolidation, the mere existence of a common issue should not lead to the conclusion that the district judge must order consolidation – to the contrary, a district judge "always has discretion to deny consolidation." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2383.

In considering whether to consolidate securities class actions, courts have considered whether the actions involved the same "core of defendants," the same law under the various Securities Acts (and Rule 10b-5), and the same factual events. *See, e.g., Garber v. Juniper Networks, Inc.*, No. 06-04327 JW, 2006 U.S. Dist. LEXIS 86721 (N.D. Cal. Nov. 20, 2006); *Averdick v. Hutchinson Tech., Inc.*, No. 05-2095 MJD/SRN, 2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006); *Meeuwenberg v. Best Buy Co.*, No. 03-6193 ADM/AJB, 2004 U.S. Dist. LEXIS 7686 (D. Minn. Apr. 29, 2004).

Also instructive is *Aronson v. McKesson HBOC, Inc.*, in which a series of 54 securities fraud class actions were brought in the Northern District of California. 79 F. Supp. 2d 1146 (N.D. Cal. 1999). In that case, the court consolidated several cases even though some arose from 10b-5 and others from the Securities Act of 1933, and the cases involved overlapping, but different, sets of defendants and securities. *Id.* The court appointed a single lead plaintiff for all the class actions despite the differences in the cases. *Id.*

Other cases have held that a single lead plaintiff can represent a class of plaintiffs even if that party does not have standing to sue under all claims so long as one named plaintiff does have

standing.  *See, e.g., Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669-70 (C.D. Cal. 2005); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 458 F. Supp. 2d 455, 462 (E.D. Mich. 2006).

Finally, in *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 438 (S.D. Tex. 2002), the district court consolidated a preferred stock claim with a common stock claim, noting that objections to consolidation because of distinct issues surrounding preferred stock can effectively be handled by dividing the class during class certification.  *Id.*

### B.  Arguments

Plaintiff New York Funds[1] seeks to consolidate all claims primarily because the actions involve numerous common questions of law and fact, and because splintering the litigation could interfere with the ability of a lead plaintiff to run the litigation smoothly.  Plaintiff Brahn supports consolidation of the preferred stock claims with the other public securities claims, and supports appointment of New York Funds as lead plaintiff for the consolidated class.

Plaintiff McBride opposes grouping the preferred stock claims with common stock or private placement securities because they are subject to a different pleading standard.  In addition, New York Funds has not suggested that it holds any preferred stock, which raises questions about its ability to represent the preferred stock purchasers fairly.

Plaintiff Argent Classic Convertible Fund L.P. ("Argent") opposes grouping the claims involving private debentures with claims involving publicly traded securities primarily because the debentures were offered *only* to "qualified institutional buyers," which by definition cannot include pension funds such as those comprising the New York Funds conglomerate.  The private debentures, according to Argent, raise factual and legal distinctions not at issue in any of the other cases and demands separate treatment from those cases.

### C.  Analysis

Resolving the question of consolidation requires a close examination at the similarities and differences in the cases before the court, and grouping cases together only when satisfied that the requirements of Rule 42 are met.  Some of the cases are so similar that they can be consolidated without further discussion.  The *Brahn* case and *McBride* case involve identical

---

[1] "New York Funds" refers to Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems, and as Trustee of the New York State Common Retirement Fund, and of the New York City Pension Funds.

-9-

securities (preferred stock) and an identical class (purchasers who can trace their purchase to the Nov. 1, 2006 offering), and both allege violations of nearly identical sections of law (§ 11, § 12(a) and § 15 of the 1933 Act) based on the same statements (the Prospectus). Thus, they are ordered grouped together. Likewise, *Norfolk* and *Saratoga* both allege violations of § 10(b), § 20(a) and SEC Rule 10b-5 and contemplate a class of public stock purchasers dating back to April 24, 2004. Indeed, the complaints in the two cases are identical in parts of their allegations. Therefore, they too are ordered to be grouped together.

### 1. *Pappas* and *Norfolk/Saratoga*

The Court next determines whether to group the *Pappas* claims with *Norfolk*/*Saratoga*. These three, the broadest complaints, allege violations of the same sections of law, and cite essentially the same public statements made by Countrywide in the period of October 2006 to November 2007 as being materially misleading. The difference is the starting date of the class period (April 2004 in *Norfolk/Saratoga* compared to October 2006 in *Pappas*), and the precise definition of the class (common stock purchasers in *Norfolk* compared to public securities purchasers in Pappas). At least in the period of October 2006 to the end of the class period in August 2007, the Court expects very similar theories and evidence to be presented. The overlap is sufficient to support consolidation to effectuate case management and discovery, and no party opposes this conclusion for these cases. Accordingly, the *Pappas*, *Norfolk*, and *Saratoga* claims are ordered consolidated.

### 2. *McBride/Brahn* and *Pappas/Norfolk/Saratoga*

The parties vigorously contest whether the preferred stock claims from *McBride*/*Brahn* should be grouped with the common stock claims from the other cases. The Court acknowledges that there are several important differences between the cases. For example, the preferred stock claims in *McBride/Brahn* do not face the heightened pleading requirements of the PSLRA unless they "sound in fraud" and do not require proof of scienter. Moreover, the claims involve a narrower class because they deal solely with purchasers from a particular public offering, and include several underwriters that are not involved in any other case.

However, the similarities between the claims compel the Court to consolidate them, at least at this stage. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 451 (explaining that "consolidation, at least pretrial, serves to promote an orderly progression of this very complex

-10-

litigation, especially since discovery necessarily involves overlapping Defendants and a common core of facts and legal issues"). From a factual perspective, the claims concern overlapping public statements: the Prospectus is one document that the 1934 Act claimants could very well include in their case. Indeed, the *Pappas* complaint is brought "on behalf of all persons who purchased Countrywide Financial *publicly traded securities* on the open market during the Class Period," a definition which includes both preferred and common stock.[2] Thus, *Pappas* arguably contemplates the Prospectus as one public statement that violates the 1934 Act with respect to preferred stock. Moreover, the class periods in all the public securities cases overlap significantly: their end date of Aug. 9, 2007 is identical, and their start date varies from late 2006 to early 2004.

The different pleading standards and evidentiary burdens in a 1933 Act claim are not so difficult to manage that multiple lead plaintiffs of distinct classes are necessary at this stage. "Speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories." *Aronson v. McKesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999). The Court is not persuaded by the speculative arguments made by McBride that combining fraud claims with 1933 Act claims will delay and prejudice the claimants.[3] A single lead plaintiff, with adequate counsel, could very easily manage both types of claims, particularly given the overlap in facts, defendants, and time periods at issue, and because the requirements for each cause of action are well-established.

At this time, the Court is satisfied that economy and efficiency would be promoted by having a single lead plaintiff bring all claims involving publicly traded securities, whether they arise under the 1933 Act or 1934 Act, and whether they concern common or preferred stock. For these reasons, the Court consolidates claims involving purchases of public securities under a single lead plaintiff.

---

[2] New York Funds mentions that it intends to amend its complaint to include all securities, public and private. It may further bring claims under § 11 for other securities that it holds. The Court, however, will only decide the issues of consolidation and lead plaintiff with the motions and complaints it has before it at this time.

### 3. *Argent* and the other cases

The Court has good reason to consolidate *Argent* and to treat it separately with a separate lead plaintiff. As has been well briefed by New York Funds, Plaintiff Argent offers two seemingly inconsistent perspectives on the litigation. On the one hand, Argent's SUPPLEMENTAL STATEMENT REGARDING LEAD PLAINTIFF MOTIONS asserts that the fact that private debentures are involved <u>requires</u> that the case be kept separate because there are <u>no common questions of law or fact</u>. Argent states that the debentures are "fundamentally different" types of securities with "different characteristics", which makes it clear "none of the plaintiffs or movants can adequately represent the *unique* interests of the Debenture class." ARGENT'S SUPPLEMENTAL STATEMENT REGARDING LEAD PLAINTIFF MOTIONS, at 6-8 (emphasis added).

On the other hand, Argent's complaint alleges "fraud on the market" under § 10(b), § 20(a), and Rule 10b-5 and discusses extensively the effect of the misrepresentations on the price of the common stock. *See* Argent's CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND CALIFORNIA STATE LAW ("Argent Complaint"). Factually and legally this is nearly identical to *Pappas*, *Norfolk*, and *Saratoga*, at least during the short *Argent* class period of May 24, 2007 to August 9, 2007. The only additional wrinkle is the contention that the price of the debentures is tied to the common stock due to the convertible nature of the private debentures. In this regard, the Court observes that the *Argent* complaint raises several common questions of *both* law and fact with the other 1934 Act cases, meeting the Rule 42 threshold for consolidation.

Nonetheless, the Court exercises its discretion to separate the *Argent* case under a distinct lead plaintiff because, as has become evident in the briefs and at oral argument, there are important and complex legal and factual issues which are unique to the private placement scenario, and there is reason to believe these issues could be lost in the fray of the public securities litigation. Plaintiff Argent makes an unusual legal argument that "fraud on the market" is available to prove reliance in a SEC Rule 144A private placement case, and in the alternative, that a private placement memorandum issued to qualified institutional investors can support common law reliance. Whether these arguments have merit depends on facts and law not involved in any other case, and concerns only qualified institutional investors who traded in a private market. Class certification for the *Argent* class may hinge on these issues in the private placement case, whereas in the public securities fraud cases, "fraud on the market" is largely straightforward if the securities trade on national exchanges. Moreover, of less importance in the

-12-

*Argent* case are the voluminous facts and legal analysis relevant to the class period of 1-3 years asserted by the other cases because the class start date of May 24, 2007 is so very recent.

Thus, although there is some overlap in facts and law with the public securities claims, the Court anticipates at the outset that the focus of the private placement claims will be different from the public securities claims, and the difference is sufficient to merit separation for case management purposes. The Court is convinced that in the *Argent* case a lead plaintiff should be appointed who is a qualified institutional investor so that this focus is not lost by a lead plaintiff coordinating claims involving both public and private securities and markets. The coordination of discovery can be managed by later orders of the Court.

### 4. Conclusion

For the foregoing reasons, the Court consolidates the *McBride, Brahn, Pappas, Norfolk,* and *Saratoga* cases ("Public securities cases"), but orders that the *Argent* case remain separate.

## IV.

### APPOINTMENT OF LEAD PLAINTIFF

**A.    Legal Standard**

The PSLRA provides a three-step process for identifying the lead plaintiff in securities cases. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The first step requires that the plaintiff who files the initial action must publish, "in a widely circulated national business-oriented publication or wire service," notice of the pendency of the action and a statement that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A). Movants have 60 days from when notice is published to provide their motions to the court. 15 U.S.C. § 78u-4(a)(3)(A)(II).

Once notice is established, the district court must select the "presumptively most adequate plaintiff" by identifying the movant that has shown "the largest financial interest in the relief sought by the class" and that it satisfies the adequacy and typicality requirements of Rule 23(a) of the Federal Rules of Civil Procedure ("Rule 23"). *In re Cavanaugh*, 306 F.3d at 729-30.

In the third step, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. *Id.* at 730. The Court must examine potential lead plaintiffs one at a time, starting with the one with the greatest financial interest, and

-13-

continuing in descending order "if and only if the presumptive lead plaintiff is found inadequate or atypical [under Rule 23 standards]." *Id.* at 732.

### 1. Largest Financial Interest

Courts typically look to four factors as being determinative of the "largest financial interest": (1) the numbers of shares of the subject securities purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug 11, 1997); *In re Cendant*, 264 F.3d 201, 262 (3d. Cir. 2001) (citing with approval the Lax court and others that utilized these factors). While these factors are widely recognized by the courts, the Ninth Circuit does not require them; it demands only that district courts select "accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4.

### 2. LIFO vs. FIFO

The two most common accounting techniques in calculating losses suffered by plaintiffs are FIFO and LIFO. FIFO stands for "first-in, first-out"; LIFO stands for "last-in, first-out." *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). They represent different methods for matching specific sales of stock with specific purchases. *See generally Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D. Ohio 2006) (explaining the FIFO and LIFO concepts in the approximate losses context). The choice of which accounting methodology applies is a question of law. *Arenson v. Broadcom Corp.* No. CV-02-301-GLT, 2004 U.S. Dist. LEXIS 27522 (C.D. Cal. Dec. 6, 2004) (citing *Crow Tribe v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996)).

While the New York Funds characterize FIFO as the "predominant" method of matching purchases and sales, it appears that district courts have "generally <u>rejected</u> FIFO as an appropriate means of calculating losses in securities fraud cases." *eSpeed*, 232 F.R.D. at 101 (citing *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003)) (emphasis added). *See also Arenson*, 2004 U.S. Dist. LEXIS, at *5-7. FIFO is disfavored because it "encompasses purchases made outside the class period," *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *26 (N.D. Cal. Aug. 19, 2002), and thus in

-14-

some cases "will identify damages where in reality there is none." *In re Clearly Canadian Sec. Litig.*, No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273, at *13 (N.D.Cal. Sep. 3, 1999).

### 3. Rule 23 Requirements

As noted above, a movant must also satisfy the requirements of Rule 23 in order to invoke the presumption of being the "most adequate" plaintiff. In particular, the potential lead plaintiff must make a prima facie showing of the "typicality" and "adequacy" requirements of Rule 23 class certification. *In re Cavanaugh*, 306 F.3d at 730. "Numerosity" and "commonality" need not be shown because they are class requirements more properly directed towards the class as a whole. *Id.* at 730 n.5 (noting that the absence of this factor "would preclude certifying a class action at all"). The district court has latitude as to what information it will consider in determining typicality and adequacy. *Id.* at 732. In making these determinations, the Court reviews the plaintiffs' pleadings and declarations, *id.* at 730, and applies established Rule 23 principles. *In re Cendant*, 264 F.3d at 264-265.

#### a. Typicality

The court assesses typicality by determining whether "the circumstances of the movant ... are markedly different or the legal theory upon which the claims [of that movant] are based differ from the theories of the claims of the other class members." *In re Cendant*, 264 F.3d at 265 (internal quotations omitted). *See also* (a)(3)(B)(iii)(II)(bb) (allowing statutory presumption to be rebutted where the presumptively most adequate plaintiff is "subject to unique defenses that render such plaintiff incapable of adequarely representing the class").

#### b. Adequacy

In determining adequacy, the court must consider whether the movant has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class. *In re Cendant*, 264 F.3d at 265.

### B. Arguments

Remaining before the Court are several motions for appointment as lead plaintiff. Plaintiff New York Funds seeks to be appointed as lead plaintiff of the consolidated case.

Saratoga Advantage Trust contends that it should be appointed as co-lead plaintiff with New York Funds, though it concedes that New York Funds' losses "far exceed" their own in this matter.

Plaintiff McBride seeks appointment as lead plaintiff for claims involving preferred stock purchasers, and Argent seeks appointment as lead plaintiff for claims involving purchasers of the private debentures at issue in that case.

### C.   Analysis

#### 1.   Notice

The movants expend significant energy debating the time-bar effect of the various public notices provided by plaintiffs and others in the several cases. The court declines to rule on these issues, except to find that the Aug. 14, 2007 notice published by Scott and Scott LLP in *Prime Newswire* and the Sept. 20, 2007 notice published by Wolf Hadenstein Adler Freeman & Herz LLP in *Business Wire* meet the requirements of the PSLRA in announcing the pendency of the public securities cases. The notices were published in widely-distributed news services and properly inform class members of their right to move for appointment as lead plaintiff.

Further, the notices that were filed do not explicitly or implicitly cover private placement securities as are at issue in *Argent* and therefore do not bar Argent's later filed motion for appointment as lead plaintiff. Argent's counsel provided notice of the pendency of the *Argent* action pursuant to the PSLRA in *Business Wire* on Oct. 31, 2007. The notice adequately informed debenture purchasers of their right to file motion for appointment as lead plaintiff. Thus, the notice requirement of the PSLRA is met for Argent as well.

#### 2.   The *Argent* Case

Because the time period for movants to file motions for appointment as lead plaintiff has not yet expired, the Court declines to appoint a lead plaintiff for the *Argent* case at this time.

#### 3.   The Public Securities Cases

New York Funds, with a LIFO loss of over $40 million and a FIFO loss of over $100 million, clearly has the largest financial stake of any movant in the consolidated case under the four factors used by the Third Circuit, and likely under any other rational accounting method.

