UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE L. FLANNERY,<br><br>Plaintiff,<br><br>v.<br><br>SNOWFLAKE INC., et al.,<br><br>Defendants. | Case No. 24-cv-01234-PCP<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 15, 34 |

This is a putative securities class action against Snowflake, Inc., Snowflake's CEO and Chairman of the Board Frank Slootman, and Snowflake's CFO Michael P. Scarpelli. Seven movants filed motions to appoint lead plaintiff and lead counsel, only two of which remain before the Court for consideration. NYC Funds[1] moves for appointment as the presumptive lead plaintiff with the largest financial interest. NYC Funds proposes that its counsel at Grant & Eisenhofer P.A. serve as lead counsel. New York State Common Retirement Fund ("NYSCRF")[2] also moves for appointment as lead plaintiff, arguing that NYC Funds constitutes an impermissibly large group and that as the individual movant with the largest financial interest, NYSCRF is the presumptive lead plaintiff. NYSCRF proposes that its counsel at Saxena White P.A. serve as lead

---

[1] Movant NYC Funds refers collectively to Teachers' Retirement System of the City of New York ("TRS"), New York City Employees' Retirement System ("NYCERS"), New York City Police Pension Fund ("Police"), New York City Fire Department Pension Fund ("Fire"), Board of Education Retirement System of the City of New York ("BOE"), Police Officers' Variable Supplements Fund ("POVSF"), Police Superior Officers' Variable Supplements Fund ("PSOVSF"), New York City Firefighters' Variable Supplements Fund ("FFVSF"), New York City Fire Officers' Variable Supplements Fund ("FOVSF"), New York Fire Department Life Insurance Fund ("FDLIF"), and Teachers' Retirement System of the City of New York Variable Annuity Program ("TRS Var A").

[2] Movant NYSCRF refers to Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement System, and as Trustee of the New York State Common Retirement Fund.

1    counsel. For the following reasons, the Court appoints NYC Funds as lead plaintiff and Grant &
2    Eisenhofer as lead counsel.

**BACKGROUND**

Plaintiff Suzanne L. Flannery commenced this putative securities class action against defendants Snowflake, Inc., Snowflake's CEO and Chairman of the Board Frank Slootman, and Snowflake's CFO Michael P. Scarpelli, alleging that the defendants made false and misleading statements and omissions to investors who purchased Snowflake Class A common stock in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder. Flannery's complaint asserts a class period from September 16, 2020 to March 2, 2022. Compl., Dkt. No. 1 ¶¶ 1–2.

Snowflake is a "cloud data platform that enables customers to consolidate data into a single source build data-driven applications and share data." Compl. ¶ 7. Snowflake's common stock, "SNOW," trades on the New York Stock Exchange. *Id.* Flannery alleges that Slootman and Scarpelli made a series of misleading statements touting strong consumption, performance obligation results, product revenue, and projected growth that failed to disclose that Snowflake's purported growth had been built on deceptive and unsustainable business tactics, including the knowing and systematic oversale of consumption credits and discounts offered to clients. *See id.* ¶¶ 23, 28–50. As a result, the complaint alleges, Snowflake reported disappointing disclosures after market hours on March 2, 2022, leading to a 15% decline in stock prices by the next day and 15% decline by March 8, 2022. *See id.* ¶¶ 51–55. The complaint alleges that Flannery and other class members suffered significant economic losses and damages as a result. *Id.* ¶ 55.

On April 29, 2024, seven motions to appoint lead plaintiff and lead counsel were filed. Dkt. Nos. 15, 23, 26, 29, 34, 40, 48. Movants Ron Zitman and the Institutional Investor Group have each since withdrawn their motions. Dkt. Nos. 70, 80. Movants Ronald Augustyn, Kimberly A. Cross Spears, and Chuck Pruna have each filed non-opposition notices. Dkt. Nos. 56, 68, 69. That leaves two competing motions by movants NYC Funds and NYSCRF for the Court's consideration. Dkt Nos. 15, 34.

