IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


FLANNERY,                           )   CV-24-1234-PCP
                                    )
                PLAINTIFF,          )   SAN JOSE, CALIFORNIA
                                    )
         VS.                        )   JUNE 6, 2024
                                    )
SNOWFLAKE, INC., ET AL,             )   PAGES 1-21
                                    )
                DEFENDANTS.         )
                                    )
_____)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE P. CASEY PITTS
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:       **BY:  CAITLIN MOYNA**
                              **MICA COCCO**
                         GRANT & EISENHOFER PA
                         485 LEXINGTON AVENUE
                         NEW YORK, NY 10017


FOR THE MOVANT:          **BY:  MAYA SAXENA**
NEW YORK STATE           SAXENA WHITE P.A.
COMMON FUND              7777 GLADES ROAD, SUITE 300
                         BOCA RATON, FL 33434


APPEARANCES CONTINUED ON THE NEXT PAGE


OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES CONTINUED:

FOR THE MOVANT:          **BY:  MARCO ANTONIO DUENAS**
                         SAXENA WHITE P.A.
                         10 BANK STREET, SUITE 882
                         WHITE PLAINS, NY 10606


FOR THE DEFENDANT:       **BY:  KEVIN P.B. JOHNSON**
                         QUINN EMANUEL URQUHART & SULLIVAN LLP
                         555 TWIN DOLPHIN DRIVE, 5TH FLOOR
                         REDWOOD SHORES, CA 94065

SAN JOSE, CALIFORNIA                    JUNE 6, 2024

P R O C E E D I N G S

(COURT CONVENED AT 11:46 A.M.)

THE CLERK:  CALLING THE NEXT CASE 24-CV-1234.

FLANNERY VERSUS SNOWFLAKE INCORPORATED, ET AL.  ON TODAY FOR THE MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL.

WILL THE PARTIES PLEASE APPROACH AND STATE THEIR APPEARANCES FOR THE RECORD.

MS. MOYNA:  GOOD MORNING, YOUR HONOR.

MY NAME IS CAITLIN MOYNA, I'M WITH GRANT & EISENHOFER, AND I REPRESENT THE NEW YORK CITY FUNDS.

THE COURT:  GOOD MORNING.

MS. COCCO:  GOOD MORNING, YOUR HONOR.

MICA COCCO REPRESENTING THE NEW YORK CITY FUNDS AS WELL.

THE COURT:  GOOD MORNING.

MS. SAXENA:  GOOD MORNING, YOUR HONOR.

MAYA SAXENA FROM SAXENA WHITE.  I'M HERE ON BEHALF OF THE NEW YORK STATE COMMON FUND.

WITH ME IS MY CO-COUNSEL, MARCO DUENAS.  WE ALSO HAVE A FEW MEMBERS FROM THE LAW DEPARTMENT OF THE NEW YORK STATE COMMON FUND JOINING US VIA ZOOM.

THE COURT:  OKAY.

MS. SAXENA:  THANK YOU.

THE COURT:  I UNDERSTAND THERE MAY BE ALSO FOLKS FROM THE NEW YORK CITY FUNDS.

MS. MOYNA:  YES, YOUR HONOR.  I BELIEVE THERE ARE TWO MEMBERS FROM THE NEW YORK CITY FUNDS ON ZOOM AS WELL.

THE COURT:  IF THERE'S ANYONE ON ZOOM WHO WANTS TO MAKE AN APPEARANCE, CAN WE ALLOW THAT, NICOLE?

THE CLERK:  YES.

THE COURT:  RAISE YOUR HAND IF YOU ARE ON ZOOM AND ARE WANTING TO MAKE AN APPEARANCE.  IF NOT, THAT'S FINE IF YOU ARE JUST OBSERVING.

THE CLERK:  IT LOOKS LIKE EVERYONE IS JUST OBSERVING, YOUR HONOR.

THE COURT:  OKAY.

MR. JOHNSON:  GOOD MORNING, YOUR HONOR.

KEVIN JOHNSON FROM QUINN EMANUEL ON BEHALF OF SNOWFLAKE.

THE COURT:  OKAY.  WE HAVE A LOT TO DO THIS MORNING, SO I APPRECIATE YOUR PATIENCE.  IT'S BEEN A FULL MORNING, AS YOU KNOW.

SO MAYBE I WILL INVITE COUNSEL FOR BOTH THE NEW YORK STATE COMMON FUND AND THE NEW YORK CITY FUNDS ARGUING COUNSEL TO APPROACH.

I HAD A CHANCE TO REVIEW THE BRIEFING AND WE ARE HERE ON THE MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL.

AND IT REALLY DOES SEEM -- AS I CAN TELL, THERE'S ONLY ONE DISPUTE I THINK, WHICH IS WHETHER TO APPOINT THE NEW YORK STATE COMMON FUNDS AS THE SINGLE -- AS THE PLAINTIFF, THE SINGLE PLAINTIFF WITH THE LARGEST DAMAGE OR WHETHER TO APPOINT THE NEW

YORK CITY FUNDS WHICH IS A GROUP OF FUNDS THAT COLLECTIVELY HAVE MORE IN LOSSES THAN THE NEW YORK STATE COMMON FUND.

