UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NEW YORK CITY FIRE DEPARTMENT PENSION FUND, et al.,

Plaintiffs,

v.

SNOWFLAKE INC., et al.,

Defendants.

Case No. 5:24-cv-01234-PCP

**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**

Re: Dkt. No. 137

This securities fraud class action lawsuit by eleven New York City retirement funds is one of several recently filed cases initiated after a company's stock price fell. During the putative class period, defendant Snowflake Inc. continued to grow and in fact surpassed the quarterly revenue guidance that it had provided to the market. But its stock price nonetheless fell in March 2022 after it announced "disappointing" quarterly results and lowered its projected rate of revenue growth. Based on that price drop, plaintiffs filed suit against Snowflake, its former CEO Frank Slootman, and its former CFO Michael Scarpelli for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendants now move to dismiss plaintiffs' third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the Court grants Snowflake's motion without further leave to amend.

United States District Court
Northern District of California

United States District Court
Northern District of California

## BACKGROUND

The majority of Snowflake's revenue comes from capacity contracts, where customers purchase a minimum number of credits to use over a period of time.[1] Snowflake's revenue is only realized when a customer consumes its credits. Plaintiffs allege that a significant portion of Snowflake's revenue growth was due to overconsumption of credits because Snowflake was not efficient. They point to Snowflake's use of an outdated Intel chip and other built-in platform inefficiencies. Snowflake's biggest customers complained about the software's poor price performance and sometimes switched to competitors as a result. As a result, both Slootman and Scarpelli were acutely aware of the problem of overconsumption.

On March 2, 2022, Snowflake announced two new product features that fixed major platform inefficiencies. These were the creation of its "warehouse scheduling service" (WSS) and switching its hardware from the Intel chip to Amazon's Graviton 2 chip. Snowflake also revealed that its projected revenue growth for FY 2023 was only 65 to 70%, well below the triple-digit revenue growth rate that they had previously enjoyed. After the March 2, 2022, announcement, Snowflake's stock price fell 15% by the end of the day. One week later, Snowflake's valuation had dropped from $264.69 per share to $191.61 per share, a loss of 28% of the stock's value.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

---

[1] For the purposes of defendants' motion, the Court assumes the truth of the allegations in the third amended complaint. The Court's previous order provides further background on both the facts and history of the case. *See New York City Fire Dep't Pension Fund v. Snowflake Inc.*, 820 F. Supp. 3d 999, 1016 (N.D. Cal. 2026).

legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

A Section 10(b) violation requires "a material misrepresentation or omission of fact, scienter, a connection with the purchase or sale of a security, transaction and loss causation, and economic loss." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017). "A securities fraud complaint under § 10(b) and Rule 10b-5 must satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the PSLRA [Private Securities Litigation Reform Act]." *In re VeriFone Holdings, Inc. Securities Litigation*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). And "[t]he PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

For plaintiffs in private securities fraud class actions, the PSLRA creates "formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). A securities fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, ... with particularity all facts on which that belief is

formed." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009), *as amended* (Feb. 10, 2009). To adequately plead scienter the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at 991.

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007), the Supreme Court held that a "strong inference" of scienter exists "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." In the Ninth Circuit, a court must conduct a dual inquiry in assessing whether this standard is met: "[F]irst, it determines whether any one of the plaintiff's allegations is alone sufficient to give rise to a strong inference of scienter; second, if no individual allegations are sufficient, it conducts a 'holistic' review to determine whether the allegations combine to give rise to a strong inference of scienter." *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747, 766 (9th Cir. 2023). The strong inference standard applies only to the element of scienter, not to falsity. *Id.* ("Falsity is subject to a particularity requirement and the reasonable inference standard of plausibility set out in Twombly and Iqbal, and scienter is subject to a particularity requirement and a strong inference standard of plausibility.").