-16-

New York Funds also has made a prima facie showing of typicality and adequacy. Typical of plaintiffs in all the cases, New York Funds purchased public securities in Countrywide at prices it alleges were inflated by false and misleading statements by defendants, and damages were incurred by alleged violations of federal securities laws.

The party meets the adequacy requirement as well. As a group of large institutional investors who have conducted numerous large securities actions, New York Funds has considerable experience in such cases, and has retained competent counsel also with the necessary experience. The Court accepts the party's statement that it intends to vigorously protect the interests of all plaintiffs. Accordingly, New York Funds is the presumptive lead plaintiff of the consolidated case.

As discussed in Section III, McBride challenges the typicality and adequacy of New York Funds as a lead plaintiff of the preferred stock claims because New York Funds does not purport to hold preferred stock. Here, the preferred stock claims under the 1933 Act are sufficiently similar to the allegations in other cases to convince the Court that New York Funds allegations *are* typical of the cases. The typicality requirement is satisfied when the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other members and is based on the same legal theory, *In re Enron Corp., Securities Litigation*, 206 F.R.D. at 445 (internal citations omitted), and the striking similarity in allegations is evident here despite the different causes of action and securities involved. *See, e.g.,* DECLARATION OF RUSSEL N. JACOBSON IN SUPPORT OF NEW YORK FUNDS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES, Ex. H (chart comparing the similarity of the *Norfolk* and *McBride* complaints, including the use of identical language to describe how Countrywide misled investors).

Moreover, McBride's argument that the common stockholders "*cannot* be adequate plaintiffs because they have no financial interest in the relief sought by the class" is without merit. That New York Funds has not purchased preferred stock does not bar consolidation nor does it bar their appointment as lead plaintiff for all claims involving public securities. *See Tanne v. Autobytel*, 226 F.R.D. 659, 669 (C.D. Cal. 2005). It is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim. *Id.* The Court is persuaded that a single, large, institutional investor in public Countrywide securities can quite fairly handle claims under the different causes of action that may be asserted by the various plaintiffs such as McBride and Brahn.

-17-

Saratoga Advantage Trust has submitted a brief arguing that it should be appointed co-lead plaintiff with New York Funds because the New York Funds is a "single aggregation of politically influenced parties" and Saratoga would serve as a balance in the leadership and a "check" of the litigation process. Under the case law, there is no question that the Court has the authority to appoint co-lead plaintiffs where such appointment "will enhance, rather than reduce, the efficiency of the litigation." *In re. Amer. Bus. Fin. Serv. Cit.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200 (E.D. Pa Jun. 3, 2004). In the situation here, there is also no question that New York Funds is a grouping of public pension funds. However, Saratoga Advantage Trust is merely speculating and has not shown that these vague "political" considerations will have any impact whatsoever on New York Funds ability to represent the Plaintiffs as lead on its own. In fact, New York Funds has done so in prior cases with considerable success. Absent a more fact-based or specific attack on New York Funds ability to represent the class as a sole lead plaintiff, the motion to appoint Saratoga Advantage Trust as co-lead plaintiff is denied.

### V.

#### APPOINTMENT OF LEAD COUNSEL

Once chosen, the lead plaintiff is responsible for choosing the lead counsel in the case. *See* 15 U.S.C. §78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). The lead plaintiff's discretion is not absolute, because the court retains the power and the duty to supervise this process. *In re Cendant,* 264 F.3d at 273. However, the court's role is confined to deciding whether to approve the choice of the lead plaintiff. *Id.*

Here, the Court approves New York Funds' choice of Labaton Sucharow LLP as counsel. The firm has extensive experience in large securities fraud cases and in particular, in managing class actions involving public securities purchasers. At this time, the Court is confident that counsel will be able to properly represent the plaintiffs in the consolidated case.

### VI.

#### CONCLUSION

In accordance with this Order, New York Funds and its counsel of Labaton Sucharow LLP is appointed lead plaintiff and lead counsel, respectively, for a consolidated case comprising

-18-

the claims in *Pappas*, *Norfolk*, *Saratoga*, *McBride*, and *Brahn*. All subsequent filings in any of these five cases should reflect the case number CV-07-05295-MRP.

IT IS SO ORDERED.

DATED: November 28, 2007                    _____

                                                          Hon. Mariana R. Pfaelzer

                                                          United States District Judge

-19-

Case 5:24-cv-01234-PCP   Document 85-2   Filed 05/20/24   Page 44 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

⚑  KeyCite Yellow Flag - Negative Treatment

Distinguished by   St. Clair County Employees' Retirement Sytem v. Acadia Healthcare Co., Inc.,   M.D.Tenn.,   January 9, 2019

2011 WL 6202585
Only the Westlaw citation is currently available.
United States District Court,
M.D. Tennessee,
Nashville Division.

NORFOLK COUNTY RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, Plaintiff,

v.

COMMUNITY HEALTH SYSTEMS, INC., Wayne T. Smith, and W. Larry Cash, Defendants.

De Zheng, individually and on behalf of all others similarly situated, Plaintiff,

v.

Community Health Systems, Inc., Wayne T. Smith, and W. Larry Cash, Defendants.

Minneapolis Firefighters' Relief Association, individually and on behalf of all others similarly situated, Plaintiff,

v.

Community Health Systems, Inc., Wayne T. Smith, W. Larry Cash and Thomas Mark Buford, Defendants.

Nos. 3:11–cv–0433, 3:11–cv–0451, 3:11–cv–0601.
|
Nov. 28, 2011.

## Attorneys and Law Firms

Christopher J. Keller, Michael W. Stocker, Rachel A. Avan, Labaton Sucharow L.L.P., New York, NY, James Gerard Stranch, IV, Branstetter, Stranch & Jennings, David S. Hagy, Attorney at Law, Kyle A. Young, T. Harold Pinkley, Miller & Martin, P.L.L.C., Nashville, TN, Barbara J. Hart, David Harrison, Scott Vincent Papp, Thomas Skelton, Lowey Dannenberg Cohen & Hart P.C., White Plains, NY, for Plaintiffs.

John R. Jacobson, Riley, Warnock & Jacobson, Nashville, TN, Evan Jude Saucier, James Maxwell Cooper, Joel A. Blanchet, Peter Duffy Doyle, Kirkland & Ellis, New York, NY, for Defendants.

## REPORT AND RECOMMENDATION

E. CLIFTON KNOWLES, United States Magistrate Judge.

**\*1**  This matter is before the Court upon three Motions to Consolidate Cases, Appoint Lead Counsel, and Approve Selection of Lead Counsel, filed by Plaintiff General Retirement System of the City of Detroit (Docket No. 22), Plaintiff NYC Funds (Docket No. 23), and a single Motion filed by two Plaintiffs–Alberta Investment Management Corp. and State–Boston Retirement System (hereinafter referred to as Alberta/Boston) (Docket No. 29). Judge Nixon has referred these Motions to the undersigned for consideration and a hearing, if necessary. Docket No. 51.

The moving Plaintiffs, and others, have filed three separate lawsuits in this Court, as noted in the style above. These putative private class actions, filed pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, essentially allege that Defendants Community Health Systems, Inc. ("CHS"), Wayne T. Smith, and W. Larry Cash committed securities fraud. [1]

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 45 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

The Court notes that the three pending Motions all seek a consolidation of these three cases. Defendants, all of whom are represented by counsel, have not filed any materials in opposition to the pending Motions.

Therefore, the undersigned recommends that the Motions for Consolidation be GRANTED and that these three actions be consolidated under the lead Case 3:11–0433, and that all future filings be made in that action.

As stated above, three separate Plaintiffs, or sets of Plaintiffs, had sought to be appointed as lead Plaintiff or Plaintiffs in these actions. Shortly after the Motions were filed, the General Retirement System of the City of Detroit filed a "Notice of Non-opposition ... for Appointment as Lead Plaintiff, Approval of Lead Counsel, and Consolidation of All Related Actions." Docket No. 43. Detroit stated in part:

> Detroit recognizes that its losses are less than those claimed by the competing movants. Accordingly, Detroit does not oppose the competing Motions.

Docket No. 43, p. 3.

Thus, the Motion at issue filed by Detroit (Docket No. 22) should be DENIED.

The Court will turn to a consideration of the competing Motions filed, on the one hand, by NYC Funds, and on the other hand, by Alberta/Boston.

The appointment of a lead Plaintiff in the cases such as these is governed by 15 U.S.C. § 78u–4(a)(3), which is part of the PSLRA and which provides in relevant part as follows:

(3) Appointment of lead plaintiff. (A) Early notice to class members. (I) In general. Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business—oriented publication or wire service, a notice advising members of the purported class—

(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

...

**\*2** (B) Appointment of lead plaintiff. (I) In general. Not later than 90 days after the date on which a notice is published under subparagraph (A)(I), the court shall consider any motions made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

...

Norfolk County Retirement System v. Community Health..., Not Reported in...

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 46 of 90

(iii) Rebutable presumption. (I) In general. Subject to subclause (II) for purposes of clause (I), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—

(aa) has either filed a complaint or made a motion in response to a notice under subparagraph (A)(I);

(bb) in the determination of the court has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

(II) Rebuttal evidence. The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

The question, therefore, becomes which of the moving Plaintiffs has "the largest financial interest in the relief sought by the class ...." This question, however, does not appear to be as easy as it sounds, and has given rise to many pages of legal Memoranda filed by the moving Plaintiffs.

The Fourth Edition of the Manual for Complex Litigation provides the following guidance with regard to such Motions:

The PSLRA does not require courts to hold a hearing on lead plaintiff motions....

Where the movant is a single investor or institution, the court's task is fairly straight forward. In identifying the plaintiff with the largest financial interest, courts have considered factors such as the number of shares purchased or sold during the class period, the net number of shares purchased, the net funds spent, and approximate losses suffered by the plaintiff. These factors courts have found helpful "because they look to relatively objective indicators ... rather than to the ultimate question of images." One option in assessing the merits of competing lead plaintiff petitions is to have those parties seeking lead plaintiff status file a joint submission setting forth their claim financial interests in comparing their financial stakes in litigation, preferably through an agreed on method. Such an approach allows the court to assess the merits of competing parties' positions without expending significant judicial resources wading through or reconstructing underlying figures on which the calculations are based. In addition, the court may find it difficult to reconcile damage calculations based on different methodologies.

**\*3** Manual for Complex Litigation (Fourth Ed.) § 31.31, p. 535–36.

As discussed above, the PSLRA provides that when a class action is brought under its provisions, the Plaintiff or Plaintiffs must give notice within 20 days of the pendency of the action, the claims asserted therein, and the purported Class Period. Additionally, not later than 60 days after the date on which the Notice is published, any member of the purported class may move the Court to serve as lead Plaintiff.

In the case at bar, the first of these actions (No. 3:11–00433) was filed on May 9, 2011. That same day, the required Notice was given. Thus, Motions to serve as lead Plaintiff were due within 60 days of the Notice, which was July 8, 2011, and the two Motions at issue were filed on that date. On July 25, 2011, each of the moving parties filed a "Response" to the other's Motion. Docket Nos. 45, 48. Finally, on August 8, 2011, each of the moving parties filed a Reply to the other's Response. Docket Nos. 52, 53.

The Court believes that the parties positions can be best understood if the Court focuses upon their arguments in a chronological fashion. The Court will, therefore, attempt to do this below.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 47 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

In their respective Motions, both movants argued that some district courts in the Sixth Circuit have adopted a four-factor test in determining which movant has the largest financial interest in an action. With minor variations in language, those four factors are basically those set forth in the Manual for Complex Litigation, and are as follows: (1) the number of shares purchased during the Class Period, (2) the number of net shares purchased during the Class Period, (3) the total net funds expended by the movant during the Class Period; and (4) the amount of loss suffered by the movant. Docket No. 24, p. 14; Docket No. 30, p. 12.

NYC argued that the most important factor is the fourth factor. Alberta/Boston recognized that the amount of loss suffered by the movant "is often the first factor reviewed by the court ...." Docket No. 30, p. 12. Alberta/Boston also argued, however, that the Court should focus on the number of net shares purchased during the class period. But, Alberta/Boston did not specify how many "net shares" they purchased in their Motion, nor did they discuss how many net shares NYC purchased.

In its Motion, as modified by a subsequent Correction, NYC argued that it purchased 762,966 shares of CHS common stock during the proposed Class Period, and suffered losses of $4,852,949 calculated based on the First-in, first out ("FIFO") methodology, and losses of $4,474,719 based upon the Last-in, first out ("LIFO") methodology.[2] Docket No. 24, p. 6. Unfortunately, neither party explains, at least in a manner understandable by the Court, exactly what the LIFO and/or FIFO methodologies are. NYC stated:

> Under FIFO, "a plaintiff's sales of defendant's shares in the class period are matched first against any pre-existing holdings of shares. The net gains or losses from those transactions are excluded from damages calculations." ... "In contrast, under LIFO a plaintiff's sales of defendant's shares during the class period are matched first against plaintiff's most recent purchase of defendant's shares and gains or losses from those transactions are considered in damage calculations."
> **\*4** Docket No. 24, p. 14–15 n. 6.

NYC's explanation was cited to ⚑*Johnson v. Dana Corp.,* 236 F.R.D. 349 (N.D.Ohio 2006). The *Johnson* Court stated in part as follows:

> The largest financial interest inquiry is not complicated when parties only purchase and sell shares within the class period. The analysis, however, becomes more complicated when parties enter the class period having previously bought the defendant's securities. Then, the question arises: how to calculate plaintiff's damages from purchasing shares at allegedly inflated prices when it has, arguably, also profited from selling shares at the same inflated prices?

> Under FIFO, a plaintiff's sales of defendant's shares during the class period are matched first against pre-existing holdings of shares. The net gains or losses from those transactions are excluded from damage calculations.

> In contrast, under LIFO, a plaintiff's sales of defendant's shares during the class period are matched first against the plaintiff's most recent purchase of defendant's shares and gains or losses from those transactions are considered in damage calculations.

> Consequently, under FIFO, many plaintiffs will show damages from defendant's alleged misconduct when those plaintiffs actually profited from the misconduct.

⚑236 F.R.D. at 352.

Alberta/Boston did not mention FIFO, nor did it make any attempt to explain the difference between the LIFO and FIFO methodologies.[3]

In their Motion, Alberta/Boston stated that they purchased 479,170 shares of CHS common stock and that they suffered *total* losses of $4,098,606, as calculated under the LIFO methodology.[4] Docket No. 30, p. 11, 12. Alberta/Boston's Motion stated that they were "presently unaware of any other movant with a larger financial interest in the outcome of the Action." Docket No. 30, p. 13.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 48 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

As discussed above, each of the competing lead Plaintiffs filed a "Response" to the other's Motion. Docket Nos. 45, 48. NYC reiterated its position that it had the largest financial interest in the relief sought by the class based upon its losses under either LIFO or FIFO. NYC further argued that the Court did not need to look further "to the less-important factors," particularly because (at least some of) those other factors support the same result. Specifically, NYC argued that it had indisputedly purchased the largest number of shares (although not "net" shares) during the class period. NYC argued:

> With respect to "net shares" purchased and retained at the end of the class period, the NYC funds have more net shares than Alberta and Boston ... and expended more net funds, if the LIFO and FIFO matching methodology is applied to shares sold during the Class Period.... If one abandons the well-accepted logic of LIFO and FIFO, finally the result splits, but only if one adds Alberta's and Boston's numbers together. Hence, if shares purchased are simply artificially netted against shares sold during the Class Period, Alberta when added to Boston ekes ahead on net shares and net funds expended. Yet, under either of these methods, the NYC Funds have more net shares than either Alberta or Boston individually.

**\*5** Docket No. 45, p. 4 (citations omitted).

NYC also referred to legal memoranda in other cases involving Boston and its attorneys, the Labaton firm, in which counsel agreed with the proposition that the largest loss was determinative without further inquiry into the other factors. Docket No. 45, p. 16–17. Specifically, with regard to any argument concerning net shares, counsel who now represents Alberta/Boston argued on behalf of its client in a previous case that a movant with the highest losses should prevail over a competing movant with higher net shares and net expenditures as follows:

The only dispute is whether a movant's "net shares purchased" should be given more weight than losses suffered. Respectfully, the answer is no.