**LEGAL STANDARDS**

Under the Private Securities Litigation Reform Act (PSLRA), a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the "most adequate plaintiff" is "the person or group of persons" that, "in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted with proof that the most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Once the determination of lead plaintiff is made, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009).

**ANALYSIS**

**I.   The Court Appoints NYC Funds as Lead Plaintiff.**

   **A.   NYC Funds Has the Largest Financial Interest.**

There is a rebuttable presumption in PSLRA cases that the movant with the "largest financial interest" is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In determining financial interest, courts consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Peters v. Twist Bioscience Corp.*, No. 5:22-CV-08168-EJD, 2023 WL 4849431, at *3 (N.D. Cal. July 28, 2023) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). The parties agree that losses should be calculated under the last-in-first-out (LIFO) accounting method.

Employing this method, NYC Funds has the greatest financial interest with the largest number of total shares purchased, largest number of net shares purchased, largest total net funds

1  expended, and greatest losses suffered during the class period. NYC Funds is therefore
2  presumably the most adequate plaintiff. The chart below reflects the shares and losses for each
3  movant:

| Movant | Total Shares | Net Shares | Net Funds Expended | LIFO Losses |
|---|---|---|---|---|
| NYC Funds | 454,026 | 409,567 | $115,806,643.00 | $39,503,789.00 |
| NYSCRF | 394,072 | 374,527 | $101,110,598.98 | $31,686,048.73 |

9   NYSCRF contends that it has the greatest financial interest if the court disaggregates the
10  losses of NYC Funds and compares the losses of NYC Funds' eleven constituents individually
11  with NYSCRF's losses. The Ninth Circuit has left open the question whether a "group of persons"
12  may aggregate losses to serve collectively as lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726,
13  731 n.8 (9th Cir. 2002) ("While a 'group of persons' can collectively serve as a lead plaintiff, we
14  are not asked to determine whether a group can satisfy the 'largest financial interest' requirement
15  by aggregating losses." (citation omitted)). NYSCRF argues that the Court should not allow NYC
16  Funds to aggregate their losses because "Ninth Circuit courts routinely appoint the movant with
17  the single largest financial interest over groups … seeking to aggregate their members' smaller
18  financial interests to surpass the interest of the single largest movant." Dkt. No. 73, at 12. The
19  Court is not persuaded.
20   Congress expressly contemplated the possibility that a group of plaintiffs could be
21  appointed as lead plaintiff under the PSLRA, which entitles "the person *or group of persons*"
22  satisfying the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc) to the rebuttable
23  presumption of being the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis
24  added). Construing the statute to give preference to the single largest-loss plaintiff over the group
25  of persons with the largest loss would be contrary to the fact the Congress chose to allow groups
26  to be appointed lead plaintiff, which necessarily involves aggregating funds. Under a strict reading
27  of the statute, NYC Funds is clearly "the person or group of persons" with "the largest financial
28  interest in the relief sought by the class."

4

To be certain, permitting a "group of persons" to serve as the lead plaintiff based on their aggregated losses creates a risk that groups will be created solely for the purposes of aggregating their members' losses in PSLRA-governed litigation. Whether or not the PSLRA permits aggregation under such circumstances, the circumstances here are very different. NYC Funds is comprised of five New York City pension systems and six statutorily created "programs or supplemental funds which fall under the umbrella of the five overarching pension systems … to offer additional retirement benefits to those who participate in three of the main pension systems." Whitman Decl., Dkt. No. 82, at 3. The New York City Comptroller, New York City's Chief Financial Officer, is the statutory custodian of all NYC Funds and sits on the Board of Trustees for all of the entities. *Id.* at 5; Dkt. No. 81, at 8. The New York City Comptroller's Bureau of Asset Management serves as the investment advisor and asset manager to each of NYC Funds, except for one. Whitman Decl. at 5. NYC Funds also all share the same Chief Actuary and independent auditor. *Id.* Pursuant to the New York City Charter, the City's Law Department, the Office of the Corporation Counsel, is the attorney and counsel for all City agencies, including the New York City Comptroller and NYC Funds. *Id.* at 6–7. Three attorneys within the Law Department's Affirmative Litigation Division oversee shareholder litigation on behalf of NYC Funds. *Id.*