I THINK THAT'S THE CIRCUMSTANCE WE ARE IN, CORRECT?

MS. SAXENA:  CORRECT.

MS. MOYNA:  CORRECT, YOUR HONOR.

THE COURT:  OKAY.

SO MAYBE I WILL HEAR -- LET ME START WITH THE NEW YORK STATE COMMON FUND, I THINK, BECAUSE THE ARGUMENT, AS I UNDERSTAND IT -- I MEAN, I UNDERSTAND THAT THERE ARE CASES SAYING MORE THAN FIVE IS A PROBLEM, MORE THAN FIVE IN A GROUP IS A PROBLEM, BUT I ALSO -- THIS DOES SEEM TO BE A DISTINCT CIRCUMSTANCE WHERE THERE IS A PRE-EXISTING RELATIONSHIP BETWEEN ALL OF THESE FUNDS.  THEY ARE ALL REPRESENTED BY THE NEW YORK CITY LAW DEPARTMENT SO THEY SHARE COMMON COUNSEL LEGAL ADVICE INTERNALLY AS WELL AS IN THIS CASE.  OBVIOUSLY THEY HAVE PROCEEDED TOGETHER IN COMBINATION OR AS A WHOLE IN PRIOR CASES.

SO THE CONCERN -- IT'S UNCLEAR TO ME WHY THE CONCERNS ABOUT GROUP LEAD PLAINTIFF STATUS ARE IMPLICATED HERE.  I MEAN, IN SOME WAYS THEY SEEM LESS SIGNIFICANT HERE THAN IN SOME OF THE CASES THAT THE NEW YORK CITY FUNDS AND THE NEW YORK STATE COMMON FUND HAVE BEEN INVOLVED WHERE STATE CALPERS WOULD BE A PARTY, WHO IS CLEARLY ON THE OTHER SIDE OF THE COUNTRY, LET ALONE INDEPENDENT AND REPRESENTED BY DIFFERENT COUNSEL INTERNALLY.

SO WHY ARE THOSE CONCERNS RELEVANT HERE?

MS. SAXENA:  SURE, YOUR HONOR.

WELL FIRST OF ALL, IT REALLY WOULD BE UNPRECEDENTED IN THIS COURT AND THIS CIRCUIT TO APPOINT A GROUP OVER A SINGLE INDIVIDUAL MOVANT.  I THINK THE GREEN DOT CASE FROM THIS DISTRICT IS VERY INSTRUCTIVE ON THAT POINT BECAUSE THAT SITUATION DEALT WITH THREE INSTITUTIONS, THREE INSTITUTIONAL INVESTORS, AND THE COURT THERE SAID IT WOULD TAKE AN UNUSUAL CIRCUMSTANCES, AND THE COURT WAS UNAWARE OF ANY INSTANCE WHERE A GROUP OF SMALLER INVESTORS WERE PERMITTED TO AGGREGATE OVER THE INTERESTS OF ONE SINGLE LARGE QUALIFIED MOVANT.

SO YOUR HONOR'S POINT, GOING TO --

THE COURT:  MY CONCERN WITH THAT, AND I THINK SOME OF THE CASES THAT I REVIEWED BORE ON THIS, CONGRESS SAID PLAINTIFF OR GROUP OF PLAINTIFFS, RIGHT, IN THE LANGUAGE OF THE STATUTE. SO THEY CLEARLY CONTEMPLATED THE POSSIBILITY OF GROUPS OF PLAINTIFFS.

AND WOULDN'T CONSTRUING THE STATUTE TO SORT OF GIVE PREFERENCE TO SINGLE LARGEST LOSS PLAINTIFF, JUST AS A MATTER OF -- WOULDN'T THAT BE CONTRARY TO THE FACT THAT CONGRESS DID DECIDE TO ALLOW A GROUP OF PLAINTIFFS IN THAT DECISION?  THEY CLEARLY -- I THINK CLEARLY COULD HAVE DONE THE OPPOSITE AND CHOSE NOT TO DO THAT.

MS. SAXENA:  YOUR HONOR, THERE'S A COUPLE OF RESPONSES TO THAT.

FIRST THIS ISN'T AN ORDINARY GROUP.  YOU KNOW, IF YOU LOOK

AT THE NINTH CIRCUIT'S OPINION IN THE MARSHALL CASE, MARSHALL VERY CLEARLY SAYS A PRE-EXISTING RELATIONSHIP IS ONE FACTOR, BUT IT'S ONLY ONE FACTOR IN APPOINTING GROUPS.  AND THIS CIRCUIT VERY CLOSELY SCRUTINIZES GROUPS SEEKING APPOINTMENT.