**ANALYSIS**

In dismissing plaintiffs' previous complaint, the Court held that the plaintiffs had failed to plead with particularity that defendants made any false or misleading statements or material omissions. Plaintiffs' new theory of liability is that Snowflake concealed platform inefficiencies which artificially inflated revenue metrics, creating the appearance of rapid growth that was in truth rooted in operational shortcomings. Plaintiffs' theory fails to contend with three inconvenient facts. First, Snowflake consistently exceeded its revenue projections, including for the quarter that plaintiffs allege caused their loss. Second, Snowflake regularly warned the market that platform enhancements that would necessarily affect their revenue and growth were imminent. And third, the most obvious explanation for the market's response to the May 2, 2022, announcement was that Snowflake's reduced revenue guidance demonstrated that the meteoric growth in revenue it had previously experienced was slowing. Given these facts, plaintiffs have not plausibly alleged

United States District Court
Northern District of California

that Snowflake's failure to disclose the precise details of its platform enhancements prior to May 2022 was the cause of the stock price's drop.[2]

**I. Plaintiffs fail to show loss causation.**

To properly plead a violation of Rule 10(b), a plaintiff must show that a misrepresentation caused his loss. Often, this is done by showing that once "'the truth became known,'" the price of the security was reduced or eliminated. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005)). A "truth becom[ing] known" occurs most commonly when "information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *Id.* at 790. An event that reveals an earlier statement to be false may also serve as the triggering factor. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013) (discussing the "materialization of the risk" approach to loss causation). But these are just two of an "infinite variety" of theories of causation that could apply to a securities action. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 536 (1983)). The question is deceptively simple: Did defendant's misstatement foreseeably cause the plaintiff's loss? *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018).

Plaintiffs' theory of loss causation is that when defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Snowflake common stock declined significantly. TAC ¶ 325. Plaintiffs' corrective disclosure theory—where "information correcting the misstatement or omission that is the basis for the action is disseminated to the market" and reveals the truth concealed by the defendant's misstatements, causing the price of the security to decline—is one of the most common ways to show loss causation. *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 540 (9th Cir. 2024) (citation omitted). "[P]laintiff[s] need not show that a misrepresentation

---

[2] As with the prior complaint, many and perhaps all of the 49 statements upon which plaintiffs premise the claims in the third amended complaint are not actionably false or misleading. The Court, however, need not examine each statement in detail given plaintiffs' failure to plead loss causation.

United States District Court
Northern District of California

was the *sole* reason for a price decline, but rather that it was one substantial cause." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1183 (9th Cir. 2024) (citation omitted). At the pleading stage, plaintiffs need merely allege that the fraud plausibly caused their loss—a relatively low burden. *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 954 (9th Cir. 2023); *In re Seagate Tech. Holdings PLC Sec. Litig.*, No. 23-CV-03431-RFL, 2025 WL 1744505, at *10 (N.D. Cal. May 12, 2025).

The "truth" identified by plaintiffs purportedly was revealed on March 2, 2022, when Snowflake announced that it would incur a $162 million headwind due to platform enhancements that would remedy ongoing product inefficiencies. The problem with plaintiffs' theory is that this truth was not unknown to the market prior to that date. Snowflake previously and repeatedly warned shareholders that such enhancements were imminent. In 2021, it stated that a new chip would "have an impact, and that's more of next year you'll see that." During a conference, it stated that "a new chipset coming up next year … will further improve performance that makes [Snowflake] cheaper and more economical."[3] In May 2021, it also announced that a new storage compression technology created a "headwind" of $13 million in revenue—echoing the exact same phrasing that they used a year later to describe the effect of the new platform improvements. As the Court previously noted, "[w]here defendants warned of platform enhancements, even generally, and had previously implemented platform improvements to the financial benefit of customers, investors could have reasonably anticipated similar enhancements in the future." *New York City Fire Dep't Pension Fund*, 820 F. Supp. 3d at 1015.

Snowflake had also previously disclosed that some customers overused credits and that those same customers sought to consume less. It disclosed that one of the biggest issues facing its customers was credits "going a little bit too quick" and "running away from [customers] maybe a

---

[3] Defendants' request for judicial notice of Exhibits 1 through 28 to their motion is granted. The exhibits include SEC filings, transcripts of earnings calls and conferences, and analyst reports that are either incorporated by reference into the second amended complaint or the proper subject of judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018); Fed. R. Evid. 201. The Court takes judicial notice of the existence and content of the exhibits, but not the truth of any facts therein. *See Khoja*, 899 F.3d at 999–1000, 1003.

little bit too quickly." While plaintiffs are correct that Snowflake was not transparent about the *rate* at which the customers overused credit, it did disclose that "some of its largest customers were the subjects" of defendants' efforts to help "optimiz[e]" the use of credits, and that one of its top ten customers saw a "big decrease in their consumption" after these optimization efforts. Snowflake was thus candid about the risk of credit overuse long before the March stock drop.[4]