First, the PSLRA does not direct courts to assess "financial interests" in a vacuum. Rather, a district court is required to determine which movant possesses the "largest financial interest in the relief sought by the class." ... The relief sought by the class in this case is monetary damages ... and, the PSLRA provides that damages are tethered to an investor's loss, not the number of net shares purchased.

Docket No. 46–5, p. 1 (footnote and citations omitted).

In their Response, Alberta/Boston conceded, "LIFO is the preferred measure of Losses." Docket No. 48, p. 10. Alberta/Boston next argued that NYC's LIFO loss was less than NYC had claimed, because NYC had improperly included "the trading losses of Fire, a fund whose sales of fraud-inflated shares actually resulted in a net profit of nearly half a million dollars." [5] Docket No. 48, p. 10. Alberta/Boston argued that Fire was both a "net seller" (a Plaintiff who sold more shares than they purchased during the Class Period) and a "net gainer" (a Plaintiff who profited from sales of inflated stock during the Class Period). Alberta/Boston argued, "Net sellers and gainers are not suitable lead Plaintiffs because they are subject to the unique defenses that they cannot prove damages and may have profited from a company's fraud." Docket No. 48, p. 11.

After making these arguments regarding Fire, however, Alberta/Boston admitted that even without Fire, NYC's LIFO loss was $4,118,988, which is greater than the LIFO loss of Alberta/Boston ($4,098,606). [6] Apparently recognizing that they would lose under the LIFO methodology, Alberta/Boston shifted its focus and made two arguments to avoid that result: (1) even though NYC had the greater LIFO loss, the difference was "only $20,382 or barely one-half of one percent more than [Alberta/Boston's] losses" and that such a difference was not significant; and (2) the Court should disregard the insignificant difference and focus on the other factors, such as net shares purchased and net expenditures. Docket No. 48, p. 12.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 49 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

Alberta/Boston next argued that it should be appointed lead Plaintiff because it purchased the most net shares. Docket No. 48, p. 15. According to Alberta/Boston, "a movant's net shares is determined by 'substract[ing] the number of shares sold by a candidate from those purchased during the Class Period.' " *Id.* Alberta/Boston argued that its net shares purchased were 453,820, while NYC's net shares purchased (not including Fire) were 406,217.

 **\*6**  Finally, Alberta/Boston argued that their "net expenditures" exceed those of NYC. Alberta/Boston defined net expenditures as "the total amount spent purchasing stock during the Class Period less the total amount gained from the sale of the stock during the Class Period." Docket No. 48, p. 11–12. Alberta/Boston argued that it has more net expenditures than NYC whether or not Fire is included.

Each of the moving parties later filed a Reply to the other's Response. Docket Nos. 52, 53. In its Reply, NYC cited two cases for the proposition that "the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures." *See Richmond v. Goldman Sachs Group, Inc.,* 2011 WL2360291 at \*6 (S.D.N.Y.); *Foley v. Transocean Ltd.,* 272 F.R.D. 126 (S.D.N.Y.2011).

It its Reply, NYC also argued that it purchased the *most* shares, 726,966. [7] Docket No. 53, p. 6. It cited no authority, however, for the proposition that the entity that simply purchased the most shares has the largest financial interest. NYC funds also made a complex argument that it had more "net shares," but only "if LIFO/FIFO matching is applied to shares sold during the Class Period." Docket No. 52, p. 2–3.

NYC also argued, and Alberta/Boston agreed, that "Courts are loath to appoint groups of movements as lead plaintiff when doing so would mean the individual movant with the largest financial interest would not serve as lead plaintiff." Docket No. 53, p. 6; Docket No. 48, p. 9 n. 5; *Goldberger v. PXRE Group, Ltd.,* 2007 WL980417 at \*5 (S.D.N.Y.). NYC argued, essentially, that Alberta and Boston are unrelated funds that have merely sought to "team up to surpass the movant with the largest financial interest ...." Docket No. 53, p. 6. NYC pointed out, however, that it should be considered a single fund (although there are several funds under the umbrella of NYC), *citing* *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp.2d 1146, 1157 & n. 11, which stated that the NYC

> Funds are essentially one person for purposes of the Reform Act, because they fall under the jurisdiction of the New York City Comptroller's Office, and are represented in their dealings with private counsel through one "in-house" counsel, the corporate counsel of the city of New York.

In their Reply, Alberta/Boston argued that NYC wishes to "simply muddy the waters before the Court." Docket No. 52, p. 6. They accused NYC of having offered no fewer than eight different estimates of their financial losses. Alberta/Boston repeated their argument that the Fire fund is a net seller and net gainer and should not be included in NYC's calculations. At the same time, however, Alberta/Boston recognized that, even without Fire, NYC has the largest loss calculated under the LIFO methodology. Docket No. 52, p. 6–7. Alberta/Boston also began to raise additional arguments, based on the proposition that NYC Funds should not be considered as one fund, but should be split into its component funds.

 **\*7**  Counsel for the movants have, as discussed above, raised a number of interesting and complex arguments, and obviously have attempted to zealously represent their clients. At the same time, however, it appears that each side has attempted to "muddy the waters," by raising arguments that have nothing to do with the essential questions before the Court. Echoing the concerns of the Manual for Complex Litigation, the Court notes that it could expend (and has expended) "significant judicial resources" in attempting to assess the merits of the competing parties' positions. As the Manual says, in what is undoubtedly a gross understatement, "The Court may find it difficult to reconcile damage calculations based on differing methodologies."

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 50 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

Under the PSLRA, the primary focus of the Court must be upon the Plaintiff who "has the largest financial interest in the relief sought by the class ...." 15 U.S.C. § 78u–4(a)(3)(B)(iii) (bb). The Court is further mindful of the fact that, "[T]he method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.,* 2010 WL1790763 at *3 (M.D.Tenn.) (*citing* ⚑*Pirelli Armstrong Tire Corp. Retiring Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 406–07 (S.D.N.Y.2004).

In the final analysis, the Court agrees that NYC has the largest financial loss in the case at bar under either the LIFO or FIFO methods. Under either of these methods, NYC funds has the largest financial interest in the relief sought by the class, and it is the "most adequate plaintiff."

The Class Period in these cases is almost five years, from July 27, 2006, through April 11, 2011. According to the Complaint filed in Case No. 3:11–00433, the stock reached a high during the Class Period of $43.04 on July 18, 2007. On April 8, 2011, prior to the disclosure of the alleged fraud, the stock price was $40.30. The next trading day after the disclosure of the alleged fraud, April 11, 2011, the stock dropped to $25.89. These are the only hard numbers the Court has with regard to the fluctuation of the stock price during the almost five years of the Class Period. The Court believes that the three other factors discussed by the parties (number of shares purchased or sold during the Class Period, the net number of shares purchased, and the net funds spent), do not necessarily provide an appropriate measurement for identifying the Plaintiff with the largest financial interest.

The Court's conclusion regarding the largest financial interest triggers the rebutable presumption set forth in § 78u–4(a)(3)(B) (iii)(I). There is no evidence that NYC will not fairly and adequately protect the interests of the class, nor is there any evidence to show that NYC is subject to unique defenses that render it incapable of adequately representing the Class, so the presumption has not been rebutted.

**\*8** For the foregoing reasons, the undersigned recommends that NYC's Motion for Appointment as Lead Plaintiff (Docket No. 23) be GRANTED.

The PSLRA also provides in relevant part, "The most adequate Plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3) (B)(v). NYC seeks the approval of Lowey Dannenberg Cohen & Hart, P.C., as Lead Counsel for the Class and Miller & Martin PLLC as local counsel. The Court must consider whether the proposed counsel are qualified, experienced, and generally able to conduct the litigation. *See* ⚑*Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir.2000). Those firms have submitted Resumes (Docket Nos. 25–6, 25–7) showing that the proposed counsel are qualified, experienced, and generally able to conduct the litigation. NYC has also stated:

> Lowey Dannenberg was selected by the NYC Funds to act as Lead Counsel through the NYC Funds' rigorous multi-phased selection process ... This process included the negotiation of a limitation of attorneys' fees that Lowey Dannenberg may seek that are far less than fees typically awarded in securities fraud class action litigation ... This selection process and fee negotiation demonstrate the NYC Funds commitment to run the litigation and forestall a lawyer-driven result disfavored by the PSLRA.

Docket No. 24, p. 21 (citations omitted).

For the foregoing reasons, the undersigned recommends that the Court approve NYC's selection of counsel.

The undersigned further recommends that the Motion of Alberta/Boston for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Docket No. 29) be DENIED. Under Rule 72(b) of the Federal Rules of Civil Procedure, any party

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 51 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 6202585

## Footnotes

1    All three of the actions are filed against these three Defendants. There are several additional individual Defendants in Civil Action No. 3:11–0601.

2    NYC stated in its Motion, "The NYC Funds' FIFO losses are $4,812,687, and LIFO losses are $4,413,165." Docket No. 24, p. 16. NYC subsequently submitted a "Supplemental Declaration of Barbara J. Hart ..." which corrected the number of shares purchased and the amount of losses to those set forth in the text above. Docket No. 34, p. 3.

3    In other materials, Alberta/Boston appears to state that their total FIFO losses were $4,098,606, the same as their LIFO losses. Docket No. 31–2, p. 3. Alberta/Boston later took the position that LIFO is "the method of loss calculation preferred by all courts ...." Docket No. 48, p. 9. In their Reply, Alberta/Boston states that, over the past decade, courts "have universally rejected FIFO calculations because this methodology has a tendency to artificially inflate loss figures by allowing a movant who actually profited from a defendant's fraud to demonstrate damages." Docket No. 52, p. 9.

4    This amount represents the LIFO losses of Alberta and the LIFO losses of Boston added together. Alberta's LIFO losses were $3,568,494, and Boston's LIFO losses were $530,112.07, for a total of $4,098,606.68. Docket No. 31–2, p. 2–3.

5    The NYC Funds, as the name implies, are a group of related funds including the New York City Employees Retirement System, the Teachers Retirement System of the City of New York, the New York City Teachers Variable Annuity Program, the New York City Police Pension Fund, and the New York City Fire Department Pension Fund. Docket No. 24, p. 6.

6    Alberta/Boston did not explain how it calculated NYC's LIFO loss, without Fire, at $4,118,988. It is unclear whether, in making this calculation, Alberta/Boston started with NYC's LIFO loss set out in the Complaint ($4,413,165) or the corrected LIFO loss of $4,474,719. NYC stated that, even if Fire was excluded, NYC suffered FIFO losses of $4,761,925 and LIFO losses of $4,268,272. Docket No. 45, p. 22. Obviously, if NYC is correct, the difference in LIFO losses is approximately $169,000.

7    It appears to the undersigned that this is a typographical error, and that NYC actually purchased 762,966 shares of CHS common stock. Docket No. 34, p. 3.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 52 of 90

Norfolk County Retirement System v. Community Health..., Not Reported in...

2012 WL 12485

Only the Westlaw citation is currently available.

United States District Court,

M.D. Tennessee,

Nashville Division.

NORFOLK COUNTY RETIREMENT SYSTEM, individually

and on behalf of all others similarly situated, et al., Plaintiffs,

v.

COMMUNITY HEALTH SYSTEMS, INC., Wayne T. Smith, and W. Larry Cash, Defendants.

De Zheng, individually and on behalf of all others similarly situated, et al., Plaintiffs,

v.

Community Health Systems, Inc., Wayne T. Smith, and Larry Cash, Defendants.

Minneapolis Firefighters' Relief Association, on behalf of itself and all others similarly situated, et al., Plaintiffs,

v.

Community Health Systems, Inc., Wayne T. Smith, Larry Cash, and Thomas Mark Buford, Defendants.

Nos. 3:11–cv–00433, 3:11–cv–00451, 3:11–cv–00601.

|

Jan. 3, 2012.

**Attorneys and Law Firms**

Christopher J. Keller, Michael W. Stocker, Rachel A. Avan, Labaton Sucharow LLP, New York, NY, James Gerard Stranch, IV, Branstetter, Stranch & Jennings, David S. Hagy, David S. Hagy, Attorney at Law, Kyle A. Young, T. Harold Pinkley, Miller & Martin, PLLC, James Gerard Stranch, IV, Branstetter, Stranch & Jennings, Nashville, TN, Barbara J. Hart, David Harrison, Scott Vincent Papp, Thomas Skelton, Lowey Dannenberg Cohen & Hart PC, White Plains, NY, for Plaintiffs.

John R. Jacobson, Riley, Warnock & Jacobson, Nashville, TN, Evan Jude Saucier, James Maxwell Cooper, Joel A. Blanchet, Peter Duffy Doyle, Kirkland & Ellis, New York, NY, for Defendants.

***ORDER***

JOHN T. NIXON, Senior District Judge.

**\*1** This matter is before the Court on three Motions by certain Plaintiffs in Case Number 3:11–cv–00433 to consolidate the above-captioned actions, appoint a lead plaintiff, and approve the selection of lead counsel. The three Motions are brought by General Retirement System of the City of Detroit ("Detroit") (Doc. No. 22), NYC Funds (Doc. No. 23), and jointly by Alberta Investment Management Corp. and State–Boston Retirement System ("Alberta/Boston") (Doc. No. 29). Each of these Plaintiffs or group of Plaintiffs seeks to be named lead Plaintiff and to have its selected counsel be approved as lead counsel. Detroit subsequently filed a Notice that it does not oppose the Motions of NYC Funds or Alberta/Boston. (Doc. No. 43.) None of the other Plaintiffs or Defendants in any of the cases has filed an opposition to the Motions.

After reviewing the parties' numerous briefs, Magistrate Judge Knowles filed a Report and Recommendation ("Report"), recommending that the cases be consolidated, NYC Funds be appointed lead Plaintiff, and NYC Funds's selected counsel be approved as lead counsel. (Doc. No. 60.) The Report was filed on November 28, 2011. As the Report indicates, Under Federal Rule of Civil Procedure 72(b), all parties had fourteen days after service of the Report to file written objections to Judge Knowles's recommendations. (Doc. No. 60 at 15–16.) No objections have been filed.

The Court finds the Report to be thorough and its recommendations to be well-founded. The Court therefore **ADOPTS** the Report in its entirety. The above-captioned cases are hereby **CONSOLIDATED** under the lead case 3:11–cv–00433, and all future filings are to be made in that action. The Court further **DENIES** Detroit's Motion (Doc. No. 22) and Alberta/Boston's Motion (Doc. No. 29). The Court **GRANTS** NYC Funds's Motion (Doc. No. 23), **APPOINTS** NYC Funds as lead Plaintiff in the consolidated action, and **APPROVES** the counsel selected by NYC Funds as lead counsel.

It is so ORDERED.

Entered this the *28th* day of December, 2011.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 12485

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 54 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by    In re Razorfish, Inc. Securities Litigation,    S.D.N.Y.,    May 4, 2001

182 F.R.D. 144
United States District Court, D. New Jersey.

In re CENDANT CORPORATION LITIGATION.

No. CIV.A. 98–1664.
|
Sept. 8, 1998.

**Synopsis**

Competing motions were made to be selected as lead plaintiff in securities fraud class action, and to have each movant's counsel designated as lead counsel. The District Court, Walls, J., held that: (1) public pension fund investors, which were biggest losers as result of alleged fraud, would be designated lead plaintiff generally; (2) conflict of interest required appointment of separate plaintiff to represent interests of investors in derivative securities connected to securities involved in present case; and (3) lead counsel would be selected by auction.

Order accordingly.

West Headnotes (5)

**[1]** **Federal Civil Procedure** 〰 Stockholders, investors, and depositors

Public pension fund investors would be designated lead plaintiff of securities fraud class action, under Private Securities Litigation Reform Act (PSLRA); fund allegedly lost $89 million, compared to $10.6 lost by second ranking investor, and fund had invested in all of types of securities involved in case, insuring that fund would be attempting to further interests of all types of investors. Securities Act of 1933, § 27(a)(3)(B)(iii)(I), as amended, 15 U.S.C.A. § 77z–1(a)(3)(B)(iii)(I).

14 Cases that cite this headnote

**[2]** **Federal Civil Procedure** 〰 Stockholders, investors, and depositors

Retirement funds which were biggest losers from alleged securities fraud would be designated as lead plaintiff in class action suit, even though their counsel had made campaign contributions to state comptroller who was on board of trustees of one fund; there was nothing illegal about contributions, and designated lead plaintiff was best one to lead suit, as it had lost most money and its losses were incurred in all four types of investments covered by suit. Securities Act of 1933, § 27(a)(3)(B)(iii)(II)(aa, bb), as amended, 15 U.S.C.A. § 77z–1(a)(3)(B)(iii)(II)(aa, bb).