Accordingly, far from representing an artificial aggregation of losses created solely for the purposes of achieving lead plaintiff status, NYC Funds represents a pre-existing and appropriate group of related entities. As a result, the facts of this case can be easily distinguished from those upon which NYSCRF relies, like *Koffsmon v. Green Dot Corp.*, No. CV 19-10701 DDP (EX), 2021 WL 3473975 (C.D. Cal. Aug. 6, 2021). There, the court addressed two competing motions for lead plaintiff: one brought by Green Dot, an investor group comprised of three constituent smaller investors, and one brought by a single pension fund. *Id.* at *1–2. Like here, each of Green Dot's three constituents alleged losses that did not, on their own, exceed the competing single institutional investor's losses. *Id.* at *2. Again, like here, the group's losses in the aggregate were greater than those alleged by the pension fund. *Id.* The similarities between the cases, however, end there. Green Dot was comprised of "several smaller institutional investors" with no pre-existing relationship who raised other concerns for the court, including an unexplained decision to

retain two separate law firms and clear evidence that the group "only came into being with the facilitation of [one of the constituent's] two law firms." *Id.* at *3. Unaware of "any instance in which a court in this circuit has aggregated the financial interests of a group of smaller investors under similar circumstances" and "[a]bsent any … compelling reason why a group of three smaller investors would better serve the interests of the class than a single, large, institutional investor," the court held that the pension fund had the largest interest in the relief sought. *Id.*

Unlike Green Dot, NYC Funds is comprised of eleven constituent legal entities with a clear pre-existing relationship and common counsel. Under such circumstances, the Court declines to find that NYC Funds may not aggregate their losses. The Court therefore finds that NYC Funds has the largest financial interest and is entitled to a presumption of being the most adequate plaintiff.

**B.    NYC Funds Can Fairly and Adequately Represent the Class.**

The presumption that the movant with the largest financial interest should be appointed as lead plaintiff can be rebutted upon a showing that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The size of a group is relevant to determining whether a group is too large to represent a class adequately.

While NYSCRF attacks NYC Funds in an attempt to show that it is incapable of adequately representing the class, NYSCRF's attacks are insufficient to overcome the rebuttable presumption favoring the selection of NYC Funds as lead plaintiff.

NYSCRF primarily argues that NYC Funds has too many members to adequately represent the class. Again citing no binding precedent, NYSCRF argues that this Court should adopt the position of courts around the country endorsing the SEC's position that groups larger than five are generally too large. NYSCRF emphasizes further that appointing eleven independent funds is "virtually unprecedented," particularly where none of the independent funds has the largest individual loss. Dkt. No. 73, at 14.

In the absence of binding precedent to the contrary, however, the fact that appointment of a

1    group consisting of eleven funds might be unprecedented or otherwise unusual does not prevent
2    the Court from so doing. Notably, the Court need aggregate the losses of only the four largest
3    shareholders within the NYC Funds group to reach an amount that exceeds NYSCRF's loss. It is
4    unclear how the purposes of the PSLRA would be served by requiring related funds with pre-
5    existing relationships and common counsel to exclude some arbitrary number of that group's
6    members from serving as lead plaintiff in order to bring the total number of entities below an
7    artificial threshold having no basis in the applicable statutory text.
8          Further, the concerns raised in many of the decisions endorsing the SEC's position do not
9    apply here. For example, in *In re Baan*, the court rejected the motion to serve as lead plaintiff of a
10   20-person subset of a 466-member shareholder group. 186 F.R.D. 214, 217 (D.D.C. 1999). That
11   case involved a technology company with shareholders having relatively small holdings. Among
12   other things, the court was concerned that, given the relatively small holdings per shareholder and
13   that most shareholders continued to hold securities with losses remaining unrealized, "Lead
14   Counsel will have a greater financial stake in this litigation than any of the individual plaintiffs"
15   which "may give rise to certain tensions." *Id.* at 217–18. *In re Gemstar-TV Guide Int'l, Inc. Sec.*
16   *Litig.*, involved a motion brought by a group of three institutional investors and four individual
17   investors. 209 F.R.D. 447, 450 (C.D. Cal. 2002). The court held that the group had "too many
18   members to manage effectively this litigation" where the constituents were "largely unrelated" and
19   had "few apparent connections beyond their common desire to be appointed lead plaintiffs in this
20   action." *Id.* The group members there failed to provide the court with sufficient "detail concerning
21   the procedures they have implemented to 'provide for efficient prosecution of the action,'" and
22   failed to explain "how its members and attorneys will conduct 'regular meetings' efficiently or
23   participate in the discovery process, given the group's size and the fact that its members and
24   attorneys are scattered throughout the world." *Id.* at 451. "Most important," the court emphasized,
25   "there [was] no evidence that the group, comprised of seven unrelated intuitional and individual
26   investors, can honor their promise to 'make decisions by consensus.'" *Id.* The Third Circuit's
27   reasoning for adopting the SEC's "presum[ption] that groups with more than five members are too
28   large to work effectively" is also instructive. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d