SO WHAT MARSHALL SAID IS YES, PREEXISTING RELATIONSHIPS ARE A FACTOR, BUT THERE'S OTHER FACTORS, YOU DON'T JUST RUBBER STAMP A GROUP IF IT HAS A PREEXISTING RELATIONSHIP.  THE OTHER FACTORS THAT THE NINTH CIRCUIT LOOKED AT IN MARSHALL ARE THE SIZE OF A GROUP AND THE PROSECUTION PROCEDURES THEY HAD SET FORTH IN THEIR FILINGS.

SO IF YOUR HONOR WILL ALLOW ME, I WOULD LIKE TO BRIEFLY EXPLAIN HOW BOTH OF THOSE FACTORS REALLY WEIGH AGAINST THE APPOINTMENT OF THE NEW YORK CITY GROUP HERE.

SO FIRST OF ALL, WHEN IT COMES TO THE SIZE OF A GROUP, NO COURT IN THIS CIRCUIT HAS EVER APPOINTED A GROUP OF 11 PLAINTIFFS AS A GROUP.

THAT REALLY GOES BACK TO, AND I'M DATING MYSELF, YOUR HONOR, BECAUSE I WAS PRACTICING WHEN THE PSLRA CAME OUT, AND IN THE BEGINNING WE HAD THESE HUGE GROUPS OF PLAINTIFFS, KIND OF LIKE MASS TORT KIND OF MODEL, AND THAT EVOLVED WITH THE SEC'S GUIDANCE IN THE BOND CASE AND NETWORK ASSOCIATES, AND IT EVOLVED TO A PRESUMPTION THAT A GROUP OF FIVE IS TOO LARGE.

THIS IS A GROUP OF 11.  THEY ARE 11 SEPARATE AND DISTINCT LEGAL ENTITIES.  THERE'S EIGHT DIFFERENT BOARDS, THERE'S OVER 80 TRUSTEES HERE, THEY ARE ALL ANSWERABLE TO DIFFERENT

CONSTITUENCIES.  I SEE THOSE COMMERCIALS, YOU KNOW, PAST PERFORMANCE IS INDICATIVE OF FUTURE RESULTS.

SO THE FACT THAT THEY HAVE SERVED TOGETHER IN THE PAST, THEY HAVE NEVER SERVED TOGETHER WITH A GROUP OF 11, FIRST OF ALL, AND THEY HAVE NEVER SERVED TOGETHER WITH SUCH DISPARATE LOSSES.

THE COURT:  IT'S INTERESTING THOUGH BECAUSE IN SOME WAYS -- I WAS LOOKING AT THE NUMBERS, RIGHT, AND I KNOW YOU ARGUE THEY CAN'T CHANGE THEIR PROPOSAL NOW, BUT HAD THEY COME IN WITH THEIR TOP FOUR, THEY WOULD BE A GROUP OF LESS THAN FIVE AND THEY WOULD HAVE LARGER LOSSES THAN YOUR CLIENT.

MS. SAXENA:  THEY WOULD STILL BE A GROUP, YOUR HONOR, AND THIS DISTRICT AND THIS CIRCUIT HAS A VERY, VERY CLEAR PREFERENCE FOR THE LARGEST SOLE INDIVIDUAL INVESTOR.

AND JUST GOING BACK TO THE SIZE, A RELATED GROUP OF 11 IS STILL A GROUP.  I WOULD ARGUE THAT 11 IS A CROWD.  IF I'M DECIDING WHERE TO GO TO LUNCH AND IT'S MY DECISION, OR I HAVE TO TALK TO MY GRANDMA AND MY AUNT EDNA AND MY 11 FIRST COUSINS, IT'S A MUCH MORE DIFFERENT EQUATION THAN WHEN YOU HAVE ONE DECISION MAKER.

HERE --

THE COURT:  THEY HAVE SAID THAT THE LEGAL ADVICE REGARDING HOW TO PROSECUTE THESE CASES IS ALL BEING PROVIDED BY THE NEW YORK CITY LAW DEPARTMENT, CORRECT?  THE SAME ATTORNEYS AT THE NEW YORK CITY LAW DEPARTMENT?

MS. SAXENA:  TO SOME EXTENT, THAT'S CORRECT, YOU HONOR.

AND WITH RESPECT TO MANAGING THE LITIGATION, IT DOESN'T MATTER WHETHER THEY CAN MANAGE THE LITIGATION EFFECTIVELY, THERE'S ONE GLARING OMISSION WHEN YOU LOOK AT THE THIRD PART OF THE MARSHALL ANALYSIS WHICH IS WHAT ARE THE PROSECUTION PROCEDURES THEY HAVE SET FORTH?

AND HERE WE HAVE A DECLARATION FROM MR. WHITMAN SAYING ALL OF THESE FUNDS NEED SEPARATE SETTLEMENT APPROVAL IN ORDER TO RESOLVE THIS ACTION.

SO ESSENTIALLY THAT GIVES A FUND WITH A LITTLE OVER $8,000 FINANCIAL INTEREST, THE SAME EXACT INTEREST AS THE ONE WITH $10 MILLION.  THAT REALLY CONTRAVENES THE INTENT OF THE PSLRA. THE PSLRA WAS INTENDED TO PUT AT THE DRIVER'S SEAT, THE FUND WITH THE LARGEST FINANCIAL INTEREST IN THE LITIGATION.