Plaintiffs therefore cannot point to any "new" information in the March 2, 2022, call that caused their loss. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d at 790. Indeed, Snowflake had already baked this information into its revenue projections, which still outperformed Snowflake's predictions. This is most clearly demonstrated by looking at the revenue growth guidance for the second quarter of 2022 (88% – 92%), and what the actual revenue growth was (103%). In fact, for every quarter of 2022 (and the previous quarter before that), Snowflake's revenue growth guidance was lower than the actual growth. Plaintiffs seem to want more from defendants, but what they desire is impractical. It would require the Court to find that any company that discloses an upcoming, negative change without also including a precise monetary estimate may be guilty of security fraud. "But the Exchange Act imposes no affirmative duty to disclose information." *Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc*, No. 24-4909, 2026 WL 2601128, at *11 (9th Cir. Sept. 2, 2026) (citation omitted). And failure to disclose is only relevant if that omission "renders affirmative statements made misleading." *Id.* (citing *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024)). As explained above, there is nothing misleading about warning of a short-term negative financial impact of a technological upgrade.

On that same call, Scarpelli revealed that Snowflake expected product revenue between

[4] Plaintiffs cite to a UBS analyst report that they claim confirms that the stock price drop was due to platform changes. But the analyst report merely notes that the earnings call "awoke analysts and investors to the risk that platform improvements can create unforeseen, discontinuous adjustments to SNOW's revenue and RPO growth outlook." None of what the analyst identified (that "customers were becoming unhappy about the rapid acceleration of their SNOW spending," that customer spending rate "compelled" the company "to provide a significant adjustment to its price/performance") was unavailable to the public. As described above and in the Court's previous order, Snowflake executives repeatedly warned that Snowflake would have to improve its platform's efficiencies to keep customers happy. *See New York City Fire Dep't Pension Fund*, 820 F. Supp. 3d at 1014 ("[T]he fact that Snowflake ultimately rolled out platform improvements [is] a recognition in itself that the product was not perfect.").

$1.88 and $1.9 billion for fiscal year 2023, representing a year-over-year growth rate of 65%–67%. Plaintiffs are correct to point out that this growth rate is significantly different from previous predictions, where the low-end estimates hovered around 88%. Despite the fact that Snowflake outperformed its revenue projections on a regular basis, the call revealed that that pattern was likely to shift as Snowflake's explosive growth rate began to slow. While plaintiffs brandish this as further proof that defendants' misstatements and omissions had an effect on the company's valuation, it is far more likely that Snowflake disclosure simply revealed that its rocket-like growth was slowing—i.e., that instead of a scaling growth company, it had become one with stabilizing growth.

Where there are two alternative explanations advanced by either party, "both of which are plausible," the court must defer to plaintiffs' explanation at the motion to dismiss stage. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). But here, plaintiffs' explanation is at most merely *possible*, not plausible. A plausible explanation requires more than "facts that are merely consistent with both their explanation and defendants' competing explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Determining whether an explanation is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Experience and common sense tell the Court that when a company with previously off-the-charts growth rates announces a significant curtailment of that rate, its stock price will drop. *Cf. Dura Pharms., Inc.*, 544 U.S. at 343 (a stock's lowered price "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price"). As the Court explained in its previous order, "not every company experiences [ ] Nvidia-like growth" *New York City Fire Dep't Pension Fund*, 820 F. Supp. 3d at 1005.

As noted already, pleading loss causation at the motion to dismiss stage is generally not difficult. Nonetheless, given the degree to which the information purportedly revealed to the market on May 2, 2022, was already known and the presence of an obvious and significantly more plausible explanation for the drop in Snowflake's stock price on that date, the Court concludes that

plaintiffs have failed to plausibly plead loss causation and therefore have not alleged securities fraud.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED. The decision to grant leave to amend is within the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). Because this is plaintiffs' third attempt to plead their action, and because the Court has already granted leave to amend once (including by noting plaintiffs' need to plead facts demonstrating loss causation), dismissal is without further leave to amend and with prejudice.

**IT IS SO ORDERED.**

Dated: September 8, 2026

P. Casey Pitts
United States District Judge