24 Cases that cite this headnote

**[3]** **Federal Civil Procedure** 〰 Stockholders, investors, and depositors

Separate counsel would be ordered for investors in derivative securities connected with shares covered by securities fraud class action; designated lead plaintiff had invested over $300 million in underwriter for derivative offering, losing only $6.4 million in present case, and under circumstances they could not be expected to pursue claims of

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 55 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

derivative securities holder with any vigor. Securities Act of 1933, § 27(a)(3)(B)(iii)(II)(aa, bb), as amended, 15 U.S.C.A. § 77z–1(a)(3)(B)(iii)(II)(aa, bb).

7 Cases that cite this headnote

**[4]**    **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors

Lead counsel for securities fraud class action suit, under Private Securities Litigation Reform Act (PSLRA) would be selected by auction, with bidders submitting their bids and their qualifications and court selecting lowest qualified bidder, and with counsel for lead plaintiff having opportunity to match that bid, provided it participated in bid process. Securities Act of 1933, § 27(a)(3)(B)(v), as amended, 15 U.S.C.A. § 77z–1(a)(3)(B)(v).

34 Cases that cite this headnote

**[5]**    **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors

Liaison counsel would not be appointed in securities fraud class action subject to Private Securities Litigation Reform Act (PSLRA); ministerial tasks to be performed by liaison counsel were easily performable by whatever lead counsel was selected. Securities Act of 1933, § 27(a)(3)(B)(v), as amended, 15 U.S.C.A. § 77z–1(a)(3)(B)(v).

17 Cases that cite this headnote

**Attorneys and Law Firms**

**\*144**  Andrew L. Barroway, Schiffrin Craig & Barroway, LLP, Bala Cynwyd, PA.

Jill S. Abrams, Abbey, Gardy & Squitieri, LLP, New York, NY.

Leonard Barrack, Barrack Rodos & Bacine, Philadelphia, PA.

Samuel P. Sporn, Schoengold & Sporn, P.C., New York, NY.

Daniel J. Beller, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY.

Max W. Berger, Bernstein Litowitz Berger & Grossmann, LLP, New York, NY.

Stanley D. Bernstein, Bernstein Liebhard & Lifshitz, New York, NY.

John J. Barry, Barry & McMoran, Newark, NJ.

Robert G. Finkel, WolfPopper, LLP, New York, NY.

John Halebian, Wechsler Harwood Halebian & Feffer, LLP, New York, NY.

**\*145**  Allyn Z. Lite, Goldstein Lite & DePalma, Newark, NJ.

Neil L. Selinger, Lowey Dannenberg, Bemporad & Selinger, PC, White Plains, NY.

Roger W. Kirby, Kaufman Malchman Kirby & Squire, New York, NY.

Patricia M. Hynes, Milberg Weiss Bershad Hynes & Lerach, New York, NY.

Kari Neuwelt, New York, NY.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 56 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

Peter S. Pearlman, Cohn Lifland Pearlman Herrmann & Knopf, LLP, Saddle Brook, NJ.

Jeffrey C. Zwerling, Zwerling, Schachter & Zwerling, LLP, New York, NY.

Michael S. Etkin, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, PC, Roseland, NJ.

Sherrie R. Savett, Berger & Montangue, P.C., Philadelphia, PA.

Stanley Grossman, Pomerantz Haudek Block & Grossman, New York, NY.

Mark C. Rifkin, Greenfield & Rifkin, LLP, Ardmore, PA.

Stephan D. Oestreich, WolfPopper, LLP, New York, NY.

Steven Pasternak, Pasternak Feldman & Plutnick, PA, Livingston, NJ.

David Grossman, Schneider Goldberger Cohen Finn, Solomon Leder & Montalbano, Kenilworth, NJ.

Donald King, Bross Zipkin & Pinilis, LLP, Newark, NJ.

Robert N. Kaplan, Kaplan Kilsheimer & Fox, LLP, New York, NY.

Oren Giskan, James V. Bashian, New York, NY.

Harold Sirota, Sirota & Sirota, Maplewood, NJ.

Jeffrey S. Abraham, New York, NY.

Dan Costell, Porter, Wright, Morris & Arthur, Columbus, OH.

Richard M. Conley, Archer & Geiner, Princeton, NJ.

Steven E. Fineman, Lieff, Cabraser, Heimann & Bernstein, New York, NY.

**Opinion**

WALLS, District Judge.

The 1995 Private Securities Litigation Reform Act ("PSLRA" or "Reform Act") was enacted by Congress to curb perceived abuses in the litigation process—widespread initiation and manipulation—of securities class-actions by "professional" plaintiffs and lawyers. Acknowledging the value of private securities litigation, *see* *Gluck v. Cellstar Corp.,* 976 F.Supp. 542, 544 (N.D.Tex.1997), Congress also recognized that under the prior regime, "[c]ourts traditionally appoint[ed] lead plaintiff and lead counsel in class action lawsuits on a first come, first serve basis." S.Rep. No. 104–98 (1995) reprinted in U.S.C.C.A.N. 679. This encouraged a "race to the courthouse" among parties seeking lead-plaintiff status and spawned a cottage-industry of specialized securities litigation firms that "researched potential targets for these suits, enlisted plaintiffs, controlled the course of the litigation, and often negotiated settlements that resulted in huge profits for the law firms with only marginal recovery for the shareholders." *Gluck,* 976 F.Supp. at 544 (citing S.Rep. No. 104–98 at 687)

To stem this unhealthy trend, the Reform Act establishes a presumption that among the parties seeking to lead the class, the persons or group of persons with "the largest financial interest in the relief sought by the class" is the "most adequate plaintiff" to do so. 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I)[1] . That plaintiff then selects counsel to represent the class. 15 U.S.C. § 77z–1(a)(3)(B)(v). The goal of this scheme is to "increase the likelihood that parties with significant holdings in issuers, whose interests

are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R.Rep. No. 104–369 at 32 (1995) reprinted in 1996 U.S.C.C.A.N. at 731. Its underlying assumption is that the plaintiff or plaintiff group with the strongest financial interest will pursue the claims with the greatest vigor and will have both the interest **\*146** and the clout to engage qualified counsel at the best rates for the class. The court is then charged with ensuring that the reality of the case accords with these assumptions. Thus, the lead plaintiff presumption is rebuttable, 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I), and that party's selection of counsel subject to court approval. 15 U.S.C. § 77z–1(a)(3)(B)(v).

This matter comes before the Court by the motions of fifteen plaintiffs or plaintiff groups for appointment as lead plaintiff in this shareholder class action. Each movant also seeks to have its chosen attorneys selected as lead counsel, and some motions were made for appointment of liaison counsel. The Court heard oral argument on this matter on August 4, 1998. [2] For the reasons that follow, the Court designates Welch & Forbes as lead plaintiff for the claims filed on behalf of the holders of "Feline Prides" derivative products, and the Public Pension Fund Investors as lead plaintiffs for the claims of all other shareholders. Lead counsel shall be determined through a process of competitive bidding, after which each lead plaintiff's present counsel, if a participant in the bidding and otherwise qualified, shall be afforded the opportunity to meet the lowest bids on their respective claims. The motion for appointment of liaison counsel is denied.

## Background

Defendant Cendant Corporation is one of the world's largest providers of consumer and business services. Among other things, the company provides access shopping, automobile and dining services, mortgage services and real estate brokerage services. Cendant was formed on or about December 18, 1997 when its predecessor, CUC International, Inc. ("CUC") merged with HFS, Inc. Under the terms of the merger, all outstanding shares of HFS common stock were exchanged for CUC shares and the merged entity took the name "Cendant."

On April 15, 1998, after the stock market closed, Cendant announced that it had uncovered substantial accounting irregularities in a former CUC business unit—now part of the merged entity. As a result of this revelation, the company announced that it would have to restate its reported annual and quarterly net income and earnings per share for 1997 and possibly for earlier periods as well. The market reacted to the news with predictable disfavor. On the day after the announcement, Cendant's stock price plummeted 46 percent. In the ensuing days, a flurry of shareholder suits were filed in this and other districts against Cendant, its directors, and various other relevant parties. To date, there are upwards of 64 such actions. With the exception of the single shareholder derivative action, the cases either have been or are in the process of being consolidated.

Plaintiffs in the various actions fall into one or more of four categories: (1) former holders of CUC shares; (2) former holders of HFS stock; (3) purchasers of Cendant stock; and (4) holders of Feline Prides ("Prides")—a derivative security based on Cendant common stock. All of the actions sound in fraud. The Prides-holders, who purchased the security pursuant to a registration statement and prospectus, allege violations of Sections 11, 12(a)(2), 15 and 22 of the Securities Act of 1933 (the "Securities Act" or " '33 Act"). Shareholders of Cendant common stock, having acquired their holdings both on the open market as well as pursuant to the Joint Proxy Statement/Prospectus of CUC and HFS, charge defendants with violations of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act" or " '34 Act") and violations of Sections 11, 12, 15 and 22 of the '33 Act. Fifteen plaintiffs or groups of plaintiffs filed motions for appointment as lead plaintiff. Each movant also sought to have its attorney or attorneys selected as lead counsel for the class.

## Discussion

**I.** *Selection of Lead Plaintiff*

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 58 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

 **[1]**    The PSLRA instructs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 77z–1(a)(3)(B)(i). To this end, the statute sets forth

> a presumption that the most adequate plaintiff in an private action arising under this subchapter is the person or group of persons that—

> (aa) has either filed the complaint or made a motion in response to a notice under  **\*147**  subparagraph (A)(i); [3]

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

>> (cc) otherwise satisfies the requirements of ⚑Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z–1(a)(3)(B)(iii)(I). It further provides that

>> [t]he presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—

>> (aa) will not fairly and adequately protect the interests of the class; or

>> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

 15 U.S.C. § 77z–1(a)(3)(B)(iii)(II).

At the outset, none of the movants knew the extent of any of the other plaintiff's or group of plaintiffs' financial interest in the litigation. Consequently, each applicant's moving brief consisted primarily of a statement that it had complied with the procedural requirements of the statute and an assertion that that plaintiff or amalgamation of plaintiffs was most adequate to lead because of the losses it had incurred. While most of the applicants quantified their losses, some simply relied on the assertion that they were most qualified. One movant's claims clearly stood out.

The "Public Pension Fund Investors," or "CalPERS group," formed from the California Public Employees' Retirement System ("CalPERS"), the New York State Common Retirement Fund ("CRF") and the New York City Pension Funds ("NYCPF") alleged combined losses in excess of $89 million. This dwarfed the next largest claim of $10.6 million asserted by the State Teachers Retirement System of Ohio, the City of Philadelphia and various individual plaintiffs ("The Ohio/Philadelphia Group"). Because the Public Pension Fund Investors had invested in each of the four types of securities at issue, the other movants could not rightly challenge the typicality of its claims. *See* ⚑*Gluck,* 976 F.Supp. at 546 (applicant for lead plaintiff status need only make a preliminary showing that it satisfies the requirements of ⚑Rule 23). Competing movants responded to the CalPERS group's motion either by seeking appointment as co-lead plaintiff on the ground that the Public Pension Fund Investors could not adequately represent the entire class alone, or by attempting to rebut the statutory presumption that the CalPERS group was most adequate to lead.


###   a. Propriety of Appointing Co–Lead Plaintiff(s)

Notwithstanding the diversity of the CalPERS group's holdings, nine movants petitioned the Court for appointment as co-lead plaintiff. While some offered little more than the general assertion that diversity of representation would benefit the class, others endeavored to challenge the typicality and adequacy of the CalPERS group's claims. None, it should be noted, purported to rebut directly the presumption that the Public Pension Fund Investors were the most adequate lead plaintiffs. Instead, each attempted to distinguish its interests from those of the CalPERS group in an effort to justify broader representation among the lead plaintiffs.

Case 5:24-cv-01234-PCP Document 85-2 Filed 05/20/24 Page 59 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

One movant, for example, asserted that it should have a voice because it had suffered the largest losses of any *private* investor and argued that it would have a stronger incentive than the CalPERS group to pursue this action zealously because its losses were greater in proportion to its total assets. Others maintained that *individual* investors should be represented among the lead plaintiffs because large institutions might be unduly concerned with potential disruption of valuable business relations with certain defendants. Still another group asserted that options-holders should be explicitly represented because their interests might, at some point in the litigation, diverge from those of the other shareholders.

Several movants charged that the Public Pension Fund Investors were ill suited to pursue claims based on Prides as well as the claims of common stockholders. Some warned that the CalPERS group, having incurred a substantial proportion of its losses as a result of its open-market purchases, would be motivated to "tilt" the litigation in favor of recovery on the '34 Act claims. Others maintained that the CalPERS group— **\*148** and other public pension fund plaintiffs—by virtue of their size and investment activity, had developed "special relationships" with underwriters that would create a disincentive to pursue certain avenues of recovery available only to Prides-holders. Finally, some movants asserted that additional lead plaintiffs were warranted in this case because additional attorneys would be better able to advance the potentially high costs and expenses of litigating this action. While all of these arguments raised valid concerns, none was persuasive.

More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individualized interest is represented. Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over the others. On the other hand, representation by a disparate group of plaintiffs, each seeking only the protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

The Reform Act demands only that the interests of the class members be *adequately* represented by the lead plaintiff. 15 U.S.C. § 77z–1(a)(3)(B)(i). Thus, notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general. Absent a showing sufficient to rebut the CalPERS group's presumption of adequacy, what matters here is that the claims of every member or constituent group of the putative class arise from the same false or allegedly fraudulent representations of CUC. The Public Pension Fund Investors have significant holdings in each type of security held by the putative plaintiff class and have suffered enormous losses. It is unrealistic to assume that they would not travel every avenue that could potentially enhance their potential recovery. And in pursuit of their interests, the Public Pension Fund Investors will necessarily seek to establish the elements of every plaintiff's claim. Under these circumstances, such self-interest of the presumptive lead plaintiffs will ensure adequacy of representation for all the class. [4] *See also* *Gluck,* 976 F.Supp. at 547–48 (dismissing speculative challenges to adequacy and typicality for similar reasons.) Moreover, "separate proceedings can, if necessary, be held on individualized issues.... Rule 23(a) does not require that class members share every factual and legal predicate to meet the commonality and typicality standards." *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liability Litig.,* 55 F.3d 768, 817 (3d Cir.1995) (hereinafter "*General Motors* "); *see also* *In re Prudential Ins. Co. America Sales Practices Litig. Agent Actions,* 148 F.3d 283, 309–11 (3d Cir.1998).

Finally, the argument that additional plaintiffs bring to the litigation other counsel capable of advancing additional funds is based upon the mistaken assumption that lead plaintiff comes inextricably tied to its counsel. As will be discussed, this is not necessarily so. A particular law firm's ability to sustain the action goes to its qualifications as lead counsel; it has no bearing on which or how many of the plaintiffs shall lead the charge. Accordingly, all motions for appointment as co-lead plaintiff that do not challenge the Public Pension Fund Investors' statutory presumption of adequacy are denied.

### b. Attempts to Rebut the Presumption

i. *Counsel considerations*

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 60 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

Plaintiffs Joanne A. Aboff Family Trust and Douglas Wilson ("Aboff and Wilson") challenged the adequacy of the CalPERS group because of its selection of counsel. Aboff and Wilson first argued that they were better suited to lead than the CalPERS group because they had negotiated a reduced fee schedule with their attorneys. They asserted that their lower counsel costs rebutted the statutory presumption in favor of the Public Pension Fund Investors since it would result in a greater percentage of any recovery accruing to the class.

 [2]    Aboff and Wilson further argued that scrutiny of counsel arrangements was particularly important here because considerations other than the interests of the class might have influenced the CalPERS group when it retained its attorneys. Specifically, these plaintiffs charged that counsel for the CalPERS  **\*149**  group had made substantial contributions to the campaign of the New York State Comptroller, who, as sole trustee of the CRF, has substantial influence over the decisions of the fund. This, they argued, created an appearance of impropriety because the contributions may have played a role in the selection of the group's counsel—a practice known as "pay-to-play." Finally, if their reduced fee arrangement was not sufficient to rebut the presumption and justify their appointment as lead plaintiffs, Aboff and Wilson urged that the Court should select lead plaintiff through a process of competitive bidding.