7

1  Cir. 2001). That Court explained that "[a]t some point, a group becomes too large for its members
2  to operate effectively as a single unit." *Id.* "When that happens," the Third Circuit observed, "the
3  PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation
4  and the actions of class counsel will be impossible to achieve, and the court should conclude that
5  such a movant does not satisfy the adequacy requirement." *Id*.

6  It is undisputed that NYC Funds is comprised of related entities within the same city that
7  are all being provided legal advice on how to prosecute this litigation by the same attorneys
8  through New York City's Law Department. While these entities have not been appointed as lead
9  plaintiff in prior securities litigation as a group of eleven, it is undisputed that the entities
10 comprising NYC Funds have successfully been appointed lead plaintiff in other smaller
11 combinations in the past. *See, e.g.*, *Brazinsky v. AT&T Inc. et al.*, No. 2:23-cv-04064 (D.N.J.);
12 *KBC Asset Mgmt. NV et al. v. Discover Fin. Servs. et al.*, No. 1:23-cv-06788 (N.D. Ill.); *The*
13 *N.Y.C. Fire Dep't Pension Fund et al. v. Coupang, Inc. et al.*, l:22-cv-07309 (S.D.N.Y.). Based on
14 "their sheer size" alone and untethered to specific concerns regarding NYC Funds itself, NYSCRF
15 raises general concerns about "the mechanism for resolving disputes," and "processes … in the
16 event that one or more of the entities does not agree to go along with majority's proposed
17 resolution." Dkt. No. 73, at 18. Such speculation is not enough to preclude NYC Funds from
18 serving as lead plaintiff. NYSCRF does not provide evidence, for example, that NYC Funds failed
19 to resolve disputes or establish acceptable processes to resolve such disputes in the past.
20 NYSCRF's evidence simply fails to show that NYC Funds would not be able to fairly and
21 adequately represent the class in this lawsuit.

22 Because NYSCRF has not provided evidence sufficient to overcome the rebuttable
23 presumption that NYC Funds is the most adequate plaintiff here, the Court will designate NYC
24 Funds as lead plaintiff.

25 **II.     Grant & Eisenhofer P.A. Is a Reasonable Choice for Class Counsel.**

26 Having been appointed lead plaintiff, NYC Funds must "select and retain counsel to
27 represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). NYC Funds has selected Grant & Eisenhofer,
28 which has significant prior experience representing plaintiffs in similar class action securities

8

fraud lawsuits. Because NYC Funds has made a facially "reasonable choice of counsel" and no other party has suggested that choice is unreasonable, the Court will defer to NYC Funds' selection of counsel and appoint Grant & Eisenhofer as lead counsel. *Cohen*, 586 F.3d at 712.

**CONCLUSION**

For the foregoing reasons, the Court appoints NYC Funds as lead plaintiff and Grant & Eisenhofer P.A. as lead counsel.

**IT IS SO ORDERED.**

Dated: August 29, 2024

P. Casey Pitts
United States District Judge