AND EVEN IF THEY DO HAVE A MECHANISM TO MANAGE SOME OF THE ASPECTS OF THE LITIGATION, IF YOU LOOK AT CASES LIKE ENRON, WHICH IS ONE OF THE MOST PROMINENT SECURITIES CASES EVER, THE COURT THERE REJECTED A GROUP IN FAVOR OF ONE COORDINATED INSTITUTION FOR EXACTLY THOSE REASONS, BECAUSE IT WAS MUCH MORE EFFICIENT AND YOU ARE NOT EXPOSING THE CLASS TO THE RISKS INHERENT IN HAVING THESE MULTIPLE DECISION MAKERS.

THE COURT:  I MEAN, IT'S INTERESTING, I COULD SEE THAT GOING BOTH WAYS, ON THE ONE, BECAUSE I THINK I HAVE TO PRESUME TODAY THAT THIS CASE WON'T SETTLE, THIS WILL GO TO

TRIAL, WE ARE GOING TO BE LITIGATING THIS ALL THE WAY UNTIL TRIAL.  AND THERE'S A RISK OF SETTLEMENT IN THESE CASES, AND THERE COULD BE AN ARGUMENT THAT HAVING MORE THAN ONE LEAD PLAINTIFF IS HELPFUL TO MAKE SURE THAT ANY SETTLEMENT THAT IS APPROVED IS APPROPRIATE AS OPPOSED TO SIMPLY -- OBVIOUSLY IF THERE'S A SETTLEMENT, IF THERE'S A CLASS, AND AS A CLASS SETTLEMENT, I WOULD HAVE TO APPROVE IT.  BUT NONETHELESS, YOU KNOW, HAVING ADDITIONAL -- HAVING A GROUP COULD PROVIDE SOME ADDITIONAL ASSURANCES THAT ANY SETTLEMENT THAT IS REACHED IS THE BEST -- IN THE INTEREST OF ALL MEMBERS OF THE PROPOSED CLASS AND NOT SIMPLY THE LARGEST FUND AT ISSUE.  MAYBE WE WANT THE $8,000 LOSS FUND TO BE PRESENT AT THOSE DISCUSSIONS IN ORDER TO BE SURE THOSE PEOPLE ARE PROTECTED IN THE CLASS AS WELL.

MS. SAXENA:  YOUR HONOR, THAT WOULD BE TRUE IF THERE WAS SOME MECHANISM IN PLACE AS TO HOW WE RESOLVE DISPUTES.  AS FAR AS WE CAN TELL ON THE PAPERS, THERE IS NO SUCH MECHANISM, SO THAT REALLY LEAVES US THE QUESTION, WHY OR HOW ANY DISPUTES WILL IN FACT BE RESOLVED?

SO THAT CLEARLY --

THE COURT:  AND AS I UNDERSTAND -- I BELIEVE YOUR CLIENT HAS HAD EXPERIENCE WORKING WITH SOME COMBINATION OF THESE FOLKS IN THE PAST, CORRECT?  AND YOU KNOW, DIDN'T PUT ANY EVIDENCE THAT THIS HAD BEEN A PROBLEM IN THOSE CASES.

MS. SAXENA:  AND THOSE ARE VERY DIFFERENT SITUATIONS,

YOUR HONOR, AND I CAN CERTAINLY BRIEFLY ADDRESS THEM.

THE FIRST ONE WAS THE CENDANT CASE, AND CENDANT, PREDATES THE EVOLUTION OF THE LAW ON GROUPS IN THIS DISTRICT AND THIS CIRCUIT.

YOU KNOW, CENDANT TOOK PLACE WHEN AGAIN YOU HAVE THESE MASSIVE GROUPS OF INVESTORS SEEKING TO APPOINT A SUBGROUP OF SMALLER INVESTORS AS SORT OF A LEAD PLAINTIFF GROUP.  SO CENDANT WAS DECIDED BEFORE THE BENEFIT OF THE SEC, THE AMICUS BRIEF IN THE BOND CASE AND IN NETWORK ASSOCIATES.

THE COURT:  RIGHT.  I'M ASKING LESS ABOUT THE CIRCUMSTANCES WHERE IT HAPPENED, I'M ASKING MORE ABOUT THE LOGISTICS, THE CONCERNS ABOUT DECISIONMAKING.  AND THEY REPRESENTED THAT HASN'T COME UP IN THE NEW YORK STATE COMMON FUND'S PRIOR EXPERIENCE AS A CO-MEMBER OF THE LEAD PLAINTIFF GROUP.  AND I DON'T BELIEVE THERE'S BEEN A CONTRARY EVIDENCE SUBMITTED TO ME IN CONNECTION WITH THIS MOTION, CORRECT?