While all of these arguments were interesting, none was grounded in the statutory language. The Reform Act is clear that the lead plaintiff presumption can be rebutted "*only* upon proof ... that the presumptively most adequate plaintiff ... will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §§ 77z–1(a)(3)(B)(iii)(II)(aa), (bb) (emphasis added). Aboff and Wilson's speculative assertions provided neither.

First, the Court notes that favorable attorneys' fees are but one of a number of important class interests that must be pursued by lead plaintiffs. Indeed, one of the assumptions underlying the Reform Act's presumption of adequacy is that plaintiffs with the assets necessary to have made large investments will also be able to negotiate the most advantageous counsel rates to the class. Yet the rationale for the statutory presumption extends further.

Simply put, the party with the largest financial interest in the litigation has the most to gain from any marginal increase in dollars recovered per share. In this case, it is not lost on the Court that Aboff and Wilson did not, until pressed by the Court, reveal that they had sustained losses of only about $100,000. The reason is clear. In terms of sheer dollar amounts, any recovery, good or bad, will be felt almost 900 times as strongly by the CalPERS group as it will by Aboff and Wilson. Who has the greater incentive to pursue the most favorable end to this action?

Speculative allegations of pay-to-play were similarly unimpressive. Questioned at oral argument, Aboff & Wilson admitted that the campaign contributions against which they railed were violative of no New York law or any other law. Asked if they could present any proof of wrongdoing by the CalPERS group or its attorneys, Aboff and Wilson admitted that they could not. Thus, given the opportunity to "put up or shut up," where the statute clearly requires the former, Aboff and Wilson chose the latter. Their argument is dismissed.

Finally, while the Court was attentive to the suggestion that lead plaintiff be selected through a process of competitive bidding based on attorneys fees, it notes that the PSLRA permits no such thing. Because Congress has now decreed that certain facets of the litigation be given paramount consideration, that tail can no longer wag this dog.

   ii. *Conflicts of Interest*
 [3]    In the end, only one movant was successful—partially—in rebutting the statutory presumption of adequacy. Plaintiff Welch & Forbes, present in this case because of substantial Prides-related losses, claimed that Merrill Lynch, as underwriter of the Prides offering, would be a necessary defendant in any action on behalf of Prides holders. It further charged that the Public Pension Fund Investors hold combined investments in Merrill Lynch in excess of $300,000,000—a figure several times greater than the $6,400,000 they allege to have lost in their Prides—and could not be expected to pursue vigorously recovery from that defendant.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 61 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

Offered the opportunity at oral argument, the attorneys for the CalPERS group did not deny this overwhelming financial interest in a potential defendant. Though they publicly (and theatrically) pledged to the Court and gallery to pursue any and all viable claims against Merrill Lynch, logic and simple mathematics speak louder. The Court simply does not believe nor find that the CalPERS group can overcome this substantial conflict of interest and fully protect the interests of the Prides-holders. Because of this infirmity, the Court appoints the CalPERS group as lead plaintiffs for all matters save those involving Prides securities.

Welch & **\*150** Forbes, the non-conflicted party [5] with the next largest holdings of Prides is appointed colead plaintiff to pursue all claims based on that security. This selection of lead plaintiffs is made without prejudice to any party who seeks to contest such designation at the time of the motion for class certification.

## II. *Selection of Lead Counsel*

 **[4]** The Reform Act instructs that "[t]he most adequate lead plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z–1(a)(3)(B)(v). In contrast to the strictly defined procedures and considerations that prescribe the determination of lead plaintiff, here the Court's approval is subject to its discretionary judgment that lead plaintiff's choice of representative best suits the needs of the class. [6]

It is reasonable to assume that given the opportunity, absent class members would try to secure the most qualified representation at the lowest cost. As one court has noted, "the ultimate goal in class action litigation—that is, for the members of the plaintiff class—is to maximize the benefit to the class members if the litigation proves successful (either by way of settlement or through trial), and there can be no doubt that the class is best served by obtaining highly qualified class counsel who are prepared to undertake the representation on a basis that will maximize that recovery (something that necessarily implicates what counsel will charge for their services)." *Raftery v. Mercury Finance Co.,* 1997 WL 529553 (N.D.Ill. Aug. 15, 1997).

The PSLRA attempts to protect the class by instructing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 77z–1(a)(6). [7] But as the *Raftery* court rightly wrote, reliance on this provision presupposes "that the court will be able to divine the reasonable value of the services rendered when the time comes, a false presupposition." 1997 WL 529553 at \*2. It is no insult to the judiciary to admit that a court's expertise is rarely at its most formidable in the evaluation of counsel fees; judges rarely retain counsel. And even though a lead plaintiff presumed to have identity of interests with the rest of the class might also be presumed to be motivated by appropriate price and quality considerations, the statutory requirement that lead plaintiff's selection is subject to court approval, indicates that the Court should not rely solely on that party's judgment. There are other mechanisms to aid the Court.

There is an emerging trend in common fund class actions for courts to simulate the free market in the selection of class counsel. The use of an auction to select counsel in a securities class action was pioneered by District Judge Vaughn Walker's insightful and innovative opinions which directed the *In re Oracle Securities Litigation,* 131 F.R.D. 688 (N.D.Ca.1990), 132 F.R.D. 538 (1990) and 136 F.R.D. 639 (1991). Those decisions, and those that followed Judge Walker's lead, sought to provide a framework for reasonable counsel fees and costs which are to be borne by all plaintiffs in the event of recovery. *See Oracle,* 131 F.R.D. at 692 ("the problem facing the court is how to approximate what the class members would do if they were involved in the decision-making"); *In re Amino Acid Lysine Antitrust Litig.,* 918 F.Supp. 1190, 1194 (N.D.Ill.1996) ("The object ... is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible.... [T]o simulate the market where a direct market determination is infeasible."); *Raftery,* 1997 WL 529553. These courts have recognized that the most effective way to establish reasonable attorney fees is through marketplace (which this Court terms, adversarial) competition. This Court shares their resolve. Its rationale is simple and flows from the tradition of the profession.

**\*151**  The task of lead counsel carries substantial responsibility. Lead counsel must represent not only the interests of a lead plaintiff, but all members of the putative class. It follows then that such responsibility should be borne by counsel of the highest professional talent, accompanied by a similarly high degree of integrity. Such talents have been developed and manifested in this type of litigation. Such qualities, per force have been hewn by the adversarial foundation of our trial system. To seek the requisite reasonableness of costs for such talent which are to be borne by the entire plaintiff group in the event of recovery, it is the Court's judgment that legal fees also be the subject of adversarial competition.

The Court shall conduct an auction to determine the lowest qualified bidder to represent the class as counsel. Any attorney or attorneys interested in serving as counsel to either of the two lead plaintiffs shall submit a sealed bid to the Court not later than 4:00 p.m., September 17, 1998 E.D.T.:

1. Each bidder shall submit his, her, or their professional qualifications to be lead counsel. Among anything else deemed relevant, this shall include a history of involvement in similar litigation, case titles, docket numbers, relevant dates, courts involved, the result, whether by trial or appeal, settlement or resolution and the time during litigation when such resolution or settlement occurred.

2. Bidders shall indicate their ability to undertake and maintain all costs of this litigation, and should express their readiness to post a performance bond and its amount, if required by the Court.

3. Bidders shall indicate how costs are to be deducted in the event of resolution favorable to the plaintiffs.

4. Applicants shall state their percentage fee bids according to one or both of the following "litigation milepost" grids: [8]

5. Each bidder shall certify that its bid is made in good faith and has been formulated, determined, prepared and forwarded to the Court without any assistance, revelation or collusion, direct or indirect, with any other party or competing law firm before submission to the Court.

6. Payment of the fees and costs of any lawyers or firms assisting the lead counsel, if any, will be the responsibility of lead counsel.

7. The Court reserves the right to reject any and all bids it deems not to have been made in good faith or which are contrary to the interests of the consolidated plaintiffs. In its discretion, the Court may solicit additional bids from any source.
Recognizing that the Reform Act affords an opportunity to lead plaintiffs to choose counsel subject to the approval of the Court, the Court maintains the same in the auction process. Upon determination of the lowest qualified bidder by the Court, if present counsel to a designated lead plaintiff is the lowest qualified bidder, that person or entity will be appointed by the Court. If not, that person or entity, if otherwise qualified, will have the opportunity to agree to the terms of what the Court has found to be the lowest qualified bid. If that person or entity accepts those terms, lead counsel status will be conferred upon it by the Court. If counsel does not exercise this right of first refusal, the lowest qualified bidder will serve the plaintiffs.

As mentioned, the Court acknowledges lead plaintiffs' statutory opportunity. However, whether under the present statute or earlier discipline, the Court is the final arbiter of fees sought by successful plaintiffs' lawyers in this action. *See* F.R.Civ.P. 23(e); 15 U.S.C. § 77z–1(a)(6). The mechanism of an auction gives to the Court a measure of needed foresight to meet its obligations to members of the group. The Court need not be compelled to learn by hindsight—to be told at the end of months or years of litigation, "this is what we seek for services *rendered*."

The Court is required to protect the interests of all members of the class. If Congress had intended otherwise with its PSLRA, it could have easily permitted lead plaintiff to designate and retain counsel without judicial approval. It did not.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 63 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

**\*152** The auction will not obviate the Court's final review of fees and costs pursuant to Rule 23(e), *see e.g.* *In re General Motors,* 55 F.3d at 819 ("a thorough judicial review of fee applications is required in all class action settlements"), and/or 15 U.S.C. § 77z–1(a)(6) if this matter is ultimately resolved in favor of the putative class. During the requisite post-resolution evaluation, the results of the auction will serve as a benchmark of reasonableness.

This is not an invitation for cheapness of costs resulting from cheapness of quality. The Court is confident that professional skills of high order will be forthcoming by this procedure. Additionally, notwithstanding the absence of proof of pay-to-play, the auction is salutary because it removes any speculative doubt about that issue.

**III.** *Necessity for Liaison Counsel*

 **[5]**    The chief applicant for appointment as liaison counsel asserted that he would play an integral role in this action, advising lead counsel on local procedural matters, coordinating administrative matters, distributing communications between the Court and other counsel, convening meetings of counsel and advising parties of developments in the case. Qualified lead counsel will be surely capable of performing these ministerial tasks. The Court finds no need to involve another law firm in this matter. Accordingly, all motions for appointment of liaison counsel are denied.

**All Citations**

182 F.R.D. 144

**Footnotes**

1       For the sake of brevity, this opinion shall refer to the relevant Reform Act amendments to the Securities Act of 1933. The corresponding amendments to the Securities Exchange Act of 1934 are found at 15 U.S.C. § 78u–4.

2       On August 24, 1998, the Court entertained additional argument and modified its initial holding on the basis of the new evidence presented. *See infra,* fn. 5.

3       Under the statute, plaintiffs must publicize the pendency of the action within 20 days of the filing of the complaint. 15 U.S.C.A. § 77z–1(a)(3)(A)(i). Within 60 days of such publication, any member of the purported class may then petition the court to serve as lead plaintiffs. *Id.*

4       This determination is, of course, made without prejudice to plaintiffs' ability to later move for the creation of appropriate sub-classes pursuant to Fed.R.Civ.P. 23(c)(4)(B).

5       At the initial hearing, the Court selected the group led by the State of Connecticut Retirement Plans and Trust Funds to lead the Prides claims because after the CalPERS group, it had suffered the next largest losses based on Prides. At the August 24th reargument, that plaintiff was removed as lead plaintiff when the Court was made aware that Connecticut, too, had holdings in Merrill Lynch far in excess of its Prides losses.

6       In common fund class actions, the Court takes on fiduciary duties to the class. *See* *Oracle,* 131 F.R.D. at 691.

7       *See also* Fed.R.Civ.P. 23(e) ("A class action shall not be dismissed or compromised without the approval of the court ...").

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 64 of 90

In re Cendant Corp. Litigation, 182 F.R.D. 144 (1998)

8    Applicants may, of course, bid on both available positions. However, for obvious reasons, if one firm emerges as lowest qualified bidder for both lead plaintiffs, it shall be forced to choose. The remaining position shall go to the firm submitting the next lowest qualified bid.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 3365547
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Robert L. GARBER, on behalf of himself and all other similarly situated, Plaintiff,

v.

JUNIPER NETWORKS, INC., et al., Defendants.

Nos. C 06-04327 JW, C 06-05303 JW.
|
Nov. 20, 2006.

**Attorneys and Law Firms**

WIlliam M. Audet, Alexander, Hawes & Audet LLP, San Francisco, CA, Alfred Glenn Yates, Jr., Law Office of Alfred G. Yates Jr, P.C, Pittsburgh, PA, Jason T. Baker, Alexander, Hawes & Audet LLP, San Jose, CA, Mark C. Gardy, Gardy & Notis, LLP, Englewood Cliffs, NJ, Mark C. Molumphy, Cotchett, Pitre & Simon, Burlingame, CA, for Plaintiffs.

Joni L. Ostler, Wilson Sonsini Goodrich & Rosati, Salt Lake City, UT, for Defendants.

**ORDER CONSOLIDATING CASES AND APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**

JAMES WARE, District Judge.

### I. INTRODUCTION

**\*1** There are currently two related securities fraud class actions ("Related Securities Actions") against Juniper Networks, Inc. ("Juniper") and certain of its officers and directors pending before the Court. [1] A number of motions have been filed to consolidate these two actions and to appoint lead plaintiff and lead counsel. (*See* Docket Item Nos. 10, 15, 22, 28.) Subsequent to the filing of these motions, all but one movant withdrew their applications for appointment as lead plaintiff. (*See* Docket Item Nos. 41, 42, 57.) The only remaining applicant for lead plaintiff is the New York City Pension Funds (the "NYC Funds.") (*See* Docket Item No. 10.) The Court found it appropriate to take these matters under submission without hearing. *See* Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court ORDERS (1) consolidation of the securities class actions cases; (2) NYC Funds appointed Lead Plaintiff; and (3) Lowey Dannenberg Bemporad & Selinger, P.C. appointed Lead Counsel.

### II. BACKGROUND

The Related Securities Actions were filed on behalf of public investors who purchased the securities of Juniper between approximately 2003 and 2006. Named as defendants are various officers and directors of Juniper. On July 14, 2006, the first of the two Related Securities Actions, *Garber v. Juniper Networks, Inc. et al.,* 06-04327 MJJ, was filed in the Northern District of California. On August 29, 2006, the second action, *Peters v. Juniper Networks, Inc., et al.,* 06-05303 JW, was filed and assigned to the Court. On September 27, 2006, the Court found these two actions were related to each other as well as to some earlier filed derivative actions that had been brought on behalf of Juniper. (*See* Order Relating Cases, Docket Item No. 39.)

## *III. DISCUSSION*

### A. *Consolidation of the Related Securities Actions*

A district court has broad discretion to consolidate actions involving "common issues of law or fact." Fed.R.Civ.P. 42(a); *Investors Research Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.,* 877 F.2d 777, 777 (9th Cir.1989). In exercising its broad discretion to order consolidation, a district court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. U.S.,* 743 F.2d 703, 704 (9th Cir.1984).

Having reviewed the complaints filed in both of the Related Securities Actions, the Court finds the two actions name the same core defendants and allege the same factual events. Furthermore, both actions are brought pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 1 0b-5 promulgated thereunder. Given the common issues of law and fact involved in the Related Securities Actions, the Court finds it appropriate to consolidate these cases.

### B. *Appointment of Lead Plaintiff*

The Private Securities Litigation Reform Act (the "PSLRA") requires the court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). The act creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that (i) either filed the complaint or made a motion in response to the published notice; (ii) in the determination of the court, has the largest financial interest in the relief sought; and (iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[2] 15 U.S.C. § 78u-4(a)(3)(B)(iii). Thus, under the PSLRA, the plaintiff most capable of adequately representing the interests of the class members is "the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23 ." *In re Cavanaugh,* 306 F.3d 726, 729 (9th Cir.2002).