MS. SAXENA:  THE CENDANT CASE, YOUR HONOR, RESPECTFULLY WAS OVER 20 YEARS AGO, AND SINCE THEN, THE NEW YORK CITY FUNDS HAVE NOT BEEN APPOINTED WITH A GROUP THIS LARGE IN ANY CASE.

THE COURT:  OKAY.  BUT THEY HAVE BEEN APPOINTED WITH SOME OF THE FUNDS THAT ARE PART OF THE NEW YORK CITY FUNDS GROUP, CORRECT?

MS. SAXENA:  IN UNOPPOSED SITUATIONS.

THE COURT:  RIGHT.

AND THAT HASN'T LEAD TO THE KIND OF DECISIONMAKING CONCERNS -- AT LEAST THERE'S NO EVIDENCE YOU SUBMITTED THAT THE KIND OF DECISIONMAKING CONCERNS YOU RAISED EXISTED IN THOSE CASES, CORRECT?

MS. SAXENA:  YOUR HONOR, I THINK THE IMPORTANT ISSUE IS THAT NO CASE WITHIN THIS DISTRICT OR THIS CIRCUIT HAS EVER APPOINTED A GROUP IN FAVOR OF THE ONE SINGLE LARGEST FINANCIAL LOSS.  SO IT REALLY WOULD BE AN UNPRECEDENTED SITUATION TO DO THAT.

AND THAT IS BECAUSE OF THE RISKS PRESENT IN APPOINTING A GROUP AND PARTICULARLY A GROUP THIS LARGE.  THOSE RISKS AREN'T PRESENT WHEN YOU HAVE ONE SOLE INSTITUTION.

AND THERE JUST SIMPLY ISN'T A CASE WHERE A GROUP, WHETHER IT WAS RELATED OR UNRELATED, WAS PERMITTED TO DISPLACE THE LARGEST INDIVIDUAL LOSS.  IT DOESN'T EXIST, IT'S NOT IN THEIR PAPERS.  EVEN CENDANT APPOINTED THE LARGEST SOLE INDIVIDUAL, WAS PART OF THAT GROUP.

SO THE TWO CIRCUMSTANCES WHERE YOU ALLOW GROUPS ARE ONE, IF IT'S UNOPPOSED, AS THE CASES YOUR HONOR NOTED; AND TWO, IF THE GROUP CONTAINS WITHIN ITS MEMBERSHIP, THE LARGEST FINANCIAL INTEREST.

I THINK THERE'S AN INTERESTING POINT TO LOOK AT IN THE NINTH CIRCUIT AUTHORITY.  AND IF YOU LOOK AT MARSHALL AND YOU LOOK AT CAVANAUGH, THE NINTH CIRCUIT CRITICIZED THE DISTRICT COURT IN BOTH OF THOSE INSTANCES BECAUSE IT REJECTED A GROUP

AND IT REJECTED A GROUP THAT HAD THE LARGEST SOLE FINANCIAL INTEREST IN IT AND NOTED THAT IN BOTH OF THOSE CASES THAT IN REJECTING A GROUP, THE COURT ALSO OVERLOOKED THE INSTITUTION WITH THE LARGEST FINANCIAL INTEREST.

SO THAT'S REALLY THE POINT HERE.  YES, IT'S HAPPENED, BUT IT HAS NOT EVER HAPPENED IN A SITUATION WHERE THEY IT WERE OPPOSED BY ONE SINGLE, HIGHLY QUALIFIED MOVANT.

THE COURT:  OKAY.

THANK YOU.  LET ME HEAR FROM THE NEW YORK CITY FUNDS.

MS. MOYNA:  THANK YOU, YOUR HONOR.

I WANTED TO STEP BACK FOR A MINUTE.  THERE'S -- THIS CONVERSATION HAS KIND OF ASSUMES THAT THE NEW YORK CITY FUNDS IS A GROUP.  BUT ACTUALLY THERE ARE A LOT OF CASES WHERE THE NEW YORK CITY FUNDS IS TREATED AS A SINGLE PERSON UNDER THE PSLRA.

STARTING WITH MCKESSON, WHICH IS A 1999 CASE IN THIS DISTRICT, JUDGE WHYTE RECOGNIZED THAT IN THAT CASE, EIGHT OF THE NEW YORK CITY FUNDS BEFORE IT WERE "ESSENTIALLY ONE PERSON FOR PURPOSES OF THE REFORM ACT BECAUSE THEY ARE ALL UNDER THE JURISDICTION OF THE NEW YORK CITY CONTROLLER'S OFFICE AND ARE REPRESENTED IN THEIR DEALINGS WITH PRIVATE COUNSEL THROUGH ONE IN-HOUSE COUNSEL, THE CORPORATION OF THE CITY OF NEW YORK."

SO THIS COURT HAS TREATED THE NEW YORK CITY FUNDS AS ONE PERSON.