 **\*2**  The only movant remaining for appointment as Lead Plaintiff is the NYC Funds. According to the evidence submitted in conjunction with its motion, the NYC Funds' losses totaled $13.3 million using the first-in, first-out ("FIFO") methodology and $7.4 million calculating losses on a last-in, first-out basis ("LIFO"). (*See* Declaration of Neil L. Selinger, Docket Item No. 11, Ex. 1 .) Given the substantial losses endured by the NYC Funds and the lack of any competing applications for lead plaintiff, the Court appoints NYC Funds as Lead Plaintiff.

### C. *Appointment of Lead Counsel*

Under the PSLRA, the court may only approve or disapprove the lead plaintiff's choice of counsel. *Cavanaugh,* 306 F.3d at 734. NYC Funds has moved the Court to appoint Lowey Dannenberg Bemporad & Selinger, P.C. as lead counsel. There has been no objection filed with the Court. Accordingly, the Court appoints Lowey Dannenberg Bemporad & Selinger, P.C. as Lead Counsel.

## *IV. CONCLUSION*

The Court ORDERS (1) consolidation of the securities class actions cases; (2) NYC Funds appointed Lead Plaintiff; and (3) Lowey Dannenberg Bemporad & Selinger, P.C. appointed Lead Counsel.

The Clerk shall consolidate these actions. Case No. C 06-04327 JW is the earlier filed action and therefore, shall be the lead case. All future filings shall be filed in C 06-04327 JW and bear the caption: "In Re Juniper Securities Litigation."

Lead Plaintiff shall file a Consolidated Complaint no later than **January 12, 2007.** The deadline for Defendants to file a motion to dismiss is **March 12, 2007.** Oppositions and replies are due April 13, 2007 and May 4, 2007 respectively. A hearing on Defendants' anticipated motion is scheduled for **May 21, 2007 at 9:00 a.m.** The parties shall coordinate service with the parties in *In re Juniper Derivative Actions* to ensure that everyone receives copies, electronically or otherwise, of the papers filed in each action.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 3365547

## Footnotes

1       The Related Securities Actions are *Garber v. Juniper Networks, Inc. et al.,* 06-04327 JW (filed Jul. 14, 2006) and *Peters v. Juniper Networks, Inc., et al.,* 06-05303 JW (filed Aug. 29, 2006).

2       Federal Rule of Civil Procedure 23 requires, among other things, that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4615895
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Morton LIPETZ and Evelyn Jean Lipetz, Individually and On Behalf of All Others Similarly Situated, Plaintiffs,
v.
WACHOVIA CORP., G. Kennedy Thompson, and Thomas J. Wurtz, Defendants.

No. 08 Civ. 6171(RJS).
|
Oct. 10, 2008.

West KeySummary

1    **Federal Civil Procedure** 🔑 Stockholders, Investors, and Depositors

New York City Pension Funds (NYCPF) demonstrated that it was entitled to the rebuttable presumption, under the Private Securities Litigation Reform Act (PSLRA), that it was the most adequate lead plaintiff a class action that alleged violation of the federal securities laws in connections with Wachovia's alleged false or misleading statements about its mortgage-related operations and exposure to mortgage-related assets. NYCPF had the largest financial interest as it purchased or acquired, through Wachovia's purchases of other entities using its own stock, 4,465,016 shares, with net shares purchased amounting to 2,347,928. There were, from the moving papers, no apparent conflicts of interest; and the claims were typical of the claims of the class as a whole, based on the allegations that NYCPF, like the proposed class, purchased Wachovia shares in reliance on Wachovia's false and misleading statements, and thereby suffered damages.

*MEMORANDUM AND ORDER*

RICHARD J. SULLIVAN, District Judge.

**\*1** Before the Court are two motions for appointment as Lead Plaintiff in the above-captioned case, a putative class action alleging violation of the federal securities laws in connection with Wachovia Corp.'s ("Wachovia") alleged false or misleading statements about its mortgage-related operations and exposure to mortgage-related assets. (Cmpl.¶¶ 1–3.) Also before the Court are the lead plaintiff movants' motions to approve the selection of Lead Counsel in the action. For the reasons that follow, the motions of Movant New York City Pension Funds ("NYCPF") [1] are GRANTED, and the motions of Movant Fulton County Employees Retirement System ("FCERS") are DENIED.

I. FACTS

Plaintiffs allege that they purchased shares of Wachovia, a provider of commercial and retail banking services as well as trust services, between May 8, 2006, and June 6, 2008. (Cmpl. at ¶¶ 1 & 2.) They assert that, throughout the class period, Wachovia made false and misleading statements with regard to both its financial statements and the nature of certain internal practices. (*Id.*

¶ 3.) Specifically, Plaintiffs allege that Wachovia misled investors about its "extremely aggressive residential mortgage lending practices, its failure to write down impaired securities containing subprime debt, its poor internal controls and its improper practices with respect to auction rate securities." (*Id* ) As a result of these alleged false and misleading statements, Plaintiffs claim that throughout the class period Wachovia stock traded at artificially inflated prices. (*Id.*) Plaintiffs assert that, beginning in approximately mid–2007, problems with the mortgage market became apparent, but that even in the midst of write-downs Wachovia nonetheless failed to fully disclose the extent of its financial difficulties. (*Id.* at ¶¶ 4–7.) The full extent of Wachovia's difficulties was revealed only on June 9, 2008, Plaintiffs claim, sending Wachovia shares to a close of $ 18.89, down from their class period high of $ 58.80 in February 2007. (*Id.* at ¶¶ & 21.)

## II. PROCEDURAL POSTURE

The instant complaint was filed on July 7, 2008 by Morton Lipetz and Evelyn Lipetz, individually and on behalf of all others similarly situated, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, ⚑15 U.S.C. §§ 78j(b) and 78t(a), and Rule 1 Ob–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. [2] (Cmpl.¶ 24.) The complaint alleges claims against Wachovia as well as against G. Kennedy Thompson, Wachovia's former Board Chairman and Chief Executive Officer, and Thomas J. Wurtz, former Chief Financial Officer and Executive Vice President of the company. (Cmpl.¶¶ 28–30.)

On August 8, 2008, NYCPF and FCERS filed their respective motions for appointment as Lead Plaintiff. On August 25, 2008, NYCPF filed its opposition to FCERS's motion. [3] FCERS has not filed an opposition to NYCPF's motion.

## II. LEGAL STANDARD

**\*2** Under the procedures established by the Private Securities Litigation Reform Act ("PSLRA"), a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z–1(a) (3)(B). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" who is a named plaintiff or timely movant and otherwise satisfies the requirements of ⚑Federal Rule of Civil Procedure 23, provided that person or group of persons "has the largest financial interest in the relief sought by the class." *Id.; see also In Re Fuwei Films Sec. Litig.,* 247 F.R.D. at 436–37 (S.D.N.Y.2008).

### A. Financial Interest

Though the PSLRA does not specify a method for calculating the "largest financial interest," a number of Second Circuit courts have applied a four-part test in making the determination, weighing "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." ⚑*In re Olsten Corp. Secs. Litig.,* 3 F.Supp.2d 286, 295(E.D.N.Y.1998).

### B. ⚑Rule 23 Requirements

Of the four criteria of ⚑Rule 23(a)—numerosity, commonality, typicality, and adequacy—"only two—typicality and adequacy—directly address the personal characteristics of the class representative." ⚑*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.,* 229 F.R.D. 395, 412 (S.D.N.Y.2004). Thus, "in deciding a motion to serve as lead plaintiff, the

moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under ⚑Rule 23 have been met." *Id.* (internal quotation marks and citations omitted); *see also In re OSI Pharmaceuticals, Inc. Securities Litigation, No. 04 Civ. 5505(JS)(ETB), 2005 WL 6171305, at \*4 (E.D.N.Y. Sept. 21, 2005).*

The adequacy requirement is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class," ⚑Fed.R.Civ.P. 23(a). Thus, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Pirelli,* 229 F.R.D. at 412–13 (citations omitted). Additionally, "the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy." ⚑*Id.* at 413 (citations and internal quotations omitted).

The requirement of typicality is met if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." ⚑*In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992) (citations omitted). Nonetheless, a lead plaintiff's claims "need not be identical to the claims of the class to satisfy the typicality requirement." ⚑*Pirelli,* 229 F.R.D. at 412.

**\*3** Once established, the presumption of most adequate plaintiff may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

III. ANALYSIS

1. NYCPF Is the Presumptive Lead Plaintiff

NYCPF has demonstrated that it is entitled to the rebuttable presumption, under the PSLRA, that it is the most adequate lead plaintiff in this action.

As a preliminary matter, NYCPF timely moved to be appointed lead plaintiff within 60 days of the published notice in the first-filed action. *See* 15 U.S.C. § 77z-l(a)(3)(A)(i)(II); *see also* NYCPF Mem. 6–7.

Second, it is evident that NYCPF has the largest financial interest. NYCPF purchased or acquired, through Wachovia's purchases of other entities using its own stock, 4,465,016 shares, with net shares purchased amounting to 2,347,928. (Press Aff. Ex. C). These purchases and acquisitions resulted in a net expenditure of $116,933,984 and approximate losses of $113,954,871 on a first in, first out ("FIFO") basis and $92,005,618 on a last in, first out ("LIFO") basis. (*Id.*) These figures far outstrip those of Movant FCERS, which, for example, sustained approximate losses of only $1,939,703 on a LIFO basis. (*See* Scott Decl. Ex. C.)

Finally, NYCPF satisfies the typicality and adequacy prongs of ⚑Rule 23. *See* 15 U.S.C. § 77z–1 (a)(3)(B). Specifically, NYCPF has a substantial financial stake in the litigation, which leads the Court to believe that as lead plaintiff, NYCPF would prosecute the claim vigorously, *see* ⚑*Pirelli,* 229 F.R.D. at 413; there are, from the moving papers, no apparent conflicts of interest; and the claims are typical of the claims of the class as a whole, based on the allegations that NYCPF, like the proposed class, purchased Wachovia shares in reliance on Defendants' false and misleading statements, and suffered damage thereby (N.Y.CPF Mem. at 10–11).

As a result, NYCPF has demonstrated that it is the presumptive lead plaintiff.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 71 of 90

## 2. There Were No Attempts to Rebut the Presumption

The FCERS never filed an opposition to NYCPF's motion; accordingly, the Court concludes that the presumption in favor of NYCPF has not been rebutted, and that NYCPF is the movant most capable of adequately representing the interests of the class.[4] NYCPF is hereby appointed Lead Plaintiff in this action.

## IV. APPROVAL OF SELECTION OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v), the lead plaintiff shall select and retain counsel to represent the class, subject to the court's approval. *See* ⚑*Pirelli,* 229 F.R.D. at 420. Lead Plaintiff NYCPF has retained Kirby McInerney LLP (hereinafter "Kirby"), and now seeks the Court's approval of that selection. In support of that request, Ira M. Press, Esq., an attorney with Kirby, has submitted an affidavit attaching a resume of the firm which describes a number of securities class actions or other actions in which the firm has served as counsel or, in many cases, lead or co-lead counsel. (Press Aff. Ex. E.) Accordingly, the Court finds that Kirby is well qualified to serve as lead counsel in this matter, and thus the selection of Kirby Mclnerney LLP as Lead Counsel is hereby approved.

## IV. CONCLUSION

**\*4** For the reasons stated above, Movant NYCPF's motions for appointment as Lead Plaintiff and approval of selection of counsel are GRANTED. All other motions are DENIED.

Lead Plaintiff is GRANTED leave to file an amended class action complaint, should it so choose, due 30 days from the date of this order. Defendants shall answer or otherwise respond not more than 30 days after the filing of the amended class action complaint.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4615895

## Footnotes

1      The pension funds constituting the NYCPF group are the New York City Board of Education Retirement System, the New York City Employees Retirement System, the New York City Police Pension Fund, the New York City Police Officers Variable Supplements Fund, the New York City Police Superior Officers Variabl e Supplements Fund, the New York City Fire Department Pension Fund, the New York City Firefighters Variable Supplements Fund, the New York City Fire Officers Variable Supplements Fund, the New York City Teachers Retirement System, and the New York City Teachers Retirement System Variable Annuity Program.

Case 5:24-cv-01234-PCP    Document 85-2    Filed 05/20/24    Page 72 of 90

2    On June 9, 2008, a substantially similar complaint was filed in the District Court for the Northern District of California. *See Bristol County Retirement System v. Wachovia Corp., et al.,* No. 3:08 Civ. 02844(SC). That case was voluntarily dismissed on August 7, 2008, in part because of the pendency of the instant action.

3    The Wachovia Institutional Investor Group ("WIIG") filed its motion seeking to be appointed Lead Plaintiff on August 8, 2008, but filed a notice of non-opposition to the appointment of the NYCPF as Lead Plaintiff on August 26, 2008. The Union Pension Fund Group filed its application for Lead Plaintiff status on August 8, 2008, and withdrew that application on September 8, 2008.

4    The WIIG, in its Notice of Non–Opposition to NYCPF's motion, concedes that NYCPF has the greatest financial interest in the case, but asserts its willingness to serve as co-Lead Plaintiff, and submits that it is the next most qualified movant should the Court decline to appoint NYCPF. (WIIG Notice at 1.) This too is insufficient to rebut the presumption that NYCPF is the most adequate lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii) (II).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**E-Filed 1/22/2007**

NOT FOR CITATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE COMPUTER INC., DERIVATIVE LITIGATION | Case Number C 06-4128 JF<br><br>ORDER[1] DENYING MOTION FOR APPOINTMENT OF SARATOGA PLAINTIFFS AS LEAD PLAINTIFF AND FOR APPOINTMENT OF FINKELSTEIN & KRINSK LLP TO THE MANAGEMENT COMMITTEE<br><br>[re: docket no. 84] |

Plaintiffs Saratoga Advantage Trust Large Capitalization Growth Portfolio and Saratoga Advantage Trust Technology & Communications Portfolio (collectively "Saratoga Plaintiffs") move for appointment of themselves as lead plaintiff and for appointment of their counsel Finkelstein & Krinsk LLP to the management committee. Nominal defendant Apple Computer Inc. takes no position on the motion.[2] The management committee opposes the motion. The

---

[1] This disposition is not designated for publication and may not be cited.

[2] Plaintiff New York City Employees' Retirement System filed a response stating no opposition to the instant motion to the extent that it would not prejudice its application for lead plaintiff status in the related case *Vogel v. Jobs*, No. C 06-05208, brought under the Private Securities Litigation Reform Act. The Court granted that motion at oral argument on January 19,

Case No. C 06-4128 JF
ORDER DENYING MOTION FOR APPOINTMENT OF SARATOGA PLAINTIFFS AS LEAD PLAINTIFF AND
FOR APPOINTMENT OF FINKELSTEIN & KRINSK LLP TO THE MANAGEMENT COMMITTEE
(JFLC1)

Court heard oral argument on the motion on January 19, 2007.

On November 2, 2006, the Court issued an order establishing a management committee for this litigation and declining to appoint a lead plaintiff. Prior to issuing that order, the Court considered the arguments raised by the Saratoga Plaintiffs in the affidavit filed on October 19, 2006, and at the oral argument on October 20, 2006. While aware of the reputation and expertise of Finkelstein & Kinsk LLP, the Court decided that the litigation would proceed most effectively with a management committee composed of Cotchett, Pitre, Simon & McCarthy; Keller Rohrback L.L.P.; Lerach Coughlin Stoia Geller Rudman & Robbins LLP; and Schiffrin & Barroway, LLP, with the first firm serving as chair.

The Saratoga Plaintiffs now move for appointment of their counsel to the management committee to avoid a potential deadlock among the four-member committee and to protect claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5, promulgated thereunder, 17 C.F.R. § 240.10b-5. The Court concludes that it should not alter the management structure for either of these reasons. The management committee reports that it has suffered no deadlocks in producing the Consolidated Shareholder Derivative Complaint, filed on December 18, 2006. The establishment of a four-member, rather than a five-member, management committee was not an oversight but rather was intended to promote consensus-building among the committee members. The Court remains confident that the management committee will prosecute the litigation efficiently and effectively. The Court also concludes that the management committee has adequate experience to protect any claims for relief under Section 10(b) or Rule 10b-5. Accordingly, the Court will deny the Saratoga Plaintiffs' motion for appointment of its counsel, Finkelstein & Krinsk LLP to the management committee.

The Court also concludes that it need not appoint a lead plaintiff in this action. The Court recognizes the Saratoga Plaintiffs' vigorous interest in this litigation, but concludes that the management committee will represent the interests of Apple adequately without the appointment of a lead plaintiff. Accordingly, the Court will deny the motion to appoint the Saratoga Plaintiffs

2007.