AND THERE'S ANOTHER GOOD EXAMPLE THAT I WANT TO TALK ABOUT

QUICKLY BECAUSE MS. SAXENA RAISED IT, WHICH IS THE CENDANT CASE.  IN THAT CASE, AS YOUR HONOR KNOWS, THE STATE, NINE NEW YORK CITY FUNDS PLUS CALPERS WERE APPOINTED BY THE DISTRICT NEW JERSEY TO BE LEAD PLAINTIFF.  THAT CASE ENDED UP BEFORE THE THIRD CIRCUIT IN AN APPEAL CONCERNING THE SETTLEMENT, BUT IN THE COURSE OF THAT LENGTHY DECISION, THE THIRD CIRCUIT FIRST ENUNCIATED A STANDARD FOR WHAT MIGHT BE A PROPERLY CONSTITUTED GROUP UNDER THE PSLRA, BUT THEN MADE CONCLUSIONS AND APPLIED THAT STANDARD TO THE DISTRICT COURT'S DECISION TO APPOINT CALPERS, THE STATE AND THE NINE NEW YORK CITY FUNDS AND SAID THAT THOSE THREE WERE PROPERLY APPOINTED BY THE DISTRICT OF NEW JERSEY.

SO EVEN IN ENUNCIATING THIS STANDARD, WHICH INCLUDED A PURPORTED BAN AGAINST MORE THAN FIVE MEMBERS OF THE GROUP, THE THIRD CIRCUIT SAID THE NINE NEW YORK CITY FUNDS WERE PROPERLY APPOINTED, AND IN FACT TREATED IT AS A SINGLE PERSON BECAUSE IT REFERRED TO THOSE THREE AS THREE OF THE LARGEST PENSION FUNDS IN THE COUNTRY.

SO I'M NOT SURE WE CAN EVEN SAY THAT THE NEW YORK CITY FUNDS IS A GROUP.  BUT PUTTING THAT ASIDE, I THINK A LOT OF THE CONCERNS THAT MS. SAXENA RAISES ARE, AS I THINK YOUR HONOR IS POINTING OUT, SPECULATIVE, THEY ARE QUESTIONS AND THEY DON'T RISE TO THE LEVEL OF THE PROOF THAT'S NECESSARY TO REBUT THE PRESUMPTION WHICH ATTACHES TO THE NEW YORK CITY FUNDS AS THE HIGHEST LOSSES AND PROPERLY -- EITHER A PERSON OR PROPERLY

CONSTITUTED A GROUP UNDER THE PSLRA.

THE COURT:  OKAY.

I TAKE IT THAT THERE ARE NO OTHER DISPUTES.  I MEAN, I THINK EVERYBODY AGREES THAT BOTH PARTIES ARE OTHERWISE QUALIFIED TO SERVE AS LEAD PLAINTIFFS AND SATISFY THE REQUIREMENTS OF RULE 23 WITH RESPECT TO THE CLASS REPRESENTATIVES AND THAT THE COUNSEL HERE ARE ACCOMPLISHED AND ABLE TO SERVE AS LEAD COUNSEL IN THIS MATTER IF THEIR CLIENTS WERE CHOSEN; IS THAT CORRECT?

MS. SAXENA:  THAT'S NOT ENTIRELY CORRECT.

WE CERTAINLY DON'T HAVE ANY PROBLEM WITH THE FIRM, IT'S A VERY WELL-QUALIFIED FIRM, BUT WE WOULD TAKE ISSUE WITH THE ADEQUACY COMPONENT.

AND THAT IS BECAUSE, AS I MENTIONED, THERE IS NO DISPUTE-RESOLVING MECHANISM IN PLACE.  AND YOU ARE PUTTING A VERY HIGH STAKES LITIGATION IN THE HANDS OF A GROUP OF 11 INVESTORS.

I KNOW THE ARGUMENT IS THAT THEY ARE ONE PERSON, BUT THEY ARE NOT ONE PERSON, YOUR HONOR, IT'S CLEAR FROM THEIR DECLARATIONS THAT THEY ARE 11 DISTINCT ENTITIES.  THERE'S OVER 80 TRUSTEES INVOLVED HERE.  THEY ARE NOT ONE FUND.  AND THAT ISSUE WASN'T BEFORE THE COURT IN MCKESSON, THAT WAS A FOOTNOTE IN MCKESSON, AND THAT ISSUE REALLY WASN'T PRESENTED TO THE COURT, THERE WAS NO ISSUE WITH THE GROUP THERE.

AGAIN, BY CONTEXT, IT WAS A VERY, VERY DIFFERENT TIME IN

THE EVOLUTION OF THE LAW ON GROUPS.

SO WHEN YOU TURN TO ADEQUACY, I THINK WE ARE JUMPING AHEAD A LITTLE BIT BECAUSE WE ARE ARGUING THAT UNDER MARSHALL, THIS GROUP SHOULD NOT AGGREGATE THEIR FINANCIAL INTERESTS BECAUSE THEY DON'T MEET THE REQUIREMENTS TO AGGREGATE THEIR FINANCIAL INTERESTS.  THEY ARE OPPOSED BY A SINGLE QUALIFIED MOVANT, AND THIS COURT AND THIS CIRCUIT HAS NEVER COMMITTED AGGREGATION IN THOSE CIRCUMSTANCES.