2

as lead plaintiff.[3]

IT IS SO ORDERED.

DATED: January 22, 2007.

_____
JEREMY FOGEL
United States District Judge

---

[3] The Saratoga Plaintiffs argue that they should be included among the named plaintiffs in this action. The management committee stated at oral argument that it would give that suggestion serious consideration. The Saratoga Plaintiffs reserved the right to bring an appropriate motion on that subject. Accordingly, the Court need not address this issue at the present time.

3

This Order has been served upon the following persons:

| | |
|---|---|
| Genevieve A. Cox | Genevieve.Cox@mto.com, sophialeshin@gmail.com |
| Travis E. Downs , III | travisd@lerachlaw.com, e_file_sd@lerachlaw.com |
| Yohance Claude Edwards | yohance.edwards@mto.com, milvi.giesinger@mto.com |
| Juli E. Farris | jfarris@kellerrohrback.com, mbates@kellerrohrback.com; bleland@kellerrohrback.com |
| Howard D. Finkelstein | fk@classactionlaw.com, |
| David Malcolm Furbush | dfurbush@omm.com, dbrown@omm.com; dshah@omm.com; lnewell@omm.com |
| Sean M. Handler , Esq | ecf_filings@sbtklaw.com, der_filings@sbtklaw.com.com |
| Sarina M. Hinson | shinson@lawgarcia.com, jmobley@lawgarcia.com |
| Willem F. Jonckheer | wjonckheer@schubert-reed.com |
| Jeffrey R. Krinsk | jrk@classactionlaw.com, fk@classactionlaw.com |
| Elizabeth A. Leland | bleland@kellerrohrback.com, chopkins@kellerrohrback.com |
| Ronald Lovitt | rl@lh-sf.com, davies@lh-sf.com |
| Mark C. Molumphy | mmolumphy@cpsmlaw.com, jacosta@cpsmlaw.com, ksommerfeld@cpsmlaw.com |
| Jerry E. Nastari | jen@coreylaw.com, deg@coreylaw.com |
| Alan R. Plutzik | aplutzik@bramsonplutzik.com |
| Juden Justice Reed | jreed@schubert-reed.com, rschubert@schubert-reed.com |
| Jerome C. Roth | Jerome.Roth@mto.com, susan.ahmadi@mto.com |
| Lynn Lincoln Sarko | lsarko@kellerrohrback.com |
| Kathryn A. Schofield | kschofield@bramsonplutzik.com, mfogle@bramsonplutzik.com |
| Robert C. Schubert | rschubert@schubert-reed.com |
| Luann Loraine Simmons | lsimmons@omm.com, smeblin@omm.com; cholsome@omm.com; cchiu@omm.com |
| Kelly L Sommerfeld | ksommerfeld@cpsmlaw.com, jacosta@cpsmlaw.com |
| John W. Spiegel | spiegeljw@mto.com, finchac@mto.com; stonelc@mto.com; berryjm@mto.com; giesingermj@mto.com; voigtsam@mto.com |
| Mary Sikra Thomas | mthomas@gelaw.com, memaryt@verizon.net |

4

Case No. C 06-4128 JF
ORDER DENYING MOTION FOR APPOINTMENT OF SARATOGA PLAINTIFFS AS LEAD PLAINTIFF AND FOR APPOINTMENT OF FINKELSTEIN & KRINSK LLP TO THE MANAGEMENT COMMITTEE (JFLC1)

| | |
|---|---|
| Shawn A. Williams | shawnw@lerachlaw.com, e_file_sd@lerachlaw.com; e_file_sf@lerachlaw.com; AelishB@lerachlaw.com; MoniqueW@lerachlaw.com; TravisD@lerachlaw.com; ChrisW@lerachlaw.com |
| Scott Justin Yundt | syundt@mandhllp.com, dhoward@mandhllp.com; aarnall@mandhllp.com; gmurray@mandhllp.com |
| Eric L. Zagar | ezagar@sbclasslaw.com, rwinchester@sbclasslaw.com; der_filings@sbclasslaw.com |

Notice will be delivered by other means to:

Carl Holliday Moor
Munger Tolles & Olson LLP
355 S Grand Ave 35FL
Los Angeles, CA 90071-1560

Richard S. Schiffrin
Schiffrin & Barroway LLP
280 King of Prussia
Radnor, PA 19087

Emanuel Shachmurove
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
JOHN FENNINGER, Individually and On Behalf : 
of All Others Similarly Situated, :            Civil Action No.: 1:06-cv-00803-SWK
:
            Plaintiff, :                       Judge Shirley Wohl Kram
:
vs. :
:
TAKE-TWO INTERACTIVE SOFTWARE, :
INC., PAUL EIBELER, KARL H. WINTERS, :
and GARY LEWIS, :
:
            Defendants. :
------------------------------------------------------------------x