WITH RESPECT TO ADEQUACY, WHICH IS WHAT YOUR HONOR ASKED, WE WOULD ARGUE THAT THEY HAVEN'T MADE A PRIMA FACIE SHOWING OF ADEQUACY UNDER THAT FIRST STEP OF MARSHALL, BECAUSE OF THIS ISSUE WITH JOINT DECISIONMAKING.  WE DON'T KNOW IF THE SMALL FUND IS GOING TO HAVE EXACTLY THE SAME SAY AS THE $10 MILLION FUND.  IF THAT IS IN FACT THE CASE, IT REALLY CONTRAVENES THE INTENT AND PURPOSE BEHIND THE PSLRA, WHICH AGAIN IS TO PUT THESE LITIGATIONS IN THE HANDS OF THE INVESTORS WHICH SUSTAINED THE LARGEST FINANCIAL INTEREST.

$8,000 IS NOT THE LARGEST FINANCIAL INTEREST AND SHOULD NOT CARRY THE SAME WEIGHT AS A FUND WITH $31.6 MILLION, AS NEW YORK COMMON HAS.

THE COURT:  I MEAN, THAT'S INTERESTING THOUGH, IT SEEMS LIKE MAYBE THE REPRESENTATIVE HERE FOR SNOWFLAKE MIGHT LIKE THAT ARGUMENT A LOT.  I HAVEN'T SEEN THE ARGUMENT WHEN I'M CONDUCTING -- YOU KNOW, WHEN I HAVE THREE PROPOSED CLASS REPRESENTATIVES BEFORE ME IN A CASE THAT I HAVE TO KNOW ABOUT

THE DISPUTE RESOLUTION MECHANISM THAT HAS BEEN PROVIDED AS BETWEEN THEM AND THEIR LAWYER BEFORE I CAN DETERMINE WHETHER THEY ARE ADEQUATE.

YOU KNOW, THAT JUST SEEMS LIKE A DANGEROUS ARGUMENT TO BE MAKING THAT THE COURT NEEDS TO UNDERSTAND EVERYTHING THAT HAS BEEN DEALT WITH WITH RESPECT TO THE DISPUTE RESOLUTION MECHANISMS AS BETWEEN PROPOSED PLAINTIFFS IN ORDER TO EVALUATE THEIR ADEQUACY UNDER RULE 23.

MS. SAXENA:  ACTUALLY THAT'S IN THE CASE LAW, YOUR HONOR.

THERE ARE SEVERAL CASES WHICH WE CITE TO IN OUR BRIEF WHICH FIND THAT A LACK OF JOINT DECISIONMAKING, EITHER A IF THEY HAVEN'T SUBMITTED ANY INDICATION OF HOW THEY WILL RESOLVE DISPUTES; OR B, IF THEY ARE INSUFFICIENT, LIKE IN PETROBRAS OR THE OTHER CASES.

THE COURT:  ARE THOSE RULE 23 CLASS CERTIFICATION DECISIONS DECLARING PEOPLE INADEQUATE UNDER THAT BASIS OR ARE THOSE LEAD PLAINTIFF DESIGNATIONS?

MS. SAXENA:  WE DIDN'T EVEN GET THERE BECAUSE THOSE PROPOSED PLAINTIFFS WERE FOUND UNDER THE LEAD PLAINTIFF PRIMA FACIA ANALYSIS TO BE INADEQUATE, SO WE DIDN'T EVEN GET TO CLASS CERTIFICATION.

AND YOUR HONOR RAISES A WHOLE OTHER HOST OF ISSUES WHICH WILL OCCUR AT CLASS CERTIFICATION BECAUSE YOU DO HAVE 11 DISTINCT AND SEPARATE ENTITIES, SO THERE IS GOING TO BE A WHOLE

HOST OF ADDITIONAL DISCOVERY, CLASS DISCOVERY, DEPOSITIONS, AND THE RISKS THAT THE CLASS IS NOW GOING TO BE EXPOSED TO, WHICH THEY WOULDN'T BE EXPOSED TO WITH ONE INSTITUTION, ONE DECISIONMAKER.

AND THAT REALLY GOES BACK TO YOUR POINT ABOUT ADEQUACY.

FIRST OF ALL, THEY CAN'T AGGREGATE; AND SECOND OF ALL, THEY ARE NOT ADEQUATE BECAUSE WE DON'T KNOW WHO IS GOING TO BE RUNNING THE SHOW.  IS IT THE $8,000 INVESTOR?  IS IT THE $10 MILLION?  THAT RAISES NUMEROUS ISSUES ABOUT THIS PARTICULAR GROUP IN HERE WHICH HAS NEVER BEEN DONE BEFORE.  THEY MOVED WITH A GROUP OF 11 IN TWO CASES.  THEY MOVED IN THE RIVIAN CASE WHERE THEY DIDN'T HAVE THE LARGEST LOSS, WITHDREW, AND THEY PROVED IN THE KRAFT CASE WHERE THE COURT FOUND THAT THEIR LOSSES WERE OVERSTATED, APPOINTED A GROUP OF TWO INVESTORS AND NOTED IN APPOINTING JUST THE TWO THAT THE LARGER THE GROUP, THE LESS COHESIVE THE VOICE.