**[PROPOSED] ORDER CONSOLIDATING THE RELATED
ACTIONS, APPOINTING THE NEW YORK CITY PENSION FUNDS AS LEAD
PLAINTIFFS AND APPROVING LEAD PLAINTIFFS' SELECTION OF LEAD
COUNSEL**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/12/06
```

-------------------------------------------------------------x

DAVID ANDREWS, Individually and On Behalf
of All Others Similarly Situated,                          :        Civil Action No.: 1:06-cv-00987-SWK
                                                           :
                        Plaintiff,                         :        Judge Shirley Wohl Kram
                                                           :
        vs.                                                :
                                                           :
TAKE-TWO INTERACTIVE SOFTWARE,                             :
INC., PAUL EIBELER, KARL H. WINTERS,                       :
and GARY LEWIS,                                            :
                                                           :
                        Defendants.                        :
-------------------------------------------------------------x
MAX KAPLAN, Individually and On Behalf of                  :
All Others Similarly Situated,                             :        Civil Action No.: 1:06-cv-01131-SWK
                                                           :
                        Plaintiff,                         :        Judge Shirley Wohl Kram
                                                           :
        vs.                                                :
                                                           :
TAKE-TWO INTERACTIVE SOFTWARE,                             :
INC., PAUL EIBELER, KARL H. WINTERS,                       :
and GARY LEWIS,                                            :
                                                           :
                        Defendants.                        :
-------------------------------------------------------------x
DAVID TOTH, Individually and On Behalf of All              :
Others Similarly Situated,                                 :        Civil Action No.: 1:06-cv-01733-SWK
                                                           :
                        Plaintiff,                         :        Judge Shirley Wohl Kram
                                                           :
        vs.                                                :
                                                           :
TAKE-TWO INTERACTIVE SOFTWARE,                             :
INC., PAUL EIBELER, KARL H. WINTERS,                       :
and GARY LEWIS,                                            :
                                                           :
                        Defendants.                        :
-------------------------------------------------------------x

Having considered the motion of the New York City Pension Funds (referred to as "Movants" or "NYC Funds") to consolidate actions, to be appointed lead plaintiffs and for approval of lead plaintiffs' selection of lead counsel, the Memorandum of Law in support thereof, the Declaration of Jonathan Plasse in support of that motion, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1. The motion of the NYC Funds is granted.

2. The above-captioned actions are consolidated for all purposes (the "Consolidated Action"). This Order (the "Order") shall apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this Court or is transferred to this Court and is consolidated with the Consolidated Action.

3. A Master File is established for this proceeding. The Master File shall be Civil Action No. 1:06-cv-00803-SWK. The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

4. An original of this Order shall be filed by the Clerk in the Master File.

5. The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

6. Every pleading in the Consolidated Action shall have the following caption:

|  |  |
|---|---|
| )<br>IN RE TAKE-TWO INTERACTIVE )<br>SECURITIES LITIGATION )<br>) | Civil Action No.1:06-cv-00803-SWK |

7. The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of the Consolidated Action.

8. When a case that arises out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

a. File a copy of this Order in the separate file for such action;

b. Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly-filed case; and

c. Make the appropriate entry in the Master Docket for the Consolidated Action.

9. Each new case that arises out of the subject matter of the Consolidated Action which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action, and this Order shall apply thereto, unless a party objects to consolidation, as provided for herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief, and this Court deems it appropriate to grant such application. Nothing in the forgoing shall be construed as a waiver of the defendants' right to object to consolidation of any subsequently filed or transferred related action.

10. The NYC Funds are appointed to serve as Lead Plaintiffs in the above-captioned Consolidated Action pursuant to 15 U.S.C. §78u-4(a)(3)(B).

11. The law firm of Labaton Sucharow & Rudoff LLP is hereby approved as lead counsel for the Class. Lead counsel shall have the authority to speak for all plaintiffs and class

members in all matters regarding the litigation including, but not limited to, pre-trial proceedings, motion practice, trial and settlement.

IT IS SO ORDERED.

This 12 day of July, 2006.

Judge Shirley Wohl Kram
United States District Judge

KeyCite Yellow Flag - Negative Treatment

Declined to Follow by   Aronson v. McKesson HBOC, Inc.,   N.D.Cal.,   November 2, 1999

187 F.R.D. 246

United States District Court,

E.D. Virginia,

Alexandria Division.

Robin SWITZENBAUM, et al., Plaintiffs,

v.

ORBITAL SCIENCES CORPORATION, David W. Thompson, and Jeffrey V. Pirone, Defendants.

Civ.Act.Nos. 99–197–A, 99–279–A, 99–368–A, 99–230–A, 99–284–A, 99–384–A, 99–231–A, 99–300–A, 99–414–A, 99–233–A, 99–309–A, 99–524–A, 99–265–A, 99–310–A, 99–533–A, 99–266–A, 99–347–A, 99–385–A.

|

May 21, 1999.

**Synopsis**

Motions were made to consolidate individual securities fraud actions into single class action, designate lead plaintiff and designate lead counsel. The District Court, Cacheris, J., held that: (1) cases would be consolidated; (2) five city pension funds would be designated lead plaintiffs, even though they sustained less damages than proposed lead plaintiff group of seven individual investors; and (3) lead plaintiffs' selection of lead counsel would be approved.

Order accordingly.

West Headnotes (5)

| [1] | **Federal Civil Procedure** 🔑 Consolidation of actions |

In determining whether to consolidate cases, a court must conduct a careful inquiry that balances the prejudice and confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings could engender. Fed.Rules Civ.Proc.Rule 42(a), 28 U.S.C.A.

12 Cases that cite this headnote

| [2] | **Federal Civil Procedure** 🔑 Consolidation of actions |

Various securities fraud lawsuits would be consolidated; all shared common factual claim that corporation and its representatives exaggerated financial successes during first quarter of fiscal year, inflating value of stock to detriment of investors, there was little chance of confusion and no case had progressed to point a which consolidation would be prejudicial. Securities Exchange Act of 1934, § 10(b), as amended, 🚩15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5; Fed.Rules Civ.Proc.Rule 42(a), 28 U.S.C.A.

2 Cases that cite this headnote

| [3] | **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors |

The purpose of the Private Securities Litigation Reform Act (PSLRA) provisions regulating determination of lead plaintiffs is to ensure that the prosecution of the action is coordinated only by those who have a serious and legitimate interest in doing so on behalf of the putative class. Securities Exchange Act of 1934, § 21D(a)(3)(B)(i, iii), as amended, 15 U.S.C.A. § 78u–4(a)(3)(B)(i, iii).

12 Cases that cite this headnote

[4]  **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors

Group of five city pension funds would be designated lead plaintiffs in securities fraud class action case, even though they suffered recoverable losses of only $715,592, compared to rival group of individual investors claiming aggregate losses of $857,000; there was question regarding ability of group of individuals to manage litigation, as several attempts had been made to add and subtract persons from membership, while city pension funds had record of working together for good of investors in other suits. Securities Exchange Act of 1934, § 21D(a)(3)(A)(i) (II), as amended, 15 U.S.C.A. § 78u–4(a)(3)(A)(i)(II).

13 Cases that cite this headnote

[5]  **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors

Counsel selected by lead plaintiffs in securities fraud class action suit would be approved as lead counsel; evidence showed that firm had experience in securities fraud cases and in handling complex litigation, and there had been no showing of any conflict of interest. Securities Exchange Act of 1934, § 21D(a)(3)(B)(v), as amended, 15 U.S.C.A. §78u–4(a)(3)(B)(v).

7 Cases that cite this headnote

**Attorneys and Law Firms**

**\*247**  Michael Nachmanoff, Cohen, Gettings, Arlington, VA, Jonathan M. Plasse, Goodkind, Labaton, New York City, Peter L. Sissman, Arlington, VA, Paul T. Gallagher, Cohen, Milstein, et al., Washington, DC, for plaintiff.

Stephen M. Sacks, Arnold and Porter, Washington, DC, for defendant.

Leo Fisher, Arlington, Va, for defendant.

*MEMORANDUM OPINION*

CACHERIS, District Judge.

Eighteen putative class action securities fraud cases have come before the Court on motions to consolidate, to appoint a lead plaintiff, and to select lead counsel. [1]

*Facts*

The Defendant Orbital Sciences Corporation ("Orbital") is a Delaware corporation that maintains its principal executive offices in Dulles, Virginia. Orbital designs, manufactures, operates, and markets products and services for the satellite and aerospace

Fed. Sec. L. Rep. P 90,510, 43 Fed.R.Serv.3d 1318

industries, and shares of its stock have been actively traded on the NASDAQ System and the New York Stock Exchange. The Defendant David W. Thompson was Orbital's President, Chief Executive Officer, and Chairman of the Board at all times relevant to this case, while the Defendant Jeffrey V. Pirone was its Executive Vice–President and Chief Financial Officer.

The Complaints allege that the Defendants materially exaggerated Orbital's business success for the first quarter of its 1998 fiscal year and thereby inflated the price of its stock until a more accurate and less optimistic picture of its financial condition for that time frame eventually came to light. The Plaintiffs [2] allegedly suffered damages because they purchased Orbital securities at prices that were inflated in this way, and they have filed these putative class actions in order to obtain relief under various provisions of the federal securities laws.

Consistent with the framework envisioned by the Private Securities Litigation Reform Act, *see* Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u–4), the Plaintiffs now ask the Court: (1) to consolidate these actions for all purposes; (2) to appoint the "Orbital Plaintiff Group" (the "Group") to serve as the Lead Plaintiff for the Purported Class; (3) to approve the Group's selection of Berger & Montague, P.C., and Schiffrin & Barroway, L.L.P. as Co–Lead Counsel for the Purported Class; (4) to approve the Group's selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Lowey Dannenberg Bemporad & Selinger, P.C. to serve as Executive Committee Counsel; and (5) to approve the Group's selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as Liaison Counsel.

Consolidation is unopposed, but the New York City Pension Funds ("NYCPF")—a group of institutional investors that also claim to have purchased Orbital securities at inflated prices—have submitted a competing candidacy to serve as the Lead Plaintiff, with their own proposed choice of Goodkind Labaton Rudoff & Sucharow L.L.P. to serve as Lead Counsel. The Court will consider each of these matters in turn.

### I. Consolidation of the Actions
The Court will first examine the propriety of consolidating these actions into a single proceeding.

### a. Standard of Review
**[1]** Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of **\*248** actions that pose common questions of law or fact. Judicial economy generally favors consolidation, *see* Johnson v. Celotex Corp., 899 F.2d 1281, 1284 n. 85 (2d Cir.1990), but the Court must conduct a careful inquiry in this regard that balances the prejudice and confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings could engender. *See* Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir.1982).

### b. Analysis
**[2]** With these factors in mind, consolidation is clearly appropriate for the litigation at hand. The Plaintiffs have alleged that the Defendants exaggerated Orbital's financial success for the first quarter of its 1998 fiscal year, inflated the price of the company's stock in the process, and thereby caused harm to those who purchased Orbital securities before more pessimistic financial results later came to light and caused the price of the stock to fall. All of the Complaints seek to hold Orbital, Thompson, and Pirone responsible for the consequences, and identically ask for relief under Section 10 of the Securities Exchange Act of 1934 ("the '34 Act"), Rule 10b–5 as promulgated thereunder ("10b–5"), and Section 20(a) of the '34 Act as well.

Having complained of the same allegedly wrongful conduct, the 10b–5 claims alone will raise the same set of questions in each case, such as (1) whether the Defendants made a false or misleading statement of material fact, or failed to disclose a material fact under circumstances giving rise to a duty to disclose; (2) whether they did so with scienter; (3) whether the Plaintiffs justifiably relied on these material misstatements or omissions; and (4) whether the Defendants' acts or omissions and the Plaintiffs' reliance thereon proximately caused them harm. *See* Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 n. 61 (4th Cir.1993)

Fed. Sec. L. Rep. P 90,510, 43 Fed.R.Serv.3d 1318

(citing 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5). Even if the Plaintiffs are not identically situated in every respect, they share a mutual interest in having the Court resolve questions about whether the Defendants made any misstatements or omissions, whether they did so with scienter, and whether the price of Orbital's common stock became artificially inflated as a result. *See Ganesh, L.L.C. v. Computer Learning Centers, Inc.,* 183 F.R.D. 487, 489 n. 90 (E.D.Va.1998). The efficiency of resolving these and other questions at once in a single proceeding is beyond serious debate. *See Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1211 (S.D.N.Y.1992) (consolidating 10b–5 claims that posed numerous common questions of law and fact, despite variations in the identity of the parties and in some of the allegations).

Proper regard for fairness does not require a different result. All of the Plaintiffs appear to share a similar interest in recovering from the Defendants, and the fact that the amount of their damages may differ does not pose a disabling risk of prejudice or confusion because separate claims for payment could be processed if liability were found. *Cf. Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 566 (2d Cir.1968) (observing that the need for damages to be calculated individually does not, without more, preclude classwide adjudication). The Defendants similarly appear to risk little prejudice from proceeding in a consolidated action because none of the individual lawsuits has progressed to the point at which consolidation would create undue delays. *See Werner,* 797 F.Supp. at 1212 (concluding that consolidation would not impose an undue delay even though the lawsuits at issue were at different stages). Absent any other circumstances that speak in favor of conducting eighteen mini-trials on the same or similar issues of law and fact, the Court will grant the Orbital Plaintiff Group's Motions to Consolidate These Actions.

## II. Appointment of Lead Plaintiff

The Court will now decide who should serve as the Lead Plaintiff to direct the case through further proceedings.

### a. Standard of Review

 **[3]**    The Private Securities Litigation Reform Act ("PSLRA") requires a person who initiates a putative class action securities fraud case to publish notice of the complaint  **\*249**  within twenty days of filing his lawsuit. *See* Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u–4(a)(3)(A)(i)). [3] Within ninety days after publication of the requisite notice, the Court must then determine which of the potential plaintiffs can most adequately represent the putative class, and appoint that "person or group of persons" to serve as the Lead Plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i) & (iii). The purpose of these provisions is to ensure that the prosecution of the action is coordinated only by those who have a serious and legitimate interest in doing so on behalf of the putative class. *See In re Baan Co. Securities Litig.,* 186 F.R.D. 214, 215–216 (D.D.C.1999) (citing Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 104–369, at 32–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730, 731–34).

The PSLRA requires the Court to presume that the appropriate Lead Plaintiff is the "person or group of persons" that (1) initiated the lawsuit or moved for appointment after notice of the complaint; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Although the presumption is rebuttable, a challenge requires proof that the proposed Lead Plaintiff will not fairly and adequately protect the interests of the class, or that he is subject to unique defenses that render him incapable of providing adequate representation. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### b. Analysis

 **[4]**    The Orbital Plaintiff Group consists of seven individual investors—Paul Copansky, Elizabeth Meyer, Joyce Askew, Wilbur Fletcher, Eugene Basch, Martin Golinsky, and Daniel Grieff (Motion of the Orbital Plaintiffs Group for Appointment of Lead Plaintiffs) [4]—who filed a timely motion for collective appointment to act as the Lead Plaintiff in this case. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). Although the Group has subsequently tried to count an additional potential plaintiff among its ranks, the

Fed. Sec. L. Rep. P 90,510, 43 Fed.R.Serv.3d 1318

bootstrapped plaintiff never filed a complaint himself or moved for appointment within the time that the PSLRA requires of those who hope to become the Lead Plaintiff. [5] *See id.* & 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). As a result, the Orbital Plaintiff Group's candidacy depends solely on the qualifications of its original seven members. These seven members appear to have suffered recoverable losses in the approximate amount of $857,000. [6] (Supplemental Declaration of Arthur Stock in Support of the Orbital Plaintiff **\*250** Group's Motion for Appointment of Lead Plaintiffs at Ex. A.)

The NYCPF consists of five New York City retirement funds that have also filed a timely motion for collective appointment to act as the Lead Plaintiff in this litigation. Its members include the New York City Employees' Retirement System ("NYCERS"), the New York City Fire Department Pension Fund ("FDPF"), the New York City Board of Education Retirement System ("BERS"), the New York City Police Superior Officers' Variable Supplements Fund ("PSOVSF"), and the New York City Firefighters' Variable Supplements Fund ("FFVSF"). Having invested in Orbital securities during the period at issue, it allegedly suffered recoverable losses in the approximate amount of $715,592. (Memorandum of Law of the New York City Pension Funds in Support of Motion for Appointment as Lead Plaintiff at 4.)

If damages alone were the only relevant consideration, then the seven members of the Orbital Plaintiff Group, whose approximate losses total $857,000, might prevail over the five members of the NYCPF, whose approximate losses total $715,592, as the presumptive Lead Plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). But the analysis does not end there. Even if a candidate has the largest financial interest in a case, it is not the presumptive Lead Plaintiff unless it "otherwise satisfies the requirements of ⚑ Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). Although the inquiry is not as searching as the one triggered by a motion for class certification, *see* ⚑ *Chill v. Green Tree,* 181 F.R.D. 398, 407 n. 8 (D.Minn.1998); ⚑ *Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, at \*6 (N.D.Ill. Aug. 11, 1997), the candidate must make at least a preliminary showing that it has claims which are typical of those of the putative class and that it has the capacity to provide adequate representation for others, *see* ⚑ Fed.R.Civ.P. 23(a).

Despite these requirements, the Orbital Plaintiff Group has chosen not to provide meaningful information about the identity of its seven members other than to offer their names, a summary of the transactions by which they purchased Orbital securities, and the "simple mathematical" conclusion that they have the largest financial interest in the case. (Reply Memorandum of Law in Further Support of the Orbital Plaintiff Group's Motion for Appointment as Lead Plaintiffs at 5.) Although their claims appear to be typical of those of the putative class because they purchased Orbital securities during the proposed Class Period at allegedly inflated prices, little is known about the ties that the seven members have to each other or to the putative class. Having failed to volunteer anything more than conclusory assertions about its competence to manage this case, the Group has put its adequacy of representation in doubt.

These gaps in the Record ordinarily might require additional briefing, *see, e.g.,* ⚑ *In re Baan,* 186 F.R.D. at 217–19, but other facts in this case conclusively demonstrate that the Orbital Plaintiff Group is not an adequate representative for the putative class. In its original motion for appointment as the Lead Plaintiff, the Group represented to the Court that it consisted of seven members: Paul Copansky, Elizabeth Meyer, Joyce Askew, Wilbur Fletcher, Eugene Basch, Martin Golinsky, and Daniel Grieff. In so doing, the Group created the appearance that it consisted of a unified set of seven investors who could manage the case and adequately represent the interests of every putative class member.

Even so, the Group later attempted to bootstrap members in and out of its leadership by (1) purporting to add Andrew O'Keefe as one of the proposed Lead Plaintiffs, even though his name had never been mentioned before and he was time-barred from seeking such an appointment (Memorandum of Law in Opposition to the New York City Pension Fund's Motion for Appointment as Lead Plaintiffs at 3); (2) appearing to cut Joyce Askew, Wilbur Fletcher, Eugene Basch, and Martin Golinsky out of its leadership altogether by inviting the Court to select a reconstituted group of managers instead (Memorandum of Law in Opposition to the New York City Pension Fund's Motion for Appointment as Lead Plaintiffs at 3 n. 2); and (3) alternatively describing itself

**\*251** to include approximately 200 putative class members, as if to suggest that all of them could manage the case together despite the obvious logistical impossibility of doing so (Supplemental Declaration of Arthur Stock at Ex. A).

In short, the Orbital Plaintiff Group is unable to agree on who its members are, some of its proposed members are ineligible to act as the Lead Plaintiff in any event, one formulation of the Group would include more people than could possibly manage the case, and the Group has never been forthcoming about any of these conflicts at all. With this degree of disorder among its leadership ranks, it cannot credibly claim to offer adequate representation to others. Under these circumstances, the Orbital Plaintiff Group is not entitled to a presumptive designation as the Lead Plaintiff, and even if it were, its inability to manage itself so far would amply rebut the presumption that it could fairly and adequately protect others.

The NYCPF is the candidate with the next largest financial interest in this case. As a group of five affiliated institutional investors, the NYCPF has claims that are typical of those of the putative class because it (1) purchased Orbital securities during the Class Period; (2) at prices that the Defendants allegedly inflated with their false and misleading statements about the company's financial success; (3) so as to suffer damages once a more accurate picture of the company's financial condition came to light and caused the stock price to fall. The NYCPF also appears best capable of providing adequate representation, having made a preliminary showing (1) that its five members have established mechanisms for making sound collective decisions together; and (2) that the New York City Office of Corporation Counsel can monitor its actions and those of its proposed Lead Counsel. (Affidavit of Sue Ellen Dodell.)

Consistent with these facts, other courts have specifically recognized the NYCPF's ability to manage class action securities fraud cases. *See* *In re Cendant Corp. Litig.,* 182 F.R.D. 144, 147 n.48 (D.N.J.1998). Having timely moved for appointment, given its financial interest in this case, and in light of its prima facie satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure, the NYCPF is entitled to selection as the Lead Plaintiff in this case. [7]

### III. Selection of Lead Counsel
The Court will now turn to the choice of Lead Counsel.

#### a. Standard of Review
The PSLRA provides the lead plaintiff in a putative class action securities fraud case with the opportunity to select and retain counsel "subject to the approval of the [C]ourt." 15 U.S.C. § 78u–4(a)(3)(B)(v). The decision carries considerable importance because "[l]ead counsel must represent not only the interests of a lead plaintiff, but all members of the putative class." *In re Cendant Corp. Litig.,* 182 F.R.D. 144, 151 (D.N.J.1998). As such, lead counsel should have specific experience in securities litigation along with "the highest professional talent, accompanied by a similarly high degree of integrity." *Id.* Stated simply, the goal is to find competent and experienced counsel to represent the putative class.

#### **\*252** b. Analysis
**[5]**    The NYCPF asks that the Court approve Goodkind Labaton Rudoff & Sucharow L.L.P. (the "Goodkind firm") as Lead Counsel. None of the parties has raised specific objections to the Goodkind firm, and it has no apparent conflicts of interest that might prejudice the putative class. Having reviewed the relevant credentials, the Court concludes (1) that the firm has extensive experience in undertaking securities fraud cases; and (2) that it enjoys considerable professional talent with which to manage complex litigation. *See Martindale–Hubbell Lawyer Locator: Firm Profile for Goodkind Labaton* (visited May 19, 1999) <http://lawyers. martindale.com/marhub/form/firm.html>; *Goodkind Labaton Rudoff & Sucharow L.L.P.—Attorneys at Law* (visited May 19, 1999) < http:// www.glrs.com/>. In light of these considerations, along with a specific proffer that the firm's contingent fees are below what courts typically award (Memorandum of Law of the New York City Pension Funds in Opposition to the Copansky Group's Motion for Appointment of Lead Plaintiff at 5), the Court will designate the Goodkind firm as Lead Counsel.

*Conclusion*

For the foregoing reasons, the Court will (1) GRANT the Securities and Exchange Commission's Motion for Leave to File a Memorandum as *Amicus Curiae;* (2) GRANT the Orbital Plaintiff Group's Motions to Consolidate These Actions; (3) DENY the Orbital Plaintiff Group's Motions for Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Co–Lead Counsel; and (4) GRANT the New York City Pension Funds' Motions for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel. The Court reserves continuing jurisdiction to revisit these issues, either on motion or sua sponte, as the circumstances may dictate. *See, e.g.,* ⚑ *Metro Servs., Inc. v. Wiggins,* 158 F.3d 162, 165 (2d Cir.1998).

**All Citations**

187 F.R.D. 246, Fed. Sec. L. Rep. P 90,510, 43 Fed.R.Serv.3d 1318

## Footnotes

1    The Securities and Exchange Commission has moved for leave to file a memorandum as *amicus curiae.* The Court will grant that motion as a matter of course in light of the Commission's useful familiarity with the legal issues at hand.

2    The Plaintiffs are Robin Switzenbaum (Civil Action No. 99–197–A), Stephen Blank (Civil Action No. 99–230–A), Jacob Freiman (Civil Action No. 99–231–A), Kulwant Sandhu (Civil Action No. 99–233–A), David Bromley (Civil Action No. 99–265–A), David Benjamin (Civil Action No. 99–266–A), Charles Fiermonte (Civil Action No. 99–279–A), Paul Krieger (Civil Action No. 99–284–A), Edward McCloskey (Civil Action No. 99–300–A), Darren Spademan (Civil Action No. 99–309–A), Alexander Urman (Civil Action No. 99–310–A), Rebecca Neis (Civil Action No. 99–347–A), Michael Cafferty (Civil Action No. 99–368–A), Terence Byrne (Civil Action No. 99–384–A), Barbara Eisenberg (Civil Action No. 99–414–A), Richard Lam (Civil Action No. 99–524–A), Yakov Prager (Civil Action No. 99–533–A), and Bert Larson (Civil Action No. 99–385–A).

3    Subsequent citations are to the United States Code.

4    For illustrative purposes, the Court will refer to the pleadings in Civil Action No. 99–197–A, although equivalent pleadings can be found in each of the other seventeen actions.

5    On May 5, 1999, the Group filed a brief in opposition to the NYCPF's motion for appointment as the Lead Plaintiff, and it ambiguously purported to replace or to supplement four of its members, Joyce Askew, Wilbur Fletcher, Eugene Basch, and Martin Golinsky, with a new proposed lead plaintiff, Andrew O'Keefe. (Memorandum of Law in Opposition to the New York City Pension Fund's Motion for Appointment as Lead Plaintiffs at 3.)

Nevertheless, the PSLRA requires those who seek to become the Lead Plaintiff to have either (1) filed a complaint; or (2) moved for appointment within sixty days after publication of notice of the case. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). O'Keefe chose not to file a complaint himself. He could have moved for appointment, but because notice of the first-filed Complaint was published on February 18, 1999, the deadline for such a motion expired on April 19, 1999. Having failed to name O'Keefe as one of its leaders until May 5, 1999, the Group's attempt to count him among its leadership ranks is untimely.

6    The Court must measure the Orbital Plaintiff Group's financial interest in this case by tallying the allegedly recoverable losses that its seven members have sustained. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). Contrary to what the Group has argued, the financial interest of other class members whom it purports to represent is immaterial. As the PSLRA makes clear and as the Securities and Exchange Commission has observed, it is only the seven designates, and not their alleged constituents, who are the actual candidates at issue because they alone have filed a timely motion to manage the case. (Memorandum of the Securities and Exchange Commission as *Amicus Curiae* at 18–19 (citing *In re Baan,* 186 F.R.D. 214, at 217–218.))

7    Nothing in this conclusion should be taken to mean that institutional investors are always superior to individual investors who band together as proposed Lead Plaintiffs.

Although Congress expressed a preference for selecting institutional investors over individuals claimants as lead plaintiffs, *see* Joint Explanatory Statement of the Committee of Conference, H.R.Conf.Rep. No. 104–369, at 32–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731–34, the PSLRA appears to permit multiple "members" of a putative class to act as lead plaintiffs in a "group", *see* 15 U.S.C. § 78–u(a)(3)(B)(i) & (iii). Courts are split as to whether affiliated institutions (such as the NYCPF) are presumptively superior to unrelated individuals (such as the Orbital Plaintiff Group) in this regard. *Compare In re Baan,* at 215–16, *with In re Donnkenny Inc. Securities Litig.,* 171 F.R.D. 156, 157 n.58 (S.D.N.Y.1997).

The Court need not resolve this question, having concluded that the individual investors in this case have uniquely demonstrated their inadequacy to represent the putative class. *Cf. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997) (affirming the decertification of a settlement class because of clear problems with the settlement class at issue, even though settlement classes are theoretically appropriate in some cases).

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.