THE COURT:  SO WHAT WAS THE DISCLOSURE IN THAT CASE WITH THE CALPERS AND NEW YORK STATE COMMON FUND AND THE NEW YORK CITY FUNDS ABOUT THE DISPUTE RESOLUTION MECHANISM AS BETWEEN THOSE THREE ENTITIES?

MS. SAXENA:  IN THAT PARTICULAR CASE, I DON'T KNOW THAT THERE WAS ONE, YOUR HONOR, BECAUSE I THINK IT PREDATED THE LAW IN REQUIRING THAT TYPE OF INFORMATION.

THE COURT:  AGAIN, IT STRIKES ME AS A CIRCUMSTANCE WHERE THAT ISSUE WOULD BE MUCH MORE PRONOUNCED GIVEN THAT ALL

OF THESE ARE INCREDIBLY LARGE AND UNDENIABLY THREE ENTIRELY INDEPENDENT ENTITIES, RIGHT. BUT PRESUMABLY, IT SOUNDS LIKE THAT CASE SETTLED.

MS. SAXENA: THAT CASE SETTLED AFTER EXTENSIVE APPEALS.

I WOULD ALSO NOTE THAT THE CENDANT CASE CALPERS HAD BY FAR THE LARGEST INDIVIDUAL LOSS. SO THAT GOES BACK TO THE CONTROLLING CASE LAW IN THIS DISTRICT AND THIS CIRCUIT WHICH HAS NEVER ALLOWED AGGREGATION OF A GROUP OVER ONE QUALIFIED INVESTOR.

AND THEN I KNOW YOUR HONOR TOOK ISSUE WITH THE GREEN DOT CASE, BUT GREEN DOT VERY CLEARLY SAYS UNLESS THERE'S A COMPELLING REASON TO APPOINT A GROUP OF SMALL INVESTORS TO DISPLACE ONE LARGE QUALIFIED COORDINATED INSTITUTION, THAT SHOULD NOT OCCUR. THERE IS NO COMPELLING CIRCUMSTANCE HERE AND THE CASE LAW DOESN'T SUPPORT A, A GROUP THIS LARGE; OR B, AGGREGATION TO AGGREGATE A FINANCIAL INTEREST AND USURP THE INTERESTS OF ONE INSTITUTION. IT'S NEVER HAPPENED.

THE COURT: I WILL GIVE YOU ONE MORE MINUTE AND THEN A COUPLE MORE MINUTES TO THE NEW YORK CITY FUNDS, BUT THEN OBVIOUSLY THIS HAS BEEN INTENSIVELY BRIEFED AND ARGUED.

MS. MOYNA: THANK YOU, YOUR HONOR.

I WILL POINT OUT, AS YOUR HONOR NOTED, SORT OF OUT OF THE GATE, THE CONCERNS ABOUT APPOINTING MULTIPLE MEMBERS OF A GROUP ARE NOT IMPLICATED HERE BECAUSE ALL OF THE CASES THAT NEW YORK

STATE CITES INVOLVE UNRELATED ENTITIES WITH NO PRIOR EXISTING RELATIONSHIP.

IN THE GREEN DOT CASE, THE COURT DECLINED INVESTORS THAT HAD NO PRIOR RELATIONSHIP AND CAME TOGETHER SOLELY FOR THE PURPOSES OF AGGREGATING THE CLAIMS.

AND I CAN GO THROUGH EVERY SINGLE ONE OF THEIR CASES, INCLUDING WHERE IN CALIFORNIA ONE LARGE PLAINTIFF MIGHT BE FAVORED OVER MEMBERS OF A GROUP WITH LOWER LOSSES.  THAT'S ALL BECAUSE THEY WERE UNRELATED MEMBERS OF A GROUP WITH NO PRE-EXISTING RELATIONSHIP.

THE COURT:  OKAY.  I ASSUME THAT DEFENDANT HAS NOTHING TO OFFER ON THIS MOTION?

MR. JOHNSON:  NO, WE HAVE NO ARGUMENT, YOUR HONOR.  THANK YOU.

THE COURT:  ALL RIGHT.  THANK YOU.

THE MOTIONS HAVE BEEN WELL BRIEFED AND ARGUED AND I WILL TAKE THE MOTION UNDER SUBMISSION AND I WILL GET A DECISION OUT FORTHWITH.  AND OBVIOUSLY THIS IS KIND OF THE FIRST IMPORTANT STEP IN THIS LITIGATION SO I WILL AIM TO DO SO QUICKLY.

MS. SAXENA:  THANK YOU, YOUR HONOR.

MS. MOYNA:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.

(THE PROCEEDINGS WERE CONCLUDED AT 12:11 P.M.)

**CERTIFICATE OF REPORTER**

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATE:  10/3/24